**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SINGULARDTV GMBH,

*Plaintiff,*

v.

ZACHARY LEBEAU and KIMBERLY
JACKSON,

*Defendants.*

Case No. 1:21-cv-10130

**DECLARATION OF PATRIK ALLENSPACH IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION AND, IN THE INTERIM,**
**TEMPORARY RESTRAINING ORDER**

Pursuant to 28 U.S.C. § 1746, I, PATRIK ALLENSPACH, state as follows:

1.      I am a representative of SingularDTV GmbH ("SingularDTV" or the "Company")

and its Resident Signatory.

2.      I submit this Declaration in support of SingularDTV's Motion for Preliminary

Injunction and, in the Interim, Temporary Restraining Order in the above-captioned action.

3.      SingularDTV was founded in December 2016 for the purposes of "development,

marketing, distribution and licensing of software, in particular the creation of a blockchain and

Ethereum-based production and distribution platform, as well as the development, marketing,

distribution and licensing of high-quality film and TV content." A true and correct copy of

SingularDTV's Articles of Association is attached as Exhibit 1.

4.      SingularDTV's share capital is divided among Zachary LeBeau, Joseph Lubin, and

Arie Levy-Cohen. Messrs. LeBeau and Lubin each have 43-percent ownership shares in

SingularDTV, while Mr. Levy-Cohen owns the remaining 14 percent.  In addition to their

1

ownership interests, each of the founders acted as managing directors of the board (the "Board")

for SingularDTV and held executive positions at the company.  Specifically, Mr. LeBeau acted as

the company's chief executive officer ("CEO"), Mr. Levy-Cohen as its chief financial officer

("CFO"), and Mr. Lubin as its chief technology officer ("CTO").  In late 2018, Kimberly Jackson,

LeBeau's common-law wife, was engaged as an independent contractor to act as SingularDTV's

chief operating officer ("COO").  Ms. Jackson was never given signatory authority for the

company.

5.      Two months before founding the company, SingularDTV's founders launched an

Ethereum-based cryptographic token, SNGLS, to raise money for a range of initial projects,

including an original television series, a documentary division, a digital-rights-management

platform, and a video-on-demand distribution portal.  The launch generated one billion SNGLS

tokens, all of equivalent value, through a smart-contract system.  Half of those tokens were

purchased at launch at a value of 0.00116 ETH per token, raising approximately 580,000 ETH

(worth roughly US $7.5 million at the time).  The remaining tokens were allocated to the Company

and to SingularDTV's early financial contributors.

6.      The ETH raised through the launch of the SNGLS tokens were stored in a "cold

wallet"—in other words, a storage arrangement in which the private "keys" used to transfer the

ETH would be stored on a device that was not connected to the internet (the "Cold Wallet"). The

founders used cryptographic, self-executing "smart" contract to transfer the ETH to the Cold

Wallet automatically.

7.      Mr. LeBeau configured the Cold Wallet as a single-signature wallet to which he

alone holds the private key. Unlike multi-signature wallets (which require the use of multiple

private keys to engage in transactions), single-signature wallets allow one person to unilaterally transfer or withdraw the assets held inside.

8.      Mr. LeBeau also possessed the physical device on which that key is stored, which SingularDTV believes to be a laptop computer held in one of LeBeau's New York City apartments. Accordingly, to the best of my knowledge and belief, LeBeau has maintained exclusive physical control over the Company's ETH at all relevant times.  This ETH represented, and still represents, the vast majority of SingularDTV's liquid assets.

9.      To the best of my knowledge and belief, there has never been any dispute that the ETH is Company property.  Indeed, the Company always accounted for the ETH as Company property, as reflected in a valuation of the ETH completed for the Company's 2018 financial statements (the "2018 Crypto Assets Valuation").  <u>A true and correct copy of the 2018 Crypto Assets Valuation is attached as Exhibit 2</u>.  In that document, which LeBeau signed, the "members of the board confirm that . . . the company is the beneficial owner and can dispose of the assets."

10.     Since the inception of SingularDTV and the launch of SNGLS, the relationship between LeBeau and the other two founders has soured. This fracture was caused primarily by Mr. LeBeau's and Ms. Jackson's attempts to control the company through a separate New York business entity that they control—SingularDTV, LLC—which is wholly owned by Jackson and does business under the trade name Breaker LLC. Specifically, Mr. LeBeau himself initiated payments from SingularDTV to Breaker LLC, for which the rationale was not comprehensively documented, where he knowingly bypassed contractually agreed procedures for such payments, and/or which were not supported by board directions.

