UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

SINGULARDTV, GMBH,                          Case No. 1:21-cv-10130

                    Plaintiff,

        -against-

ZACHARY LEBEAU and KIMBERLY JACKSON,

                    Defendants.

------------------------------------------x

**DECLARATION OF NEIL L. POSTRYGACZ IN OPPOSITION RO PLAINTIFF'S
REQUEST FOR A TEMPORARY RESTRAINING ORDER**

I, Neil L . Postrygacz, pursuant to 28 U.S.C. § 1746 and Local Rule 6.1(d), hereby declare
under penalty of perjury that the following is true and correct to the best of my knowledge and
belief:

1. I am an attorney duly admitted to practice law in the State of New York. I am a member
   of the bar of the State of New York. I am the owner of Neil L. Postrygacz, Attorney at
   Law, P.C., located at 217 34th Street, Brooklyn, New York 11232. I am counsel for
   Defendants Zach LeBeau ("LeBeau") and Kimberly Jackson ("Jackson"), collectively
   the "Defendants."

2. I make this declaration in opposition of Plaintiff SingularDTV's ("Plaintiff") Motion
   for a Temporary Restraining Order. The statements in this Declaration are true to the
   best of my knowledge.

3. Plaintiffs are attempting to circumvent legal processes which have already been
   commenced in New York State Supreme Court, County of New York (Index No. ),
   brought by LeBeau individually as a shareholder of SingularDTV against Lubin and

Cohen as directors (the "Derivative Action") for the very purpose of determining who should rightfully be authorized to exercise control over SingularDTV GmbH (Switzerland) and its assets (as well as additional claims against Joseph Lubin ("Lubin") and Arie Levy Cohen ("Cohen") for their various breaches and fraud).

4.  Lubin, Cohen, along with Defendants Jackson and LeBeau, collectively founded SingularDTV GmbH along with its United States affiliate SingularDTV, LLC (together "SingularDTV" or the "Company") for the purpose raising capital through a initial coin offering (ICO).

5.  The Swiss / US affiliate entity model was established for the purpose of creating a legal separation between (a) content and software development work, conducted through the US Entity, and (b) the heavily regulated ICO planned under the laws of Switzerland through the Swiss Entity.

6.  In the intervening years, the cryptocurrency raised by SingularDTV through the ICO has appreciated dramatically. While Jackson and LeBeau continued to operate SingularDTV for the purpose of fulfilling the obligations of the ICO, Cohen and Lubin each used their positions in the Company to unapologetically enrich themselves and unrelated business interests. A detailed recitation of their actions is set forth in an action filed in Derivative Action and provided below. Neither Lubin nor Cohen has yet asserted an answer in Derivative Action (parties stipulated to additional time at Lubin and Cohen's request), though both have retained counsel.

7.  The instant Complaint and Order to Show Cause seeks to make an end run around the Derivative Action, which seeks damages and other relief, and the Swiss Action which seeks to dissolve and wind down the Company. It is up to the Supreme Court of the State of New York in the Derivative Action to determine which of these parties has the

requisite authority to act on the Company's behalf and whether Lubin and Cohen are liable for serious breaches of their fiduciary duties to the Company's shareholders.

8.   Since the formation of the Company in October 2016, LeBeau has served as the Company CEO; Jackson its COO. They have responsibly kept the Cold Wallet secure, sought to maintain financial accountability (at one point removing Cohen as the Chief Financial Officer as a result of his financial improprieties), and operated the day-to-day business of the Company. Lubin and Cohen only sought to remove Jackson and LeBeau from the Company and seize control over its assets purportedly in response to a hacking incident perpetrated on the Company's general counsel. A full and complete account of the hacking incident can be found in the related matter of SingularDTV GmbH v. John Doe, No. 21-cv-6000 (S.D.N.Y) currently before this Court.

