SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

ZACH LeBEAU, both individually and
derivatively on behalf of SINGULARDTV GmbH,

    Index No.:

                        Plaintiff,

**VERIFIED COMPLAINT**

v.

JOSEPH LUBIN, ARIE LEVY COHEN,
CONSENSYS AG, CONSENSYS INC.,

Plaintiff designates New York
County as the place of trial pursuant
to CPLR Sections 301 and 302.

                        Defendants

        and

SINGULARDTV GmbH,

                      Nominal Defendant

-------------------------------------------------------------------X

## I.      INTRODUCTION

Plaintiff Zach LeBeau through undersigned counsel, sets forth this Verified Complaint against Defendants Joseph Lubin and Arie Levy-Cohen (the "Director Defendants") and ConsenSys AG and ConsenSys Inc. (together with the Director Defendants, the "Defendants"), and Nominal Defendant SingularDTV GmbH (the "Swiss Entity" or the "Company") for breach of their respective fiduciary duties as directors and/or officers of SingularDTV, breach of the Company Bylaws, breach of Swiss General Obligation, unjust enrichment and fraudulent inducement.

## II.      NATURE OF THE ACTION

This lawsuit concerns the rights of a pair of corrupt Managing Directors to participate in the corporate governance of a company, and to seize control over operations by eliminating its original founders. Over the course of more than five years, Mr. Joseph Lubin ("Joe Lubin") and Mr. Arie Cohen ("Arie Cohen"), both Managing Directors of Nominal Defendant, have engaged

1

in a pattern of conduct intended to enrich themselves at the expense of the other owners and stakeholders through economic duress, unapproved self-interested transactions, and an overall abdication of their contractual and statutory duties. As directors of the company, Joe Lubin and his old friend, Arie Cohen, agreed to 'look the other way' as they each figured out new and creative ways of using Company assets to fund their unrelated personal ventures.

ConsenSys, a blockchain software development company owned by Joe Lubin, was set up purportedly to 'incubate' innovative blockchain ventures; instead ConsenSys preys on those very innovators, such as Plaintiff, taking ownership over their technologies while charging exorbitant, non-market rates for services that it outsources to Eastern Europe, all for the purpose of enriching himself directly, and also indirectly through initial coin offerings (ICOs) on the Ethereum platform (Joe Lubin always takes a cut). This mechanism keeps the Ethereum platform well seeded with new technologies, which also indirectly benefits Joe Lubin, one of its founders. Joe Lubin has feasted off Plaintiff for years, generating more than $10,000,000 for ConsenSys and a personal cache of cryptocurrency for himself.

From the company's inception, Joe Lubin and Arie Cohen have put their own interests before those of its stakeholders in clear breach of their fiduciary obligations under US and Swiss law. They now seek to formalize their unwritten pact by seizing control over the Company from its original founders – Zach LeBeau and Kim Jackson.

## II.   PARTIES

### A. Plaintiff

1.     Plaintiff Zach LeBeau ("LeBeau") resides in New York City and is a current shareholder of the Swiss Entity. Plaintiff has continuously held Swiss Entity shares at all relevant times, from its inception. LeBeau, along with Kim Jackson ("Jackson") served as officers and

directors the business enterprise known as SingularDTV.

**B.  Nominal Defendant**

2.        Nominal Defendant SingularDTV is a GmbH (Gesellschaft mit beschränkter Haftung or private limited company) (the "Swiss Entity" or the "Company") organized and existing under the laws of Switzerland for the purpose of "development, marketing, distribution and licensing of software… and development, marketing, distribution and licensing of high-quality original film and television content."

3.        The Swiss Entity was formed on October 28, 2016. Joseph Michael Lubin, Zachary James LeBeau and Arie Yehuda Levy Cohen were designated as the founders and appointed as managing directors. The formation documents listed Joe Lubin, LeBeau and Arie Cohen as having the following shareholdings:[1]

| Name | Shares | Pct. Interest |
|------|--------|---------------|
| Joseph Lubin | 86 | 43% |
| Zachary LeBeau | 86 | 43% |
| Arie Levy Cohen | 28 | 14% |
|  | 200 | 100% |

4.        The Board of Managing Directors of the Swiss Entity (the "Board of Directors" or the "Board") consists of LeBeau, Joe Lubin and Arie Cohen.[2]

5.        In addition to the Swiss Entity, Joe Lubin, Arie Cohen, LeBeau and Jackson (together, the "Founders") established a US affiliate in New York, SingularDTV, LLC (the "US Entity" and together with the Swiss Entity "SingularDTV").

---

[1] LeBeau, Jackson, Arie Cohen and Joe Lubin all reside in New York, New York or New Jersey. Jackson, who also resides in New York, New York, owns 100% of the equity of SingularDTV, LLC (Delaware) and until recently served as the Chief Operating Officer for SignularDTV GmbH.

[2] The composition of the Board at the time of filing is in dispute.

3

6.      Jackson is the sole member of the US Entity in addition to serving as the Chief Operating Officer of the Swiss Entity.

**B.  The Defendants**

7.      Defendant Arie Cohen is an individual who, upon information and belief, resides in Scotch Plains, New Jersey. On information and belief, Arie Cohen started his career as an international entrepreneur based out of Barbados. He claims to have participated in the emergence of the Internet by overseeing private placement investments and guiding capital raising efforts tied to emerging technologies. He has also been a Swiss private banker and serves as an owner or officer of multiple business around the world, including SingularDTV.[3]

8.      Defendant Joe Lubin is an individual who, upon information and belief, resides in Brooklyn, New York. On information and belief Joe Lubin is the co-founder of Ethereum whose Ether cryptocurrency is the second-largest by global market capitalization.

9.      ConsenSys AG is a blockchain technology company headquartered in Switzerland with offices in over 11 countries around the world.

10.     ConsenSys Inc. is a corporation organized under the laws of Delaware and headquartered at 48 Bogart Street Suite 22, Brooklyn, NY 11206. ConsenSys Inc. and its affiliated companies market and offer software development services as well as blockchain software products and features including without limitation the "Infura", "Quorum", "PegaSys", "MetaMask", and "Codefi" products suites.[4]

11.     Defendant Joe Lubin, on information and belief, is the beneficial owner of

---

[3] See Arie Levy Cohen personal profile on Crunchbase.com, a website that provides information about private and public companies. (https://www.crunchbase.com/person/arie-levy-cohen).

[4] For purposes of this Complaint, ConsenSys, Inc. and ConsenSys AG shall be referred to collectively as "ConsenSys".

Case 1:21-cv-10130-VEC    Document 37-1    Filed 12/07/21    Page 5 of 35

ConsenSys and retains oversight over the day-to-day operations of ConsenSys.

