UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- x

SINGULARDTV, GMBH,                                    Case No. 1:21-cv-10130 (VEC)


              Plaintiff,


       -against-


ZACHARY LEBEAU and KIMBERLY JACKSON,

              Defendants.

-------------------------------------------x




**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S APPLICATION
<u>FOR A PRELIMINARY INJUNCTION</u>**




**Neil L. Postrygacz**
Attorney for Defendants
Office & PO Address
**217 34th street**
**Brooklyn, New York 1123-6923**
**Tel: (646) 642 7492**
**Email: neil@neilesq.com**

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT…………………………………………………………………1

BACKGROUND………………………………………………………………………………3

ARGUMENT…………………………………………………………………………………..5

POINT I
PLAINTIFF CANNOT SATISFY THE STRICT STANDARDS
FOR A PRELIMINARY INJUNCTION………………………………………………………5

POINT II
PLAINTIFF HAS FAILED TO AND CANNOT
DEMONSTRATE IRREPARABLE HARM……………………………………………….…..6

POINT III
PLAINTIFF HAS NOT DEMONSTRATED ANY
LIKELIHOOD OF SUCCESS ON THE MERITS………………………………………...…10

POINT IV
PLAINTIFF CANNOT OBTAIN ULTIMATE RELIEF
THROUGH A PRELININARY INJUNCTION…………………………………………….…13

POINT V
PLAINTIFF'S OWN UNEXPLAINED DELAY
PRECLUDES THE RELIEF REQUESTED……………………………………………………14

POINT VI
PLAINTIFF SHOULD SEEK THIS RELIEF IN
NEW YORK SUPREME COURT PRIOR PENDING
ACTION BETWEEN THE PARTIES…………………………………………………………16

POINT VII
A BOND IN THE AMOUNT OF THE CYBERCURRENCY
SHOULD BE REQUIRED……………………………………………………………………...18

CONCLUSION………………………………………………………………………………19

## ***TABLE OF CASES***

Page

*Abbott Labs. v. Feinberg*
    506 F. Supp. 3d 185, 202 (S.D.N.Y. 2020)………………………………………………13

*Adam v. Jacobs*
    950 F.2d 89, 92 (2d Cir.1991)……………………………………………...………..17

Almoss, Ltd. v. Furman
    06 Civ. 8234 (LLS), at *3-4 (S.D.N.Y. July 5, 2007)………………………………17

*Andino v. Fischer*
    555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)……………………………………………13

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*
    762 F.2d 205, 211 (2d Cir.1985)………………………………….……………………16

*Barchha v. TapImmune, Inc.*
    2013 WL 120639, at *1 (S.D.N.Y. Jan. 7, 2013)…………….……………………..14

*Bell & Howell: Mamiya Co. v. Masel Supply Co.* Corp.
    719 F.2d 42, 45 (2d Cir. 1983)……………………………….…….………………7

*Blumenthal v. Merill Lynch, Pierce, Fenner Smith, Inc.*
    910 F.2d 1049, 1054 (2d Cir. 1990)………………………..……………………17, 18

*Borey v. Nat'l Union Fire Ins. Co.*
    934 F.2d 30, 34 (2d Cir. 1995)………………………….……………………...7

*Cacchillo v. Insmed, Inc.*
    638 F.3d 401, 406 (2d Cir. 2011)………………………………………………….6

*Century Time Ltd. v. Interchron Ltd.*
    729 F.Supp. 366, 368 (S.D.N.Y.1990)……………………………………………16

### *TABLE OF CASES*   *(cont.)*

Pages

*Citimortgage, Inc. v. Heyman*
>    186 A.D.3d 1487, 131 N.Y.S.3d 95, 98 (2d Dep't 2020)……………………………13

*Cole v. Edwards*
>    2004 WL 1874970, *3 (S.D.N.Y. Aug. 13, 2004)…………………………………..17

*Colorado River Water Cons. Dist. v. United States*
>    424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)………………….…...16

*DiversifiedMortg. Inv'rs v. U.S. Life Ins. Co. of New York*
>    544 F.2d 571, 576 (2d Cir. 1976)……………………………………………...……16

*Doninger v. Neihof*
>    527 F.3d 41, 47 (2d Cir. 2008)………………………………………………………6

*eBay, Inc. v. MercExchange*
>    547 U.S. 388, 391, 126 S.Ct. 1837, 1839 (2006)………………………………6, 7

