UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

SINGULARDTV, GMBH,

Plaintiff,

-against-

ZACHARY LEBEAU and KIMBERLY JACKSON,

Defendants.

------------------------------------------------

Case No. 1:21-cv-10130

### DECLARATION OF NIKLAUS GLATTHARD IN OPPOSITION TO PLAINTIFF'S REQUEST FOR A TEMPORARY RESTRAINING ORDER and PRELIMINARY INJUNCTION

Pursuant to 28 U.S.C. § 1746, I, **NIKLAUS GLATTHARD**, states as follows:

1. I am a partner at Advokatur & Notariat Glatthard, Zurich, Switzerland ("ANG"). ANG, acting through me, advises and represents Mr. Zachary James LeBeau ("LeBeau") in corporate, notarial and dispute resolution matters. A true and correct copy of our power of attorney is attached as Exhibit 1. ANG has advised and represented LeBeau since August 2, 2021.

2. I submit this Declaration in opposition to Plaintiff's request for a temporary restraining order and preliminary injunction in the above-captioned action.

3. In preparing this Declaration, I have reviewed the following documents:

    (a) Meeting minutes for the following meetings of the Board of Directors (the "Board") and the Shareholders of SingularDTV GmbH ("SingularDTV" or the "Company"):
       (i)   May 27, 2021 Board Meeting
       (ii)  June 8, 2021 Board Meeting
       (iii) August 27, 2021 Board Meeting
       (iv)  September 24, 2021 Extraordinary Shareholder Meeting
    (b) Notarial Deed of the Incorporation of SingularDTV incl. the Articles of Association of SingularDTV of October 28, 2016.
    (c) Bylaws of SingularDTV of February 9, 2018 (the "Bylaws")
    (d) The settlement agreement executed between SingularDTV and purportedly Mr. Arie Levy-Cohen ("Levy-Cohen") on May 6, 2021

(e) A resignation letter dated February 12, 2019, purportedly signed by Levy-Cohen (the "Resignation Letter")

4.     Based on the documents I have reviewed, Levy-Cohen, then Chairman of the Board of SingularDTV, signed and delivered the Resignation Letter. To the best of my information, Levy-Cohen signed the Resignation Letter in the presence of Mr. Martin Trepp ("Trepp"), the interim CFO of SingularDTV. A true and correct copy of the Resignation Letter is attached as Exhibit 2.

5.     Under Swiss law, a resignation of a board member of a GmbH is possible at any time, where, as in the case of SingularDTV (cf. Article 12 of the Articles of Association), the board members are elected by the shareholders' meeting (cf. BSK OR II-Watter, Art. 815 N 8). The resignation of the board member becomes effective as an unconditional declaration, which is subject to the rights of third parties acting in good faith, upon receipt by the Chairman or, if applicable, by the Vice-Chairman. To the best of my information, knowledge and belief, the Resignation Letter was delivered by Trepp to all other Board members, Mr. Patrick Allenspach (the Resident Director of the Company in Switzerland; "Allenspach"), Mr. Joseph Michael Lubin ("Lubin") and LeBeau. Levy-Cohen's resignation took effect at the time the Resignation Letter was received by the other Board members.

6.     To the best of my information, knowledge and belief, Levy-Cohen did not attend another meeting of the Shareholders or the Board of SingularDTV – nor did he participate in the business of the Company – from the date of the Resignation Letter until May 2021 when he, together with Lubin, sought to gain control over the Company.

7.     To the best of my information, knowledge and belief, Levy-Cohen has not been re-elected to the Board, following his resignation.

8.     Following Levy-Cohen's resignations as CFO (in or around April 2018) and Board member, Lubin and LeBeau submitted a proposal to Levy-Cohen in the spring of 2019 for his departure from SingularDTV. Because of the continued negotiations with Levy-Cohen for his exit as a shareholder (subsequent to his resignation from the Board on or around February 12, 2021), I understand that the Swiss Commercial Register for the Canton of Zug (the "Zug Commercial Register") was not updated to reflect Levy-Cohen's resignation, which had become effective upon receipt by all the other Board members.

9.     However, under Swiss law, the registration of a board member in the commercial register is declaratory in nature. However, third parties acting in good faith can only be held against the elected person's position on the board if his/her role is registered and published in the commercial register (cf. BSK OR II-Wernli/Rizzi, Art. 710 N 7 et seq.). In other words, Levy-Cohen's resignation had taken effect, but a third party acting in good faith could have maintained that Levy-Cohen continued to be a member of the Board.

