

EXECUTION COPY

# SETTLEMENT AGREEEMENT
## and
## MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into between Arie Levy-Cohen ("Levy-Cohen") and SingularDTV GmbH (the "Company" and, together with Levy-Cohen, the "Parties");

WHEREAS Levy-Cohen was one of the founders of the Company, served as the Company's Resident Director until May 6, 2021 and remains a shareholder and member of the Company's Board of Directors; and

WHEREAS Levy-Cohen has left his post as Resident Director effective as of May 6, 2021; and

WHEREAS Levy-Cohen has been apprised of the current financial condition of the Company and advised of the Company's plans for the foreseeable future, including but not limited to plans which have the potential to substantially increase the Company's value; and

WHEREAS the Parties wish to effect Levy-Cohen's resignation from the Company's Board of Directors and the surrender of Levy-Cohen's shares in the Company;

NOW THEREFORE, for good and valuable consideration, the receipt, adequacy and sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

1. **Recitals.** The foregoing Recitals are expressly incorporated as part of this Agreement, and the Parties confirm and represent to one another that said Recitals are true and correct to the best of their knowledge, information and belief.

2. **No Admission of Liability.** It is expressly understood that this Agreement and the settlement it represents are entered into solely for the purpose of allowing the Parties to avoid further disagreement and potential litigation. This Agreement does not constitute an admission by either Party of any wrongdoing, contractual obligation or any duty whatsoever, whether based in statute, regulation, common law, or otherwise, and each Party expressly denies that any liability or any such violation has occurred.

3. **Terms of Settlement.** In exchange for Levy-Cohen's resignation from the Company's Board of Directors, his surrender of his Company stock and his agreement to forever relinquish any right to or interest in the Company, any revenue the Company may earn in the future, and any proceeds that may arise from the Company's dissolution or sale, or from any equity or liquidity event involving the Company (excluding payments specifically described in this paragraph), the Company hereby agrees to immediately undertake the following actions for the benefit of Levy-Cohen: (a) forgiveness of any and all debts owed to the Company by Codex Execution GmbH, a Swiss limited liability company in which Levy-Cohen owns a majority interest; (b) delivery of approximately 76,800,000 SNGLS tokens being held by the Company for the benefit of Levy-Cohen; (c) delivery of any other tokens or other digital currencies being held by the Company in the name of and/or for the benefit of Levy-Cohen; and (d) execution of the mutual releases set forth herein. Further if, before the end of calendar year (2023), the Company sells or otherwise monetizes the 765,096 shares it holds in Centrality, a New Zealand Limited Company, it shall promptly pay to Levy-Cohen an amount equal to ten percent (10%) of the gross proceeds of such sale(s) or monetization(s).

4. **Tax Consequences.** The Parties make no representations regarding any potential tax consequences arising from this Agreement. Each Party agrees that it will not assert a claim against the other Party for the payment of any taxes resulting from the provision of any consideration or forgiveness of any debt effected pursuant to this Settlement Agreement.

5. **Termination of all Previous Offers and Agreements.** The Parties hereby agree that, effective as the execution of this Agreement, any prior agreements or understandings which may have existed between the Parties, whether oral or written and of whatever nature, will terminate in all respects and be of no further force or effect.

6. **Certain Acknowledgements.** The Parties hereby acknowledge and agree that, except as expressly set forth herein or as required by law, Levy-Cohen will not be entitled to make a claim for any other compensation or benefits from the Company and, further, that Levy-Cohen hereby agrees that, except as expressly set forth herein or as required by law, he will have no further interest, rights or benefits in respect of his employment by or ownership of the Company.

