

# Annex A:
# Organisational By-Laws and Board Regulation

## SingularDTV GmbH
with registered seat in Zug, Switzerland

## Table of Contents

| | | |
|---|---|---|
| I. | Policy Revision Tracker | 2 |
| II. | General Matters | 2 |
| III. | Executive Bodies | 2 |
| IV | Board of Directors | 2 |
| | A. Organization | 2 |
| | B. Duties and Powers | 3 |
| | C. Meetings | 3 |
| | D. Quorum of Attendance | 4 |
| | E. Resolutions | 4 |
| | F. Circular Resolutions and Other Forms of Resolutions | 5 |
| | G. Minutes | 5 |
| | H. Information | 5 |
| | I. Remuneration | 6 |
| V. | Senior Management | 6 |
| | A. Composition | 6 |
| | B. Organization | 6 |
| | C. Meetings | 7 |
| | D. Functions | 7 |
| | E. Reporting | 7 |
| VI. | Signing and Signing Authority | 7 |
| VII. | Governance | 7 |
| | A. General Principles on Asset Management | 7 |
| | B. Governance on Business Partners and Parties | 8 |
| | C. Organizational Governance | 8 |
| | D. Financial Governance | 9 |
| |    1. Accounting | 9 |
| |    2. Financial Planning | 9 |
| |    3. Financial Control | 9 |
| VIII. | Business Principles | 10 |
| |    1. Arm's Length | 10 |
| |    2. Effective Place of Management | 10 |
| IX. | Legal Compliance | 10 |
| X. | Conflicts of Interest | 10 |
| XI. | Outside Activities | 11 |
| XII. | Nepotism | 11 |
| XIII. | Bribery and Improper Payments and Transactions | 12 |
| XIV. | Confidentiality and Privacy | 12 |
| XV. | General Provisions | 13 |
| XVI. | Miscellaneous | 13 |
| | A. Effectiveness | 13 |
| | B. Modifications and Amendments | 13 |

## I. Policy Revision Tracker

| Version No. | Changes Made | Section / Chapter | Approved by (Name & Role) | Valid From |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

## II. General Matters

1. The business of SingularDTV GmbH (the "**Company**") shall be conducted in accordance with Swiss law, the articles of association of the Company (the "**Articles**"), these board regulations (the "**Regulations**"), the Compliance Handbook of the Company and any policies issued by the Board from time to time.

2. The Regulations have been adopted by the Board of Directors (the "**Board**") in accordance with the Swiss Code of Obligations ("**CO**") and Articles [15] and [19] of the Articles.

3. The purpose of these Regulations is to govern the organization of the Board, define the executive powers within the Company and to delegate part of the duties and powers of the Board to the senior management of the Company (the "**Senior Management**").

## III. Executive Bodies

4. The Company has the following executive bodies ("**Body**" or "**Bodies**"):

    - the Board (consisting of all its Managing Directors jointly, appointed by the Shareholders and registered in the Commercial Register); (Managing Directors hereinafter also referred to as "**Board Member**" or "**Board Members**"); and

    - the Senior Management.

## IV. Board of Directors

### A. Organization

5. The shareholders of the Company ("Shareholders") shall appoint the Board. By simple majority the Shareholders are free to appoint as many managing directors as they wish. Also by simple majority any Managing Director can be dismissed provided that to be dismissed managing director will be consulted prior to such dismissal. The Board shall determine its own organization. It shall constitute separate committees as the development and the particular needs of the Company may require (e.g. for risk controlling, risk management, compensation issues, financial controlling, governance, or special projects). In such case special regulations may be issued by the Board.

6  It shall appoint its chairman (the "**Chairman**") for [one (1) year] tenure and the chairman can be reappointed by a simple majority. The Chairman has all duties and competencies conferred to him by law, the Articles of Incorporation and these Regulations.

7  The Chairman shall be one of the Managing Directors and shall be nominated by the General Meeting of Shareholders.

8  The Board shall appoint a secretary, who needs not be a member of the Board nor a shareholder.

### B.   Duties and Powers

9  The Board has the following duties and powers which by law (Art. 810 para. 2 CO) may not be delegated:

- to overall manage the Company and issue the necessary directives;
- to determine the Company's organization;
- to organize the accounting system, the financial control, as well as the financial planning systems (liquidity planning);
- to exercise the supervision over the persons entrusted with the management, in particular with respect to compliance with the law and with the Articles, regulations and directives;
- to prepare the business report, as well as the General Meeting of the shareholders, and to implement the latter's resolutions;
- to inform the court in case of insolvency or over-indebtedness.
- to resolve on any other matter, which is subject to board resolution pursuant to the Articles or mandatory law.

