**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SINGULARDTV, GMBH,

                    Plaintiff,

          v.

ZACHARY LEBEAU and KIMBERLY
JACKSON,

                    Defendants.

Case No. 1:21-cv-10130

**ORAL ARGUMENT REQUESTED**

<u>**SINGULARDTV GMBH'S REPLY MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**MOTION FOR ORDER TO SHOW CAUSE**</u>
<u>**WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**</u>

December 10, 2021

KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220

Benjamin J. A. Sauter
Christopher S. Cogburn
Alexa R. Perlman

*Attorneys for Plaintiff*
*SingularDTV GmbH*

## PRELIMINARY STATEMENT

SingularDTV's Motion [1] is about its right to control its own property. Defendants' opposition brief (the "Opposition," cited as "Opp." (Dkt. No. 39) at 10-12) and supporting declarations leave most of the material issues untouched:

- Defendants do not dispute that the Cold Wallet belongs to SingularDTV and that they remain in unilateral control of it. (LeBeau Decl. (Dkt. No. 37) ¶ 35.)

- LeBeau admits that the "television and film assets" developed using SingularDTV assets are "owned by the Company." (*Id.* ¶ 5).

- Defendants do not attempt to defend their hijacking of Company e-mail accounts since October 2021.

- Defendants do not dispute that LeBeau was removed from the Board of Directors by shareholder vote on September 24, 2021, and he admits as much in his Swiss dissolution filings. (Dkt. No. 17-11 at 4; Dkt. No. 18-8 at 9.)

These undisputed facts meet SingularDTV's burden to show "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Citigroup Glob. Mkts., Inc. v. VCG Special Opps. Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

As anticipated in SingularDTV's Opening Brief, Defendants rely heavily on the false assertion that Arie Levy-Cohen resigned from SingularDTV's Board of Directors on February 12, 2019. (*See* Br. at 20.) This theory is so audacious that LeBeau himself apparently never dared to suggest it openly for over two years, waiting until *after* he was terminated in May 2021 to voice objection to Levy-Cohen's status. In reality, an unbroken line of minutes from Shareholder and Board meetings, updates to the Swiss Commercial Register, and Company e-mail correspondence—including minutes LeBeau signed and correspondence he conducted— conclusively demonstrate that Levy-Cohen remains a Director of SingularDTV.

---

[1] Unless otherwise noted, all capitalized terms have the meanings ascribed to them in SingularDTV's opening memorandum of law (the "Opening Brief," cited as "Br." (Dkt. No. 15)), and all emphases are added.

Defendants also assert that their malicious actions are not causing the Company irreparable harm because the Company is "effectively defunct." (LeBeau Decl. ¶ 4.) This too is false. As the extortionate "exit proposal" Mr. LeBeau sent to the other shareholders this August makes clear, the Company maintains valuable business lines and assets, including plans for a blockchain-based digital-rights-management software and a substantial intellectual-property portfolio. (*See* Dkt. No. 17-10 at 13–14.) The current gridlock in SingularDTV's operations—which Defendants are causing by refusing to return the Company's capital and intellectual property, locking employees out of their e-mail accounts, interfering with vendor relationships, and seeking involuntary dissolution in Switzerland—is itself conclusive evidence of the irreparable harm the Defendants are inflicting on the Company, underscoring the need for preliminary relief.

Meanwhile, evidence is mounting that LeBeau was in on the alleged Hack in May 2021 and has committed other misdeeds involving Company funds. As the Court will see from the accompanying declaration of Kevin Madura, an experienced blockchain forensics expert with AlixPartners, there are good reasons to believe that LeBeau is closely connected to cryptocurrency wallets that received funds involved in the Hack. If true, this would not be the first time Defendants have played fast and loose with Company assets. Shockingly, Edward Greenwood—the controller of Defendants' own company—concedes in his Declaration that Defendants would "proactively convert" the ETH on the Cold Wallet, and that "[t]hese fundings were opportunistic, having nothing to do with a funding request." (Greenwood Decl. (Dkt. No. 45) ¶ 20.) While the Company's analysis of the Hack and other transactions by LeBeau with Companies he owns remains ongoing, all indications are that the Cold Wallet is not in safe hands.

