# EXHIBIT 19



MINUTES

Of the

Board of Directors Meeting

of

SingularDTV

Held on Wednesday, 2 May 2019

10:00 am – 2:00 pm ET

At the offices of SingularDTV, 40 Fulton Street, 5th Floor, New York, NY 10038

**Attendees:**
- **Zach LeBeau, Director**
- **Joseph Lubin, Director**
- **Kim Jackson, President, SingularDTV LLC; Chief Operating Officer, SingularDTV GmbH**
- **Carl Volz, US Counsel**
- **Martin Trepp, CFO**
- **Victoria Maksheeva, Acting Director. Compliance (via Zoom)**
- **Amrita Rizal, Director of Compliance (via Zoom)**

1. **Introductions**

   Attendance was taken and it was noted that Director and Chairman Arie Levy-Cohen was represented by Director Joseph Lubin, by virtue of the proxy previously executed by Mr. Levy Cohen.

2. **Pending items**

   a. **Compliance Report**

   Victoria Maksheva, Acting Director of Compliance, gave a report of the Company's ongoing efforts to refine Know Your Customer ("KYC") processes to better satisfy the requirements of our banking and financial partners.

   b. **SRO Membership**

   Ms. Maksheva explained that the report of the previous year's VQF audit had been provided to the Company and that it was unremarkable. She noted that the report was in the process of being translated from German to English, after which it will be circulated to company management for review. Ms. Maksheva further advised that the next limited VQF audit would take place this summer but that neither she nor Ms. Rizal anticipated any significant issues.

   c. **FINMA**

   Ms. Maksheva stated that the Company's previous submission to FINMA was still pending and that the Company has neither contacted nor been contacted by FINMA with regard to the submission.

   d. **Corporate Structure/Corporate Governance**

   Carl Volz, US counsel to the Company, reported on privileged and confidential communications with US and Swiss counsel regarding possible changes to the corporate structure of the Company and its related entities. The Directors discussed the issues but declined to take further action at this time.

   e. **Token Assessment**

   Zach LeBeau, Chief Executive Officer of the Company, discussed the Company's latest plans for SNGLS 2.0 and explained that the Company was finalizing a new Working White Paper, which would be forwarded to Mr. Lubin upon completion.

   f. **Optimization Update**

   Martin Trepp, Interim CFO, advised on the significant savings resulting from the Company's optimization program. He noted, however, that the Company had not yet achieved its targeted monthly burn rate and that additional savings would be incrementally more difficult to achieve.

   g. **Operations Update**

   Kimberly Jackson, Chief Operating Officer of the Company and President of SingularDTV LLC, provided an update on the Company's efforts to increase strategic focus and develop business plans

around the areas of focus.  Ms. Jackson indicated that the process was nearly complete and that she expected to be able to present final plans at the next Board meeting.

    h.   **Key Suppliers Relationships**

Mr. Volz first described recent developments with regard to the Company's investment in Plug, a blockchain company created in partnership with Centrality and Qadre.  Mr. Volz informed that the resolution of the recent dispute between Centrality and Qadre had allowed the Company to convert its interest in Plug into a direct shareholding position in Centrality, which he said was worth considerably more than the Company's interest in Plug and had a greater chance of becoming liquid in the future.

Mr. Volz then advised on the status of recent negotiations between the Company and ConsenSys with regard to the agreements for the development by ConsenSys and Digital Mob of the Company's Breaker application, upcoming mobile application and related projects.  Mr. Volz noted that the negotiations had been difficult and were essentially at a standstill.  After discussion of the reasons for the difficulties and delays and suggestions to resolve the deadlock, a motion was made and seconded and the following resolution unanimously adopted:

> WHEREAS The Directors, having determined that there is a potential conflict of interest among Board members with regard to negotiations with ConsenSys and Digital Mob on the agreements for the development of the Breaker application, mobile application and related projects, and, further, determining that in the absence of independent directors to whom responsibility for the negotiations might be delegated, individuals who have had no previous direct role in the genesis of the ConsenSys-SingularDTV relationship should be appointed to handle said negotiations, do hereby RESOLVE (a) Chief Financial Officer Martin Trepp and US Counsel Carl Volz are appointed and empowered to negotiate the terms of these agreements on behalf of SingularDTV; (b) ConsenSys will be asked to appoint similarly-situated individuals to lead such negotiations on its behalf; and (c) all final agreements resulting from such negotiations must be approved by the SingularDTV Board of Directors.

Upon passage of the Resolution, Mr. Lubin, on behalf of ConsenSys, appointed Matt Corva, legal counsel to ConsenSys, as point person for the negotiations but indicated that others, including himself and Milad Mostavi, would necessarily be involved in the negotiations, too.  The Board directed the appointed parties to proceed with all deliberate speed endeavor to resolve the impasse as quickly and efficiently as possible.

3.   **New Items**

    a.   **Financing**

Mr. Trepp discussed the possible methods the Company is investigating for a possible round of financing in the next 6-12 months.  Directors asked questions regarding same and Mr. Trepp expressed his views on the relative merits and likelihood of success of the various potential financing alternatives.

    b.   **Status of 400 Million "Founders Tokens"**

Mr. Volz discussed the significance to the Company's fundraising efforts of a potential difference of opinion among the Company's founders and Directors regarding the status of 400 million SNGLS

tokens retained by the Company in the 2016 TGE.  Specifically, he noted that some in Company management believed the 400 million tokens belonged to the Company and should properly be designated "Treasury Tokens".  Mr. Lubin advised that he did not have a firm conviction on the issue but stated that he believed Mr. Levy-Cohen considered the tokens to be the founders' personal property, which, once they were unlocked in 2018, could be disposed in accordance with the founders' wishes.  Mr. Volz noted that this view could have serious implications for the Company's options for fundraising in the future and advised that the Company had recently consulted with it's Swiss counsel, Wenger Vieli, for an independent opinion on the subject.  He advised that the Company would share the firm's findings with the Directors once they were finalized and suggested that once the findings had been circulated and the Directors had a chance to discuss the issue, it would be put to a vote of the Board of Directors and/or the founders themselves.

       **c.   Promises of the TGE**

Ms. Jackson explained the status of the Company's efforts to fulfill the representations made in connection with the Company's 2016 TGE.  She highlighted the critical worldwide success of the Trust Machine documentary and the significant technological advances represented by the Breaker Decentralized Distribution Platform.  She also noted the Company was in the early stages of pursuing the Science Fiction film/television project and was currently in the midst of efforts to retool the Tokit application to address regulatory uncertainty and align the application more closely with the company's renewed focus and direction.

**4.   Future Board Meetings**

The Directors agreed to attempt to schedule three more board meetings in 2019, likely in July, September and December, 2019.


Signed:

/s/ Carl E. Volz
Secretary