**MEMO ENDORSED**



KOBRE & KIM

800 THIRD AVENUE
NEW YORK, NEW YORK 10022
WWW.KOBREKIM.COM
TEL +1 212 488 1200

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/18/22

February 17, 2022

Hon. Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

       **RE: *SingularDTV GmbH v. LeBeau, et al.*, No. 1:21-cv-10130 (VEC)**

Dear Judge Caproni:

  We represent Plaintiff SingularDTV GmbH ("SingularDTV" or the "Company") in the above-captioned matter. Along with Neil Postrygacz, counsel for Defendants Zachary LeBeau and Kim Jackson, we write jointly to address the matters presented in Paragraph 2 of the Court's Notice of Initial Pretrial Conference (Dkt. No. 69).

  The parties believe that a Rule 16 conference is warranted and have no objection to proceeding with the conference by telephone as scheduled, on Friday, February 25, at 2:00 p.m. (*See id.* at 1.) Further, because (as discussed below) SingularDTV intends to file an amended complaint, the parties respectfully submit that it is not appropriate to file a proposed Case Management Plan and Scheduling Order at this juncture. The parties have agreed that (1) SingularDTV will file its amended complaint on or before March 4, 2022, and (2) the parties will promptly submit the proposed Case Management Plan and Scheduling Order after the complaint is amended and any resulting motions are resolved.

***Description of the Case***

  **Plaintiff's claims.** SingularDTV's claims concern the misappropriation of certain Company property by Defendants, who are former officers (and, in the case of Defendant LeBeau, a former director) of the Company. As the Court is aware from the parties' prior submissions, SingularDTV's original complaint (Dkt. No. 1), filed on November 29, 2021, asserts claims for replevin, trespass to chattels, constructive trust, restitution, and conversion, based on Defendants' (1) refusal to return certain digital assets stored on an electronic device (the "Cold Wallet") following their termination by the Company's board of directors, and (2) refusal to relinquish control over the Company's employee e-mail accounts, along with the confidential and competitively sensitive information stored on those systems. Defendants' unauthorized access to SingularDTV's e-mail accounts and misappropriation of confidential information stored on those

AMERICAS (NEW YORK, BUENOS AIRES, CHICAGO, DELAWARE, MIAMI, SAN FRANCISCO, SÃO PAULO, WASHINGTON DC)
ASIA-PACIFIC (HONG KONG, SEOUL, SHANGHAI), EMEA (DUBAI, LONDON, TEL AVIV), OFFSHORE (BVI, CAYMAN ISLANDS)

KOBRE & KIM REFERS TO KOBRE & KIM LLP, A NEW YORK LIMITED LIABILITY PARTNERSHIP.

Hon. Valerie E. Caproni
February 17, 2022
Page 2

accounts is also the basis for SingularDTV's claims under two federal statutes: the Computer Fraud and Abuse Act (the "CFAA," 18 U.S.C. § 1030) and the Defend Trade Secrets Act (the "DTSA," 18 U.S.C. § 1836).

After a hearing on December 1, 2021, the Court entered a temporary restraining order (Dkt. No. 21) prohibiting Defendants "from taking any step . . . to transfer, conceal, encumber, dissipate, or otherwise impair the value of any assets in their possession or control that are the property of" SingularDTV, "including but not limited to the Cold Wallet" and the assets stored on it. (*Id.* at 1.) The Court also ordered the parties to meet and confer regarding language to be included in a modified order "that would address restoring [SingularDTV's], its employees' and contractors' access to their email accounts or addresses." (*Id.*) The Court included such language in a modified order entered the following day. (*See* Dkt. No. 25.)

As part of its original temporary restraining order, the Court also entered an order to show cause why SingularDTV's motion for preliminary injunction (the "PI Motion," Dkt. Nos. 15–18) should not be granted, setting a briefing schedule for responsive and reply submissions and scheduling a hearing for December 14, 2021. (Dkt. No. 25 at 2.) The hearing was later postponed to January 5, 2022 (Dkt. No. 48) and again to January 25, 2022 (Dkt. No. 60), as the parties discussed a resolution of the issues presented by the PI Motion.

