UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------

SINGULARDTV, GMBH,                              Case No. 1:21-cv-10130

                Plaintiff,

       -against-

ZACHARY LEBEAU and KIMBERLY JACKSON,

                Defendants.

-------------------------------------------------

**ZACH LEBEAU'S MEMORANUM IN OPPOSITION TO PALINTIFF'S EXPEDITED DISCOVERY MOTION**

1

Defendant Zachary LeBeau ("LeBeau") by his attorney, Neil L. Postrygacz, Attorney at Law, P.C., respectfully submits this Memorandum of Law in opposition to Plaintiff's motion pursuant to Federal Rule of Civil Procedure 26(d)(1) for expedited discovery in connection this Court's January 25, 2022, Consent Order. (Dkt. #61)

## PRELIMINARY STATEMENT

Plaintiff's instant motion seeks expedited discovery in connection with a certain "Cold Wallet Device" that was the subject of this Court's Consent Order dated January 25, 2022. (Dkt. #61) ("Consent Order"). The Cold Wallet, more specifically, the Ethereum held in the Cold Wallet, was the main subject of the Plaintiff's Complaint (Dkt. #1) and the relief requested was the turnover of the Ethereum which was achieved pursuant to the Consent Order. Plaintiff's application for a preliminary injunction was therefore disposed.

Plaintiff now incredulously seeks expedited discovery into the Cold Wallet because it "may contain important information related to prior transfers from the Cold Wallet including evidence to the alleged "hack". Plaintiff's Memo in Support at Page 1 (Dkt. # 76) The Consent Order, entered into to resolve the Cold-Wallet questions raised by the Plaintiff, did not include any mention of 'other assets' or the alleged "hack". In fact, these newly raised issues could have been dealt with in the Consent Order; they were not dealt with at that time because they are 'non-issues' now raised by Plaintiff only to further harass Mr. LeBeau and shuffle normal discovery practice to gain an advantage.

Further, with respect to the alleged "hack", in the related *John Doe* case (*SingularDTV GmbH v. Doe #:* 1:21-cv-06000-VEC), Plaintiff just last week requested a stay of all discovery. So, while Plaintiff seeks expedited discovery in this case through the deposition of Mr. LeBeau,

allegedly to uncover the identity of the alleged hacker, it is simultaneously seeking to stay discovery on the *John Doe* case brought for the very purpose of identifying the alleged "hacker" and recovering the pilfered assets. In this very Court, when asked to allow the investigation in the *John Doe* matter to continue, Plaintiff argued for a stay and even declined to continue that matter jointly with Morrison Tenenbaum PLLC, who originally brought that action on behalf of SingularDTV [Exhibit E, p. 25].  Plaintiff's duplicitous effort to stop discovery against its 'clients' Joe Lubin and Arie Levy Cohen while advancing discovery against Mr. LeBeau on an expedited basis calls into question the true intent of Plaintiff; certainly, it cannot be to determine the identity of the hacker(s), which is what the *John Doe* action narrowly seeks to accomplish. .

Plaintiff's original complaint was concerned only with the "digital assets", namely Ethereum and SNGLS tokens maintained in the Cold Wallet; Plaintiff did not make reference to any other assets contained in the Cold Wallet even in general terms.  Further, Plaintiff's Amended Complaint, filed after the date of the instant motion does <u>not</u> even refer to the Cold Wallet, and the Cold Wallet is not part of any substantive allegations.

In fact, the Amended Complaint now completely shifts directions away from the Cold Wallet questions raised in its Expedited Discovery Motion and the specious allegations of theft and fraud levied against Mr. LeBeau. The First Amended Complaint explores a whole new set of claims in connection with an intracompany Service and Development Agreement ("Service Agreement") entered into between SingluarDTV GMBH and its stateside affiliate, SingularDTV LLC ("Breaker"), under the Lanham Act, the Computer Fraud and Abuse Act and the Defend Trade Secrets Act. Again, none of the causes of action raised in the First Amended Complaint contains a single allegation about the Cold Wallet.[1]

---

[1] Moreover, the Service Agreement specifically designates that any controversy arising under or in connection with its terms are to be brought exclusively in the Canton of Zug, Switzerland. As such, Plaintiff's Amended Complaint,

Apart from its jurisdictional and substantive failings, the First Amended Complaint, filed after the instant Motion for Expedited Discovery was filed, should have asserted the Cold Wallet issues Plaintiff now seeks to explore in its motion. As a matter of law, Plaintiff therefore cannot make a legitimate claims of (a) irreparable injury, (b) likelihood of success on the merits, or (c) a causal connection between the requested expedited discovery and irreparable injury, which it must demonstrate if the Court is to grant the requested relief.

