UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SINGULARDTV GMBH, <br><br> Plaintiff, <br><br> v. <br><br> ZACHARY LEBEAU and KIMBERLY JACKSON, <br><br> Defendants. | Case No. 1:21-cv-10130 <br><br> **ORAL ARGUMENT REQUESTED** |

**SINGULARDTV GMBH'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR EXPEDITED DISCOVERY**

March 23, 2022

KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220

Benjamin J. A. Sauter
Christopher S. Cogburn
Alexa R. Perlman

*Attorneys for Plaintiff
SingularDTV GmbH*

**PRELIMINARY STATEMENT**

Defendant Zachary LeBeau's opposition (the "Opposition," cited as "Opp." (Dkt. No. 85)) to SingularDTV's[1] Motion for Expedited Discovery (the "Motion," (Dkt. No. 75)) fails to contest the Motion's two central arguments. First, LeBeau does not dispute that he failed to "deliver physical possession of the device storing the Cold Wallet, together with all charging devices and authorizations including log-in information and passwords" to the parties' escrow agent, thus violating the plain language of the Consent Order that he negotiated and agreed to. (*See* Dkt. No. 66.) Second, while LeBeau asserts that his failure to deliver the device is a "non-issue" because Defendants allegedly "do not have access to the old SingularDTV cold wallet" (Opp. at 2, 5), he has not produced a shred of evidence supporting this assertion or otherwise illuminating the fate of the Cold Wallet device that he was ordered to deliver.

LeBeau has previously admitted that the Cold Wallet was, at least at one time, stored on an offline cold-storage device in his possession. (Decl. of Zachary LeBeau (Dkt. No. 37) ¶ 38 ("Jackson and I were given the wallet file **on a hard drive**, which acted as 1/2 of the key.").) He has also admitted that he was able to unilaterally access and transact in the assets stored on that device. (*Id.* ¶¶ 38–39 ("The seed phrase served as a failsafe "master key" allowing anyone knowing the phrase to access the cold wallet . . . . The other 3 founders entrusted me with the seed phrase for safekeeping . . .").) To the extent that LeBeau continues to possess the device or the private keys that were stored on it, he would have ongoing access to the Company's assets on the Cold Wallet and could dissipate them with virtual impunity, in contravention of the Consent Order.

---

[1] Unless otherwise noted, all capitalized terms have the meanings ascribed to them in SingularDTV's opening memorandum of law (the "Opening Brief," cited as "Br." (Dkt. No. 76)), and all emphases are added.

1

Expedited discovery will allow the Company and the Court to evaluate LeBeau's breezy assertion that his failure to deliver the Cold Wallet device is a "non-issue," as well as to assess the appropriate remedy for LeBeau's clear violation of the Consent Order that he negotiated. As SingularDTV explained in its Opening Brief, this is a paradigmatic request for expedited discovery, which courts regularly permit for the purpose of determining whether and to what extent a court order has been violated. (*See* Br. at 5–6 (collecting cases).)

In opposing the requested discovery, LeBeau asks the Court to ignore his clear violation of the Consent Order based on unsworn, unsubstantiated assertions by counsel about why this violation ought not to matter to SingularDTV or the Court. This is insufficient. *See Chevron Corp. v. Donziger*, 425 F. Supp. 3d 297, 300 (S.D.N.Y. 2019) (rejecting defendant's "repeat[ed] . . . contention that he did not violate" injunction as insufficient to defeat plaintiff's "efforts to obtain post-judgment discovery" on that issue). LeBeau's failure to supply a sworn declaration regarding the fate of the Cold Wallet device is particularly glaring in light of his counsel's previous offer to produce one during the parties' meet-and-confer discussions. (*See* Br. at 4–5.) And while LeBeau's counsel previously told SingularDTV's counsel that the Cold Wallet was "dismantled" years ago (*id.* at 4), LeBeau tellingly does not repeat that assertion in his Opposition.

Rather than explain or justify his failure to deliver the Cold Wallet device as required, LeBeau focuses his Opposition on a medley of baseless legal arguments, unsupported assertions about SingularDTV's purported motives, and even outright misstatements, all in support of a contention that he should be permitted to violate the plain language of the Consent Order with impunity. LeBeau's arguments do not undermine SingularDTV's need for or entitlement to the requested discovery, and the Company respectfully requests that the Court grant the Motion.

# ARGUMENT

As SingularDTV explained (Br. at 5) and LeBeau concedes (Opp. at 8), the standard for granting expedited discovery is a "flexible" one, requiring only a showing that the request is reasonable and supported by "good cause." *See, e.g.*, *Strike3 Holdings, LLC v. Doe*, 329 F.R.D. 518, 520 (S.D.N.Y. 2019). Contrary to LeBeau's contention that SingularDTV has "fail[ed] to provide any articulation of the elements required to be proven," SingularDTV's Opening Brief specifically addressed and established each of the four factors courts look to in evaluating whether such a request is supported by good cause: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury [that] will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 420 (S.D.N.Y. 1998).