11.     In addition to controlling the ETH and other digital assets on the Cold Wallet, Breaker LLC controlled the company's mail accounts through a dedicated employee (usually, the

company's Chief Operating Officer). I only learned in May 2021, however, that LeBeau and Jackson had arranged for a third-party reseller that they chose and directed, DAG Tech, to provide Microsoft Exchange e-mail services to SingularDTV. I was unable to find any agreement confirming any relationship between DAG Tech and SingularDTV. From the Company's perspective, its e-mail services were being supplied to it directly by Microsoft for SingularDTV's benefit. SingularDTV operated for years with the understanding that the Company controlled its e-mail accounts and outsourced administration to Breaker LLC. SingularDTV employees conducted Company business through these e-mail accounts as a matter of course. Invoices were issued on Microsoft letterhead to SingularDTV as the "billed party." <u>A true and correct copy of an April 2021 invoice from Microsoft is attached as Exhibit 3</u>.

12.     However, because LeBeau and Jackson brokered the e-mail services through DAG Tech, Microsoft instructed SingularDTV that the issue would need to be resolved through DAG Tech. In addition, to the best of my knowledge and belief, DAG Tech is taking direction from LeBeau and Jackson.

13.     On July 13, 2021, an action captioned *SingularDTV GmbH v. John Doe*, No. 21-cv-6000 (S.D.N.Y) was filed in this District (the "SDNY Action"). Though purportedly filed on SingularDTV's behalf, SingularDTV and, to the best of my knowledge and belief, its actual directors and officers, had no knowledge of the filing of the SDNY Action for months. SingularDTV first became aware of this case fewer than two months ago.

14.     It is my understanding that Mr. LeBeau and/or Ms. Jackson apparently instructed the law firm Morrison Tenenbaum, PLLC ("Morrison Tenenbaum") to pursue the SDNY action on behalf of SingularDTV. SingularDTV's Board never authorized Morrison Tenenbaum to act on its behalf in the SDNY Action. In fact, on November 12, 2021, SingularDTV's Board

specifically resolved that (i) Morrison Tenenbaum does not and never did have authority to represent the Company, and (ii) to the extent that Morrison Tenenbaum was purportedly engaged to represent the Company, such purported engagement is null and void and terminated. SingularDTV has since filed a motion to intervene in the SDNY Action through its counsel of choice, Kobre & Kim LLP.

15.     In addition, at the time the SDNY Action was filed on July 13, 2021, Mr. LeBeau had already been terminated as Chief Executive Officer and as a signatory of the Company. This termination took place at a meeting of the Board of Directors on May 27, 2021, and was later reflected in the Swiss Commercial Registry on August 5, 2021. The minutes of the May 27 meeting were distributed to SingularDTV's shareholders and Directors, including LeBeau, on at least two separate occasions prior to the filing of the SDNY Action.

16.     Likewise, at a meeting of the Board of Directors on June 8, 2021, the Board resolved to approve the Company to terminate Jackson as COO of SingularDTV. A true and correct copy of the June 8, 2021 Board Minutes is attached as Exhibit 4. To comply with Swiss corporate formalities, Jackson's termination was again ratified at a Board meeting on August 27, 2021. In any event, as stated above, even while she was SingularDTV's COO, Jackson did not have signatory authority for the Company.

17.     On September 25, 2021, Morrison Tenenbaum filed another complaint on behalf of LeBeau, both in his personal capacity and as a purported derivative plaintiff for SingularDTV, in the New York Supreme Court (the "NY Supreme Court Complaint"). A true and correct copy of the NY Supreme Court Complaint is attached as Exhibit 5. Morrison Tenenbaum named SingularDTV as a nominal defendant in that action.

18.     Since learning of the SDNY Action, I have also learned that Mr. LeBeau initiated several other legal proceedings concerning SingularDTV, including one lawsuit filed in the name of the Company.  Specifically, on June 3, 2021, Mr. LeBeau, through his personal attorney in Switzerland, Paolo Losinger, filed a criminal complaint on behalf of SingularDTV against Arie Levy-Cohen before the Public Prosecutor's Office in Zug, Switzerland (the "Swiss Criminal Action"). As with Morrison Tenenbaum, SingularDTV never authorized Mr. Losinger to act in the Company's name, and when the Swiss Criminal Action was filed, Mr. LeBeau and Mr. Losinger had already been made aware of Mr. LeBeau's termination as Chief Executive Officer and as a signatory of the Company. On November 3, 2021, SingularDTV's actual Swiss counsel, Wenger Vieli AG, sent to a letter to the Public Prosecutor's Office in Zug, Switzerland informing them of this.