9.   Rather than investigating the source of the hacking incident and theft, Lubin and Cohen used the incident as a pretext for seizing control of the Company. More than six months later, they have not taken any actions to investigate the hacking incident. Nor have they taken any action to recover the stolen cryptocurrency. For them, $2,000,000 is a small price to pay if they can gain control over the Company and its assets. For the Court to turn the Company's assets over to Lubin and Cohen when legitimate complaints relating to their conduct as directors is rightfully before Courts in other jurisdictions would be to put the fox in charge of the hen house. Over the past approximately five (5) years, each has shown patterns of utter disregard for their duties as directors, commingled with deliberate efforts to bleed SingularDTV dry for their own benefit. For Lubin and Cohen, the wildly appreciated cryptocurrency held in the Company 'Cold Wallet' is simply a highly liquid prize to be claimed.

10. As discussed above, the Derivative Action addresses the actions taken by Lubin and Cohen to seize control over the Company's operations and assets by eliminating its

original founders, LeBeau and Jackson. In fact, in the Derivative Action, LeBeau, individually and on behalf of the Company, requests a judgment declaring the meetings and resolutions relied on by Plaintiff herein void and permanently enjoining, restraining, and prohibiting Lubin and Cohen from holding any further meetings or passing any resolution. Further, Swiss counsel has filed the Company's objections to the various resolutions in Switzerland.

11. As directors of the Company, Joe Lubin and his old friend, Arie Cohen, agreed to 'look the other way' as they each figured out new and creative ways of using Company assets to fund their unrelated personal ventures.

12. Most egregious was Cohen's use of Company funds to make personal investments in various businesses that would later charge the Company for its services. Further, Cohen used the Company's money to loan over US$300,000 to another company he owned (Codex Execution) without the approval of the other board members.

13. Mr. Lubin was most concerned with the interests of his company ConsenSys despite being a Director of the Company. It was understood from the Company's inception that ConsenSys would develop the rights management software for the Company on fair and reasonable terms. Instead, ConsenSys attempted to keep the software and instead license the intellectual property to the Company. In furtherance of this scheme, directed by Lubin, agreements and invoices were not provided until years later and only after the repeated requests of Mr. LeBeau.  The Company ultimately ended up paying ConsenSys approximately $11,000,000, way above market prices at the time.

14. When Lubin did attend Company meetings he did so in his capacity as a representative of ConsenSys, and not the Company which he seeks to hijack from its original founders, LeBeau and Jackson. In fact, at one Company Board meeting, where

ConsenSys' fees and invoices were discussed, Lubin stated he was representing ConsenSys' interests and not the Company's.

15. The  Switzerland office of the Company was essentially closed, except for back-office employees, largely due to Cohen's misconduct which included the above financial improprieties, as well as the harassment of employees and open drug use in in the Company's office.

16. Notably, Cohen did not attend any Company meetings from October 2018 to May 27, 2021. Further, Cohen was replaced as the Company's CFO on April 27, 2018 because he could not be trusted with the Company's funds and was unable or unwilling to perform the duties that position required.

17. Mr. Cohen resigned as Director of the Company on February 12, 2019 and has no authority since that date. He has not been reelected to the board and has no authority to attend or vote on any of the resolutions at the meetings relied on by Plaintiff in its instant application.

18. Plaintiff's application is rife with misstatements and omissions. For example, in an attempt to minimize Ms. Jackson's involvement and authority within the Company, Plaintiff claims she was only an independent contractor engaged by the Company in late 2018.  This is simply not true. Jackson is repeatedly listed in the Company's meeting minutes as a "co-founder." Likewise, Cohen, in one online post, lists the names of the Company's founders, including Ms. Jackson.

19. Even worse, Plaintiff attempts to defame Mr. LeBeau by referring to him as a charged felon. Plaintiff further claims that LeBeau did not disclose information regarding his arrest to Lubin or Cohen. However, needless to say, Mr. LeBeau is not a convicted felon and informed both Lubin and Cohen about his situation in Iowa before the launch of the Company and its ICO.