## III.   JURISDICTION AND VENUE

12.    This Court has jurisdiction pursuant to CPLR § 301.

13.    Venue is proper pursuant to CPLR § 503.

## IV.   FACTUAL ALLEGATIONS

### A.  Introduction

14.    SINGULAR DTV GmbH was first conceptualized in 2014 by LeBeau and Jackson as a blockchain-based platform for enabling content creators to track and monetize their intellectual property rights; the platform would also be used to fund and create television and film assets related to blockchain and cryptocurrency.[5]

---

[5] SingularDTV GmbH in its initial coin offering (ICO) committed to delivering on the following four promises:

- the Singular Television Series (Season 1 of "Singular", which will be a three-episode mini-series that presents the Singular Multiverse to the world and launches the franchise);
- the S-DTV Documentary Division (established with the production and distribution of one feature length documentary about the rise of Ethereum and blockchain technology, and an eight-episode short form documentary series);
- the S-DTV rights/revenue/royalty management platform, which is a series of smart contract modules;
- the S-DTV Transaction Video On-Demand brand/portal.

SingularDTV SNGLS Creation Specifications, p. 3, online at https://cryptorating.eu/whitepapers/SingularDTV/singulardtv.pdf [CITATION]; see also *See Articles of Association of SingularDTV LLC (SingularDTV GmbH)(SingularDTV Sarl)*, Art. 2:

The main object of the Company is the Development, marketing, distribution and licensing of software, especially the creation of a blockchain and Ethereum based production and distribution platform, and development, marketing, distribution and licensing of high quality original film and television content. The corporation may also engage and carry out any commercial, financial or other activities which are related to the purpose of the corporation.

The Company is near completion of item 3, a software platform called Breaker SaaS which it describes as an "[i]nnovative, intuitive and user-friendly end-to-end royalty management platform for independent creators and distributors. Breaker uses blockchain and cloud-based technology to enable creators to maximize their revenue by automating revenue collection, backend accounting and royalty payments, while ensuring transparent reporting." https://tools.breaker.io/ [CITATION]

5

15.     Joe Lubin and Arie Cohen joined the Company early on as subject matter experts and were granted shares in exchange for services that were promised but never rendered.

16.     Instead, Joe Lubin and Arie Cohen used their positions as directors and officers of the Company to reap substantial personal benefit from the appreciation of cryptocurrency raised in the Company's initial coin offering (ICO), in the case of Arie Cohen, by siphoning capital into luxury items and personal projects for his own benefit; and in the case of Joe Lubin, by holding the SingularDTV software code-base hostage in exchange for more than ten million dollars that he used to finance ConsenSys, his wholly owned blockchain software development business, and on information and belief, a blockchain product suite that misappropriated intellectual property which ConsenSys was engaged by SingularDTV to develop.[6]

17.     Joe Lubin refers to ConsenSys as a "hub and spoke" business model, and the blockchain companies under the ConsenSys umbrella were the spokes; Joe Lubin considered SingularDTV one of those spokes.

18.     By acting in their own interests over the best interest of the Company, Joe Lubin and Arie Cohen breached their contractual obligations and defaulted on their statutory obligations under the laws of Switzerland and New York; further, they disregarded the Company's commitments to buyers in its initial coin offering in breach of Swiss law and failed to provide the services they pledged to provide in exchange for equity grants totaling 57% of the issued and outstanding shares.

19.     They now seek to freeze-out his co-founders in order to validate years of self-serving activities that have cost the company millions of dollars in assets and opportunities.

20.     This attempted coup would also have the effect of leaving the Breaker SaaS

---

[6] *See Privacy Policy*, CONSENSYS, (last updated November 12, 2020) https://consensys.net/privacy-policy/.

software and entertainment assets uncommercialized in breach of its Initial Coin Offering promises and the Company's stated purpose (see FN1).

21.     Upon information and belief, Joe Lubin always intended for ConsenSys to own and exploit the software assets it developed for and on behalf of the Company.

22.     Joe Lubin and Arie Cohen are bad actors with a proven track record of self-dealing and misappropriation; their efforts to wrest control of the Company from the original founders is the culmination of a well-orchestrated scheme to exploit the business for personal gain.

23.     Further, the activities of Arie Cohen are currently the subject of a criminal investigation in Switzerland and a separate action in the Southern District of New York.[7]

**B.  Corporate Structure and Governance of SingularDTV**

24.     SingularDTV GmbH is subject to the rules of Switzerland governing GmbH business entities.

25.     The Founders, through legal counsel in Switzerland, filed a Notorial Deed and Articles of Association (the "Articles of Association") and adopted Organisational By-Laws and Board Regulation (the "By-Laws"). The Articles of Association and the By-Laws are the Company's sole governance documents.

26.     The Commercial Register of Switzerland maintains an online database of registered companies, which is available to the public at https://zg.chregister.ch (the "Public Registry").

27.     The Company's shareholders and directors were correctly listed on the Public

---

[7] *See SingularDTV GmbH v. Doe* Civil Action No.: 1:21-cv-6000-VEC (SDNY) (alleging, inter alia, that in the course of effectuating the exit of Arie Cohen from the Company, the Company's email system was the victim of a hacking incident in which a party claiming to be Arie Cohen received approximately $2,000,000 (est.) worth of crypto currency). It is unknown at this time whether Arie Cohen executed the redemption agreement and resignation paperwork or received the $2,000,000 (est.) worth of crypto currency. Subpoenas have been served on Google, LLC. and Binance Holdings LTD to identify whether the interloper was a third party or Arie Cohen, himself or through a third party.

Registry at the time the Swiss Entity was formed.

28.     On November 7, 2016, the Founders established a Limited Liability Company in New York (the "US Entity") which handled the business operations of SingularDTV, developing software and producing entertainment assets in accordance with the Company Purpose.

29.     The Company, in its early years, held regular meetings of the Board of Directors, as required by Swiss law, which were attended by all of the Founders. A secretary was appointed to keep minutes for each meeting.

30.     Meetings were held on February 9, 2018 (CH), June 9, 2018 (CH), July 11, 2018 (NY), August 17, 2018 (CH), September 11, 2018 (NY), December 12, 2018 (NY) and May 2, 2019 (NY) either in New York, NY or Zug, Switzerland, as indicated.[8]

31.     Jackson was invited to attend, and did attend, each meeting of the Board of Directors of the Swiss Entity despite not being listed on the Public Registry as a Director.

32.     All business of SingularDTV, including the business of the Swiss Entity and the US Entity, was discussed at meetings of the Swiss Entity Board of Directors as if they were one entity.

33.     The Swiss / US affiliate entity model was established for the purpose of creating a legal separation between (a) content and software development work, conducted through the US Entity, and (b) the heavily regulated ICO planned under the laws of Switzerland through the Swiss Entity.[9]

---

[8] CH indicates that the meeting was held in Switzerland and NY indicates that the meeting was held in New York.