*First City Nat'l Bank and Trust Co. v.Simmons*
>    878 F.2d 76, 80 (2d Cir. 1989)……………………………………………………....17

*Gidatex. S.R.L. v. Campanielio Imports. Ltd.*
>    13 F. Supp.2d 417 (S.D.N.Y. 1998)………………………………………………15

*Global Switching, Inc. v. Kasper*
>    *No.* CV-06-0412 (CPS), at *7 (E.D.N.Y. Feb. 17, 2006)…………..……………..8

*International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd..*
>    2005 WL 1307145, *23 (S.D.N.Y. 2005)…………………………………………...8

*Hanson Trust PLC v. SCM Corp.*
>    774 F.2d 47, 60 (2d Cir. 1985)………………………………………….………...,5

*H.E. Fletcher Co. v. Rock of Ages Corp.*
>    326 F.2d 13, 16-17 (2d Cir. 1963)……………………………………………17

## PRELIMINARY STATEMENT

Plaintiff's instant application for a preliminary injunction is an untimely end-run around the derivative action filed on September 25 in New York County Supreme Court alleging misappropriation and self-dealing by Joe Lubin ("Lubin") and Arie Levy Cohen ("Cohen"). Plaintiff cannot demonstrate a likelihood of success on the merits because (1) no legitimate claim for irreparable injury may be based solely upon a claim for financial remuneration, (2) the action impermissibly seeks the ultimate relief demanded in its complaint, and (3) a prior pending derivative action (the "Derivative Action") initiated by defendant Zach LeBeau ("LeBeau") in New York Supreme Court will ultimately determine whether Lubin and Cohen should have the right to exercise exclusive control over the Company's valuable cryptocurrency holdings following string of self-serving transactions and a history of dereliction of their fiduciary obligations as directors.

Since May of this year, Lubin and Cohen, purporting to act on Plaintiff's behalf, have sought to dismantle safeguards established in 2016 to protect Plaintiff's sole asset of value – a cryptocurrency wallet containing approximately 12,000 Ethereum tokens – today worth more than $50,000,000.[1] Lubin and Cohen have demonstrated that there is nothing they will not say or do to get control over that wallet.

In their Complaint, Lubin and Cohen argue, hypocritically, that access to the cryptocurrency wallet at issue is fundamental for the continuation of Plaintiff's business operations. Yet, it is well established that SingularDTV GmbH (the "SingularDTV", "Company" or "Plaintiff") is slated for dissolution. Not only have Lubin and Cohen themselves resolved to dissolve the business in a (disputed) meeting of the Company's Board of Directors held on May 27 of this year; but it is also undisputed that the Company currently has almost no business to speak of. The software it spent tens of millions of

---

[1] The safeguards Cohen and Lubin now seek to unwind have been in place since Plaintiff received its allotment of Ethereum in or around October of 2016. At that time, Plaintiff's cryptocurrency holdings were worth $7,500,000.

1

dollars to develop is either mothballed or unsupported because Cohen and Lubin have cut off funding in order to extort control over the wallet from LeBeau. And the Company's meager film and television assets have been left for dead. They even went so far as to cancel the credit card that was paying Amazon Web Service to host the Company's website.

There is no line that Lubin and Cohen will not cross to discredit their former partner. Without any basis whatsoever – they suggest that LeBeau was behind a May 2021 hacking incident that cost the Company $2,000,000 and is the subject of a related "John Doe" action before this Court.[2] However, it is notable that this theory of theirs, asserted for the first time in the instant case, was never pursued by Plaintiff in the tumultuous days following the hacking incident. Nor did they, as the self-appointed directors of the Company, convene a panel to investigate the incident or take any other action to uncover the source of the hack or recover the stolen cryptocurrency. They did not even bother to call the Company's then general counsel whose computer was compromised or the Company's IT vendor.

Instead, over the past six months, Cohen and Lubin have put all of their efforts into obtaining dominion over the wallet, giving only scant attention to the stolen $2,000,000 (a mere rounding error) or the effect of their actions on the Company's core business, which they now want to unwind so they can capitalize on the appreciation of the cryptocurrency that has been held safely in the Company wallet since 2016, thanks to LeBeau.

Based upon the extensive controversies among the parties with respect to the hacking incident and the other issues before this Court and the Supreme Court, there is no clear path for Plaintiff to achieve success on the merits.