10. After extensive efforts, Levy-Cohen purportedly communicated his interest in agreeing to the settlement agreement on March 11, 2021. On May 6, 2021, SingularDTV's then-chief counsel, Carl Volz ("Volz"), received an email containing a PDF copy of the negotiated settlement agreement with Levy-Cohen's purported signature. Volz instructed LeBeau, as CEO of the Company, to make the payment to Levy-Cohen in accordance with the terms of the settlement agreement. To the best of my information, knowledge, and belief, LeBeau executed the transfers on behalf of SingularDTV to the designated cryptocurrency wallets as instructed by Volz on May 7, 2021. On the date of the transfer, the value of the SNGLS tokens was approximately $2,000,000.[1] A true and correct copy of the settlement agreement executed on May 6, 2021 is attached as Exhibit 3.

11. I was informed that that same day, Levy-Cohen informed Allenspach that he had not in fact signed the settlement agreement. It was then deduced that Volz's computer was hacked and that the Company appeared to have been the victim of a cleverly executed fraud.

12. Levy-Cohen's signature on the settlement agreement is indistinguishable from his actual signature. To the best of my information, knowledge and belief, it is undetermined at this time whether Levy-Cohen was involved in the hacking incident.

13. On or around May 27, 2021 the Company purported to hold a board meeting for the purpose of terminating LeBeau as the CEO as a result of the hacking incident.

14. Since Levy-Cohen had resigned from the Board and was never re-elected to that position, Levy-Cohen could not validly convene a meeting of the Board. For the same reason, the Board meeting of June 8, 2021, terminating Mrs. Kim Jackson's ("Jackson") role and the services of the SingularDTV LLC, the US affiliate, and the meeting of August 27, 2021, removing Jackson as COO of the Company and convening an extraordinary shareholders' meeting, among others, were not validly constituted in accordance with Swiss law and para. 14 et seq. of the Company's Bylaws which requires that "*a board meeting is validly constituted, if at least 50% of the Managing Directors are present (including by video or telephone conference*". The Board did not have the required quorum at these meetings and the decisions taken are null and void. A true and correct copy of the Bylaws is attached as Exhibit 4.

15. Under Swiss law, a shareholder in a GmbH may bring an action to withdraw from the company for good cause (Article 822 para. 1 of the Swiss Code of Obligations; "CO"). The right to withdraw from the company is a mandatory and thus inalienable right of each shareholder, which may not be restricted by the articles of association. Accordingly, when assessing the action for withdrawal from the

---

[1] To the best of my information, the value of the SNGLS tokens notably appreciated in the days leading up to the Levy-Cohen redemption due to unusual activity which included Chinese pumpers used to impersonate the Company thereby inflating the value of the tokens. As can be seen on the chart, attached as Exhibit 5, between December 2018 and April of 2021, the price of SNGLS tokens was steadily in the price range of $0.01 - $0.003. In April/May of 2021, the SNGLS price was at an anomalous high. By the end of May of 2021, it had resumed to its usual price of below $0.001.

company, the judge is not obliged to weigh the interests of the plaintiff in withdrawing from the company against the interests of the company in keeping the shareholder in the company. If there is good cause, the shareholder has the right to withdraw from the company, namely even if the company's substance is weakened by the withdrawal (cf. Handschin Lukas/Truniger Christof, Die GmbH, 3rd ed., Zurich - Basel - Geneva 2019, p. 248 et seq.).

16. Swiss law does not explicitly state how to proceed with the ordinary shares of the withdrawing shareholder. However, Article 825a para. 1 CO contains rules on the due date of the compensation, from which it can be concluded that these ordinary shares (i) can be taken over by the company (Article 825a para. 1 no. 1 CO); (ii) can be sold by the company (Article 825a para. 1 no. 2 CO) or (iii) can be cancelled by means of a capital reduction (Article 825a para. 1 no. 3 CO). In the present case, none of these three possibilities can apply: Firstly, SingularDTV's share capital amounts to CHF 20,000, i.e. the statutory minimum capital of a GmbH. A reduction is excluded. Secondly, I learned that the ordinary shares of LeBeau cannot be sold (at least not at present). The Articles of Association and/or the Bylaws also provide for no basis for a forced transfer to the co-shareholders. Thirdly, LeBeau's shares (43% of the shares in SingularDTV) would therefore fall to the Company in the event of his withdrawal. However, if a company acquires its own ordinary shares, the total nominal value of these ordinary shares may not exceed 35% of the share capital (Article 783 para. 1 in conjunction with para. 2 CO). In summary, an action to withdraw was not an option for LeBeau.