   a. **General Release.**

      i. **Release of Claims.** The Parties, on behalf of themselves and their families, agents, representatives, heirs, executors, trustees, administrators, attorneys, successors and assigns, predecessors, stockholders, partners, members, directors, managers, officers, employees, agents or other representatives, hereby irrevocably and unconditionally release, settle, cancel, acquit and discharge, waive any and all rights that he, she, it or they may have against, and covenant not to sue each other with regard to any and all claims, contractual or otherwise, demands, costs, rights, causes of action, charges, debts, liens, promises, obligations, complaints, losses, damages and all liability of whatever kind and nature, whether known or unknown from the beginning of time up to and including the time of signing this Agreement, or that otherwise may exist or may arise in respect of the Parties' relationship to each other; provided, that such released claims shall not include any claims to enforce the Parties' rights under this Agreement. Thus, for the purpose of implementing a full and complete release and discharge of the Parties' rights and obligations, the Parties expressly acknowledge that this Agreement is intended to include in its effect, without limitation, all released claims that the Parties do not know or suspect to exist in their favor at the time of execution hereof, and that this Agreement contemplates the extinguishment of any released claims.

      ii. **Covenant Not to Sue; Certain Proceedings.** The Parties agree not to bring any action, suit or proceeding whatsoever (including the initiation of governmental proceedings or investigations of any type) against each other for any matter or circumstance covered under the foregoing paragraph. Further, the Parties agree not to encourage or suggest to any other person or entity that he, she or it institute any legal action against the other Party. Notwithstanding the foregoing, this release is not intended to interfere with a Party's right to file a charge with the Equal Employment Opportunity Commission (EEOC) in connection with any claim.

      iii. **Extent of Release.** This release is valid whether any claim arises under any federal, state or local statute or regulation (including, without limitation, Title VII of the

Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, as amended by the Older Workers Benefits Protection Act of 1990, the Equal Pay Act, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Family and Medical Leave Act, the New York State Constitution, the New York Human Rights Law (Executive Law §§ 290 *et seq.*), the New York City Human Rights Law (N.Y. City Administrative Code §8-101 *et seq.*), New York Labor Law §§740, *et seq.* as amended, the Hawaii Constitution, Hawaii Employment Practices Law; Hawaii Wage and Hour Law; Hawaii Wages and Other Compensation Law, the laws of Puerto Rico, the California Constitution, the California Fair Employment and Housing Act, the California Minimum Wage Law; the Equal Pay Law for California, California Family Rights Act, the California Labor Code (except the provisions relating to workers' compensation and as further described below), the California Business & Professions Code §§ 17200, et seq, and all other federal, state, city or local statutes regulating the terms and conditions of employment), regulation or ordinance, under the common law or in equity (including any claims in tort or under contract for wrongful discharge or otherwise), or under any policy, agreement, understanding or promise, written or oral, formal or informal, between the Parties. Levy-Cohen acknowledges and agrees that he has received all salary, wages, bonuses, or other such sums due to him other than amounts to be paid pursuant to this Agreement. In light of the payment by the Company of all wages due, the Parties further acknowledge and agree that California Labor Code Section 206.5 is not applicable to the Parties. The Parties also understand and agree that this Agreement extends to all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, past or present, and all rights under Section 1542 of the California Civil Code are hereby expressly waived. Section 1542 of the California Civil Code reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR". Thus, notwithstanding the provisions of section 1542, and for the purpose of implementing a full and complete release and discharge of the Releasees, the Parties expressly acknowledge that this Agreement is intended to include in its effect, without limitation, all released claims that the Parties do not know or suspect to exist in their favor at the time of execution hereof, and that this Agreement contemplates the extinguishment of any released claims. Notwithstanding any provision of this Agreement, Levy-Cohen is not releasing the Company from any obligation it may have to him in the future under California Labor Code Section 2802 to the extent provided therein.

   **iv.**  **Claims that Cannot be Waived.** However, this general release excludes, and Levy-Cohen does not waive, release, or discharge (A) claims that cannot be waived by law, such as claims for workers' compensation or unemployment benefits; (B) indemnification rights Levy-Cohen may have against the Company; and (C) any right to file an unfair labor practice charge under the National Labor Relations Act.