### C.   Meetings

10  Meetings of the Board shall be convened by the Chairman as often as the business of the Company requires and whenever a member, indicating the reasons therefore, requests, but at least four (4) times a year.

11  The notice of any board meeting shall be dispatched in writing by courier, mail, fax or e-mail not less than seven (7) days prior to the date of the meeting. Such advance notice may be reasonably shortened in case urgent matters require an earlier or immediate meeting, with the approval of the majority of all Board Members.

12  The notice shall specify the place, date and time of the meeting as well as the agenda and, if at all possible, the proposed wording of the resolutions. Together with the notice, the members shall be provided with all information reasonably necessary for them to prepare for the meeting and make an informed decision on the agenda item.

13  Meetings may be held by video or telephone conference, but shall to the maximum extent practically possible be held in Switzerland. However, in any case its strategic meetings and decisions will in principle take place in Switzerland. As a minimum, 1 of the agreed minimum 4 board meetings per year shall take place in Switzerland.

### D.   Quorum of Attendance

14  A board meeting is validly constituted, if at least 50% if the Managing Directors are present (including by video or telephone conference).

15  No quorum requirement applies for meetings at which the Board confirms the execution of a capital increase and resolves on changes of the Articles in connection with a share capital increase resolved by the General Meeting of Shareholders.

16  The Chairman shall have the casting vote.

### F.   Resolutions

17  Except as set forth below, Board resolutions are taken by the majority of the votes of the Managing Directors present. In the event of equality of votes cast, the Chairman shall have the casting vote.

18  In addition, any affirmative decision on any of the following resolutions (the "**Important Board Matters**") shall require the consent of **at least 50% if all appointed** Managing Directors:

- any acquisition of a business or any part thereof (be it a share or asset transaction);

- the sale, disposal or transfer of all or substantially all of the Company's Business and/or assets;

- the entering into any joint venture or partnership or any profit sharing agreement (other than routine arrangements wholly within the ordinary course of business);

- any investment, capital expenditure, sale of assets, incurrence of debt or any contractual obligation by the Company in excess of CHF 1 million (whether by a single transaction or a series of related transactions) unless such expenditure has been specifically provided for in the Budget and Business Plan previously approved by the Board;

- any agreement providing for obligations in excess of CHF 1 million (whether by a single transaction or a series of related transactions), save as specifically set forth in the Budget and Business Plan as previously approved by the Board;

- the appointment and removal of the Company's CEO and all other members of the Senior Management;

- the approval of the Budget and its Business Plan, and any change thereto;

- the listing of shares of the Company on any securities exchange or automated quotation system;

- any related party transactions and arrangements including variations thereof;

- any transactions or arrangements other than on arm's length terms and/or in the ordinary course of business;

- the approval and amendment of any token or share option plan and option and/or token or share grants to the Senior Management, employees, contractors (employees and contractors hereinafter jointly: "**Employees**") or any third party;

- any proposed material change in accounting policies or principles save with the prior approval of the Company's auditors;

- any purchase by the Company of any of its own shares;

- any transfer of shares other than in accordance with the Shareholders Agreement; and

- any amendment or modification of these Regulations.

### F.     Circular Resolutions and Other Forms of Resolutions

19  If a written proposal for a resolution has been submitted, the resolution may be taken by circular letter or pdf document sent by email, unless a Director requests a discussion in a formal meeting. A resolution by circular letter shall require the approval of all the members of the Board.

### G.     Minutes

20  Minutes of the meetings of the Board shall be taken. Such minutes shall in particular contain the declarations made by any one member with the request to be included in the minutes as well as all the resolutions.

21  The minutes shall be signed by the Chairman of the meeting and the Secretary.

### H.     Information

22  Each member of the Board may at all times request information about all matters concerning the Company and its business.

23  At meetings, all persons engaged in the management of the Company shall be required to provide the information requested. Outside meetings, each Board member has the right to request information from the Senior Management regarding the general business affairs and, with the approval of the Chairman, also regarding particular business transactions.

24  The Board shall be proactively provided with all information relating to the business of the Company and all persons involved in the management of the Company shall provide each of the Managing Directors with all information reasonably requested by each of them.

## I. Remuneration

25 The Board shall with a supermajority quorum of 50% determine the remuneration and employment terms of the Board members (or changes thereof).