**ARGUMENT**

**I.      SingularDTV Is Likely to Succeed on the Merits.**

The Opening Brief identifies the elements that SingularDTV must prove to prevail on its equitable claims. (Br. at 16–19.) Defendants do not contest the sufficiency of SingularDTV's evidence—they do not even address five of the six equitable claims at issue.[2] For each of SingularDTV's claims seeking the return of Company assets, SingularDTV has shown a clear likelihood of success on the two key issues: that the assets in question belong to the Company, and that Defendants' continued possession or control of those assets is unauthorized.

To begin with, Defendants do not dispute that the Company owns the Cold Wallet and its contents. LeBeau admits this fact in his Declaration and even explains how he eventually came to have exclusive control over that wallet. (*See* LeBeau Decl. ¶¶ 35–43.) LeBeau likewise admits that the intellectual property over which Defendants continue to exercise control—including SingularDTV's "television and film assets"—are "owned by the Company." (*Id.* ¶ 5.) Nor do Defendants contest that the e-mail accounts used by SingularDTV employees are Company property; those e-mail accounts and Defendants' malicious interference with them go unmentioned throughout Defendants' submissions.

Defendants do, however, contend that their continued possession of the Company's property is authorized. To that end, the declarations submitted by LeBeau and Niklaus Glatthard (though not Defendants' Opposition) present two arguments. Both were forecasted in the Opening Brief (*see* Br. at 19–21), and both are unavailing.

First, LeBeau claims that the Board meeting on May 27, 2021, at which SingularDTV's Board terminated him as CEO, was ineffective because it "failed to adhere to Swiss corporate

---

[2] Defendants mention in passing SingularDTV's claim for conversion, (Opp. at 10), but this is not one of the claims on which SingularDTV rests its request for injunctive relief. (*See* Br. at 16–19.)

formalities." (LeBeau Decl. ¶ 17.) LeBeau does not identify these "formalities" with any specificity, but the Derivative Complaint (to which his Declaration refers) asserts that the meeting was faulty because it was conducted "without proper notice to LeBeau." (*See id.*; Derivative Complaint (Dkt. No. 37-1) ¶ 91.) In fact, the Company's bylaws require only that "notice of any board meeting . . . be dispatched in writing by courier, mail, fax, or e-mail not less than seven (7) days prior to the date of the meeting." (Bylaws (Dkt. No. 18-3) § IV.C; *see* Br. at 20.) On May 19—eight days before the meeting took place—Levy-Cohen sent all directors, including LeBeau, notice of the meeting by e-mail. (Allenspach Supp. Decl. (filed concurrently) ¶ 16, Ex. 27.)

Second, LeBeau and Glatthard both contend that Levy-Cohen resigned his position on SingularDTV's Board on February 12, 2019. (LeBeau Decl. ¶ 29; Glatthard Decl. (Dkt. No. 40) ¶¶ 4–5.)[3] As a result, they contend, Levy-Cohen "ha[d] no authority to attend or vote on any of the resolutions at the meetings relied on by" SingularDTV. (LeBeau Decl. ¶ 26; *see also* Glatthard Decl. ¶ 14.) This too is wrong.

As SingularDTV explained in its Opening Brief, Levy-Cohen withdrew only from his role as "Resident Director"—a position which, under Swiss law, must be filled by a resident of Switzerland—because he planned to move to New Jersey. (*See* Br. at 20.) The minutes of a Shareholder meeting conducted just two weeks later, on February 27, 2019 (Dkt. No. 17-12), make this clear: they continue to identify Levy-Cohen as a "Director" and "Chairman." (*Id.* at 1.) And in the minutes, LeBeau himself clarifies that Mr. Levy-Cohen resigned "***as Resident Director***" of SingularDTV GmbH. (*Id.*) Tellingly, even after SingularDTV's Opening Brief explained this flaw in Defendants' theory, LeBeau and Glatthard offer nothing in response.

---

[3] Glatthard does not purport to have any personal knowledge about this issue, and his repeated recitations of what he "understands" has no evidentiary value in this regard. (*See, e.g.*, Glatthard Decl. ¶¶ 6–8, 10–14.)