Eventually, the parties reached an agreement to resolve those issues. Terms of that agreement were memorialized in a Consent Order (Dkt. No. 66) entered by the Court on January 25. Among other things, the Consent Order required Defendants to place the Cold Wallet and the assets stored on it in escrow and to turn over "all singulardtv.com and breaker.io e-mail accounts for current and former SingularDTV employees and contractors . . . by no later than February 1, 2022." (*Id.* at 1.)

To date, Defendants have only partially complied with their obligations under the Consent Order and the parties' underlying agreements. Although Defendants have transferred the ETH held on the Cold Wallet into escrow, they have not "deliver[ed] physical possession of the device storing the Cold Wallet, together with all charging devices and authorizations including log-in information and passwords," nor have they "cause[d] a full and complete migration" of all relevant employee e-mail accounts. (*Id.*) As discussed further below, SingularDTV intends to move for expedited discovery to determine the reasons for Defendants' noncompliance with the Consent Order and, based on the information obtained through that discovery, may move for additional relief to enforce the Consent Order.

In addition, SingularDTV intends to amend its complaint to add claims under the Lanham Act (15 U.S.C. § 1051–1129) based on Defendants' ongoing infringement and dilution of the "SingularDTV" word mark. SingularDTV intends to seek injunctive relief, compensatory damages, enhanced damages, and attorneys' fees for such claims.

**Defendants' claims and defenses.** Defendants contend that the Cold Wallet was in fact delivered and have repeatedly informed Plaintiff's counsel that there is no other physical device storing the Cold Wallet. Defendants will oppose any application made by Plaintiff for expedited discovery relating to the Consent Order.

Defendants note that Plaintiff admits the ETH has in fact been transferred. Public record of the transfer is: https://etherscan.io/tx/0xe93cb62b41022dca81684bb500889edcf4b7e759004c87f91667f0d854c55a55. The Cold Wallet turned over to the escrow agent consisted of two pieces of paper containing private keys and seed phrases. In fact, Matt Corva, counsel for Joseph Lubin and ConsenSys, appeared remotely at the exchange and agreed that the pieces of paper could be Cold Wallets. There is no cold wallet any longer in play and even if there were it would be of no net effect because its contents have been transferred to an account actually held by Plaintiff's counsel. With regard to email accounts, all accounts under the control of the Defendants have in fact been turned over. Plaintiff's actually fail to identify any specific account that was not turned over.

Defendants intend to bring counterclaims against Plaintiff and its remaining shareholders, reserve their rights to bring counterclaims against Plaintiff and reserves all their rights therein.

### *Contemplated Motions*

**Plaintiff's anticipated motions.** Consistent with the Consent Order and the parties' underlying agreements, Defendants were to deliver "the device storing the Cold Wallet" (Dkt. No. 66 at 1) to the parties' escrow agent on Thursday, January 27. But rather than delivering the device, Defendants produced only two pieces of paper appearing to contain private keys and seed phrases, which Defendants claim can be used to transfer the assets stored on the Cold Wallet. When asked to explain why they had not delivered the Cold Wallet "device"—as contemplated by the language negotiated by the parties, and as required by the Court's order—Defendants claimed, for the first time, that there was no such device, and that the Cold Wallet has been maintained exclusively as a so-called "paper wallet" for the past several years.

Apart from Defendants' failure to comply with the plain language of the Consent Order, Defendants' unexpected change of position on the existence of a hardware device used to store the Cold Wallet gives SingularDTV significant concerns about what happened to the device that held the Cold Wallet, and the security of the Company's digital assets.

On February 4, SingularDTV asked Defendants to:

- identify all devices on which the Cold Wallet was held from 2016 to the present;
- identify the location of all such devices (or, in the event that any of those devices have been destroyed, to explain why);
- explain when, how, and why the Cold Wallet was moved from one device to another;
- explain how the sheets of paper comprising the "paper wallet" came to exist, identify the device they were printed from, and explain how and where the keys and seed phrases printed on them were stored over time;
- identify all persons who have ever had access to the "paper wallet" or the information printed on it; and

Hon. Valerie E. Caproni
February 17, 2022
Page 4

- explain why Defendants failed to disclose the purported nonexistence of the Cold Wallet hardware device until the day that they were due to turn that device over to the parties' escrow agent.