Plaintiff's instant application, conveniently filed minutes before the scheduled conference, is really just pretext for deposing LeBeau out of priority, and should therefore be denied in its entirety.[2]

## BACKGROUND

Plaintiff's Complaint states: "This case concerns LeBeau's refusal to return many thousands of Ether ("ETH"), the native cryptocurrency of the Ethereum blockchain, as well as other digital assets rightfully belonging to SingularDTV following his termination as an officer and director of the Company. As of the date of this filing, the current value of the ETH wrongfully possessed by LeBeau is approximately US $50 million." (See Plaintiff's Complaint ¶1).

Plaintiff's First Amended Complaint states: "This case concerns the Defendants' infringing use of the SingularDTV word mark (the "Mark"), a trademark which the Company uses to distinguish its goods and services in commerce, which the Company has registered in Switzerland, Australia, Japan, Korea, India, Mexico, Russia, Turkey, the European Union, and the United

---

for which there is a briefing schedule for defendants' motion to dismiss, does not even belong in this Courthouse and should be dismissed under Fed R. Civ P 12 B 6 (1) and (3), among other substantive issues as to the Amended Complaint's fatal pleading infirmities.

[2] When advised during a "meet and confer" that defendants were going to file a motion to dismiss and for a stay of discovery, Plaintiff's consented to the stay discovery which was later "so-ordered" by this court. (Dkt. ##81 and 83)

Kingdom, and for which the Company has a pending application for registration with the United States Patent and Trademark Office (the "USPTO"). The Mark is also registered under the Protocol Relating to the Madrid Agreement Concerning the International Registration of Marks (the "Madrid Protocol"), an international trademark registration system implemented through a series of treaties and administered by the Swiss-based World Intellectual Property Organization." (See Plaintiff's Amended Complaint ¶1)

Plaintiff's First Amended Complaint (Dkt. #78) was filed after the instant motion (Dkt. ##75-76) was filed. Notably, the original Complaint contains no trademark infringement allegations, and the First Amended Complaint contains no allegations about the Cold Wallet or any cryptocurrency whatsoever.

It is uncontested that the Ethereum sought in the original Complaint was turned over to an escrow agent, which happens to be counsel for the Plaintiff, by providing a unique key to the SingularDTV Cold Wallet. With that unique key, counsel for Plaintiff was able to access all of the cryptocurrency held in the cold wallet, and to transfer the digital assets in the cold wallet to a new cold wallet that can be accessed only by counsel for Plaintiff. To be clear, Defendants do not have access to the old SingularDTV cold wallet, and Plaintiffs, according to their testimony, have moved the digital assets held in the old SingularDTV cold wallet to a new cold wallet under the control of Kobre Kim as escrow agent.³

---

³ Cold storage is an *offline* wallet used for storing digital assets. The digital wallet is stored on a platform that is not connected to the internet, thereby protecting the digital assets from unauthorized access, cyberattacks and other vulnerabilities to which 'connected' systems are susceptible. There are various types of cold storage. In this case, SingularDTV used what is commonly referred to as a **paper wallet**, which contains a public and private key pair for executing cryptocurrency transactions. The key is generally a multi-word phrase, or a string of characters created by a key generator program, that is physically printed on paper. The key to a paper wallet may also be represented by a QR code. A paper wallet is a type of ***non-custodial*** cold storage wallet — meaning the keys are controlled by the holder, and the wallet is not connected to the internet. Paper wallets were once considered the best ways to secure large holdings of cryptocurrency. While other methods of cold storage have evolved over time (such as USB-storage

When LeBeau turned over the paper wallet key, he fulfilled his obligations under the Consent Order. Counsel for Mr. LeBeau has already acknowledged on the record that the language of the Consent Order could have been better drafted to address that the digital assets in question were held in a digital wallet with a paper key. (Transcript dated February 25, 2022, at Page 20 L.18-25) Notwithstanding the scrivener's error of failing to accurately distinguish the method of turnover, the digital assets in question were properly turned over to Plaintiff's counsel as required by the Consent Order.