SingularDTV reiterates the points and arguments from its Opening Brief, which remain essentially uncontested. Below, SingularDTV addresses the primary arguments presented in LeBeau's Opposition in order to clarify and correct the record in several respects.

**I.  Delivery of the ETH Does Not Satisfy LeBeau's Obligation to Deliver the Cold Wallet Device.**

LeBeau's campaign of confusion begins in the very first paragraph of his preliminary statement, which erroneously conflates delivery of the Cold Wallet device with the ETH that was, until recently, held on it.[2] (*See* Opp. at 2 (arguing that "main subject of [SingularDTV's]

---

[2] As SingularDTV's original complaint explained, a "wallet" is not itself cryptocurrency; rather, it is "an address on the blockchain where" cryptocurrency "such as ETH are stored and from where transactions can be carried out." (Compl. (Dkt. No. 1) ¶ 23 n.2.) A "cold" wallet is a wallet in which the private keys necessary to transfer cryptocurrency are maintained offline, such as on "a laptop, USB drive, or other physical device." (*Id.* (internal quotation marks and alterations omitted).)

3

Complaint" was "[t]he Cold Wallet, more specifically, the [ETH] held in the Cold Wallet").[3]) In this way, LeBeau seems to argue that delivery of the ETH is the same as, or at least as good as, delivery of the Cold Wallet device itself, and that he should therefore be excused from his obligation to deliver that device. (*See, e.g.*, Opp. at 9 (arguing that "the Cold Wallet was an issue only insofar as it held the disputed [ETH]").)

LeBeau is wrong to conflate the Cold Wallet and the ETH in this way. As an initial matter, the Consent Order unambiguously requires Defendants to separately deliver **both** the ETH **and** the Cold Wallet device. As SingularDTV made clear in its Opening Brief (at 3)—and as LeBeau does not and cannot dispute—the Resolution Agreement and Consent Order impose two distinct obligations on Defendants:

- to "transfer 12,000.415454144426866188 ETH held on a cold wallet hardware device ('Cold Wallet') to" the parties' escrow agent; and
- to "deliver physical possession of the device storing the Cold Wallet, together with all charging devices and authorizations including log-in information and passwords, to" the parties' escrow agent.

(Consent Order at 2.) LeBeau's contention that he satisfied his obligations by delivering the ETH alone does not survive contact with the plain language setting forth this two-step escrow process.

Nor is there any factual basis for LeBeau's suggestion that this consequential language was a mere "scrivener's error." (*See* Opp. at 6.) To the contrary, the Consent Order's distinction between the ETH and the Cold Wallet device was deliberate and material. As SingularDTV explained in its opening brief, the Cold Wallet contains over 100 digital assets **other** than the ETH. (*See* Br. at 3). Unlike the ETH, which is relatively liquid and frequently traded, these other digital assets are more obscure, making it impractical or impossible for the escrow agent to receive them

---

[3] Contrary to LeBeau's insinuation, SingularDTV's original Complaint clearly and repeatedly referred to and sought recovery of all "other digital assets" on the Cold Wallet. (*See, e.g.*, Compl. (Dkt. No. 1) ¶¶ 1, 27, 68–73, 76–80, 83–86, 88–93 & 95–100.).

4

in an account custodied by a conventional cryptocurrency exchange. Thus, rather than transferring digital assets in over 100 different denominations in piecemeal fashion, the parties agreed that LeBeau would instead surrender the Cold Wallet itself by "deliver[ing] physical possession of the device storing the Cold Wallet, together with all charging devices and authorizations including log-in information and passwords" to the escrow agent. This obligation was purposely incorporated into the parties' Resolution Agreement and Consent Order as necessary to secure the remaining assets stored on the Cold Wallet and to safeguard the physical integrity of the device itself.

Against this backdrop, LeBeau's claim that the other assets stored on the Cold Wallet "could have been dealt with in the Consent Order" but "were not" (Opp. at 2) is disingenuous. (Opp. at 2; *see also* Opp. at 9 (asserting that "questions to be explored by [SingularDTV's requested discovery] were not raised in the Consent Order").) The parties understood that the Cold Wallet contained assets other than the ETH, and they negotiated and agreed upon the means by which those assets would be secured as a condition of resolving SingularDTV's Motion for Preliminary Injunction (Dkt. Nos. 15–18): through delivery of the Cold Wallet device itself. Upon reaching this agreement, the parties incorporated it into precise language in the Resolution Agreement and Consent Order. The Court should decline LeBeau's improper invitation to write that bargained-for language out of the Consent Order and the parties' underlying agreement.