19.     I have also learned that LeBeau filed a "Request for Conciliation" (on behalf of himself as a SingularDTV shareholder) against the Company (as the named respondent) on September 24, 2021 before the Justice of the Peace Office in Zug, Switzerland requesting, among other things, that a court dissolve SingluarDTV and that its assets be liquidated (the "Swiss Shareholder Dispute"). Notably, in his September 24, 2021 filing in the Swiss Shareholder Dispute, LeBeau admits that the Cold Wallet is "Respondent's Wallet."

20.     After having been blocked from accessing my e-mail account on October 7, 2021, I contacted Gigi Dessources, Breaker's main contact for mail support at that time. In response, an attorney named Neil Postrygacz, sent me an e-mail on October 8, 2021 stating: "As I'm sure you are already aware [Breaker LLC] will no longer be providing [SingularDTV] with email services." A true and correct copy of Mr. Postrygacz's October 8, 2021 e-mail is attached as Exhibit 6.

21.     As of October 8, 2021, SingularDTV employees and contractors have been completely unable to access their Company e-mail accounts.

22.     In or about May 2021, a hacker—allegedly using a spoofed e-mail address and allegedly aided by unauthorized access to the Microsoft Outlook account of SingularDTV's then-general counsel, Carl Volz—impersonated SingularDTV's Chairman, Arie Levy-Cohen, for the purpose of stealing digital assets from the Company. Allegedly duped by this scheme, on May 6, 2021, Mr. LeBeau (then-Chief Executive Officer of SingularDTV) transferred 76.8 million SNGLS tokens and 11,520,000 SNGJ tokens to two digital wallet addresses provided by the hacker, without Board approval—and without even discussing the transfer with the other SingularDTV Directors, one of whom (Levy-Cohen) was the intended recipient of the funds. LeBeau also failed to apply standard security protocols (for example, running a test transaction and/or confirming the identity of the counterparty through a telephone call). At the time of the transfer, these digital assets were worth approximately US $2 million. The hacker has since transferred those tokens to Binance, an offshore cryptocurrency exchange, making it virtually impossible to recover the assets.

23.     SingularDTV has not ruled out the involvement of one or more Company insiders, including LeBeau, in this sequence of events (the "Hack"). The Company's investigation is ongoing, although LeBeau's and Jackson's interference with SingularDTV's e-mail accounts (especially the one belonging to Mr. Volz, the unauthorized access of which led to the Hack) is currently obstructing that investigation.

24.     In the aftermath of the Hack, SingularDTV's Chief Technology Officer and managing director, Joseph Lubin, wrote through an attorney to Mr. LeBeau to demand an explanation for Mr. LeBeau's unilateral and reckless transfer of such substantial Company assets

(the "May 8, 2021 Letter"). A true and correct copy of the May 8, 2021 Letter is attached as Exhibit 7. In the May 8, 2021 Letter, Mr. Lubin also insisted that Mr. LeBeau transfer SingularDTV's digital assets—including the remaining ETH and company SNGLS tokens—to a more secure storage method involving multi-signature protections (*i.e.*, digital asset wallets requiring the consent of multiple digital "signatories" to effectuate any transfer) or to a wallet custodied at the company's residential bank in Switzerland.  In fact, the digital assets were always intended to be held under multi-signature protections, as Lubin and Levy-Cohen had mentioned during previous board meetings. To the best of my knowledge and belief, Mr. LeBeau refused to explain his conduct during the Hack or the lack of multi-signature protections on the wallet currently holding the digital assets, nor any commitment to transfer the Company's assets to a custody arrangement protected by industry-standard multi-signature protocols.

25.     On June 15, 2021, Mr. LeBeau's personal attorney, Mr. Postrygacz, sent an email to Mr. Lubin (through an attorney) stating that he and LeBeau were "more than willing to transfer the ether to a custodial account while the corporate disputes get resolved." A true and correct copy of Mr. Postrygacz's June 15, 2021 e-mail is attached as Exhibit 8. LeBeau did not follow through on that offer.

26.     Attached as Exhibit 9 is a true and correct copy of the minutes from the February 9, 2018 Board meeting.

27.     Attached as Exhibit 10 is a true and correct copy of the minutes from the August 27, 2021 Board meeting.

28.     Attached as Exhibit 11 is a true and correct copy of the minutes from the September 24, 2021 Extraordinary Shareholders General Meeting.

29.    Attached as Exhibit 12 is a true and correct copy of the minutes from the February

27, 2019 General Assembly of the Shareholders.

\*\*\*

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on November 26, 2021,

in the City of Zug, Switzerland

PATRIK ALLENSPACH
Resident Signatory
SingularDTV GmbH
Poststrasse 30
6300 Zug, Switzerland
patrik.allenspach@palpro.ch
+41 79 460 70 40

9