20. In fact, Lubin defended Mr. LeBeau in writing on the bitcointalk.com forum **on September 16, 2016** when the Iowa situation[1] was brought up in public by prospective Company supporters about the matter. The following is the text from Lubin's posting:

> **Joseph Lubin:** "This is not news. It is history. Zach's [LeBeau] project was swept up in a broad cleansing of a fraud-filled situation. Zach was quickly cleared and not deemed a "person of interest" as proceedings unfolded. I have zero concern about Zach's artistic and fiduciary integrity. Very cool, however, for the Internet to do excellent due diligence in this respect. Looking forward to creating blockchain-based bounty systems for driving various kinds of DD" see https://bitcointalk.org/index.php?topic=1562292.280

21. The Company's operations were all relocated to New York, after Cohen was replaced as CFO, to be overseen by Jackson and LeBeau.

22. The original multisig wallet of the Company remains in place, which requires a key from Lubin and Cohen, as well as one from Mr. LeBeau to access. Mr. LeBeau does have a fail-safe master key to be used only if the other keys are lost or damaged (Cohen aware of this as he used this key with LeBeau).

23. There is no imminent harm or irreparable loss that would justify the issuance of a Temporary Restraining Order against Jackson and LeBeau. Tellingly, it is Lubin and Cohen who have interfered with the Company's day to da operation, including, without Court order, freezing approximately $10,000,000 in a Signature account this past summer making it completely unavailable to the Company.

---

[1] LeBeau wrote and directed his first feature film "The Scientist" in 2008 in Iowa. Unknown to him, the Executive Producer (Wendy Weiner Runge and one of the Producer's (Matthias Saunders) of the film falsified information about the film that defrauded the state of Iowa with regard to the issuance of film incentives to the project. Mr. LeBeau was not involved in this fraudulent behavior. When Mr. LeBeau was wrongly charged, he quickly exonerated himself from any wrongdoing and the state dismissed the charges with prejudice.

24. In fact, the alleged urgency cited to in Plaintiff's application was manufacture by its counsel. On the day before the Thanksgiving holiday, Plaintiff's counsel provided 24 hours' notice to respond to their letter. Mr. Tenenbaum requested until Monday to respond but was flatly rejected despite the holiday.

25. Further, injunctive relief is unavailable because any losses suffered by Plaintiff would be subject to monetary damages.

26. The Company is currently not operating and is in the process of dissolution in Switzerland.

27. Plaintiff admits that DAG Tech has been providing Microsoft Exchange e-mail services to the Company. Any agreement with DAG Tech for these services were with the US entity and not the GmbH. Tellingly, the email addresses in question are for "breaker.io," the d/b/a of SingularDTV LLC which as Plaintiff states, is wholly owned by Jackson. Plaintiff strategically and improperly names Jackson as a Defendant instead of the US entity, the contracting party with DAG, in order to effectuate a favorable settlement of the Derivative Action filed against Lubin and Cohen.

28. Neither LeBeau nor Jackson have been served with the Complaint or the order to show cause filed by Plaintiff.

29. Defendants also require time to confer with Swiss counsel because of the significant aspect of Swiss law in the various actions filed by the parties herein. However, some of the errors in Plaintiff's reliance on Swiss law herein is clear. For example, Mr. LeBeau did not require board approval to bring the *John Doe* action on 13 July 2021. The Company's Articles of Association as well as the Bylaws do not require board approval for litigation. Further, the costs involved with the action do not exceed the thresholds under para. 18 of the bylaws (generally expenditures of CHF 1 Mio +), which require board approval. Pursuant to para. 30 of the by-laws, the CEO (LeBeau)

shall be responsible for the management of the Company and each member of the Senior Management shall report to him.

30. Further, LeBeau was registered as a signatory in Switzerland until August 2 2021 and as managing director of the GmbH until October 15 2021 in the commercial registry, i.e. at the time Morrison Tenenbaum was retained to bring the John Doe action.

31. Finally, if a temporary restraining order is issued, Defendants would respectfully request Plaintiff post a bond of no less than $5,000,000.

32. I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Dated: December 1, 2021
New York, New York

/s/ Neil L. Postrygacz
Neil L. Postrygacz