[9] According to the Minutes of the 5th Board of Directors Meeting of Singular DTV ("Carl: liability and tax considerations spoke strongly for a separation. Also privacy restrictions are stronger in Switzerland and Europe…. Arie: the reason for the separation between the LLC and the GmbH (and no respective ownership in each other entity) in my view has to do with liability. Because the LLC is active and has presence in the US, but the launch was done in Switzerland, it was decided to have this separation… "Simon…. Now, it is clear that this set up does not reflect all that is intended and what should be implemented. Also, most of the GmbH information can be shared if Kim is legally

8

34.     This structure was not intended to give advantage or to disadvantage Jackson or to restrict her participation.[10]

35.     From the inception of the Company, all development activities related to the ICO were conducted exclusively through the US Entity owned by Jackson with the assistance of LeBeau, while the Swiss Entity, owned by LeBeau, Arie Cohen and Joe Lubin, has served as a holding company and the cryptocurrency issuing entity.

36.     Meeting minutes from the early years of the Company, when corporate formalities were more carefully observed, demonstrate that decision-making was always a collaborative process, with Jackson and LeBeau, as founders of SingularDTV, handling all day to day-to-day operations on a full-time basis.

37.     Initially, Joe Lubin and Arie Cohen fulfilled their duties as Directors; but they both soon lost interest in Company operations.

38.     Arie Cohen did not attend any meetings of the Directors between on an about October 2018 and May 27, 2021

---

connected in some role to the GmbH….” In 2016, when the SNGLS tokens were launched, the regulatory landscape for cryptocurrency offerings was very unsettled – even less so than today. Switzerland particularly had not established a regulatory regime for cryptocurrency offerings, which increased the risk of an enforcement action by the Financial Market Supervisory Authority (FINMA), Switzerland’s equivalent of the Securities and Exchange Commission. *See* https://www.globallegalinsights.com/practice-areas/blockchain-laws-and-regulations/switzerland

[10] Jackson is repeatedly listed in the Meeting Minutes as a “co-founder”. *See also* reddit.com post by Arie Levy Cohen (August 23, 2016), screen capture attached hereto as Exhibit B (listing the founders of SingularDTV as, “Zach LeBeau: SingularDTV’s CEO, Joe Lubin of ConsenSys (CTO), Kim Jackson of Evotion Media (CCO) and Arie Levy-Cohen (CFO) -- executing the CODE to implement the most disruptive Decentralized Media Company and Rights Management Platform on the street today!”). According to Meeting Minutes, whether Jackson should be made a Director of the Swiss Entity, and if doing so would cause legal and/or compliance issues, is a regular topic of discussion. Though it was unanimously agreed by the Managing Directors that “All four founders can elevate their core activity without being hindered by the other three” (quoting Arie Cohen, 2nd Board Meeting), and that there is no reason why “[Jackson] cannot have access to all the information even now” (quoting Joe Rubin, 5th Board of Directors Meeting, December 12, 2018). The Board of Managers went as far as to conduct a vote on whether to admit Jackson as a director of the Swiss Entity, but that unanimous action was never reduced to an amendment to the official governance documents. *See* 2nd Board Meeting (February 9, 2018), Item 3 Special Events (“The CEO makes the motion to include Kim Jackson (one of the founders of SingularDTV) in the Board of Directors. The Board approves the decision by show of hands.”)

39.     When Joe Lubin did attend meetings of the Directors, he did so in his capacity as the representative of ConsenSys.

40.     Arie Cohen and Joe Lubin now seek to remove LeBeau from as the CEO and Director in order to gain control over the remaining cryptocurrency assets of the business.

### C.  Early History of Singular

41.     LeBeau and Jackson first conceived of their idea for creating a digital rights management platform based on blockchain technology in 2014. On or about September 2014, LeBeau and Jackson first met with Joe Lubin, a luminary in blockchain technology, to discuss his investment in a television series and their idea for the business that would ultimately become SingularDTV.

42.     The concept, as proposed to Joe Lubin, was to develop blockchain based software for encoding the rights of content creators, thereby ensuring that license fees and royalties could be collected, tracked and timely paid. Currently, accounting and reconciliation of royalties in the entertainment industry is highly inefficient and unreliable, with rights holders having little transparency into revenues generated from the distribution of a work or the amounts they should receive in royalties.[11]

43.     At that time, Joe Lubin was already well known as an early adopter of bitcoin and one of the founders of the Ether (ETH) cryptocurrency launched in the fall of 2015, now known as Ethereum.

44.     LeBeau and Jackson met Joe Lubin on numerous occasions beginning in September of 2014 and convinced him to join their nascent content production business with a meager

---

[11] See, Brooks, M., Meredith, L. Business rights management: A primer. *J Digit Asset Manag* **6,** 196–209 (2010). https://doi.org/10.1057/dam.2010.21

Case 1:21-cv-10130-VEC   Document 37-1   Filed 12/07/21   Page 11 of 35

investment along with a verbal commitment to serve as the Chief Technology Officer of a to be formed blockchain software company which would be developed through ConsenSys, Joe Lubin's software development company.[12]

45.    Ultimately, between approximately January 2015 and July 2015 Joe Lubin invested approximately $50,000 in Evotion Media, LLC to co-produce a television series with LeBeau and Jackson.

46.    On or around August 2015, Joe Lubin endorsed Arie Cohen to Zach LeBeau and Kim Jackson, who he had known for years prior, to be part of the venture. At the time, Arie Cohen was working for Morgan Stanley as a wealth manager. Arie Cohen held himself out as an international financier, blockchain expert, and capable financial manager.[13]

47.    In April of 2016, Joe Lubin, Arie Cohen, LeBeau and Jackson founded SingularDTV to bring to market the concepts envisioned by LeBeau and Jackson.

48.    The parties agreed to divide responsibilities along the lines of their respective areas of expertise: Joe Lubin agreed to serve as the Company's CTO, Arie Cohen would serve as the Chief Financial Officer and LeBeau / Jackson would control the day-to-day operations of the

---

[12] According to the consensys.net website, "ConsenSys is the leading Ethereum software company. We enable developers, enterprises, and people worldwide to build next-generation applications, launch modern financial infrastructure, and access the decentralized web. Our product suite, composed of Infura, Quorum, Truffle, Codefi, MetaMask, and Diligence, serves millions of users, supports billions of blockchain-based queries for our clients, and has handled billions of dollars in digital assets. Ethereum is the largest programmable blockchain in the world, leading in business adoption, developer community, and DeFi activity. On this trusted, open source foundation, we are building the digital economy of tomorrow." In October of 2015, the website described its services slightly differently: "The ConsenSys "hub" spawns, coordinates, incubates and accelerates "spoke" ventures through development, resource sharing, acquisitions, investments and the formation of joint ventures. These spokes benefit from foundational components built by ConsenSys that enable new services and business models to be built on the blockchain." *See* screen capture of consensys.net dated October 17. 2015.