Finally, if Plaintiff is awarded any additional relief on this application, a bond should be required in an amount equivalent to the current value of the cryptocurrency held in the wallet, and the Court should

---

[2] *SingularDTV GmbH v. Doe #:* 1:21-cv-06000-VEC

impose staunch restrictions on Plaintiff's use thereof for salaries, bonuses, development fees, consultant fees, and any payments whatsoever to Lubin and Cohen, as well as for any corporate or personal legal fees in this proceeding or the Derivative Action.

Neither Lubin nor Cohen has demonstrated a willingness or ability to serve in a fiduciary capacity. Certainly, they cannot be trusted to act in the best interest of a shareholder who has accused them of mismanagement, self-dealing and neglect when they cannot even be relied on to investigate the theft of $2,000,000 from the Company.

## BACKGROUND

The instant action is a cynical and well-funded attempt to do an end-run around the prior pending action commenced in New York State Supreme Court, County of New York (Index No. 655673/202), filed on September 25, 2021, by LeBeau individually as a shareholder of SingularDTV GmbH. A copy of the complaint is attached to the LeBeau Declaration as Exhibit D-4. The Derivative Action identifies Lubin and Cohen as absentee directors who have misused their positions as Company fiduciaries to enrich themselves and their personal interests at the expense of the token holders and the shareholders. The very purpose of the Derivative Action is to determine who rightfully should be authorized to exercise control over SingularDTV GmbH (Switzerland) and its assets, including without limitation the cryptocurrency wallet.

LeBeau filed a Verified Complaint against Lubin and Cohen and ConsenSys AG and ConsenSys Inc. and Nominal Defendant SingularDTV GmbH alleging breach of their respective fiduciary duties as directors and/or officers of SingularDTV, breach of the Company Articles of Association and Bylaws, breach of Swiss General Obligation Law, unjust enrichment, and fraudulent inducement.

That lawsuit concerns the rights of a pair of corrupt managing directors, Lubin and Cohen, to

serve as officers and directors of SingularDTV, and to seize control over operations by eliminating its original founders, LeBeau and Defendant Kim Jackson ("Jackson"). Lubin and Cohen are the driving forces behind the instant matter.

Over the course of more than five years, Lubin and Cohen have engaged in a pattern of conduct intended to enrich themselves at the expense of the other owners and stakeholders through economic duress, unapproved self-interested transactions, and an overall abdication of their contractual and statutory duties. As directors of the company, Lubin and his old friend, Cohen, agreed to 'look the other way' as they each figured out new and creative ways of using Company assets to fund their unrelated personal ventures.

Lubin, particularly, has used his insider position as a director of SingularDTV to fund his blockchain software development company, ConsenSys, which coincidentally was founded within months of the founding of SingularDTV. ConsenSys charged SingularDTV millions of dollars for work it claims to have performed for SingularDTV, when in fact most, if not all, of the work was performed by a subcontractor located in Eastern Europe.

Cohen took a much more traditional approach, openly misusing the Company accounts during his tenure as CFO to purchase luxury items (including more than $100,000 in stereo equipment) and to invest in other businesses for his own private investment portfolio. Strikingly he then used his position as CFO to cause the Company to enter into lucrative contracts with these other businesses, in one particularly chaffing example, even executing a contract on behalf of both parties.

Lubin and Cohen joined Plaintiff with promises that they would provide valuable services in exchange for the combined 57% equity interest they received without having to invest any capital. However, they never provided those services, or, in the case of Cohen, provided them to the detriment of the business. From the company's inception, Lubin and Cohen have put their own interests before

those of its stakeholders in clear breach of their fiduciary obligations under New York and Swiss law. They now seek to formalize their agreement to 'look the other way' by seizing control over the Company's core asset – the cryptocurrency wallet – from LeBeau and Jackson, the Company's original founders.

By acting in their own interests over the best interest of the Company, Lubin and Cohen breached their contractual obligations and defaulted on their statutory duties under the laws of Switzerland and New York; further, they disregarded the Company's commitments to buyers in its initial coin offering (ICO) in breach of Swiss law.

They now seek to freeze-out their co-founders, LeBeau and Jackson, crushing their critics to erase years of self-dealing activities and to free up the path for a massive payday in the dissolution process.