17. This does not deprive the shareholder who wishes to withdraw of all means of action. In particular, Article 821 para. 3 CO grants him the right to bring an action before the court against the company for dissolution of the company for good cause. When examining the existence of "good cause" within the meaning of this provision, it will have to be taken into account that a withdrawal - which would generally have priority over the dissolution of the company ("subsidiarity of the action for dissolution") - is excluded due to the acquisition cap of Article 783 para. 2 CO. Instead of dissolution, the court may also decide on another appropriate solution that is reasonable for the parties involved (Article 821 para. 3 CO), but always in compliance with the limits of Article 783 CO.

18. Both an action to withdraw as well as an action for dissolution require good cause. Under Swiss law, good cause generally exists if the essential conditions of a personal and factual nature under which the articles of association were entered into no longer exist, so that the achievement of the company's purpose is rendered impossible, significantly impeded or endangered and the shareholder can no longer be expected to continue the company. The assumption of good cause is thus a matter of judgment and must be examined on the basis of the individual, concrete circumstances of the GmbH concerned (cf. BSK OR II-Stäubli, Art. 821 N 17-21). Dissolution can be demanded for any good cause; these can lie in the circumstances of the company itself, but also in the relationship between the shareholders or between the shareholders concerned and the GmbH.

19. According to Article 812 CO, a director of a GmbH is subject to a strict duty of loyalty. In his decisions and actions, he is bound exclusively to the interests of the company and must exercise his duties with all due care. He is liable for any negligence. The decisive factor is how a reasonable managing director would have acted under the same circumstances, i.e. with the information that was or should have been available at the time of the breach of duty. When examining whether the managing director acted diligently, each transaction must be assessed individually. Stricter standards are to be applied if the managing director does not act in the interest of the company, but in his own interest, in the interest of shareholders or in the interest of third parties (cf. Handschin Lukas/Truniger Christof, Die GmbH, 3rd ed., Zurich - Basel - Geneva 2019, p. 307 et seq.).

20. To the best of my information, knowledge and belief, LeBeau realized Lubin und Levy-Cohen undertook everything - although disputed - to have him removed from his positions and thereby creating the impressions in the exhibits required to have LeBeau deregistered in the Zug Commercial Register. Furthermore, Lubin and Levy-Cohen were continuously subject to conflicts of interest vis-à-vis the Company and have repeatedly breached their duty of care and loyalty as directors of the Company since the Company's incorporation. As the confidence in his co-shareholders, Lubin and Levy-Cohen, had completely broken down, to remain as a shareholder in the Company became intolerable for LeBeau.

21. Against this background, LeBeau filed a conciliation request relating to an action for dissolution of the GmbH with the Justice of Peace Office in Zug, Switzerland on 24 September 2021, including evidence of Lubin's and Levy-Cohen's conflicts of interest and breaches of their duty of care and loyalty. I understand that LeBeau stands by all his statements in the action of September 24, 2021, which were made based on the - although disputed - factual situation created by Levy-Cohen and Lubin in their - null and void - resolutions of the Board as well as the shareholder meeting. A copy of LeBeau's September 24, 2021 filing (translated into English) was submitted as Exhibit 8 to the Declaration of Mr. Michael Mráz of November 26, 2021.

22. At the hearing of December 2, 2021 before the Justice of Peace Office, the parties were not able to reach a settlement. Lubin, Levy-Cohen and Allenspach, through their attorney in Switzerland, Michael Mráz, requested on behalf of SingularDTV, that LeBeau's claims shall be dismissed and contested the facts as described in the conciliation request in their entirety. In the same procedure, Mr. Mráz, filed a statement and counterclaim on behalf of SingularDTV, requesting, among other things, that Ether shall be transferred into another wallet and that LeBeau shall pay damages for the depreciation in value of the Ether between June 2, 2021, and the date of the judgement incl. interest as well as damages in the amount of no less than CHF 2,000,000 to the Company. A true and correct copy of the statement and counterclaim of December 2, 2021 is attached as Exhibit 6.

23. The Justice of Peace Office subsequently issued an order authorizing LeBeau to proceed with the action to the court of first instance within three months from the issuance of the authorization. I have

received the authorization today. <u>A true and correct copy of the authorization to proceed of December 6, 2021 is attached as Exhibit 7.</u>

24. Following the filing of the action for dissolution with the court of first instance within the aforementioned deadline and the payment of the advance on court costs, Lubin, Levy-Cohen and Allenspach, on behalf of SingularDTV, will be offered the opportunity to respond in detail to the assertions in the action for dissolution and submit their detailed counterclaim again.

\* \* \* \* \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in December 7, 2021,
in the City of Zurich, Switzerland

NIKLAUS GLATTHARD
Advokatur & Notariat Glatthard
Limmatquai 80
8001 Zürich, Switzerland
+41 33 828 31 31
niklaus.glatthard@glatthard-law.ch