  **b.**  **Restrictive Covenants.**

   **i.**  **Confidentiality.** Levy-Cohen acknowledges and agrees that at all times, without the prior written consent of the Company and except as required in performance of his duties hereunder, he shall not use or disclose any confidential or proprietary trade secrets, customer lists, drawings, designs, marketing plans, management organization information

(including, but not limited to, data and other information relating to members of the boards of directors of the Company or to the management of the Company), operating policies or manuals, business plans, financial records, or other financial, commercial, business or technical information relating to the Company (collectively, "Confidential Information") to any third Person (as defined below) unless such Confidential Information has been previously disclosed to the public generally, is in the public domain, or has been rightfully received by Levy-Cohen from a third party who is authorized to make such disclosure, in each case, other than by reason of Levy-Cohen's breach of this paragraph, or the disclosure of which Levy-Cohen may be required by law; *provided*, *however*, Levy-Cohen will provide the Company with prompt notice of any requirement or proceeding which would compel him to disclose the Confidential Information (including, without limitation, a judicial or administrative proceeding or by interrogatories, civil investigative demand, subpoena or other legal process) so that the Company may seek an appropriate protective order or other appropriate remedy, and Levy-Cohen will cooperate (at the Company's sole expense) with the Company's efforts in connection therewith. For purposes of this Agreement, "Person" shall mean any natural person, partnership, limited liability company, association, corporation, company, trust, business trust, governmental authority or other entity. Nothing in this Agreement prohibits or restricts Levy-Cohen (or his attorney) from initiating communications directly with, responding to an inquiry from, or providing testimony before any federal or state regulatory authority regarding this Agreement or the operations of the Company.

    **ii.**  **Non-Solicitation of Employees.** Beginning on the date hereof and ending the 6-month anniversary of the date hereof (the "Restricted Solicitation Period"), Levy-Cohen shall not, directly or indirectly, for himself or on behalf of or in conjunction with any other person, (A) attempt to hire any person that is an employee of the Company or was within six (6) months prior to the execution of this Agreement; provided, however, that the foregoing shall not be breached by a solicitation to the general public or through general advertising; or (B) solicit, advise or encourage any person, firm, government agency or corporation to withdraw, curtail or cancel its business with the Company.

    **iii.**  **Non-Disparagement.** The Parties mutually acknowledge and agree that neither Party shall directly or indirectly engage in any conduct or make any statement disparaging or criticizing in any way of the other Party including, in the case of the Company, its employees or personnel, or directly or indirectly engage in any other conduct or make any other statement that could be reasonably expected to impair the goodwill or reputation of the other party, except to the extent required by law, and then only after consultation with the other party to the extent possible, or to enforce the terms of this Agreement. However, these non-disparagement obligations do not limit either Party's ability to truthfully communicate with the EEOC, the National Labor Relations Board (NLRB), the SEC and comparable state and local agencies whether such communication is initiated by the Party or in response to the government.

    **iv.**  **Return of Documents.** Levy-Cohen acknowledges and agrees that he shall deliver to the Company all property of the Company in his possession, including but not limited to all Company documents and data of any nature, in whatever medium.

    **v.**  **Remedies.** The Parties acknowledge and agree that the covenants, obligations and agreements contained in this paragraph relate to special, unique and extraordinary

matters and that a violation of any of the terms of such covenants, obligations or agreements will cause the other Party irreparable injury for which adequate remedies are not available at law. Therefore, the Parties agree that in the event of a breach of the foregoing covenants, obligations or agreements, the other Party shall be entitled to an injunction, restraining order or such other equitable relief (without the requirement to post bond) to restrain the other Party from committing any violation of such covenants, obligations or agreements. These injunctive remedies are cumulative and in addition to any other rights and remedies the Parties may have.