26 Upon presentation of appropriate receipts, a Managing Director shall be reimbursed by the Company for all business expenses (including travel costs and hotel accommodation).

## V. Senior Management

27 The management of the Company is entrusted to the Company's Senior Management. Senior Management is appointed by the Board. The Board shall determine the responsibilities, remuneration and employment terms of Senior Management.

### A. Composition

28 The Senior Management shall be composed of the following members with the indicated main responsibilities:

- Chief Executive Officer (CEO); the CEO is responsible for leading the development and execution of the Company's long-term strategy.

- Chief Financial Officer (CFO); the CFO is the corporate officer primarily responsible for managing the financial risks of the corporation. This officer is also responsible for financial planning and record-keeping, as well as financial reporting of complete and comprehensive financial information

- Chief Operations Officer (COO); The COO is responsible for the daily operation of the company, and routinely reports to the Board

- Chief Strategic Officer (CSO); main responsibilities: The CSO is responsible for assisting with developing, communicating, executing, and sustaining corporate strategic initiatives.

- Chief Marketing Officer (CMO); CMO's primary responsibility is to generate revenue by increasing sales through successful marketing for the entire organization, using market research, pricing, product marketing, marketing communications, advertising and public relations.

29 and any other officers as the Board may determine from time to time.

### B. Organization

30 The Senior Management shall be headed by the CEO. The CEO shall be responsible for the management of the Company and each member of the Senior Management shall report directly to the CEO.

### C. Meetings

31 The Senior Management shall meet at least monthly and whenever a meeting is requested by one of its members. Meetings may also be held by video or telephone conference unless a member requests a discussion in a physical meeting.

### D. Functions

32 The management of the Company shall be delegated to the Senior Management to the extent the management is not by law, the Articles or these Regulations reserved to the Board. Without limiting the generality of the foregoing, the Senior Management shall implement the business policies of the Company, establish the business plan, under the Board's supervision and control, and manage the day-to-day business of the Company.

### E. Reporting

33 The members of Senior Management shall, as a rule, report to the CEO.

34 At each meeting of the Board, the CEO, or, if so required by the Board, any member of the Senior Management, shall inform the Board on the state of affairs of the Company so as to allow the Board to comply with its statutory duty to ultimately manage and supervise the Company. If deemed necessary or appropriate, the CEO or the Board may request the participation of other officers.

35 At any time, the CEO shall without delay report to the Board any and all significant changes, developments and events affecting the business of the Company.

## VI. Signing and Signing Authority

36 The Board appoints the persons authorized to represent the Company and sign on its behalf respectively it determines their signing authority. Execution of agreements on behalf of the Company shall whenever possible occur in Switzerland, particularly strategic and material agreements. Execution copies of each agreement will be filed at the Company's address. Where applicable, Board minutes confirming the quorum approval for a specific contract will be filed attached to the Company's execution copy. Unless otherwise resolved by the Board, each of its members, except the Swiss resident CFO who has sole signing rights, shall have joint signatory power by two (*Kollektivzeichnungsberechtigung zu Zweien*). The CFO is solely entitled to grant bank proxies.

## VII. Governance

### A. General Principles on Asset Management

37 The physical assets of the Company shall be managed according to recognized commercial principles. The risk shall be diversified. Thereby, the physical assets shall not be endangered by speculative transactions, but does not need to be invested gilt-edged either.

### B.     Governance on Business Partners and Parties

38   The Company strives to do business with Business Partners of sound business character and reputation. One essential objective is to uphold ethical standards both in internal affairs and in interactions with other corporate entities as well as individuals, non-profit organisations, non-governmental organisations and governments.

39   The Company shall make sure that the Business Partners and the Parties are aware of the fact that the Company is co-building a new business environment based on new decentralized ledger technologies and applications in the crypto space. The Company shall suggest to its Business Partners:

   a)   Inspection and on-site audit rights upon first request by the Company;

   b)   Information rights with regard to contractual performance and legal compliance; and

   c)   Immediate termination and/or veto rights for agreements and/or execution of Agreements with the Company compliant with laws, regulations, codes of conduct, codes of ethics, and policies initiated or accepted by the Company, and this Regulation.