The minutes of later Board and Shareholder meetings, all of which Mr. LeBeau attended, likewise refute Defendants' assertion that Levy-Cohen resigned his directorship in its entirety. The minutes of the very next Board meeting, held on May 2, 2019, expressly state that "***Director and Chairman*** Arie Levy-Cohen was represented by Director Joseph Lubin, by virtue of the proxy previously executed by Mr. Levy-Cohen." (Allenspach Supp. Decl. Ex. 19.) And the minutes of a Shareholder meeting held that same day—which LeBeau himself signed—likewise list Levy-Cohen as "Director" and "Chairman" of the Company. (*Id.* Ex. 18.) The Board minutes from the next two Board meetings, held in August 2019 and December 2019, contain similar or identical language identifying Mr. Cohen as "director" and "Chairman." (*Id.* Exs. 16, 20.) None of the meeting minutes reflect any objection by Mr. LeBeau.

SingularDTV's filings with the Swiss Commercial Register—which are entitled to a strong presumption of correctness under Swiss law (*see* Mráz Supp. Decl. (filed concurrently) ¶¶ 3–4)— further confirm that Levy-Cohen did not resign his board seat. In July 2019, SingularDTV amended Levy-Cohen's designation in the Commercial Register to reflect his return to New Jersey from the Swiss municipality of Thalwil. Tellingly, the Company continued to list Levy-Cohen as a "partner and president of the management" (that is, a Shareholder and Chairman of the Board of Directors) and as an individual with "single signature" authority. (*See* Allenspach Supp. Decl. Ex. 24.) Despite making several later updates to the Commercial Register—including by changing the register to add Amrita Rizal as Resident Director—the Company never made any additional alterations to Levy-Cohen's position or signature authority. (*Id.*).

Other individuals associated with the Company and LeBeau understood that Levy-Cohen remained a Director. In August 2019, Carl Volz—Breaker's U.S. counsel who was hired by Defendants—explained in an email to another executive that "Arie is still a board member" but

"has chosen not to participate in board meetings because of perceived hostility of Zach/Kim and/or because of his health." (Sauter Supp. Decl. (filed concurrently) Ex. 6).[4]

LeBeau's acts during the alleged Hack in May 2021 provide additional evidence that Levy-Cohen remains a Director. The alleged purpose of LeBeau's payment of Company tokens to the hacker was to "effect Levy-Cohen's *resignation from the Company's Board of Directors* and the surrender of Levy-Cohen's shares in the Company." (Allenspach Supp. Decl. Ex. 23.) LeBeau received (and presumably read) this agreement before paying US $2 million worth of Company property in exchange for it. (*Id.*) LeBeau's attempt to consummate this agreement contradicts his contention that he did not think Levy-Cohen was a Director in May 2021.

Defendants next contend that SingularDTV has no recourse to equity because Lubin and Levy-Cohen have "unclean hands." (Opp. at 10–12.) This argument fails for at least two reasons. First, Defendants invert the burden of proof. It is well settled that a "defendant who invokes the doctrine of unclean hands has the burden of proof." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 130 (S.D.N.Y. 1999). Defendants' unsupported accusations that Lubin and Levy-Cohen breached their duties to the Company and its shareholders are not sufficient to carry this burden and do not establish that the Company is unlikely to succeed on its claims.

Second, Defendants' argument disregards the legal separation between SingularDTV and its shareholders. Defendants do not contend that *the Company* has engaged in wrongdoing that would bar it from seeking equitable relief. Defendants do not cite—and SingularDTV is not aware

---

[4] Likewise, in an email sent to LeBeau, Lubin, and Levy-Cohen on February 13, 2020—nearly a year to the day after Levy-Cohen's alleged resignation—Rizal referred to the three recipients collectively as "Board members" and asked them to approve a resolution waiving the debts of certain corporate affiliates of SingularDTV. (Allenspach Supp. Decl. Ex. 25.) Rather than objecting that Levy-Cohen was no longer a "Board member," LeBeau responded on February 14, 2020, to thank Rizal and note his "approv[al] and support" for "these actions." (*Id.* Ex. 26.) Allenspach likewise included Levy-Cohen on a April 2021 e-mail addressed to the "Board of Directors of SingularDTV GmbH." (*Id.* Ex. 31.)

of—a single case applying the alleged "unclean hands" of individual shareholders or directors to defeat equitable relief sought by a corporate entity.