Defendants have not responded to SingularDTV's requests for sworn statements on these issues. Accordingly, SingularDTV intends to file a motion seeking expedited discovery, including but not limited to a deposition of Defendant LeBeau, to determine the extent of Defendants' failure to comply with the Consent Order. SingularDTV may also pursue additional relief based on the information obtained through that discovery.

SingularDTV also reserves all rights with respect to the migration of its employee e-mail accounts, which, as of the filing of this letter, is only partially complete. Counsel for SingularDTV will continue to meet and confer with counsel for Defendants in an effort to complete this process without the need for Court intervention, but SingularDTV may seek additional relief from the Court if Defendants fail to effect the "full and complete migration" of e-mail accounts required by the Consent Order. (*See* Dkt. No. 66 at 1.)

**Defendants' anticipated motions.** Defendants' contend that SingularDTV's allegations relating to the Cold Wallet are designed as nothing more than a "fishing expedition" as again the parties' escrow agent is currently holding the Ethereum, pursuant to the Escrow Agreement between the parties, as specified in the Consent Order. Defendants are under no obligation to respond to Plaintiffs' *de facto* First Set of Interrogatories at this juncture and in view of Plaintiffs' disingenuousness on these issues has elected not to do so.

As Plaintiff has indicated that it will be amending its Complaint, Defendants' reserve all rights in connection with responding to any First Amended Complaint including a FRCP 12 motion to dismiss. Regarding potential discovery issues, Defendants intend to call Joseph Lubin and Ari Cohen as FRCP 30(b)(6) deposition witnesses. Both of these individuals are essential witnesses with first hand knowledge of all the facts of this matter as opposed to the paid shills that Plaintiffs intended to offer at the injunction hearing. Defendants also expect to make a *Daubert* motion in connection with Plaintiffs' proposed expert disclosed in connection with the injunction hearing. Lastly, Defendants expect to move to strike the statements from Plaintiff's Complaint

### *Basis for Subject-Matter Jurisdiction*

Plaintiff submits that the Court has subject-matter jurisdiction over SingularDTV's claims under 28 U.S.C. § 1331, because SingularDTV's CFAA and DTSA claims—along with its anticipated new claims under the Lanham Act—arise under federal law. The Court also has subject-matter jurisdiction over SingularDTV's claims under 28 U.S.C. § 1332, because SingularDTV (a Swiss *Gesellschaft mit beschränkter Haftung*) and Defendants (residents of the State of New York) are completely diverse in citizenship and the amount in controversy exceeds $75,000.

Defendants do not object to this assertion but note that the Plaintiff has taken contrary positions in related actions by and between the parties in New York Supreme Court.

*Prospects for Settlement*

To date, the parties have engaged in intermittent discussions regarding settlement, but those discussions to date have not progressed materially toward a resolution. At this time, SingularDTV does not believe that Court-assisted alternative dispute resolution would be an efficient use of the Court's or the parties' resources. Defendants would be open to the opportunity of Court-assisted mediation.

*        *        *

The parties and their counsel thank the Court for its attention to this matter.

Respectfully submitted,

_/s/ Benjamin J. A. Sauter_____
Benjamin J. A. Sauter
benjamin.sauter@kobrekim.com
Christopher S. Cogburn
christopher.cogburn@kobrekim.com
Alexa R. Perlman
alexa.perlman@kobrekim.com

KOBRE & KIM LLP

*Attorneys for Plaintiff
SingularDTV GmbH* [1]

---

The Initial Pre-Trial Conference currently scheduled for **Friday, February 25, 2022, at 2:00 p.m.** will proceed **in person** in **Courtroom 443**, Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007. At that conference, the parties should be prepared to discuss any objections to the Court consolidating this matter with SingularDTV GmbH v. Doe, 21-CV-6000, pursuant to Federal Rule of Civil Procedure 42.

SO ORDERED.

*[signature]* 2/18/22

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

---

[1] Filed on jointly on behalf of, and with the consent of, counsel for Defendants Zachary LeBeau and Kimberly Jackson.