## ARGUMENT

## PLAINTIFF SHOULD NOT BE GRANTED EXPEDITED DISCOVERY

### I. The Claims in Plaintiff's Amended Complaint Must be Brought in Switzerland

The First Amended Complaint alleges causes of action in connection with the termination by SingularDTV of the Services Agreement entered into between SingularDTV GMBH and its US affiliate, SingularDTV LLC, including causes of action arising under the Lanham Act for trademark infringement[4], the Computer Fraud and Abuse Act, and the Defend Trade Secrets Act. Each of the allegations described in the First Amended Complaint is brought in connection with alleged wrongful acts related to the termination of the Services Agreement, and not alleged wrongful acts related to the Cold Wallet.

The Service Agreement provides that any disputes must be brought exclusively in Switzerland. See, *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) ("…. an entity may contract or stipulate with another to permit proceedings in a state's courts,

---

devices), paper wallets are still in wide use.

[4] Incredibly, the alleged Mark is not registered and in fact the trademark application has been suspended as the USPTO has determined it to be "ordinary" and not "famous". Combined with the fact that the Complaint was entirely silent with regard to the Lanham Act, this speaks volumes about the real intent behind Plaintiff's instant application to harass and needlessly increase the cost of litigation on individual litigants.

notwithstanding the remoteness from the state of its operations and organization. E.g., *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) (noting that "parties to a contract may agree in advance to submit to the jurisdiction of a given court"); *Petrowski v. Hawkeye–Sec. Ins. Co.*, 350 U.S. 495, 495–96, 76 S.Ct. 490, 100 L.Ed. 639 (1956) (relying on parties' stipulation to sustain exercise of personal jurisdiction)). Plaintiff's demand for expedited discovery in connection with the First Amended Complaint is thus outside the jurisdiction of this Court since the Service Agreement expressly provides the jurisdiction and venue for resolving disputes thereunder. Specifically, the Services Agreement provides that "The ordinary courts of the city of Zug, Switzerland, shall have exclusive jurisdiction for any dispute arising out of or in connection to this Agreement" See Service Agreement ¶58.

Plaintiff's attempt to circumvent this provision by deficient pleadings must fail as well as the instant request for expedited discovery because the First Amended Complaint, and any discovery arising from this matter, must be brought in Switzerland.

Plaintiff has also strategically omitted the proper party, Breaker, from this action, instead pursing its Services Agreement claims directly against LeBeau and Jackson, who are merely officers and/or members of Breaker. Nonetheless, all of the misconduct alleged in the Amended Complaint against LeBeau and Jackson is connected to the termination of the Services Agreement. Accordingly, the exclusive venue for all of the allegations set forth in the First Amended Complaint is the Canton of Zug in Switzerland. (See Amended Complaint ¶¶15, 16, 32, 33, 34, 51, 52, 53, 55, 56, 57, 58-74, 80-94.)

Plaintiff should therefore not be granted expedited discovery in view of the Amended Complaint's fatal jurisdictional infirmity.

## II.     Plaintiff Cannot Demonstrate Good Cause

Plaintiff's First Amended Complaint has jettisoned every allegation from the original Complaint concerning the Cold Wallet. As such, the cold wallet is no longer an issue in this case. Plaintiff's sideways attack seeking interrogatories and the deposition of Mr. LeBeau on issues that Plaintiff itself has abandoned in its own pleadings should be denied. "Courts should not grant leave without some showing of the necessity for expedited discovery . The court must protect defendants from unfairly expedited discovery." *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982). For the most part, courts in this district have applied a "flexible standard of reasonableness and good cause" to determine whether expedited discovery is appropriate. *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005) (Lynch, J.); see also *Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (Chin, J.); accord 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2046.1 (3d ed. 2011) ("Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.") and "that there were "horror stories" of harassing and abusive litigation techniques by some law firms. " *Digital Sin, Inc. v. Does 1-27*, 12 Civ. 3873 (JMF), at *7-8 (S.D.N.Y. June 6, 2012)