Even more outrageous are LeBeau's assertions that the escrow agent "has already emptied" the Cold Wallet and "moved the digital assets held in the old SingularDTV cold wallet to a new cold wallet under the control of" the escrow agent. (Opp. at 5, 8.) **These statements are unequivocally false**. The public blockchain confirms that these other digital assets remain in the Cold Wallet and were not transferred by the escrow agent (or SingularDTV's counsel) to any new

wallet.[4] The parties' escrow agreement actually prohibits such a transfer, which is why the Resolution Agreement and Consent Order required LeBeau to relinquish the Cold Wallet device itself, and why his failure to do so presents a risk of immediate and irreparable harm.[5]

Accordingly, and for the reasons set forth in SingularDTV's Opening Brief, the Court should authorize the discovery sought in the Motion so that it and SingularDTV may understand the reason for, extent of, and consequences of LeBeau's failure to deliver the device in violation of the Consent Order's unambiguous terms.

**II.  The Amended Complaint Is Irrelevant to the Motion, as Is Plaintiff's Now-Withdrawn Motion to Intervene in the Separate *Doe* Action.**

LeBeau next pivots to a set of procedural disputes which, he argues, immunize him against the consequences of his clear violation of the Consent Order. These arguments are baseless. As SingularDTV explained in its Opening Brief, this Court has inherent authority to enforce its own Consent Order by permitting the requested discovery. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994) (holding that court's inherent powers include authority "to manage its proceedings, vindicate its authority, and effectuate its decrees") (cited in Br. at 6); *accord Damus v. Nielsen*, 328 F.R.D. 1, 3–4 (D.D.C. 2018) ("The Court has the relevant authority 'as part

---

[4] LeBeau further misleads the Court in arguing that his violations of the Consent Order are harmless because "all Ethereum transactions can be traced via public domains." (Opp. at 10.) SingularDTV's ability to view transactions into and out of the Cold Wallet is hardly a safeguard against dissipation, as the public nature of the blockchain does ***not*** allow SingularDTV to prevent LeBeau (or anyone else) from engaging in transactions that remove assets from the Cold Wallet, to reverse such transactions after they are completed, to freeze any assets so transferred, or to identify the recipient of any such assets.

[5] In this regard, LeBeau's assertion that "Plaintiff fails to include a declaration to support a showing of 'good cause'" (Opp. at 8) is misplaced. The fundamental facts underlying the Motion are not disputed: (i) the Consent Order requires delivery of the Cold Wallet device, (ii) LeBeau failed to comply with that directive, and (iii) if he still has access to the private keys to the Cold Wallet, he would be able to access and dissipate those assets. Given that LeBeau has failed to address these undisputed issues with any evidence of his own, discovery is necessary to determine the extent of Defendants' violation of the Consent Order and what remedy, if any, is required.

of its inherent power to enforce its judgments,' and it is clear that 'appropriate discovery should be granted' where 'significant questions regarding noncompliance [with a court order] have been raised.'" (quoting *Cal. Dep't of Social Servs. v. Leavitt*, 523 F.3d 1025, 1033–34 (9th Cir. 2008)); *Abdi v. McAleenan*, No. 1:17-cv-721 (EAW), 2019 WL 1915306, at *3 (W.D.N.Y. Apr. 30, 2019) (granting "request for limited discovery based on [court's] inherent authority to enforce the preliminary injunction and [other court] orders," where party "compounded" its "inadequate explanation" for apparent violation of orders by "fail[ing] to engage in a meaningful discussion . . . to rectify these failures").

LeBeau suggests that he should be allowed to disregard the Consent Order because SingularDTV "has abandoned in its own pleadings" the relief that the Consent Order was meant to secure. (Opp. at 8.) This position fails to appreciate the significance and enforceability of an order of this Court. Through the Consent Order, LeBeau agreed and was ordered to entrust the Company assets in his possession, including "the device storing the Cold Wallet," to an escrow agent. There is no need for the Company to reassert in the Amended Complaint claims for relief that are already protected by the Consent Order. All that remains is for that order to be enforced, which is the purpose for which SingularDTV seeks the discovery requested in its Motion.