[13] In an email dated June 27, 2019 Arie Cohen claimed that he held a Master's Degree in Taxation and Finance from New York University. When asked to provide a diploma or other evidence of receipt of such a prestigious advanced degree, he demurred, without ever providing the requested documentation. Upon information and belief, Arie Cohen did not receive a degree from New York University.

11

business, create the film/television assets according to the Company's stated purpose, and communicate the Company's vision to the general and investing public.

49.    Joe Lubin did not invest any capital in the Company or provide any of the promised services as CTO. All CTO services were provided through ConsenSys, principally by its contractors in Eastern Europe.

50.    Arie Cohen did not invest any capital in the Company. Arie Cohen served as the Company's CFO up until April 27, 2018 when he was replaced by the Company.

51.    Arie Cohen and Joe Lubin were granted 57% of the Company, yet provided no consideration whatsoever for their equity interests.

52.    It was clear from the start that the relationship between ConsenSys and SingularDTV was fraught with potential conflicts of interest for Joe Lubin personally.[14]

53.    Notwithstanding the inherent conflicts, Joe Lubin accepted his shares in the new venture and agreed to develop the software through ConsenSys, though dodged the Company's efforts to negotiate terms or enter into a services agreement.

54.    In clear contravention of the Company's By-Laws, which expressly prohibit conflicts of interest for personal financial gain, Lubin instructed ConsenSys to withhold the source code until the Company agreed to pay an exorbitant fee.

55.    Specifically, the By-Laws, Section X, Conflicts of Interest, provides:

A conflict of interest may arise when a Body, shareholder of the Company,

---

[14] In an email dated October 14, 2014, Joe Lubin opined that "…there might be a conflict of interest at some point if we are doing business together as separate entities. But if it is just advisory it should be fine and you will have to make sure I don't weigh in too much on issues in which there might be some benefit to me or my companies." In 2018, at the 5th Board of Director's Meeting of the Swiss Entity, Joe stated, "currently I am mainly representing Consensys' interest." It is unclear why he would attend a meeting of the Board of Directors of the Swiss Entity in any capacity other than that of a director of that company. In response to express conflict of interest, Joe Lubin should have been recused. It is also notable that at the same meeting of Board of Directors, counsel for ConsenSys was present, though it is unclear in what capacity. Meeting Minutes, 5th Board of Directors Meeting (December 12, 2018).

Employee, Business Partner or a Party takes actions or has interests that may make it difficult to perform his duties and responsibilities for the Company. All such conflicts shall be avoided.

Particular areas of conflict of interest that are of concern include:

**Personal financial gain:** Every Party shall avoid any situation that may involve, or appear to involve, a conflict between their personal interests and the interests of the Company. In dealing with current or potential Business Partners, he/she shall act in the best interests of the Company. He/she shall not seek to gain personal advantage because of his/her position. He/she shall make prompt and full disclosure to his supervisor or the Board of any situation that may involve a conflict of interest.

### D. The SNGLS Initial Coin Offering

56.     Among the first actions undertaken by the newly formed Company was to issue cryptocurrency called SNGLS through an initial coin offering (the "ICO"). The ICO raised approximately $7,500,000 in Ethereum, amongst the most widely traded cryptocurrencies in the world. As of the date of this lawsuit, the Ethereum owned by the Company has a market value of more than Thirty Million Dollars (US$30,000,000).

57.     These funds have been used to pay employees, develop software through ConsenSys (at grossly inflated rates) and produce entertainment assets, including feature films that have premiered at film festivals worldwide and have won many prestigious awards.

### E. Self-Dealing by the Arie Cohen and Joe Lubin

#### (1) Arie Cohen

58.     In or around early 2018 Arie Cohen relocated from New York to Zug, Switzerland to serve as the Company's Chief Financial Officer (CFO).

59.     In his first year as CFO, Arie Cohen hired 13 employees, without a mandate to do so or authorization from the Board, to work on personal projects that were not related to the

business of the Company. He also spent lavishly, using Company funds to purchase stereo equipment and other personal items totaling more than US $250,000.

60.     Most egregious was Arie Cohen's use of Company funds to make personal investments in various businesses. In one example, Arie Cohen, while serving as SingularDTV's CFO, founded a business called Codex Execution GmbH in Zug, Switzerland ("Codex Execution"). Codex Execution was conveniently established to provide corporate accounting services for expatriate businesses in Switzerland.

61.     Codex Execution promptly signed up SingularDTV as its first client. The contract between Codex and SingularDTV GmbH bears the signature of Arie Cohen on behalf of the businesses. The term of the contract was for an indefinite period and was not terminable by SingularDTV, and required SingularDTV to pay Codex a flat monthly fee of approximately $US 12,500.

62.     Arie Cohen neither sought nor received the approval of the Board of Directors of the Swiss Entity in clear contravention of the By-Laws, which expressly prohibit conflicts of interest for personal financial gain.[15] This contract stood to benefit Cohen's self-interest over the best interest of SingularDTV and its shareholders.

63.     Despite having hired more than a dozen employees in Switzerland -- and having

---

[15] According to Section VII(1)(b) all contractual arrangements with the Swiss Entity must be done at arms' length. "This principle is generally applicable to transactions and contractual relationships with affiliated parties of the Company and its shareholders as well as with Business Partners In- and outside of Switzerland." Section X of the By-Laws establishes a definition for Conflicts of Interest: "A conflict of interest may arise when a Body, shareholder or the Company, Employee, Business Partner or a Party takes actions or has interests that may make it difficult to perform his duties and responsibilities for the Company. All such conflicts shall be avoided. Particular areas of conflict of interest that are of concern include (a) **Personal financial gain**: Every Party shall avoid any situation that may involve, or appear to involve, a conflict between their personal interests and the interests of the Company. In dealing with current or potential Business Partners, he/she shall act in the best interests of the Company. He/she shall not seek to gain personal advantage because of his/her position. He/she shall make prompt and full disclosure to his supervisor or the Board of any situation that may involve a conflict of interest." By Laws Pars. 54-55. Arie Cohen also use company funds to make a personal investment in a Canadian business known as Arbit.

executed a contract with Codex Execution to provide accounting service on the Company's behalf -- Arie Cohen, the CFO, was not able to deliver monthly profit and loss statements or other financial reporting.

64. Arie Cohen also loaned money to Codex Execution (approximately US$ 360,000, again without the approval of the Board of Directors of the Swiss Entity in clear contravention of the By-Laws

65. The Switzerland office of SingularDTV was finally decommissioned in 2018, amid allegations of misconduct by Arie Cohen that included harassment of employees, gross misuse of company funds, and open drug use in the office.

66. Arie Cohen resigned as CFO and as Director of the Company on February 12, 2019.

67. Meanwhile, all of SingularDTV's operations were relocated to New York, New York to be overseen by Jackson and LeBeau, who spent more than a year untangling the web of mismanagement and misappropriation spun by Arie Cohen.