## ARGUMENT

### POINT I

### PLAINTIFF CANNOT SATISFY THE STANDARD FOR A PRELIMINARY INJUNCTION

The purpose of a preliminary injunction is to prevent irreparable injury and preserve a court's ability to render a meaningful decision on the merits. See *WarnerVision Entm't v. Empire of Carolina, Inc.*, 101 F.3d 259, 261-62 (2d Cir. 1996). Because it is "one of the most drastic tools in the arsenal of judicial remedies," a preliminary injunction is an extraordinary measure that should not be routinely granted. *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985); see *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); see also *Ringling Brothers-Barnum Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F. Supp. 204, 207 (S.D.N.Y. 1996) ("[b]ecause of the great potential for harm which may occur from the issuance of a preliminary injunction, the party seeking the injunction must sustain a heavy burden").

A preliminary injunction "is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray-Wrap, Inc.,* 917 F.2d 75, 80 (2d Cir. 1990). A plaintiff seeking a preliminary injunction has the burden of demonstrating that (1) it will suffer irreparable harm absent injunctive relief *and* (2) either (a) it is likely to succeed on themerits of the action, or (b) there are sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly in the plaintiff's favor. *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010). The Court, in determining whether a preliminary injunction is justified, must also (3) consider the balance of hardships between the plaintiff and defendant -- even if the plaintiff demonstrates a likelihood of success -- and may issue a preliminary injunction *only if* the plaintiff demonstrates that the balance of hardships tips in the plaintiff's favor, and (4) "pay particular regard for the public consequences in employing the extraordinary remedy of injunction" and may issue a preliminary injunction *only if* the plaintiff demonstrates that the "public interest would not be disserved" by the issuance of such relief. *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391, 126 S.Ct. 1837, 1839 (2006).

That burden is even higher when a party seeks relief "that *alters* the status quo by commanding some positive act, as opposed to a preliminary injunction seeking only to maintain the status quo." (Emphasis added) *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011). To meet that higher board, a party seeking a mandatory injunction must show a "clear or substantial likelihood of success on the merits." *Doninger v. Neihoff*, 527 F.3d 41, 47 (2d Cir. 2008).

Plaintiff's instant application, centered around vague and conclusory hyperbolic allegations, has failed to satisfy the elevated standard of review for awarding preliminary relief that alters the status quo.

## POINT II

### PLAINTIFF HAS FAILED TO AND CANNOT DEMONSTRATE IRREPARABLE HARM

Plaintiff's assertions of irreparable harm are nothing more than unsupported, conclusory allegations made on Cohen's and Lubin's "information and belief" that the safeguards established and maintained since 2016 are no longer effective and, to the contrary, pose a serious threat to the preservation of Plaintiff's financial assets. In fact, little has changed since 2016, except that the cryptocurrency held in the Company wallet has appreciated spectacularly. Until LeBeau and Jackson were unceremoniously removed as directors and officers, the composition of the board has remained some combination of Lubin, Cohen and LeBeau. Jackson had run operations continuously since the Company was founded. Monthly expense reports were regularly generated and shared with the partners. Plaintiff struggled to develop commercially viable software on the blockchain and produce entertainment assets in accordance with its obligations to its ICO token holders.

Notwithstanding the unsupported allegations and hyperbole, Plaintiff's claims are easily reducible to money damages, which falls short of irreparable harm. "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that... applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Bell & Howell: Mamiya Co. v. Masel Supply Co.* Corp., 719 F.2d 42, 45 (2d Cir. 1983). There is no presumption of irreparable harm. *eBay, supra*, 547 U.S. at 392-93, 126 S.Ct. at 1840.

The Court's analysis "must... consider the injury the plaintiff will suffer if it loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Salinger, supra*, 607 F.3d at 80; *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (irreparable harm is "an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequatecompensation"). "A mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d

7

30, 34 (2d Cir. 1995).

Cryptocurrency is an encrypted data string that denotes a unit of currency. It is monitored and organized by a peer-to-peer network called a blockchain, which also serves as a secure ledger of transactions, e.g., buying, selling, and transferring. In other words, Cryptocurrency is just an alternative monetary standard. It is currency. Thus, the risk of loss of cryptocurrency cannot be the basis for a claim of irreparable harm. On the contrary, irreparable harm is injury that monetary damages cannot adequately compensate. *Polymer Tech Corp. v. Mimram*, 37 F.3d 74, 82 (2d Cir. 1994).