7. **Confidentiality of this Agreement; No Admission.** The Parties will keep confidential and will not release or divulge, either orally or in writing to any person, except as may be required by law or regulation or by order of any court, this Agreement or any provision hereof or any information with respect thereto; *provided*, that nothing contained herein will prohibit the Parties from disclosing the terms of this Agreement to their spouse, attorneys, accountants, financial advisors or members of their immediate family. Nothing in this Agreement or any other policy or agreement between the Parties restricts or impedes the exercise of protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. This Agreement does not constitute an admission by the Parties or the Releasees of any violation of any contract or law, and the Parties and the Releasees expressly deny any such liability. This Agreement may not be introduced in any action or proceeding by anyone for any purpose except to evidence or enforce its terms.

8. **Consideration; Legal Advice, Reliance.** The consideration provided hereunder by the Parties is not required under the Company's standard policies and there are no other circumstances other than the Parties' assent to the terms of this Agreement that would require the Parties to provide such consideration. The Parties represent and acknowledge that (a) they have been given adequate time to consider this Agreement and have been given the opportunity to discuss all aspects of this Agreement with their private attorney; (b) they have carefully read and fully understand all the provisions of this Agreement; (c) they voluntarily entered into this Agreement, without duress or coercion; and (d) they have not heretofore assigned or transferred or purported to assign or transfer, to any person or entity, any of the claims described in this Agreement or any portion thereof or any interest therein.

9. **General Provisions.**

    a. **Cooperation.** The Parties agree to timely execute and deliver, or cause to be timely executed or delivered, such additional or further transfers, assignments, resolutions, endorsements, powers of attorney or other instruments or documents as may reasonably be requested by the other for the purpose of carrying out the intentions of the Parties hereto. Any reasonable out-of-pocket expenses associated with preparing or obtaining the requested material shall be borne by the requesting Party. Each Party agrees to cooperate with the other in effecting the transactions contemplated hereunder.

    b. **Third Party Beneficiaries.** All Releasees under this Agreement who are not signatories to this Agreement shall be deemed to be third party beneficiaries of this Agreement to the same extent as if they were signatories hereto.

<u>EXECUTION COPY</u>

   **c.** **Withholding.** The Company shall withhold from any amounts payable under this Agreement such federal, state and local taxes as may be required or permitted to be withheld pursuant to any applicable law or regulation.

   **d.** **Entire Agreement.** This Agreement constitutes the sole and complete understanding of the Parties with respect to the subject matter hereof. The Parties represent to each other that in executing this Agreement, they do not rely and have not relied upon any representation or statement not set forth herein made by any other person with regard to the subject matter, basis or effect of this Agreement.

   **e.** **Amendment; Waiver; Successors.** No amendment, modification or alteration of the terms and provisions of this Agreement shall be binding unless the same shall be in writing and duly executed by the Parties. No waiver of any of the provisions of this Agreement shall be deemed to or shall constitute a waiver of any other provision hereof. No delay on the part of any Party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof. This Agreement shall be binding upon the parties hereto and their respective successors, trustees, administrators, transferees and assigns.

   **f.** **Governing Law; Severability; Blue Pencil.** This Agreement will be governed by the laws of New Jersey, without regard to its conflict of laws rules. In the event that any one or more of the provisions of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby. The Parties agree that the covenants contained in paragraph 6 are reasonable covenants under the circumstances, and further agree that if, in the opinion of any court of competent jurisdiction such covenants are not reasonable in any respect, such court shall have the right, power and authority to excise or modify such provision or provisions and enforce the remainder of such covenants as so amended.

   **g.** **Counterparts.** This Agreement may be executed in counterparts, each of which shall for all purposes be deemed to be an original, and all of which shall constitute the same instrument. The Parties hereto agree to accept a signed facsimile (or "PDF") copy of this Agreement as a fully binding original.

* * * *

EXECUTION COPY

**IN WITNESS WHEREOF**, the Parties have hereto set their hand as of the date and year first indicated above.

**AGREED TO AND ACCEPTED BY:**

**SingularDTV GmbH**　　　　　　　　　　　　　**Arie Levy-Cohen**

By: Zach LeBeau
Chief Executive Officer

_____
5/6/2021
Date

_____
Date

7