### C.     Organizational Governance

40   The Company shall maintain a risk-based organization, which allows a sufficient control over its activities. Amongst other things the Bodies and its Employees are responsible for the compliant execution of the following:

   a)   Financial transaction oversight including accounting, preparation of the annual accounts, budget and liquidity planning, being knowledgeable about who has access to the organization's funds, and any outstanding bills or debts owed, developing systems for keeping cash flow manageable;

   b)   Timely submission of tax returns, tax payments,

   c)   Legal, regulatory and tax compliance;

   d)   Approval and execution of contracts:

   e)   Representation of the Company, regulation of signatory rights;

   f)   Compensation schemes and

   g)   Keeping and maintaining records of relevant business activities and corresponding resolutions.

41   Any Body or Employee shall immediately inform the Board about the following (actual, threatening or expected) events:

   a)   Regulatory matters, authority requests and investigations;

   b)   Any change of business plan, strategy of purpose, strategic alliances; and

    c)    Any change of control of a Business Partner.

## D. Financial Governance

### 1. Accounting

42 The accounting records shall be kept at the registered office of the Company, or such other place as the Company may think fit, and shall at all times be open to inspection by each of the Board members.

43 The accounting records shall be such as to disclose with reasonable accuracy the financial position of the Company, to provide proper audit trails for internal/external/tax audits and to permit observance of all laws, statutes, rules and regulations, with particular regard to taxes, duties, VAT, depreciation etc.

### 2. Financial Planning

44 The process of financial planning shall ensure the Company's objectives to be achieved; the strategic direction which will be followed in order to achieve the Company's objectives; the resources required to implement the agreed strategic direction; the impact upon the value of the Company's funds (in fiat and in cryptocurrencies); the major business and financial risks which may prevent achievement of the Company's objectives and their potential impact upon the values held by the Company.

45 The Business Plan shall be drawn up and adopted annually and state the following items:

    a)    Scope of business to be exploited (and hence level of financial risk) and all of the businesses controlled by the Company;

    b)    Forecast of the Company's objectives and strategic directions to be followed attained as well as strategies, financial policies and tools to attain the goals;

    c)    Forecast of the financial outcomes for the Company and its projects as a whole, taking into account all major project and financial risks likely to be incurred during the plan period; and

    d)    Budgets for the Company`s major projects.

### 3. Financial Control

46 A system of internal controls shall be established and maintained in order to safeguard the assets of the Company, achieve completeness and accuracy of all records, enable the Company to be managed in an orderly and efficient manner and to achieve adherence to management policies.

47 The internal control system shall ensure that project performance against Business Plan and Budget is fully monitored and that timely implementation of necessary changes in such plans and budgets are achieved.

48 Any net token launch/TGE proceeds received by the Company shall be released only with the consent of 50% of the Board.

## VIII. Business Principles

### 1. Arm's Length

49  Any services provided or obtained by the Company shall be paid on a «arm's length» basis:

  a)  Any „cost-plus" mark-up shall be comparable with third party transactions;

  b)  The principle is generally applicable to transactions and contractual relationships with affiliated parties of the Company and its shareholders as well as with Business Partners in- and outside of Switzerland.

### 2. Effective Place of Management

50  The effective place of business shall be the legal seat of the Company.

## IX. Legal Compliance

51  The Company shall ensure that all its activities are in compliance with the laws of Switzerland and any other country in which the Company is doing business. This particularly includes:

  a)  Anti-bribery or anti-corruption laws;

  b)  Antitrust laws, Financial Reputations;

  c)  Prohibitions on money laundering or financing terrorism; and

  d)  Export and trade control regulations.

52  The Company is prohibited from engaging in any financial transaction involving property, funds or monetary instruments which promotes or results from criminal activity punishable in Switzerland or any other country in which the Company is doing business, or aid and abet in hiding the proceeds of terrorism or other criminal activity. Covered Individuals shall not aid, abet or become involved in any engagement which violates these Regulations, as further described in the Company's Compliance Handbook.

53  The Company is responsible for ensuring that it at all times complies with restrictions or possible licensing requirements of the competent Financial Market Supervisory Authority (FINMA) or any other authority as required by law that are materially applicable to the Company and its business.

## X. Conflicts of Interest

54  A conflict of interest may arise when a Body, shareholder of the Company, Employee, Business Partner or a Party takes actions or has interests that may make it difficult to perform his duties and responsibilities for the Company. All such conflicts shall be avoided.