## II.    SingularDTV Will Be Irreparably Harmed in the Absence of an Injunction.

SingularDTV has also shown that it will be irreparably harmed if the Court does not grant preliminary relief. Defendants' interference with SingularDTV has already had a profoundly negative and unquantifiable impact on the business.

First, a preliminary injunction is justified to prevent irreparable harm resulting from Defendants' unauthorized access to or control over the Company's e-mail accounts—a harm that Defendants' opposition papers completely ignore. Despite the Court's order requiring Defendants to relinquish control over those e-mail accounts by 6:00 p.m. on Saturday, December 4 (*see* Dkt. No. 32), Defendants have yet to provide complete access to and control over those accounts and their contents in several meaningful respects. In particular, Defendants still have not taken any meaningful steps to migrate the accounts to the Company, despite agreeing to do so. Moreover, SingularDTV still does not have:

- control over the passwords used to protect any accounts other than the one used by Patrik Allenspach;
- the contents of Levy-Cohen's e-mail account, which Defendants claim not to have due to a 2019 migration performed by their chosen vendor, DAG Tech LLC;
- any e-mails sent to or from the account used by Elaine Marais;
- e-mails sent to or from the account used by Martin Trepp, SingularDTV's former Chief Financial Officer, before his termination on August 17, 2019; and
- many contents of the "Sent Items" folders for each account.

(Allenspach Supp. Decl. ¶ 23.) The Company remains subject to irreparable harm absent a preliminary injunction requiring Defendants to turnover of **all** Company e-mail accounts.[5]

---

[5] Upon recovering certain of the accounts following the temporary restraining order, it became immediately clear that the Defendants had taken steps to forward emails from these accounts to themselves, including by way of automatic forwarding rules. (Allenspach Supp. Decl. ¶ 23.)

The Company also faces an immediate threat of irreparable harm if Defendants are not enjoined from holding themselves out as officers or representatives of SingularDTV. As the Court is aware, Defendants did precisely that when, after being removed from their positions at the Company, they instructed a lawyer to initiate proceedings in *SingularDTV GmbH v. Doe*, No. 1:21-cv-6000 (VEC) (S.D.N.Y.). As described in the Declaration of Kevin Madura, there are serious concerns with having LeBeau remain in charge of this case. (Madura Decl. (filed concurrently) ¶¶ 26–28) Defendants have likewise continued to market SingularDTV's intellectual property, including the "television and film assets" that LeBeau admits are "owned by the Company" (LeBeau Decl. ¶ 5), to third parties despite their lack of authority to do so. (Allenspach Supp. Decl. ¶ 24; *see* Dkt. No. 18-5.)

Defendants' continued possession of the Cold Wallet poses another risk of irreparable harm to the Company. Though LeBeau states that he "ha[s] responsibly kept the cryptocurrency wallet secure since the Company's" initial token-generation event (LeBeau Decl. ¶ 35), the facts show otherwise. Breaker's own accountant admits that LeBeau would "proactively convert" the ETH on the cold wallet, and that "[t]hese fundings were opportunistic, having nothing to do with a funding request." (Greenwood Decl. ¶ 20.) This applies to the 599 Company ETH that LeBeau converted into approximately US $2 million and apparently paid to Writers Block (a company that he owns) just days before the alleged Hack. (*See* Allenspach Supp. Decl. ¶¶ 21–22, Ex. 29.) LeBeau does not dispute that he alone was responsible for authorizing the transfer of Company tokens to the hacker's wallet addresses. Nor does he dispute that the SNGJ tokens he transferred to the alleged hacker's wallet address were later transferred to GazeTV, a company founded by LeBeau and Jackson. (*See* Allenspach Supp. Decl. ¶ 21, Ex. 32; Madura Decl. ¶ 16.) Permitting LeBeau to

remain in control of these assets risks irreparably frustrating SingularDTV's equitable claims seeking return of these assets so that it can continue with its business affairs.