Plaintiff fails to include a declaration to support a showing of "good cause" and otherwise fails to provide any articulation of the elements required to be proven. Instead, Plaintiff relies on mere speculation and "concern" about what might be in the Cold Wallet that Plaintiff's counsel has already emptied. Plaintiff's mere concern alone does not constitute "good cause" for this court to subject Mr. LeBeau to deposition by Plaintiff out of the normal order of priority and

timelines for discovery. Plaintiff has just filed its First Amended Complaint. Defendants now have an opportunity to move to dismiss the causes of action asserted by Plaintiff, or to answer the First Amended Complaint in due course. Discovery is still some time off. Further, it is highly likely that Plaintiff's case will be dismissed in its entirety on purely jurisdictional grounds.

The questions sought to be explored by Plaintiff were not raised in the Consent Order or the Complaint, and they have not been raised in the First Amended Complaint. While the "Cold Wallet" was mentioned in the Consent Order, the clear intent of that Order was to deliver the Ethereum held by LeBeau for the benefit of SingularDTV. LeBeau has delivered the Ethereum as instructed, and Plaintiff's counsel is in possession of the digital assets and the cold wallet.

Plaintiff nonetheless argues that it might suffer "irreparable harm" if the Defendants have retained control over the Cold Wallet, which they have not. This is based upon the allegation that "cryptographic assets…present an unusually acute risk of dissipation because they know no borders, fluctuate wildly in price, and, when sold on third-party exchanges, are virtually impossible to trace and disgorge." Plaintiff's Memo in Support at Page 7. (Dkt. # 76)

*First*, this argument explicitly acknowledges that the Cold Wallet was an issue only insofar as it held the disputed Ethereum because the description of the "assets" could only be in reference to the cryptocurrency identified in the original Complaint. *Second*, Plaintiff's counsel is the escrow agent and is now holding the Ethereum on behalf of the parties. *Third*, Plaintiff's counsel stated on the record before this Court that the Ethereum is being held securely by the law firm pursuant to the escrow agreement. (Transcript dated February 25, 2022, at Page 15 L. 22-23 "Your Honor, just to be really clear, I'm not claiming that the ether is not secure.") . This statement by Plaintiff's counsel also invalidates the argument that Defendants remain in control of the Cold Wallet, which it does not, having turned over the sole copy of the paper key. *Fourth*,

all Ethereum transactions can be traced via public domains. *Fifth*, Plaintiff's catch-all unspecified and unsupported allegation about "other tokens" are again not part of the Consent Order or even mentioned in the First Amended Complaint. Therefore, Plaintiff's claim of irreparable injury must fail. Nor can Plaintiff rightly claim a likelihood that it will be successful on the merits where the Amended Complaint is dead silent as to any of the allegations bandied about in its motion for expedited discovery, which notably does not even include a declaration in support. Plaintiff's allegations rely on a litany of "maybe's" and "might's" completely lacking in any foundation other than the parties deeply ingrained suspicions. Counsel has also stated on the record before this Court that there is no theory of contempt at this juncture. (See Transcript dated February 25, 2022, at Page 12 L. 23-25 and Page 13 L. 1) The prospect of Plaintiff's success would thus seem exceedingly dim if not completely foreclosed.

## CONCLUSION

It is respectfully submitted that Plaintiff's instant motion for expedited discovery should be denied in its entirety.

Dated: New York, New York
        March 18, 2022

                                                  Respectfully submitted,

                                                  /s/ Neil L. Postrygacz
                                                Neil L. Postrygacz (NP6923)
                                                Attorney for Zachary LeBeau
                                                Office & PO Address
                                                217 34th street
                                                Brooklyn, New York 11232
                                                Tel: (646) 642-7492
                                                neil@neilesq.com