LeBeau argues that SingularDTV should have sought to enforce the Consent Order by raising questions about Defendants' compliance "in the First Amended Complaint." (*See* Opp. at 9.) This position runs counter to the long-recognized principle that, in federal court, "civil contempt sanctions" are the appropriate means "to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction." *Taggert v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (quoting *United States v. Mine Workers*, 330 U.S. 258, 303–304 (1947)). Indeed, "because civil contempt

7

is a 'part of the action that is the source of the order that is the subject of noncompliance,'" it "cannot be a separate, stand-alone 'cause of action.'" *Johnson v. City of N.Y.*, No. 16-cv-6426 (KAM) (VMS), 2018 WL 1597393, at *24 (E.D.N.Y. Mar. 31, 2018) (quoting Charles A. Wright & Arthur P. Miller, 4 FED. PRAC. & PROC. CIV. § 1017 (4th ed.)). Here, SingularDTV seeks limited discovery into the narrow but important issues raised by Defendants' noncompliance with the Consent Order so that it can determine whether that noncompliance justifies a contempt motion—and, if so, what remedies are appropriate. LeBeau cites no case, and SingularDTV is aware of none, holding that a court lacks discretion to authorize discovery into the violation of an order simply because the party requesting that discovery excluded from later-filed pleadings claims which, if asserted, would duplicate the relief already conferred by the order in question.

LeBeau next disparages the Motion as a ploy to circumvent "the normal order of priority and timelines for discovery." (Opp. at 9.) But the discovery SingularDTV seeks is not designed to develop evidence in support of its Amended Complaint. Rather, it is narrowly tailored to the purpose of ascertaining the extent of Defendants' violation of an order that resolved SingularDTV's prior claims and what relief, if any, is necessary to remedy that violation.

LeBeau's reference to *SingularDTV GmbH v. Doe*, Case No. 1:21-cv-06000 (VEC) (the "*Doe* Action") is also misplaced. (*See* Opp. at 2–3.) To be sure, SingularDTV has concerns about Defendants' potential withholding or destruction of the Cold Wallet device in part because it may contain electronically stored information about prior transactions into or out of the Cold Wallet, including the alleged "hack" that is the subject of the *Doe* Action. Those concerns are part of the "good cause" that supports SingularDTV's request for this limited discovery. (Br. at 1, 10.) But as explained above and in SingularDTV's Opening Brief, the discovery SingularDTV seeks is not designed "to uncover the identity of the alleged hacker" (*id.* at 3); it is intended to determine the

8

cause and extent of Defendants' failure to heed the Consent Order's clear command that they "deliver physical possession of the device storing the Cold Wallet."

Finally, LeBeau suggests that this Court lacks "jurisdiction" to enforce its own order and authorize the requested discovery because he apparently intends to move to dismiss the Amended Complaint on *forum non conveniens* grounds.[6] This argument fails to appreciate that the Motion seeks to vindicate SingularDTV's rights under the Consent Order, not those sought under its separate claims in the Amended Complaint. The Court's jurisdiction to enforce its own Consent Order does not depend on the outcome of a yet-to-be-filed motion. *See Kokkonen*, 511 U.S. at 380 (1994). And even if the Court's subject-matter jurisdiction over the claims in the Amended Complaint were relevant, that jurisdiction is beyond question: the Amended Complaint asserts four separate federal causes of action, all of them against defendants residing in this District. *See* 28 U.S.C. § 1331.

## CONCLUSION

Defendants are in clear violation of the plain terms of the Consent Order and have failed to present a coherent excuse or justification. In view of this violation, SingularDTV seeks limited discovery that is tailored to the purpose of uncovering the cause, extent, and consequences of that

---

[6] Although they cast their argument as a jurisdictional one, Defendants apparently intend to move to dismiss the Amended Complaint on *forum non conveniens* grounds, based on a forum-selection clause in a Service and Development Agreement (the "Agreement") between SingularDTV and Breaker (*see* Opp. at 7). *Laspata DeCaro Studio Corp. v. Rimowa GmbH*, No. 16-cv-934 (LGS), 2017 WL 1906863, at *3 (S.D.N.Y. May 8, 2017) ("A party that seeks to enforce a forum selection clause designating a foreign forum should do so through a motion to dismiss for *forum non conveniens*.") (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013)). Even properly construed, this anticipated motion is meritless—among other things, SingularDTV's federal trademark claims against LeBeau and Jackson do not arise out of the Agreement. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 390–91 (2d Cir. 2007) (holding that forum-selection clause in parties' contract did not apply to intellectual property claims because rights asserted in those claims did not "originate from the" contract).

violation, so that it can assess whether contempt remedies are necessary to vindicate its rights under the Consent Order. Accordingly, SingularDTV respectfully requests that the Court grant the Motion and enter an order requiring:

- that Defendants immediately produce nonprivileged documents responsive to the requests in Exhibit A to the Motion; and
- that Defendant LeBeau appear for an expedited deposition within 7 days after Defendants complete their document production.

Dated: New York, New York
March 23, 2022

Respectfully submitted,

/s/ Benjamin J. A. Sauter
Benjamin J. A. Sauter
Christopher S. Cogburn
Alexa R. Perlman
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220

*Attorneys for Plaintiff SingularDTV GmbH*