### (2) Joe Lubin

68. Similarly, Joe Lubin's self-dealing stems from his simultaneous ownership of shares of SingularDTV and his ownership and control of ConsenSys.

69. It was understood from the Company's inception that ConsenSys would develop the rights management software envisioned by the Company on fair and reasonable terms.

70. However instead of performing the services through ConsenSys, Joe Lubin, outsourced development services to a third party in Romania and, on information and belief, conspired with the Romanian developers to charge excessive development fees.[16]

---

[16] Martin Trepp, an independent consultant engaged to provide controller and other financial management services for the Company following the resignation/termination of Arie Cohen, determined that the fees demanded by ConsenSys were grossly outside market norms.

15

71.     Neither the Romanian developer nor ConsenSys was willing to provide a contract for services or invoices to support charges totaling more than eleven million dollars (US$11,000,000).

72.     Joe Lubin also directed ConsenSys to withhold delivery of the SingularDTV software code unless the Company agreed to pay the exorbitant, unsupported and unjustified invoice amounts.

73.     On information and belief, SingularDTV paid more for software development services than any other ConsenSys customer in 2018. In fact, SingularDTV may have been ConsenSys' only paying customer that year.

74.     In 2018 as the Company was preparing to bring its software platform to market, ConsenSys finally provided a form of development agreement. However, the proposed contract terms gave the Company a revocable license in the software. Ownership would be retained by ConsenSys, and not conveyed to the customer, here SingularDTV.

75.     When SingularDTV refused to agree to such terms, ConsenSys, demanded a fee of almost US$ 2,0000,000 in exchange for conveying and assigning all right, title and interest in the code base to its client, again without proving any detailed invoices or other documentation.

76.     Ultimately, the Company, having no choice but to pay the extortionate fee, agreed on a payment plan in exchange for release of the code base. The Company paid over US$ 11,000,000 for the development of, and rights to the software from Joe Lubin's company.

77.     On information and belief, it was the intention of Joe Lubin to put Singular out of business by withholding the software or, in the alternative, coercing an unconscionable fee for the software's release.

78.     On information and belief, Joe Lubin personally authorized ConsenSys and its

Romanian subcontractor to charge amounts that he knew could not be justified, supported or defended.

79.    Joe Lubin breached his fiduciary duty to the Company by misusing proprietary information of Singular DTV (for example, the impending product launch and the appreciated value of its cryptocurrency holdings) to coerce the Company into paying an unjustified sum under the guise of software development fees.

80.    Joe Lubin also breached the By-Laws and by engaging in transactions that stood to benefit himself and his external holdings at the expense of the Company.

## F. Arie Cohen Offers to Withdraw from the Company

81.    On February 12, 2019, facing allegations of misappropriation of Company Assets, Arie Cohen sent a letter to the Company announcing his resignation as Director. *See* Cohen Resignation Letter.

82.    In email exchanges with LeBeau over the following year, Arie Cohen entered into negotiations with the Company for the redemption and surrender of his ownership interest in SingularDTV in exchange for the release of all claims and causes of action against him.

83.    During this period, Arie Cohen did not participate in any activities related to SingularDTV. While he remained a shareholder (he had already resigned as a Director), he withdrew from all management and supervisory roles, including attempting to delegate any remaining voting rights to Joe Lubin in contravention of Swiss Law.

84.    Finally, on or about February 17, 2020, Joe Lubin and LeBeau proposed, on behalf of the Company, a formal settlement to Arie Cohen (the "Proposed Settlement") whereby Arie Cohen would relinquish all of his shares in SingularDTV and formally resign from all positions with respect to the Company. In exchange, he would receive a lump sum payment and other rights.

85.     Arie Cohen initially ignored the offer, which was rescinded by the Company on or about February 28, 2020. Then, in early 2021, negotiations restarted in earnest.

86.     Over the course of the next two months, the Company fell victim to a hacking scheme perpetrated by a party whose identity has yet to be discovered.[17]

87.     The hacker was able to gain access to the computer of the Company's general counsel and change an email rule having the effect of hiding emails sent by Arie Cohen. The hacker then created a near-identical email account and used that email account to negotiate the final terms of the Proposed Settlement and effect execution of the redemption documents.

88.     After forwarding the Company's General Counsel a signed Settlement Agreement and Resignation Letter, the Company released the agreed upon payment to the cryptocurrency wallets designated by the hacker posing as Arie Cohen.

89.     The scheme was revealed days later, but the hacker had already transferred the payment through a third-party cryptocurrency trading platform, rendering it untraceable.

90.     In response to this incident, Arie Cohen and Joe Lubin terminated LeBeau as the CEO, terminated the General Counsel, and began making moves intended to remove LeBeau and Jackson from all roles with the Company they founded.

91.     On May 27, 2021, Joe Lubin and Arie Cohen held a meeting of the Directors, without proper notice to LeBeau, to remove him as Director and as a signatory of the Company. They also resolved to terminate any relationship between the Swiss and US Entities, thereby

---

[17] SingularDTV has commenced an action in the Southern District of New York against the yet unidentified 'John Doe' to recover approximately $2,000,000 in stolen funds and damages under the Computer Fraud and Abuse Act and various state law claims. On August 16, 2021 the Court granted Singular DTV's motion for expedited discovery, and SingularDTV has since issued Subpoenas to uncover the identity of wrongdoer. *SingularDTV GmbH v. John Doe* SDNY (Case No. 1:21-cv-06000-VEC).

severing Jackson's oversight and control over the business of the Company.[18]

92.    Lubin and Cohen held additional meetings on June 8, 2021, and August 27, 2021,

without required notice to Plaintiff.

93.    LeBeau received proper notice and attended the August 27, 2021 meeting at which

he raised objections to the prior meetings. Notwithstanding his valid objections, Joe Lubin and

Arie Cohen self-servingly approved meeting minutes and corporate actions taken at improperly

convened meetings.

94.    While they have aggressively sought to remove LeBeau and Jackson through

misuse of corporate formalities, Joe Lubin and Arie Cohen have not taken any actions whatsoever

to uncover the source of the unauthorized access or the theft of $2,000,000 (est.) in company assets.

95.    This failure by Arie Cohen and Joe Lubin to address a significant intrusion and theft

amounts to a material breach of their fiduciary duties to the shareholders and suggests that they

may have authorized the hack to construct a pretext for eliminating LeBeau and Jackson.[19]

96.    Such action would amount to a clear theft and misappropriation of Company

property.

## V.    CONCLUSION

90.    As communication between what became two distinct factions disintegrated

completely, Arie Cohen and Joe Lubin made their play for control by seeking to oust LeBeau and

Jackson from the business they founded, most recently, through a series of corporate actions

---

[18] While the US Entity and the Swiss Entity are separate and distinct companies, they were operated as a single business. Notably, the US Entity paid approximately $5,000,000 to ConsenSys for software development services on behalf of the Swiss Entity. Further, the Swiss Entity to this day maintains an address at the US Entity office.