If LeBeau were, for the first time in six years, decide to misuse his access to the Company wallet to deplete the Company's cryptocurrency reserves for his own personal benefit, the Company would have a very strong case against him for money damages (akin to LeBeau's action against Lubin and Cohen for their actions). Lubin and Cohen brought this action purportedly to prevent a future action for monetary and statutory damages if LeBeau were ever to 'go rogue'.

In its oral argument, Plaintiff relied heavily on *Global Switching, Inc. v. Kasper, No.* CV-06-0412 (CPS), at *7 (E.D.N.Y. Feb. 17, 2006), a case in which loss of control was deemed to be irreparable harm. In that case the Court stated:

> In the present case, plaintiffs allege that if they are not granted a preliminary injunction they will be irreparably injured because Greenberg and Global will be denied their contractual rights to co-manage the SkyMax venture. More specifically, plaintiffs will lose the right to veto the new pre-paid calling card venture and will lose their right to access and monitor the funds paid to SkyMax. A party's loss of control of a business constitutes irreparable harm. *Wisdom Import Sales Co. v. Labatt Brewing Co.*,339 F.3d 101, 114-15 (2d Cir. 2003); Semmes Motors, Inc. v. Ford Motor Co.,429 F.2d 1197, 1205 (2d Cir. 1970) (right to continue a business "is not measurable entirely in monetary terms"). *International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.,*2005 WL 1307145, *23 (S.D.N.Y. 2005) *Suchodolski Associates, Inc. v. Cardell Financial Corp.*, 2003 WL 22909149, *4 (S.D.N.Y. 2003). *Street v. Vitti*, 685 F.Supp. 379, 384 (S.D.N.Y. 1988) (finding irreparable harm where forced sale of plaintiffs' shares would "destroy their voice in management").

However, the fact pattern in *Global Switching* is distinguishable from the instant case in one

fundamental respect – in that case, the business in question was a going concern. While loss of control over a going concern may be deemed irreparable harm, according to the court, loss of control over a financial asset of a business that is being wound up is neither incalculable nor irreparable. Even if Lubin and Cohen were to change their views on dissolution, the loss of control over a financial asset – here effectively a bank account – is not comparable to the loss of control over the operations of healthy, revenue generating business.

The minutes from Plaintiff's May 2021 board meeting (before the commencement of any of the cases brought among the parties) provide the best indication of Lubin and Cohen's outlook for the future of SingularDTV:

> It is resolved that the Board shall form a Dissolution Committee. The purpose of the Dissolution Committee, which [LeBeau] is invited to be a part of should he so choose, is to conclude a proposal for an orderly wind-down of the Company as soon as is practicable. The Dissolution Committee shall be co-chaired by Joseph Lubin and Patrik Allenspach , and any such members as appointed by the Board in the ordinary course. The Dissolution Committee will, among other actions standard for such committees:
>
> • Continue working with forensic authorities regarding the Compliance Incident in an attempt to recover the lost assets;
>
> • Continue working with Patrik Allenspach to finalize all remaining tax obligations of the Company;
>
> • Appoint a third party to complete an accounting of all debts, if any, owed by shareholders, directors, and/or employees, to the Company;
>
> • Make a proposal for the Shareholders regarding how the remaining

*Company assets may be allocated to limit liability, promote the interests*

*of SNGLS token holders, and potentially, continue on some aspects of*

*the business; and*

*• The Dissolution Committee is expressly authorized to engage third*

*party professional services in Switzerland as required to conclude this*

*analysis.*

Plaintiff has no ongoing business other than its dissolution and winding up. A copy of the Dissolution Proceedings taking place in Switzerland are annexed to the LeBeau Declaration as <u>Exhibit D-5</u>.

### POINT III

### PLAINTIFF HAS NOT DEMONSTRATED ANY LIKELIHOOD OF SUCCESS ON THE MERITS

"While the action to recover a chattel may proceed without seizure of the chattel, an order of replevin is appropriate if plaintiff shows a present right to possession of the chattel." *Honeywell Inform. Sys., Inc. v. Demographic Sys.,* 396 F. Supp. 273, 275 (S.D.N.Y. 1975)  The totality of the facts in this and the related actions demonstrate that Plaintiff has not made the requisite showing for replevin.

Replevin, an action to recover wrongfully detained property, can only be sought against a party who converted the property. It is undisputed in this case that Plaintiff has three shareholders - Lubin, Cohen and LeBeau - with each shareholder holding equivalent rights in the cryptocurrency wallet. LeBeau has not wrongfully detained the Company's property since he possesses a continuing interest as one of the three shareholder keyholders. Further, while Cohen and Lubin appear to argue that LeBeau converted Company property by refusing to surrender his access to the cryptocurrency wallet, here the doctrine of 'unclean hands' bars Plaintiff's conversion and replevin claims.