55  Particular areas of conflict of interest that are of concern include:

a) **Personal financial gain:** Every Party shall avoid any situation that may involve, or appear to involve, a conflict between their personal interests and the interests of the Company. In dealing with current or potential Business Partners, he/she shall act in the best interests of the Company. He/she shall not seek to gain personal advantage because of his/her position. He/she shall make prompt and full disclosure to his supervisor or the Board of any situation that may involve a conflict of interest.

b) **Insider trading:** The Board is aware of the dominant role of highly volatile cryptographic tokens, including but not limited to ETH and SNGLS, in the activities of the Company, and the potential large impact of actions taken by the Board, Employees and other involved parties on the value of these tokens as well as their current uncertain regulatory status, insider trading is a prime concern.

56 Bodies or Employees shall:

a) At no point take out options, forward contracts, contracts for difference or other financial contracts on SNGLS or SNGLS-based tokens with the intent of personally profiting from Confidential Information,

b) At no point make decisions that affect the value of SNGLS or SNGLS-based tokens with the intent of increasing the value of their personal current or anticipated portfolio of said tokens, and

c) At no point provide Confidential Information to others when there is reasonable suspicion that this information will be used to conduct trades that would be forbidden for the covered individual themselves.

57 **"Confidential Information"** in this section is taken to include any information about current and planned actions of the Company or a Party that is not available to the general public.

## XI. Outside Activities

58 Bodies and Employees shall not have outside employment (for themselves or others) or activities that compete with the Company which could have a negative impact on the performance of their duties for the Company, except as approved by the Board.

## XII. Nepotism

59 Bodies and Employees shall:

a) Disclose all situations in which they may have control or influence over an actual or potential relationship with an employee or business partner where the individual or a director, owner or beneficiary of the entity in question is a family member of such Body or Employee, and

b) Excuse themselves from voting decisions or positions of authority relating to such employees or business partners. Any individually authorised representatives of the Company will in such case at all times refrain from using this individual signing authority.

### XIII. Bribery and Improper Payments and Transactions

60 An "**Improper Payment or Transaction**" under this section shall be considered to include any payment or gift to an officer, employee or director of individuals, companies, governments or other organizations for the purpose of influencing their resolutions, activities and decisions, inducing that person to do or omit to do any act in violation of his lawful, statutory or even contractual duty, or securing any improper advantage in order to assist in obtaining or retaining business or in directing business to any other party.

61 It is the Company's policy to conduct all its business in an honest and ethical manner. The Company all its Employees globally take a zero-tolerance approach to Bribery and Corruption and are committed to acting professionally, fairly and with integrity in all of their business dealings and relationships wherever operating. The Company is committed implementing and enforcing effective systems to counter bribery.

62 The Company will uphold all laws relevant to countering bribery and corruption in all the jurisdictions in which the organization operates and remains bound to local and national laws including but not limited to US FCPA, UK Bribery Act and Swiss anti-corruption regulations.

63 In any event, prior to acceptance, all hospitality, entertainment and gifts shall be reported by all Bodies and Employees to the Compliance Manager, who shall closely monitor these as to frequency and amount to ensure that cumulatively they do not create the appearance of impropriety or result in an improper payment or transaction or a violation of any applicable laws and regulations.

64 None of the Bodies or Employees

    a)    may give or receive an improper payment or transaction;

    b)    may give or receive gifts, gratuities or entertainment beyond what is customary, reasonable and lawful; and

    c)    receive kickbacks, rebates or commissions.

### XIV. Confidentiality and Privacy

65 It is prohibited to disclose any confidential information of the Company including intellectual property and trade secrets (including development and production information, formulations, technical specifications, technical drawings, internal communications, business plans, marketing and sales programs, customer lists, pricing policies, and company financial information other than that published in the Company's annual or periodic public reports) with any third party without a Managing Director's written approval.

66 Every Party is obliged to protect the Company's(ies') confidential information as well as that of its customers, suppliers and third parties who have disclosed information to the Company(ies) in confidence. The obligation to maintain confidentiality extends beyond the termination of the relevant relationship. Every Party must comply with applicable data protection laws when handling personal information (e.g. personal information about an individual's identity, personal financial or credit information; or health and family matters).

## XV. General Provisions

67. Resolutions of the Board regarding the amendment of these Board Regulations require the unanimous approval of all members of the Board.

## XVI. Miscellaneous

### A. Effectiveness

68. These Regulations shall become effective as of the day hereof.

### B. Modifications and Amendments

69. Modifications and amendments of these Regulations require a resolution by the Board to be adopted by a qualified majority of the members of the Board as set forth in Section IV.E above.

\* \* \*

Zug, 9 Feb. 18