Mr. LeBeau tries to belittle the harm he is causing to the Company by asserting that "the Company is effectively defunct" and "is being wound up." (LeBeau Decl. ¶ 4; Opp. at 9.) This, Defendants contend, is the key distinction between this case and *Global Switching, Inc. v. Kasper*, No. 06-cv-412 (CPS), 2006 WL 385315 (S.D.N.Y. Feb. 16, 2006), in which the court held that the plaintiff's "loss of control of a business" due to its former CEO's usurpation of corporate opportunities "constitute[d] irreparable harm." *Id.* at *7. In reality, the Company's current situation is strong evidence for why a preliminary injunction should issue. Defendants have blocked the Company's access to e-mail (Allenspach Supp. Decl. ¶ 23), withheld the Company's working capital and intellectual property (*id.* ¶ 24), interfered with the Company's launch of a digital-rights-management platform (*id.* ¶ 25), and filed dissolution proceedings in Switzerland (Dkt. No. 18-8). [6] Critically, there is nothing in SingularDTV's incorporating documents or contractual obligations that would prevent it from continuing to pursue its projects with new counterparties if it secures the relief at issue in this Motion. (Allenspach Supp. Decl. ¶¶ 26-27.)

Defendants also argue that equitable relief is unavailable because any loss is "easily reducible to money damages." (Opp. at 7.) This is not true. While Defendants withhold Company assets, SingularDTV is suffering unknown and unquantifiable harm to its reputation, goodwill, and future business opportunities. Moreover, injunctive relief is available to freeze assets "to the extent they are the target of a claim for equitable relief," such as SingularDTV's claims for replevin, restitution, constructive trust, and trespass to chattels. *Shamrock Pwr. Sales, LLC v. Scherer*, No.

---

[6] Defendants assert that the Board resolved to explore an orderly process to dissolve the Company on May 27, 2021, before "any of the cases brought among the parties." (Opp. at 9.) They neglect to mention, however, that this meeting was held directly after the Hack and LeBeau's refusal to return the Company's assets. (*See* Dkt. No. 17-7.)

12-cv-8959 (KMK) (JCM), 2016 WL 6102370, at *7 (S.D.N.Y. Oct. 18, 2016). This includes assets that are fungible or otherwise have a readily discernible value, such as cash in bank accounts. *Id.* at *7.[7] Defendants' assertion that the Company must wait for LeBeau to "'go rogue'" before pursuing "a future action for monetary and statutory damages" (Opp. at 8) is at odds with the law.

### III. Defendants' Remaining Arguments Are Meritless.

Defendants argue that a preliminary injunction is unavailable due to SingularDTV's "unexplained delay." (Opp. at 13.) SingularDTV's alleged delay in seeking relief is not "unexplained"; most of this time stems from the Company's attempts to resolve these issues without litigation—negotiations in which LeBeau offered but then refused to place the Cold Wallet in escrow. (*See* Dkt. No. 17-8 at 1; Dkt. No. 16 ¶ 7.) The remaining time is accounted for by SingularDTV's retention and instruction of undersigned counsel, who were tasked not only with initiating this case and pursuing preliminary relief, but also with intervening in the *John Doe* case to prevent Defendants from further abusing SingularDTV's corporate personality.

Finally, Defendants' argument that the Court should require a bond "in the amount of the cryptocurrency" (Opp. at 16–17) is baseless. A bond is necessary only to cover "costs and damages sustained by any party found to have been wrongfully enjoined or restrained." (*Id.* at 17.) Defendants have not demonstrated that they personally would be injured by a wrongful restraint of assets—much less in an amount equal to the value of the assets themselves—when they concede that they do not own those assets.

### CONCLUSION

For these reasons and those in the Opening Brief, SingularDTV respectfully requests that the Court issue a preliminary injunction in the form requested by SingularDTV's Motion.

---

[7] *Accord Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of Va.*, 144 F. Supp. 2d 241, 250 n.9 (S.D.N.Y. 2001) (recognizing "equitable power to freeze assets").

Dated: New York, New York
      December 10, 2021

                                              Respectfully submitted,

                                              /s/ Benjamin J. A. Sauter
                                              Benjamin J. A. Sauter
                                              Christopher S. Cogburn
                                              Alexa R. Perlman
                                            KOBRE & KIM LLP
                                            800 Third Avenue
                                            New York, NY 10022
                                            Telephone: (212) 488-1200
                                            Facsimile: (212) 488-1220

                                            *Attorneys for Plaintiff SingularDTV GmbH*