[19] Jackson engaged counsel to conduct an investigation and file the 'john doe' action before learning of her removal as the Chief Operating Officer of SingularDTV. The initial investigation suggests that Arie Cohen established replica email account and may have been in control over the cryptocurrency wallets that received the stolen property. Binance and Google have been ordered by the District Court for the Southern District of New York to produce documents relating to the replica email account and the wallets in question.

ousting Jackson as the Chief Operating Officer, removing LeBeau as the Chief Executive Officer and severing ties with the US Entity.[20]

91.   Arie Cohen is currently the subject of a criminal investigation in Switzerland due to his conduct as a Managing Director of the Swiss Entity; he is also suspected of being involved in the theft of $2,000,000 in cryptocurrency from SingularDTV by pretending to be a third party pretending to be himself.

92.   Arie Cohen's February 12, 2019, resignation from the company must be declared valid, and he must be restrained from serving in any management / director capacity for or on behalf of SingularDTV.

93.   Further, if it is determined that Arie Cohen executed the Proposed Settlement Agreement, then it must be deemed effective and enforceable against him.

94.   Likewise, Joe Lubin should be restrained from participating in the management of SingularDTV due to ongoing self-dealing prohibited by the By-Laws and the laws of Switzerland, which expressly prohibit transactions for personal financial gain.

95.   If it is determined that Joe Lubin was involved with Arie Cohen in the fraudulent settlement negotiation and redemption transaction with the Company, then he should likewise be deemed ineligible to serve as a director of the Company.

## VI. DEMAND FUTILITY ALLEGATIONS

### A.   LeBeau has Standing to Bring Derivative Claims on Behalf of SingularDTV

100.   LeBeau brings this derivative action on behalf of the Company for the benefit of SingularDTV to redress injuries suffered, and to be suffered, as a direct result of breach of fiduciary

---

[20] Plaintiff disputes the validity of these corporate actions, since they run afoul of the laws of Switzerland and further since Arie Cohen resigned his position as a Managing Director in 2018, thus rendering him ineligible to attend meetings or vote on corporate matters.

20

duties by Defendants.

101.    The Swiss Entity is named solely as a nominal party in this action.

102.    Plaintiff is, and has continuously been, at all relevant times, a shareholder of the Swiss Entity. Plaintiff will adequately and fairly represent the interests of the Swiss Entity.

**B.   Demand is Excused**

103.    LeBeau has not made a demand on the Board to pursue this action because demand would be futile and, therefore excused. The Board consists of LeBeau, Joe Lubin and Arie Cohen.

104.    Demand is excused as to both of the Joe Lubin and Arie Cohen because each of them faces, individually and collectively, a substantial likelihood of liability as a result of the fraudulent and extortionate behavior, and a pattern of self-dealing, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves.

105.    Joe Lubin and Arie Cohen, in complete abdication of their fiduciary duties under the laws of the State of New York and the country of Switzerland, have failed to investigate the theft of approximately $2,000,000 in company assets or their own self-dealing, acts which have resulted in the diminution of the Company's value, waste, fraud and unjust enrichment.

106.    As a result of the foregoing, the Joe Lubin and Arie Cohen breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

107.    Additional reasons demand on the Board is futile, and thus demand is excused, is because the Director Defendants are beholden to each other. Joe Lubin and Arie Cohen have collaborated to seize control over the Company and to disintermediate Jackson and LeBeau. They are each aware that the other has engaged in coercive and deceptive acts that violate the laws of Switzerland and the By-Laws, yet they have taken no actions whatsoever to investigate or to

Case 1:21-cv-10130-VEC   Document 37-1   Filed 12/07/21   Page 22 of 35

recover amounts that have been wrongfully misappropriated.

108.   Moreover, Joe Lubin is the owner of the ConsenSys, a co-defendant in this matter, and should thus be precluded from directing the Company's actions with respect thereto.

109.   Thus, Joe Lubin and Arie Cohen face a substantial likelihood of liability in a manner not shared by the Company and its shareholders.

110.   The Company has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Defendants have not taken any action on behalf of the Company to mitigate damages; instead they have taken affirmative steps to estop the Company from redressing the injuries suffered. Therefore, demand on the board would be futile and is thus excused.

## VII.   CAUSES OF ACTION

### AS AND FOR THE FIRST CAUSE OF ACTION
### (Breach of Article 812 of the Swiss Code of Obligation)

111.   The Plaintiff realleges and incorporates by reference herein in their entirety the allegations contained in the foregoing paragraphs.

112.   Article 812 of the Swiss Code of Obligation provides:

The managing directors and third parties who are involved in management must carry out their duties with all due care and safeguard the interests of the company in good faith. They are subject to the same duty of loyalty as the company members. They may not carry on any activities in competition with the company unless the articles of association provide otherwise or all other company members consent to the activity in writing.

113.   As detailed above, from the Company's inception, Joe Lubin and Arie Cohen have put their own interests ahead of those of the business, its token holders and its shareholders.

114.   Examples of the above, in the case of Arie Cohen, include siphoning capital into luxury items and personal projects for his own benefit; and in the case of Joe Lubin, include

holding the SingularDTV software code-base hostage in exchange for multi-million-dollar payments that he used to finance his separately held blockchain company.

115.    Further Joe Lubin and Arie Cohen have failed to safeguard the interests of the Company and its shareholders by seeking to oust LeBeau and Jackson, who they consider impediments to their self-serving activities.

116.    At meetings of the Directors of the Swiss Entity, Lubin and Cohen have attempted to remove LeBeau as the CEO of the Company, remove Jackson as COO of the Company, and terminate the services agreement with the US Entity, all despite Cohen having resigned his position as Director in 2019 and their repeated failures to adhere to corporate formalities required under the laws of Switzerland.

117.    All actions taken at the above meetings by Cohen and Lubin were contrary to the best interest of the Company, its shareholders and its token holders.

118.    The resolutions passed at these meetings serve no legitimate Company purpose and instead are retaliatory and meant to oppress and/or coerce LeBeau and Jackson.

119.    A criminal complaint is currently pending against Arie Cohen with the public prosecutor's office of the Canton of Zug Switzerland alleging unfaithful business management and embezzlement.

120.    As a foreseeable consequence, the Plaintiff has suffered and will continue to suffer substantial harm and damage proximately caused by the unlawful conduct of Cohen and Lubin.

### AS AND FOR THE SECOND CAUSE OF ACTION
### (Breach of the Company's Bylaws)

121.    The Plaintiff realleges and incorporates by reference herein in their entirety the allegations contained in the foregoing paragraphs.

122.    The Company adopted By-Laws dated February 9, 2018 which were executed by

23

Case 1:21-cv-10130-VEC  Document 37-1  Filed 12/07/21  Page 24 of 35

the parties.