"The unclean hands doctrine proscribes equitable relief when, but only when, an individual's

misconduct has 'immediate and necessary relation to the equity that he seeks'" (i.e., the return of Plaintiff's property). *Henderson v. United States*, 135 S. Ct. 1780, 1783 (2015). Its "rationale . . . is that equity will not aid a person to reap the benefits of his own misconduct." Restatement (Second) of Torts § 940. "The court must inquire whether plaintiff is attempting to charge defendant with liability for some act in which plaintiff itself participated or because of which plaintiff is at fault as well as defendant." *JacobyBender, Inc. v. Jacques Kreisler Mfg. Corp.*, 287 F. Supp. 134, 135 (S.D.N.Y. 1968). Lubin and Cohen stand accused of serious breaches of fiduciary duty specifically related to the misappropriation of Company funds – the very action the multiple keyholder structure, which LeBeau has refused to relinquish – was intended to prevent. Lubin and Cohen have signaled through their own actions, including a particularly 'lowball' redemption offer communicated by ConsenSys counsel, that they do not intend to ratably distribute the proceeds of the Company's dissolution to LeBeau or Jackson. LeBeau is thus justified in refusing to turn such an enormous sum of money, rightfully 48% his, to Lubin and Cohen.

*Abbott Labs. v. Feinberg,* 506 F. Supp. 3d 185, 202 (S.D.N.Y. 2020) stated that "[t]he doctrine of unclean hands applies when the complaining party shows that the offending party is guilty of immoral, unconscionable conduct and even then, only when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct." *Citimortgage, Inc. v. Heyman* , 186 A.D.3d 1487, 131 N.Y.S.3d 95, 98 (2d Dep't 2020) ; see also 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2946 (3d ed. 2020) ("since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff."). Plaintiff, now temporarily under the control of Lubin and Cohen, cannot show such good faith.

Plaintiffs have not established the element of likelihood of success on the merits due to (a) their

own individual past misconduct, (b) their current blatant efforts to freeze out their fellow shareholder on the pretext of a hacking incident quite possibly orchestrated by Lubin and/or Cohen themselves, a presumption strengthened by their failure to take any action whatsoever in the wake of the incident, and (c) their utterly disgraceful treatment of Jackson. They come to this court with unclean hands and their replevin claim with thus fail.

## POINT IV

### PLAINTIFF CANNOT OBTAIN ULTIMATE RELIEF THROUGH A PRELININARY INJUNCTION

Were Plaintiff to be awarded its demanded relief in the instant application, namely the turnover of the cryptocurrency wallet, Plaintiff would have obtained its ultimate relief in this case. Neither a temporary restraining order nor a preliminary injunction can be used to obtain the ultimate relief sought in this case. *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("[i]t is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction").

"The purpose of a preliminary injunction is not to give the plaintiff the ultimate relief it seeks." *WarnerVision Entm't Inc. v. Empire of Carolina, Inc*., 101 F.3d 259, 261–62 (2d Cir. 1996) ("a temporary injunction 'ought not to be used to give final relief before trial'"); *DiversifiedMortg. Inv'rs v. U.S. Life Ins. Co. of New York*, 544 F.2d 571, 576 (2d Cir. 1976) (preliminary injunction "is not an adjudication on the merits, and it should not grant relief properly awarded only in a final judgment"); *Barchha v. TapImmune, Inc.*, 2013 WL 120639, at *1 (S.D.N.Y. Jan. 7, 2013) (same).

Plaintiff here has demanded its ultimate relief as a preliminary matter. The request should be denied on that basis alone. *See, e.g., Barchha*, 2013 WL 120639, at *2 (denying request for mandatory injunctionto force defendant to facilitate sale of stock because it "would not be a limited measure to preservethe status quo, but instead equivalent to a final adjudication of the merits of plaintiff's claims").

The affirmative injunctive relief sought by Plaintiff's mirrors the ultimate relief requested in Plaintiff's Complaint and is therefore not attainable via this application.