123.    In clear contravention of the Company's By-Laws, which expressly prohibit conflicts of interest for personal financial gain, Joe Lubin and Consensys developed software for and on behalf of the Company which it held hostage in exchange for payments that cannot be justified.

124.    Specifically, the By-Laws, Section X, Conflicts of Interest, provides:

A conflict of interest may arise when a Body, shareholder of the Company, Employee, Business Partner or a Party takes actions or has interests that may make it difficult to perform his duties and responsibilities for the Company. All such conflicts shall be avoided.

125.    Particular areas of conflict of interest that are of concern include:

**Personal financial gain:** Every Party shall avoid any situation that may involve, or appear to involve, a conflict between their personal interests and the interests of the Company. In dealing with current or potential Business Partners, he/she shall act in the best interests of the Company. He/she shall not seek to gain per-sonal advantage because of his/her position. He/she shall make prompt and full disclosure to his supervisor or the Board of any situation that may involve a conflict of interest.

126.    Likewise, Cohen siphoned Company capital into luxury items and personal projects for his own benefit.

127.    As a foreseeable consequence, the Plaintiff has suffered and will continue to suffer substantial harm and damage proximately caused by the unlawful conduct of Cohen and Lubin.

### AS AND FOR THE THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty)

128.    The Plaintiff realleges and incorporates by reference herein in their entirety the allegations contained in the foregoing paragraphs.

129.    As Directors of the Company, Joe Lubin and Arie Cohen owed the Company, its shareholders, and token holders, fiduciary duties, including the duty of loyalty, duty to act in good faith, and duty to exercise reasonable care.

24

130.    Through their willful violation of the Bylaws, Swiss Law, and other conduct alleged herein, Joe Lubin and Arie Cohen breached each of these fiduciary duties to the Company, its shareholders, and token holders.

131.    Joe Lubin's and Arie Cohen's breaches of fiduciary duty were, among other things, intentional and deliberate.

132.    As a result of the repeated breaches of their fiduciary duties, the Company, its shareholders, and token holders have suffered damages in an amount to be determined at trial.

133.    In addition, LeBeau, suing in the right of the Company, is entitled to recover attorneys' fees by virtue of the intentional willful, deliberate, and wanton disregard by Joe Lubin and Arie Cohen of their fiduciary duties.

### AS AND FOR THE FOURTH CAUSE OF ACTION
### (Declaratory Judgment and Injunctive Relief)

134.    The Plaintiff realleges and incorporates by reference herein in their entirety the allegations contained in the foregoing paragraphs.

135.    As alleged herein, Joe Lubin's and Arie Cohen's actions including the holding of the three referenced director meetings and the resolutions passed therein, were taken without complying with Swiss law formalities, the By-Laws and Articles of Association.

136.    For two of the meetings proper notice was not given, and no notice was given to LeBeau of the June 8, 2021 meeting.

137.    As alleged herein, Cohen resigned as Director of the Company on February 9, 2018 and no vote of the shareholders ever returned him to such office. As such, he is barred from participating in Directors' meetings or taking actions that are delegated to Directors of the Company. Further, his conduct is the subject of investigation in Switzerland and a separate action in the Southern District of New York (related to his possible involvement in a hacking incident

25

and theft with respect to the Company).

138.    Arie Cohen had no involvement with the Company from October 2018 to May 27, 2021, and only re-emerged to try and wrest control of the Company from its founders by using the hack as a pretext.

139.    Joe Lubin has ignored his duties to the Company, instead asserting that his principal interest is ConsenSys.

140.    Joe Lubin has acknowledged this conflict yet has failed to recuse himself or seek the approval of the Board for self-interested decisions.

141.    Joe Lubin and Arie Cohen have misused the corporate form to remove LeBeau and Jackson from the venture they conceptualized and founded.

142.    Joe Lubin is also trying to gain control over the Company's software which ConsenSys was paid exorbitantly to have developed. This is not Joe Lubin's first attempt to take possession of the software for his company's benefit to the detriment of the Company. After withholding an agreement for the development services provided by ConsenSys, Consensys provided an agreement that sought to provide merely a limited license to use the software code. The Company was only able to obtain the code base after it agreed to pay an extortionate sum.

143.    From the Company's inception, Joe Lubin and Arie Cohen have acted in their individual best interests over the best interest of the Company, its shareholder and the token holders.

144.    Accordingly, Plaintiff is entitled to a judgment declaring the meetings and all resolutions void and permanently enjoining, restraining, and prohibiting Lubin and Cohen, and all persons acting in concert with them, on their behalf, or at their direction, from holding any meetings or passing any resolution.

Case 1:21-cv-10130-VEC   Document 37-1   Filed 12/07/21   Page 27 of 35

## AS AND FOR THE FIFTH CAUSE OF ACTION
### (Unjust Enrichment Against ConsenSys)

145.     The Plaintiff realleges and incorporates by reference herein in their entirety the allegations contained in the foregoing paragraphs.

146.     As alleged herein, ConsenSys held the SingularDTV software code-base hostage in exchange for more than ten million dollars.

147.     Upon information and belief, Joe Lubin always intended for ConsenSys to own and exploit the software assets it developed for and on behalf of the Company.

148.     ConsenSys agreed to develop the software though dodged the Company's efforts to negotiate terms or enter into a services agreement or obtain invoices for the services allegedly provided.

149.     It was understood from the Company's inception that ConsenSys would develop the rights management software envisioned by the Company on fair and reasonable terms.

150.     However instead of performing the services through ConsenSys, Joe Lubin, outsourced development services to a third party in Romania and, on information and belief, conspired with the Romanian developers to charge excessive development fees.

151.     Neither the Romanian developer nor ConsenSys was willing to provide a contract for services or invoices to support charges totaling more than eleven million dollars (US$11,000,000).

152.     Joe Lubin also directed ConsenSys to withhold delivery of the SingularDTV software code unless the Company agreed to pay the exorbitant, unsupported and unjustified invoice amounts.

153.     On information and belief, SingularDTV paid more for software development services than any other ConsenSys customer in 2018. In fact, SingularDTV may have been

27

Case 1:21-cv-10130-VEC  Document 37-1  Filed 12/07/21  Page 28 of 35

ConsenSys' only paying customer that year.

154.    In 2018 as the Company was preparing to bring its software platform to market, ConsenSys finally provided a form of development agreement. However, the proposed contract terms gave the Company a revocable license in the software. Ownership would be retained by ConsenSys, and not conveyed to the customer, here SingularDTV.

155.    When SingularDTV refused to agree to such terms, ConsenSys, demanded a fee of almost US$ 2,0000,000 in exchange for conveying and assigning all right, title and interest in the code base to its client, again without proving any detailed invoices or other documentation.

156.    Ultimately, the Company, having no choice but to pay the extortionate fee, agreed on a payment plan in exchange for release of the code base. The Company paid over US$ 11,000,000 for the development of, and rights to the software from ConsenSys.