## POINT V

### PLAINTIFF'S OWN UNEXPLAINED DELAY
### PRECLUDES THE RELIEF REQUESTED

Plaintiff's unsupportable claim of irreparable damage is also undercut by Plaintiff's delay in seeking a preliminary injunction. Plaintiff's papers are remarkably silent as to why Plaintiff waited six months (since at least May 2021) before seeking a preliminary injunction. As stated by the Second Circuit, [T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury[.] … [If not] explainable, delay alone may justify denial of a preliminary injunction. *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995).

An unexplained delay therefore "justifies denial of [a] preliminary injunction on the basis of lack of irreparable harm." *Two Kids From Queens, Inc. v. J&S Kidswear, Inc.*, 2009 WL 5214497 at *4 (E.D.N.Y. Dec. 30, 2009) (citing *Tough Traveler*, supra, 60 F.3d at 968). Indeed, "courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Gidatex. S.R.L. v. Campanielio Imports. Ltd.*, 13 F. Supp.2d 417 (S.D.N.Y. 1998) (emphasis added). See Century Time Ltd. v. Interchron Ltd., 729 F.Supp. 366, 368 (S.D.N.Y.1990) (preliminary injunction denied where plaintiff waited more than two months to seek such relief).

Lubin, particularly, is no stranger to lawsuits and is lousy with lawyers between his business interests, his well-publicized fundraising activities and multiple lawsuits filed against him and ConsenSys over the past five years. If Plaintiffs complaint is to be believed, Lubin and Cohen, on information and belief, have good reason to suspect that LeBeau, an experienced criminal, orchestrated the hacking incident complained of in the "John Doe" complaint. If that were true, it would be a

13

dereliction of their duties as fiduciaries to have delayed even a day pursuing this claim. In fact, those allegations are spurious; yet the absurdity of the allegations made six months later does not excuse their severely delayed action.

Plaintiffs were quick to terminate LeBeau in the wake of the hacking incident, strip Jackson of her position and equity interest in the enterprise and restructure the board. As early as May 27, 2021, Lubin and Cohen were holding meetings to allocate blame and take measures to punish LeBeau for his alleged carelessness. They were particularly merciless in their indictment of LeBeau: "*JML (Lubin) notes that Company assets were always intended to be secured in a multi-signature solution and continuing disappointment that the funds were not in an industry standard multi-signature solution, that they continue to be held solely by ZJL and that basic compliance measures were not taken prior to the Compliance Incident. JML notes that the assets, as far as he is aware, still remain in the sole possession of ZJL.*" Shortly thereafter, they demanded that LeBeau surrender his rights to co-control over the wallet. It is clear from the minutes that Cohen and Lubin were well-aware of the then current security measures governing access to the cryptocurrency wallet. While they voiced opposition to the arrangement, they only brought this action following commencement of the Derivative Action, months too late.

When it comes to delay, the relevant period begins when the plaintiff learned of the alleged violation. *Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc.*, No. 16-CV-5079 (JGK), 2016 U.S. Dist. LEXIS 107358, 2016 WL 4367990, at *3 (S.D.N.Y. Aug. 12, 2016). Plaintiff's unexplained months-long delay in commencing the instant litigation bars the demanded injunctive relief.

## POINT VI

### PLAINTIFF SHOULD SEEK THIS RELIEF IN
### NEW YORK SUPREME COURT PRIOR PENDING

## ACTION BETWEEN THE PARTIES

The New York Supreme Court Derivative Action predates the instant Complaint. The Court should abstain from any further adjudications in this matter until the Supreme Court has rendered a decision on these very same questions. It is clear that once counterclaims are asserted, this Court will be hearing arguments regurgitated from the state court action dealing with identical parties and issues.

As a general rule, federal courts have an "unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, as here, when parallel state court proceedings exist, a federal district court may decline to exercise its jurisdiction over a particular matter. *Id.* at 818, 96 S.Ct. 1236. "The declination by a federal court to exercise its jurisdiction in light of parallel or duplicative state court proceedings is to be in the interests of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. at 817, 96 S.Ct. 1236.

The existence of what will be nearly identical claims in two different actions results is a needless duplication of proceedings and wasting of judicial resources. Additionally, separate litigation of the construction of the parties' agreement increases the likelihood that the dispute will drag on and decreases the likelihood of settlement. Accordingly, the avoidance of piecemeal litigation weighs heavily in favor of abstention. The Second Circuit noted in *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir.1985) that "[m]aintaining virtually identical suits [arising out of the same set of facts] in two forums ... would waste judicial resources and invite duplicative effort .... [A]voidance of piecemeal litigation is best served by leaving these suits in the state court." 762 F.2d at 211.