157.    ConsenSys received the benefit of payments it was not entitled by withholding agreements, invoices, and ultimately the intellectual property they were hired to develop, harming the Company in the process

158.    It would be unjust, and there is no good reason, to allow ConsenSys to receive fees that are approximately twenty percent higher than market rates at the time.

159.    As a result the Company, its shareholders, and token holders have suffered damages in an amount to be determined at trial.

## AS AND FOR THE SIXTH CAUSE OF ACTION
### (Fraud In The Inducement Against Lubin and Cohen)

160.    The Plaintiff realleges and incorporates by reference herein in their entirety the allegations contained in the foregoing paragraphs.

161.    SINGULAR DTV GmbH was first conceptualized in 2014 by LeBeau and Jackson as a blockchain-based platform for enabling content creators to track and monetize their

Case 1:21-cv-10130-VEC  Document 37-1  Filed 12/07/21  Page 29 of 35

intellectual property rights; the platform would also be used to fund and create television and film assets related to blockchain and cryptocurrency.

162.   Joe Lubin and Arie Cohen joined the Company early on as subject matter experts and were granted shares in exchange for services that were promised but never rendered.

163.   Instead, Joe Lubin and Arie Cohen used their positions as directors and officers of the Company to reap substantial personal benefit from the appreciation of cryptocurrency raised in the Company's initial coin offering (ICO), in the case of Arie Cohen, by siphoning capital into luxury items and personal projects for his own benefit; and in the case of Joe Lubin, by holding the SingularDTV software code-base hostage in exchange for more than ten million dollars that he used to finance ConsenSys.

164.   Joe Lubin agreed to serve as the Company's CTO, Arie Cohen would serve as the Chief Financial Officer and LeBeau / Jackson would control the day-to-day operations of the business, create the film/television assets according to the Company's stated purpose, and communicate the Company's vision to the general and investing public.

165.   Joe Lubin did not invest any capital in the Company or provide any of the promised services as CTO. All CTO services were provided through ConsenSys, principally by its contractors in Eastern Europe.

166.   Arie Cohen did not invest any capital in the Company. Arie Cohen served as the Company's CFO up until April 27, 2018 when he was replaced by the Company.

167.   Arie Cohen and Joe Lubin were granted 57% of the Company, yet provided no consideration whatsoever for their equity interests.

168.   Both Arie Cohen and Joe Lubin, when accepting their respective shares, knew they would not fulfill their promised services to the Company.

169.    Arie Cohen and Joe Lubin made their continued misrepresentations with the intention of having Zach LeBeau rely on in exchange for their shares in the Company.

170.    Mr. LeBeau reasonably relied on these misrepresentations to the harm of the Company, which did not receive the promises services and instead ending up paying millions of dollars to Joe Lubin's ConsenSys.

171.    As a result the Company, its shareholders, and token holders have suffered damages in an amount to be determined at trial.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
### (Fraud In The Inducement Against Lubin and ConsenSys)

172.    The Plaintiff realleges and incorporates by reference herein in their entirety the allegations contained in the foregoing paragraphs.

173.    It was understood from the Company's inception that ConsenSys would develop the rights management software envisioned by the Company on fair and reasonable terms.

174.    Neither the Romanian developer nor ConsenSys was willing to provide a contract for services or invoices to support charges totaling more than eleven million dollars (US$11,000,000).

175.    In 2018 as the Company was preparing to bring its software platform to market, ConsenSys finally provided a form of development agreement. However, the proposed contract terms gave the Company a revocable license in the software. Ownership would be retained by ConsenSys, and not conveyed to the customer, here SingularDTV.

176.    When SingularDTV refused to agree to such terms, ConsenSys, demanded a fee of almost US$ 2,0000,000 in exchange for conveying and assigning all right, title and interest in the code base to its client, again without proving any detailed invoices or other documentation.

177.    Ultimately, the Company, having no choice but to pay the extortionate fee, agreed

Case 1:21-cv-10130-VEC   Document 37-1   Filed 12/07/21   Page 31 of 35

on a payment plan in exchange for release of the code base. The Company paid over US$ 11,000,000 for the development of, and rights to the software from Joe Lubin's company.

178.    As alleged herein, upon information and belief, Joe Lubin always intended for ConsenSys to own and exploit the software assets it developed for and on behalf of the Company.

179.    Joe Lubin and ConsenSys held the SingularDTV software code-base hostage in exchange for more than ten million dollars that was used to help finance ConsenSys.

180.    Joe Lubin and ConsenSys misrepresented to the Company that the services provided by ConsenSys would be below market rate.

181.    Further, they refused to send development agreements and invoices to the Company.  These documents were only provided once the intellectual property was developed and the Company had no choice but to pay rates that were actually twenty times the mark rate at the time.

182.    The Company reasonably relied on the statements of Joe Lubin, who was supposed to be representing the Company's best interests, and his company ConsenSys.

183.    Joe Lubin and ConsenSys knew along that they would charge the Company exorbitant fees and in fact attempted to hijack the software it developed from the Company.

184.    Based on Joe Lubin and ConsenSys' stall tactics and misrepresentations the Company was forced to continue using ConsenSys and pay over $11,000,000.

185.    As a result the Company, its shareholders, and token holders have suffered damages in an amount to be determined at trial.

31

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of Company, prays for judgment as follows:

1.  Awarding damages against all Defendants, jointly and severally, in an amount to be proven at trial;

2.  Awarding restitution, disgorgement and punitive damages;

3.  Awarding appropriate equitable relief and injunctive;

4.  Declaring the meetings and resolutions void;

5.  Awarding pre-judgment interest, as well as reasonable attorneys' fees and other costs; and

6.  Awarding such other relief as this Court may deem just and proper.

Dated:     New York, New York
           September 25, 2021

MORRISON TENENBAUM PLLC

By:  _/s/ Jerald Tenenbaum_____
     Jerald Tenenbaum, Esq.
     87 Walker Street, Second Floor
     New York, New York 10013
     Tel: (212) 620-0938
     Email: jerald@m-t-law.com

32

Case 1:21-cv-10130-VEC   Document 37-1   Filed 12/07/21   Page 33 of 35

**VERIFICATION**

I, Jerald Tenenbaum, being duly sworn and deposed, state that I am the attorney for the Plaintiff in this matter and have read the above-attached papers. I affirm that they are, to my best knowledge, true, except those statements that are stated upon information and belief, which I believe to be true. I am making this sworn statement on behalf of the Plaintiff as he resides in a county where my firm does not have an office.

_____/JMT/_____
Jerald Tenenbaum

# EXHIBIT A

https://www.reddit.com/r/ethereum/comments/4z7ym6/cofounder_joe_lubin_talks_future_of_singulardtv



FILED: NEW YORK COUNTY CLERK 09/25/2021 07:22 PM
INDEX NO. 655673/2021

NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 09/25/2021

35