Also, here the court is addressing only issues of state law, specifically, contract law, and possibly interpretation of Swiss Law. No federal question is implicated. Thus, abstention is favored. See *Wiggin &*

*Co. v. Ampton Invs., Inc.*, 66 F.Supp.2d 549, 554 (S.D.N.Y.1999) (holding "the absence of a federal question still slightly favors abstention.").

The "First-Filed Doctrine" attempts to advance judicial economy by avoiding duplicative litigation and protecting a plaintiff's choice of forum. *First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989). "'[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second.'" *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir.1991), quoting *First City Nat'l Bank*, 878 F.2d at 79. The doctrine creates a strong presumption in favor of the forum of the first-filed suit. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001). Here there are no such special circumstances which would favor litigation of the questions raised in the Derivative Action before this Court.

In *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202 (2d Cir. 1970), the Second circuit held that there is "no reason why the end result should be different when the party seeking to preserve the primacy of the first court moves the second court to stay its hand rather than asking the first court to enjoin prosecution of the second case." The doctrine also applies where the plaintiff in each action is the same party. *Kellen Co. v. Calphalon Co.*, 54 F. Supp. 2d 218, 223 (S.D.N.Y. 1999); *Cole v. Edwards*, 2004 WL 1874970, *3 (S.D.N.Y. Aug. 13, 2004); see also *Semmes Motors*, 429 F.2d 1197.

In view of the pending New York Supreme Court action, the Court should also abstain from a determination on the instant application. There is a sufficient similarity as to both the parties and the causes of action asserted in the respective actions; the relief sought is the same or substantially the same; and both suits arise out of the same subject matter or series of alleged wrongs.

**POINT VII**

**A BOND IN THE AMOUNT OF THE CRYPTOCURRENCY
SHOULD BE REQUIRED**

Fed. R. Civ. P. 65Fed.R.Civ.P. 65(c) provides "(c) SECURITY. The court may issue a

preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." That security shall be given "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

A party has been "wrongfully enjoined" under Fed.R.Civ.P. 65(c) if it is ultimately found that the enjoined party had, at all times, the right to do the enjoined act. The conclusion that an injunction later dissolved was "wrongful," in the sense that the party had the right to do the enjoined act, does not necessarily imply that the district court abused its discretion in granting the relief in the first place. "[A] temporary injunction may be wrongfully issued although the issuance may not have been improvident as an abusive exercise of the trial court's discretion." *Blumenthal v. Merill Lynch, Pierce, Fenner Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990) (internal citations omitted).

*Almoss, Ltd. v. Furman*, 06 Civ. 8234 (LLS), at *3-4 (S.D.N.Y. July 5, 2007)

*Blumenthal v. Merrill Lync*h, 910 F.2d 1049 (2d Cir. 1990) "The injunction bond is designed "to cover any damages that might result if it were later determined that [the applicant] was not entitled to an injunction." Id. See *Russell v. Farley*, 105 U.S. 433, 438-41, 26 L.Ed. 1060 (1882); *H.E. Fletcher Co. v. Rock of Ages Corp.*, 326 F.2d 13, 16-17 (2d Cir. 1963) (injunction bond renders applicant "liable for damages if in the end it was determined that [the enjoined party] was within its rights in" engaging in enjoined conduct); *Rocky Mountain Timber Corp. v. Federal Insurance Co.*, 520 F.Supp. 433, 434-35 (D.Or. 1980).

## **CONCLUSION**

In view of the totality of the circumstances and the various litigations between and among the parties, Plaintiff's instant action is an obvious attempt to circumvent the Derivative Action and shut down

"John Doe" action pending before this court. If Lubin and Cohen are given unfettered control over (a) the "John Doe" action, (b) the board of directors and (c) the Company cryptocurrency wallet, they will have successfully shielded their past actions from scrutiny and review and made off with the fruits of LeBeau's and Jackson's years of hard work.

If the court does not abstain from this matter or deny Plaintiff's request for injunctive relief, it should require a bond in the amount of the cryptocurrency due to the likelihood that the funds will be wrongfully depleted.

It is respectfully submitted that Plaintiff's instant motion should be denied in its entirety.

Dated: New York, New York
          December 7, 2021

Respectfully submitted,

/s/ Neil L. Postrygacz
Neil L. Postrygacz