UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SINGULARDTV, GMBH,                                Case No. 1:21-cv-10130

                        Plaintiff,

            -against-


ZACHARY LEBEAU and KIMBERLY JACKSON,

                        Defendants.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



**MEMORANDUM OF LAW IN SUPPORT OF  DEFENDANTS' MOTION DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... 2

PRELIMINARY STATEMENT ................................................................................................... 4

FACTUAL BACKGROUND ........................................................................................................ 8

ARGUMENTS ............................................................................................................................ 12

   I.     THE ACTIONS ALLEGED IN THE AMENDED COMPLAINT CAN ONLY BE
MAINTAINED IN SWITZERLAND. ........................................................................................ 12

   II.    THE AMENDED COMPLAINT FAILS TO COMPLY WITH REQUIRED PLEADING
STANDARDS. ............................................................................................................................ 15

      A. The SingularDTV Name is Not a Registered U.S. Trademark. .................................... 16

      B. The SingularDTV Name is Not Unique or Distinctive. ............................................... 17

      C. The Amended Complaint does not Sufficiently Allege Vicarious Liability on the First and Second
Causes of Action. ....................................................................................................................... 21

      D. Plaintiff has Waived Any Causes of Action under the U.S.C. by Agreeing to Swiss Law, and the
Allegations in the Third and Fourth Causes of Action are otherwise Fatally Infirm. ........................ 23

         i. Swiss Law Governs. ............................................................................................... 23

         ii. Failure to Properly Plead Violation of U.S.C. § 1030 ............................................... 24

         iii. Failure to Plead any Trade Secret. ....................................................................... 25

   III.   PLAINTIFF SHOULD SEEK THIS RELIEF IN NEW YORK SUPREME COURT PRIOR
PENDING ACTION BETWEEN THE PARTIES. ................................................................... 28

CONCLUSION ........................................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Adam v. Jacobs*, 950 F.2d 89 (2d Cir. 1991)
*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York,* 762 F.2d 205 (2d Cir. 1985)
*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)
*Banff Ltd. v. Limited, Inc.,* 869 F. Supp. 1103 (S.D.N.Y. 1994)
*Becker v. Toca,* 2008 WL 4443050 (E.D. La. Sept. 26, 2008)
*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)
*Blue Ocean Laboratories, Inc. v. Tempur Sealy Int'l, Inc.,* 2015 WL 9592523 (M.D.N.C. Dec. 31, 2015)
*Brass v. Am. Film Techs., Inc.,* 987 F.2d 142 (2d Cir. 1993)
*The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972)
*Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585 (1991)
*Chambers v. Time Warner, Inc.,* 282 F.3d 147 (2d Cir. 2002)
*Colorado River Water Cons. Dist. v. United States,* 424 U.S. 800 (1976)
*Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce,* 228 USPQ 689, 690-91 (1986)
*Czech v. Wall St. on Demand, Inc.,* 674 F. Supp. 2d 1102, 1114 (D. Minn. 2009)
*Democratic Nat'l Comm. v. Russian Fed'n,* 392 F. Supp. 3d 410, 448 (S.D.N.Y. 2019)
*Ellison v. Robertson,* 357 F.3d 1072, 1079 (9th Cir. 2004)
*Elsevier Inc. v. Doctor Evidence, LLC,* 17-cv-5540 (KBF) (S.D.N.Y. Jan. 23, 2018)
*First City Nat'l Bank and Trust Co. v. Simmons,* 878 F.2d 76 (2d Cir. 1989)
*Integrated Cash Mgmt. v. Digital Transactions,* 920 F.2d 171 (2d Cir. 1990)
*In re Document Techs. Litig.,* No. 17-cv-2405, 2017 WL 2895945 (S.D.N.Y. July 6, 2017)
*Kleinman v. Elan Corp.,* PLC, 706 F.3d 145, 152 (2d Cir. 2013)
*Kraus U.S., Inc. v. Magarik,* 17-CV-6541 (ER) (S.D.N.Y. May 12, 2020)
*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.,* 378 F. Supp. 2d 448 (S.D.N.Y. 2005)
*Manning v. Utilities Mut. Ins. Co., Inc.,* 254 F.3d 387, 390-91 (2d Cir. 2001)
*Martinez v. Bloomberg LP,* 740 F.3d 211, 217-18 (2d Cir. 2014)
*Meridian Fin. Advisors, Ltd. v. Pence,* 763 F. Supp. 2d 1046, 1061-62 (S.D. Ind. 2011)
*Mitsubishi v. Soler Chrysler-Plymouth,* 473 U.S. 614, 629 (1985)
*Next Commc'ns, Inc. v. Viber Media, Inc.,* No. 14-cv-8190, 2016 WL 1275659 (S.D.N.Y. Mar. 30, 2016)
*Papasan v. Allain,* 478 U.S. 265, 286 (1986)
*Patterson v. Diggs,* No. 18-CV-03142 (NSR) (S.D.N.Y. Aug. 23, 2019)
*Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.,* 648 F.3d 295, 301 (6th Cir. 2011)
*Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1362-63 (2d Cir. 1993)
*Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197 (2d Cir. 1970)
*Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307, 308 (2d Cir. 1963)
*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)
*Wechsler v. HSBC Bank USA, N.A,* 674 F. App'x 73 (2d Cir. 2017)

## Statutes

15 U.S.C. §1052(d).

15 U.S.C. § 1114.
15 U.S.C. § 1125.
18 U.S.C. § 1836.

## **Other Authorities**

Federal Rules of Civil Procedure 12(b)(1).
Federal Rules of Civil Procedure 12(b)(3).
Federal Rules of Civil Procedure 12(b)(6).
Federal Rules of Evidence 201(b).

Defendants Zachary LeBeau ("LeBeau") and Kimberly Jackson ("Jackson", and together with LeBeau, "Defendants") by their respective attorneys, Neil L. Postrygacz and Paul F. Condzal, respectfully submit this Memorandum of Law in support of their motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction; Fed. R. Civ. P. 12(b)(3) for improper venue; and, Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

The Amended Complaint alleges claims in connection with that certain Service and Development Agreement dated as of January 2017 (as amended, the "Agreement") entered into between SingularDTV GMBH ("Plaintiff") and the stateside SingularDTV LLC (hereinafter referred to as "Breaker"), affiliated entities at the time under common management and control. *See* Exhibit A. In pertinent part, Plaintiff alleges that Defendants have violated the terms of the Agreement (a) by continuing to use intellectual property that Plaintiff claims to own following the termination of the Agreement and (b) by accessing information that Plaintiff now claims as "proprietary." *Id*. at ¶¶ 1, 3.

Plaintiff asserts these claims pursuant to the Agreement while disregarding the mandatory jurisdictional provision in Paragraph 58.[1] Instead of submitting to the jurisdiction specified in the

---

[1] The Agreement provides in relevant part:

> 57. Governing Law. This agreement shall be governed by and construed in accordance with the Swiss laws. The application of the United Nations Convention for Contracts for the International Sales of Goods is hereby expressly excluded.

> 58. Jurisdiction. The ordinary courts of the city of Zug, Switzerland, have exclusive jurisdiction for any disputes arising out of or in connection to this Agreement.

A true and complete copy of the Agreement is included as Exhibit A.

Agreement, Plaintiff erroneously calls to the jurisdiction of the Southern District of New York through insufficient Lanham Act claims alleging trademark infringement and claims under the Computer Fraud and Abuse Act (the "CFAA") and the Defend Trade Secrets Act (the "DTSA"), *cited in* ¶ 58, 72. Plaintiff at once relies on and ignores the Agreement specifically to bring its claims before this court instead of the mandated courts of Switzerland.

Plaintiff's original complaint filed on November 29, 2021 (the "Original Complaint") did not assert any Lanham Act claims or claims under the CFAA or the DTSA. The Original Complaint defamed the reputation of Defendants through a bizarre narrative that wrongfully accused Defendant LeBeau of being a career criminal who was attempting to make off with $50 million in cryptocurrency and who orchestrated a hacking incident against Breaker in order to steal another $2 million. *See* Exhibit B ¶1 (citing "LeBeau's refusal to return many thousands of Ether ("ETH"), the native cryptocurrency of the Ethereum blockchain, as well as other digital assets rightfully belonging to SingularDTV following his termination as an officer and director of the Company. As of the date of this filing, the current value of the ETH wrongfully possessed by LeBeau is approximately US $50 million.").

Recognizing that the Original Complaint could not possibly succeed, Plaintiff strategically jettisoned this attempt to keep any cause of action alive in this Court. Plaintiff's Amended Complaint completely abandons the spurious personal attacks in favor of equally spurious trademark infringement and trade secret claims. The Amended Complaint now reads: "This case concerns the Defendants' infringing use of the SingularDTV word mark (the "Mark"), a trademark which the Company uses to distinguish its goods and services in commerce, which the Company has registered in Switzerland, Australia, Japan, Korea, India, Mexico, Russia, Turkey, the European Union, and the United Kingdom, and for which the Company has a pending

application for registration with the United States Patent and Trademark Office (the "USPTO"). The Mark is also registered under the Protocol Relating to the Madrid Agreement Concerning the International Registration of Marks (the "Madrid Protocol"), an international trademark registration system implemented through a series of treaties and administered by the Swiss-based World Intellectual Property Organization." *See* Exhibit A, ¶1.

The Amended Complaint should be dismissed for several reasons:

*First*, this action is not presented in the proper venue in this Court because the Agreement specifically designates that any controversy arising under or in connection with its terms are to be brought exclusively in the Canton of Zug, Switzerland. *See* Exhibit A, n.1 (reading "The ordinary courts of the city of Zug, Switzerland, shall have exclusive jurisdiction for any dispute arising out of or in connection to this Agreement." Plaintiff's trademark infringement claims arise "out of or in connection" the Agreement. As such, Plaintiff's Amended Complaint is clearly subject to dismissal based upon the governing jurisdiction specified in the Agreement. The Agreement also contains a clear choice of law provision that precludes the four federal law causes of action brought against Defendants in the Amended Complaint. *Id*.

*Second*, the Amended Complaint depends solely on misinformation construed on a suspended, and therefore unprotectable, trademark; accordingly, it fails to satisfy the necessary pleading standards. The Amended Complaint purports to allege violations of the Lanham Act in its first two causes of action. However, despite Plaintiff's long-winded accounting of its non-US trademark portfolio, Plaintiff's Lanham act claims cannot succeed because SingularDTV in fact has no federal trademark registration.

*Third*, the SingularDTV trademark application before the USPTO has been suspended since February 20, 2018, and it remains suspended as of April 5, 2022. *See* Exhibit D. The USPTO

has already determined that the mark cannot be registered because it is confusingly similar to at least three other trademarks. Plaintiff's claims that the mark is "distinctive" (or even famous) are clearly refuted by the USPTO's own determination in this regard. *See* Exhibit E.

*Fourth*, Plaintiff's allegations that Defendants LeBeau and Jackson have illegally gained access to its proprietary information rely on the premise that all of Plaintiff's proprietary information has been and continues to be maintained in its email system. That is the same email system allegedly hacked by the Defendants according to the Original Complaint, which, according to Plaintiff is now being wrongfully accessed by Defendants. Nonetheless Plaintiff's new theory of liability falls under the auspices of the Agreement between Plaintiff and Breaker. Furthermore, despite this unsupported assertion that a blockchain company relies on Google mail to protect it's alleged "trade secrets", the Amended Complaint does not provide any basis or description for the conclusion that this alleged information was in fact proprietary or what measures Plaintiff has undertaken to protect it from being wrongfully disclosed. As such, the Amended Complaint completely fails to satisfy the pleading requirements for asserting a violation of the DTSA.

*Fifth,* Plaintiff has failed to allege any specific factual basis for claiming against Jackson and LeBeau, individually, with respect to the Lanham Act violations, or violation of the CFAA or the DTSA. Neither LeBeau nor Jackson was a party to the Agreement, and the complained of actions all arise from disputes between the parties related to the interaction between SingularDTV and Breaker, a relationship whose sole nexus is the Agreement.

## FACTUAL BACKGROUND

The facts alleged in the Amended Complaint are strategically convoluted with a scattershot timeline that obfuscates the distinction between mere conclusions with actual facts. Exhibit A, ¶¶10-57. In Paragraph 13, the Amended Complaint described the genesis of

SingularDTV in Switzerland and the share allocation and purpose of the company to develop software for the creation of a blockchain and Ethereum-based production and distribution platform along with the development and marketing of film and TV content. *See* Exhibit A, ¶¶10-14.

The Amended Complaint states that, in 2016 after the formation of the Swiss entity, LeBeau and Jackson formed a "separate New York limited liability company" doing business as "Breaker". Exhibit A, ¶15. The Amended Complaint states that in January the Swiss GMBH and Breaker entered into the Agreement. *Id*. at ¶16. The Amended Complaint lists the international locations in which Plaintiff registered the Mark and/or has an application pending. *Id.* ¶¶17-18. These locations do not include the United States, where Plaintiff has only a "suspended application" and not a registered trademark. *Id.* ¶1. The Amended Complaint does not claim otherwise and admits that the GMBH only "sought to register the Mark". *Id.* ¶19. The Amended Complaint proceeds to dodge the issue of registration of the SingularDTV name in the United States and describes its use of the SingularDTV name on social media platforms to promote its tools and services from 2017 through "last summer" and ends with the conclusion that the name "has acquired additional distinctiveness, value, and prestige within the relevant market." *Id.* at ¶ 27. The Amended Complaint does not state the factual basis for this conclusion or define the "relevant market". Plaintiff's intentional misstatement of the applicable standards and requirements for registration of a trademark with the USPTO is also notable. It is well established that merely using a name in commerce, even on its Twitter account, does not establish distinctiveness, make it famous, or afford it any protection whatsoever under the Lanham Act.

The Amended Complaint states that as part of the Agreement, the Plaintiff authorized the use of the Mark in connection with the goods and services produced by Breaker and provides an example of such use by Breaker. *Id.* at ¶ 28-30.

The Amended Complaint then goes on to describe LeBeau's ouster from SingularDTV and the termination of Jackson as the Chief Operating Officer of Singular DTV. *Id.* at ¶ 31-34. These allegations are highly controverted and the subject of several other pending litigations in Switzerland and New York concerning the proper corporate authority of the GMBH's action – however, these disputes go unacknowledged in Plaintiff's Amended Complaint, despite the fact that the actions by Joseph Lubin and Arie Levy Cohen have been disputed and are the subject of multiple pending litigations.

The Amended Complaint references "valuable Company assets" but fails to identify, quantify or value any particular assets of Plaintiff. *Id.* at ¶ 35. The Amended Complaint then divulges privileged settlement negotiations in a meeting of the shareholders of Plaintiff in which compliance with the required corporate formalities is highly contested and subject to several pending litigations in Switzerland and New York. *Id.* at ¶ 36-38.

The Amended Complaint provides that the recently hacked email accounts of Plaintiff contain "highly sensitive business and employee information" but fails to plead with specificity the nature of the information, or to offer, even by way of example, the type of sensitive business information contained in the email accounts, or how that information might be at risk of disclosure or misuse. *Id.* at ¶ 39.  More strikingly, though, Plaintiff does not detail any steps it has taken to preserve the integrity of this allegedly "highly sensitive" information, which is not even an element of a protectable trade secret, that it claims is locked tightly away in its recently hacked email accounts. The Amended Complaint does allege that the termination of its email

accounts upon the termination of the Agreement caused the loss of "access to financial accounts, privileged legal communications, years of highly sensitive business and personal information, tax and employee social security information, and extensive communications with clients and other third-party service providers". *Id.* at ¶ 42. Despite the email accounts being under the direction and control of Plaintiff, Plaintiff provides nothing in support of its claim but mere speculation that its access has been impaired. Further, Plaintiff's reliance on email for cataloging its essential books and records would be a highly unusual business practices, especially in light of the recent hacking incident in which the very same email platform was compromised by an unknown third party, resulting in the theft of approximately $2 million in SingularDTV assets.

The Amended Complaint again alleges Plaintiff's "highly sensitive business information and trade secrets" and "personal information" contained in its email accounts. *Id.* at ¶ 44. The "trade secrets" and "personal information" are not identified nor is there any particular basis for classifying the information as such. *Id.* The purported "collected evidence" and "important correspondence" referenced in ¶48 are similarly unidentified. The "confidential and competitively sensitive Company information" referenced in Paragraph 49 is not also unidentified and the allegation lacks any detail other than being conveniently labeled as such. All other allegations in the Amended Complaint regarding the content of email accounts are also absent any specific factual allegations. *Id.* at ¶ 48-51.

The allegations regarding the unauthorized use of the SingularDTV name are contained in Paragraphs 52-57 and center around its continued use following the termination by Plaintiff of the Agreement on May 28, 2021. *Id.* at ¶ 52-57. Until the filing of the Amended Complaint, and notwithstanding a perfunctory cease and desist notification a few days beforehand, Plaintiff had not raised any objection to the continued use of the SingularDTV name in connection with

websites and social media accounts promoting software and other assets purportedly owned by Plaintiff. *Id.* In another claim emanating from the terminated Agreement, the Amended Complaint summarily alleges that the "SingularDTV Domain is likely to confuse potential customers by asserting Breaker's business with SingularDTV" and that this "dilutes the Company's brand" *Id.* at ¶ 55, 56. This absurd allegation seeks to transform an ongoing authorized use by an affiliated entity into a trademark infringement due to the wrongful termination of the Agreement by rogue shareholders seeking to oppress and freeze out their business partners. There can be no confusion as alleged by Plaintiff, since the consuming public understands that Breaker and SingularDTV are affiliated entities and brands and have been affiliated since the SingularDTV first began to use the Breaker name in connection with its software and services.

The "Factual Background" section of the Amended Complaint concludes with the allegation that because the web traffic is directed to non-secure-pages, Plaintiff's "goodwill" is "severely diluted" and "lessens public trust in the Company and its management" *Id.* at ¶ 57. The Amended Complaint fails to provide any specific details to support this conclusion; nor does it acknowledge that the referenced pages have been 'non secure' since they were first launched several years ago.

## ARGUMENT
### POINT I
### THE ACTIONS ALLEGED IN THE AMENDED COMPLAINT CAN ONLY BE MAINTAINED IN SWITZERLAND.

All of the allegations in the Amended Complaint arise under and or are connected to the Agreement between SingularDTV and Breaker. The Agreement specifically contains the mandatory provision that "[t]he ordinary courts of the city of Zug, Switzerland, shall have

exclusive jurisdiction for any dispute arising out of or in connection to this Agreement." *See* Exhibit C, ¶ 58.

The Supreme Court has stated that forum selection and choice of law clauses are presumptively valid where the underlying transaction is fundamentally international in character. *See  The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). In *The Bremen*, the Court explained that American parochialism would hinder the expansion of American business and trade, and more generally, interfere with the smooth functioning and growth of global commerce. *Id*. at 9. Forum selection and choice of law clauses eliminate uncertainty in international commerce and ensure that the parties are not unexpectedly subjected to hostile forums and laws. *Id.* Moreover, international comity dictates that American courts enforce forum selection clauses in contracts out of respect for the integrity and competence of foreign tribunals. *Mitsubishi v. Soler Chrysler-Plymouth*, 473 U.S. 614, 629 (1985). In addition to these rationales for the presumptive validity of forum selection and choice of law clauses, the Supreme Court has noted that contracts entered into freely generally should be enforced because the financial effect of forum selection and choice of law clauses likely will be reflected in the value of the contract as a whole. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 591 (1991); *see also Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362-63 (2d Cir. 1993). Alternatively, contracting parties may intend to agree in advance on a forum where any and all of their disputes must be brought to eliminate surprise of having to litigate in a hostile forum. *Roby*, 996 F.2d at 1363. A mandatory forum clause is entitled to the Bremen presumption of enforceability. *Id*.

The Amended Complaint contains several instances of factual allegations clearly demonstrating that all of Plaintiff's claims arise out of or are connected to the Agreement. These allegations include: (a) Breaker was established to in New York to "provide exclusive support" to

certain projects as such Breaker's work in support was conducted under the Agreement (Exhibit A, ¶ 16); (b) the Agreement obligated Breaker to perform services exclusively on behalf of the Plaintiff, and it further prohibited Breaker from providing services for nay third parties (*Id*.); (c) the Agreement contained "a comprehensive non-compete clause" and assigned "all intellectual property rights developed by Breaker to SingularDTV (*Id*.); (d) Breaker provided certain email services to Plaintiff pursuant to the *Agreement* (*Id*. at ¶ 40); (e) on May 28, 2021, the Plaintiff terminated the *Agreement* with Breaker (*Id*. at ¶¶ 31, 33); (f) "Since SingularDTV's termination of the *Agreement*, Defendants' use of the Mark has been without SingularDTV's consent Exhibit G ¶ 68; (g) Defendants continue to use the Mark which is "inherently distinctive" after the termination of the Agreement (*See* Exhibit A at ¶¶ 82, 85, and 86, in pertinent part the Amended Complaint <u>Second</u> Cause of Action); (h) Defendants accessed Plaintiff's email, which access was arising out of or in connection to this *Agreement* (*Id*. at ¶ 96, in pertinent part the Amended Complaint <u>Third</u> Cause of Action); and (i) Defendants transferred Plaintiff's emails containing "certain trade secrets," which access to transfer was arising out of or in connection to this Agreement (*Id*. at ¶ 107, in pertinent part the Amended Complaint <u>Fourth</u> Cause of Action).

All of these claims asserted by Plaintiff arise out of Breaker's services (or the wrongful termination of the services) performed for Plaintiff under the Agreement, and therefore are subject to the forum selection clause set forth in that Agreement.

While the Amended Complaint attempts to circumvent the mandatory jurisdictional provisions in the Agreement by pleading violations of four separate US Codes in the Amended Complaint under Paragraphs 7, 72, 80-94, 96, 98, 100, and 104), all of these claims nonetheless arise out obligations or restrictions born from the Agreement. Because the Agreement mandated Swiss jurisdiction (as well as Swiss law), Plaintiff is foreclosed from asserting claims under U.S.

law as it has effectively waived any claim for relief in this regard when it selected Switzerland as the exclusive jurisdiction and Swiss law as the governing regulation. Further, the pleadings of the US Federal claims are also fatally deficient and otherwise subject dismissal under Rule 12(b)6. *See infra*.

The Second Circuit Court in *Martinez v. Bloomberg LP,* 740 F.3d 211, 217-18 (2d Cir. 2014) stated, "As the Supreme Court and the Second Circuit have made clear, there is a strong federal policy in favor of enforcing forum selection clauses." *See also The Bremen v. Zapata Off– Shore Co.*, 407 U.S. 1, 9–10, 12 (1972) (holding that courts should "give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement," by specifically enforcing forum selection clauses); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir.1993) (noting the "strong public policy in favor of forum selection and arbitration clauses"). Among other things, judicial enforcement of such clauses removes uncertainty in economic transactions and ensures that the parties' expectations are fulfilled. See *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94 (1991); *Bremen*, 407 U.S. at 13–15; *Aguas Lenders Recovery Grp., LLC v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009). Moreover, international comity dictates that American courts enforce forum selection clauses in international agreements "out of respect for the integrity and competence of foreign tribunals." *Roby*, 996 F.2d at 1363.

The Amended Complaint must therefore be dismissed.

## POINT II

### THE AMENDED COMPLAINT FAILS
### TO COMPLY WITH REQUIRED PLEADING STANDARDS

The Amended Complaint impermissibly relies on conclusory pleading without the necessary factual allegations to sustain any of its four causes of action. *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). "To survive a motion to dismiss under Rule 12 (b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*. at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

### A.     The SingularDTV Name is Not a Registered U.S. Trademark.

The <u>first</u> cause of action in the Amended Complaint is for alleged trademark infringement under the Lanham Act in connection with Defendants' alleged use of the SingularDTV name. Exhibit A ¶¶ 58-79; *see also* 15 U.S.C. § 1114. The Amended Complaint does not allege that the SingularDTV name is registered with the USPTO.

15 U.S.C. § 1114 (1)(a) provides that a person shall be civilly liable if, without the registrant's consent, such person: use[s] in commerce any reproduction, counterfeit, copy or colorable limitation of a *<u>registered</u>* mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive (emphasis added).

The Amended Complaint lists the various international jurisdictions in which Plaintiff registered the SingularDTV name. Amongst the locations listed by Plaintiff, the United States is

notably absent. Exhibit A ¶¶ 17, 18. The Amended Complaint also states that the GMBH "sought to register the [SingularDTV name as a trademark in the United States]". *Id*. at ¶ 19. Taken together, the Amended Complaint fails to even allege the predicate of a United States trademark registration through the USPTO. Thus, it cannot claim protection under this section of the Lanham Act that requires registration of the name.

The USPTO docket for SingularDTV indicates that the Mark has not been registered and that in fact the application itself has been "suspended" since February of 2018. Exhibit D. If, as here, the name is not registered, it cannot be protected utilizing this section of the Lanham act and therefore Plaintiff's First Cause of Action must be dismissed. See *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448 (S.D.N.Y. 2005) (noting that the first step of the court's analysis was whether the alleged Mark is registered with the USPTO).

### B.    The SingularDTV Name is Not Unique or Distinctive.

The <u>second</u> cause of action in the Amended Complaint is for alleged trademark infringement under the Lanham Act 15 U.S.C. §1125 in connection with Defendants' use of the SingularDTV name. Exhibit A ¶¶ 80-94. Implicitly, this cause of action also recognizes that the SingularDTV name is not registered in the United States. 15 U.S.C. § 1125(a) "deems liable for false designation of origin, any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which …is likely to cause confusion…." Here, the Amended Complaint provides a litany of conclusory allegations intended to deceive the court that the SingularDTV name is "inherently distinctive." *Id.* at ¶¶ 81-89.

Ignoring for the sake of argument the deficiency of Plaintiff's threadbare Lanham Act claims, Plaintiff cannot establish a claim under the Lanham Act without a valid trademark. The USPTO has already issued a determination in connection with the Plaintiff's application for registration that categorically refutes the characterization of the SingularDTV name as distinctive. The determination by the USPTO is a public record for which judicial notice can be taken as to contents therein, specifically the USPTO's position that there is a likelihood that the SingularDTV name would be confused with earlier filed trademark applications being considered by the USPTO for registration. Ultimately, the USPTO concluded that the SingularDTV name is anything but distinctive; in fact, if any of the earlier filed marks is registered, the SingularDTV name could itself be deemed infringing of any of the earlier filed 'singular' marks that are able to demonstrate first use prior to SingularDTV's filing date under the Madrid Protocol.

More importantly, though, the refusal by the USPTO to permit registration of the SingularDTV name in the United States refutes Plaintiff's claim of distinctiveness set out in its Amended Complaint. *Patterson v. Diggs*, No. 18-CV-03142 (NSR), at *1 (S.D.N.Y. Aug. 23, 2019). A court may consider documents attached to the complaint; statements or documents incorporated into the complaint by reference; matters of which judicial notice may be taken, such as public records; and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. See, e.g., *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (applying that rule to district courts); *Wechsler v. HSBC Bank USA, N.A*, 674 F. App'x 73 (2d Cir. 2017). A court can consider "matters of which judicial notice may be taken" pursuant to Federal Rule of Evidence ("FRE") 201(b). *Id.* (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). This exception allows a court to consider facts that are either generally known, or facts that "can be

accurately and readily determined from sources whose accuracy cannot reasonably be questioned."
FRE 201(b)(2).

On or about March 14, 2017, Plaintiff filed an application to register the SingularDTV
name in the United States. The Mark consists of standard characters without claim to any particular
font style, size or color. On or about July 29, 2017, the USPTO denied Plaintiff's application. On
or About February 20, 2018, the USPTO suspended the application. On or about August 24, 2021,
the last entry in the USPTO Trademark Status and Document Retrieval Report indicates the
application was still suspended. The last 'suspension check' was completed on April 5, 2022. A
copy of the USPTO Trademark Status and Document Retrieval Report and TSDR Prosecution
History are annexed to Counsel's Declaration as Exhibit E.

On or about July 28, 2017, the USPTO issued an Office Action Letter denying Plaintiff's
application for registration of the SingularDTV name. The reason for the denial was stated as:
*Registration of the applied-for mark is refused because of a likelihood of confusion with the marks
in U.S. Registration Nos. 3522207, 5221770, 3386087, 3415250, and 3412341.Trademark Act
Section 2(d), 15 U.S.C. §1052(d); see TMEP §§1207.01* (emphasis added). As such, there are at
least five other registered Marks with which the USPTO determined Plaintiff's mark would create
a "likelihood of confusion". A copy of the USPTO Office Action Letter dated July 28, 2017, is
annexed to Counsel's Declaration as Exhibit E.

The USPTO explicitly determined that the very name that Plaintiff here claims is unique
and distinctive would in fact create confusion in the marketplace because it so resembles other
marks with potentially superior rights. The USPTO states: "Trademark Act Section 2(d) bars
registration of an applied-for mark that so resembles a registered mark that it is likely a potential
consumer would be confused, mistaken, or deceived as to the source of the goods and/or services

of the applicant and registrant. See 15 U.S.C. §1052(d). In this case, the following factors are the most relevant: similarity of the marks, similarity and nature of the goods and services, and similarity of the trade channels of the goods and services." *Id.*

The USPTO also identified several additional reasons as to why the SingularDTV name was not eligible for registration through the USPTO. In pertinent part, the USPTO wrote in its office action: "[m]arks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. Similarity in any one of these elements may be sufficient to find the marks confusingly similar. Marks may be confusingly similar in appearance where similar terms or phrases, or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression." See *Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce,* 228 USPQ 689, 690-91 (1986), (finding COMMCASH and COMMUNICASH confusingly similar); In re *Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp*., 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii). Here, each mark begins with the identical term SINGULAR in the first position of the mark. Consumers are generally more inclined to focus on the first word, prefix, or syllable in any trademark or service mark…as well as "the identification set forth in the application and registrations has no restrictions as to nature, type, channels of trade, or classes of purchasers. Therefore, it is presumed that these goods and/or services "travel in the same channels of trade to the same class of purchasers." *See* Exhibit E.

The USPTO also determined that: "the application uses broad wording to describe the goods and/or services and this wording is presumed to encompass all goods and services of the type described, including those in the narrower identifications found in the cited registrations. See,

e.g., Sw. *Mgmt., Inc. v. Ocinomled, Ltd.,* 115 USPQ2d 1007, 1025 (TTAB 2015); *In re N.A.D., Inc.*, 57 USPQ2d 1872, 1874 (TTAB 2000)." *See* Exhibit E.

Plaintiff cannot therefore assert claims that "[the Mark is fanciful, arbitrary, and otherwise inherently distinctive" Exhibit A ¶¶ 82. and that, based upon the distinctive and unique qualities of a name, it has been "blurred and tarnished" by Defendants *Id.* at  ¶¶ 87-89. The USPTO has made a clear determination that the SingularDTV name is not at all distinctive and likely infringes similar marks through which similar goods and services are provided.[2] Plaintiff's second cause of action should therefore be dismissed.

C.     **The Amended Complaint does not Sufficiently Allege Vicarious Liability on the First and Second Causes of Action.**

Notwithstanding the fatal pleading deficiencies in the first and second causes of action regarding violations of the Lanham Act, the Amended Complaint fails to articulate a factual or legal basis for claims against the defendants in their individual capacities.

To state a claim for vicarious infringement, a plaintiff must establish infringement, and in addition, plead facts showing that the defendant (i) had the right and ability to control the infringing conduct and (ii) received a direct financial benefit from it. *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997). Plaintiff fails to adequately allege either of

---

[2] When considering the likelihood of confusion, courts in the Second Circuit consider the eight-factor test set forth in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495-96 (2d Cir. 1961) (Friendly, J.). However, in cases, such as the present one, that analysis is not necessary because the USPTO has already determined the ordinariness of the Mark and therefore all other claims in connection with this purported Mark are factually and legally unsupportable.

these elements and instead relies on skeletal, conclusory allegations in ¶¶ 75 and 91 in the Amended Complaint. Exhibit A  ¶¶ 75, 91.

The "control" prong of a vicarious infringement claim requires a showing that the defendant is "actually involved with the decisions, processes or personnel directly responsible for the infringing activity." *Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103, 1109 (S.D.N.Y. 1994). The Amended Complaint contains no such allegations of control over the websites and social media platforms that allegedly infringe the unregistered trademark, Furthermore, it is clear that the individual defendants are not parties to the Agreement which first granted the right to use the SingularDTV name and then wrongfully withdrew such right in default of the implied covenant of good faith and fair dealing implied in every contract. Thus, there can be no claim against LeBeau and Jackson for vicarious infringement.

The Amended Complaint also fails to adequately plead the required financial benefit element necessary to state a claim. Vicarious infringement requires that the defendant have "an obvious and direct financial interest in the exploitation of copyrighted materials." *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307, 308 (2d Cir. 1963). The "essential aspect" is "whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). Plaintiff attempts to satisfy this prong by alleging "a direct financial interest in Breaker's infringing conduct" (Exhibit A ¶ 75) and "a direct financial interest in Breaker's diluting conduct (*Id.* at ¶ 91). But these allegations are conclusory and do not establish the requisite direct financial benefit from the infringing activities because there are no allegations let alone details of any facts to support these conclusions, since any financial benefit reaped by Defendants would have occurred while the Agreement was still in effect. When Plaintiff froze LeBeau and Jackson out of the SingularDTV

business, Plaintiff took away their ability to benefit from exploitation of the SingularDTV intellectual property since they were likewise deprived of salaries; further any royalties derived from the exploitation of SingularDTV intellectual property rights accrue to SingularDTV and not to the individual Defendants. In any event, Plaintiff fails to allege a direct "causal relationship between the infringing activity and any financial benefit [Defendants reap]." *Ellison*, 357 F.3d at 1078-79. "Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief." *Bell Atl. Corp.*, 550 at 557.

The Amended Complaint fails to sufficiently plead any cause of action against the individual defendants.

> **D.** **Plaintiff has Waived Any Causes of Action under the U.S.C. by Agreeing to Swiss Law, and the Allegations in the Third and Fourth Causes of Action are otherwise Fatally Infirm.**

> **i.** **Swiss Law Governs**

Plaintiff's <u>Third</u> and <u>Fourth</u> Causes of Action are brought under the Computer Fraud and Abuse Act 18 U.S.C. § 1030 and Defend Trade Secrets Act 18 U.S.C. § 1836, respectively. Here again the Amended Complaint alleges actions that arose under or in connection with the Agreement. Plaintiff goes so far as to acknowledge this fact in ¶ 40 of the Amended Complaint, where it refers to Breaker's utilization of third-party services in performance of its duties under the Agreement, particularly in connection with certain email services – the alleged misuse of which gives rise to Plaintiffs CFAA and DTSA claims. Both the <u>Third</u> and <u>Fourth</u> causes of action clearly arise from services performed under the Agreement and actions taken upon termination of the Agreement, and thus should be subject to the laws and courts of Switzerland.

The Agreement forecloses any reliance on claims under these statutes because it expressly provides that it "shall be governed by and construed in accordance with Swiss Law." Exhibit A ¶ 58. The Agreement does not contain any "carve out" provision for claims alleged under US law. "Under the stipulation, plaintiff released all claims within the exclusive jurisdiction of the WCB. However, plaintiff expressly reserved the right to litigate claims pursuant to federal or state law that were not within the WCB's exclusive jurisdiction." *Manning v. Utilities Mut. Ins. Co., Inc.*, 254 F.3d 387, 390-91 (2d Cir. 2001) As shown *supra* Point I, Plaintiff's claims all arise under or are in connection with the Agreement, and Plaintiff cannot circumvent either the venue specified in the Agreement or its choice of law provisions.

### ii.     Failure to Properly Plead Violation of U.S.C. § 1030.

The Third cause of action falls under the Computer Fraud and Abuse Act, however Plaintiff fails to specify which subsection of the CFAA has been breached by Defendant's actions. Exhibit A ¶¶ 95-102. Section 1030(a)(4), for example, prohibits knowingly and with intent to defraud accessing a protected computer, without authorization or by exceeding authorized access, to obtain anything of value or further a fraud. Section 1030(a)(5)(A), on the other hand, prohibits knowingly, intentionally, and without authorization causing the transmission of a program, information, code, or command to a protected computer, and causing damage. Sections 1030(a)(5)(B) and 1030(a)(5)(C), prohibit intentionally accessing a protected computer without authorization and, as a result of such conduct, recklessly causing damage and loss.

Plaintiff's boilerplate recitation of conclusory allegations is insufficient to state a cause of action under any subdivision of the CFAA. For instance, the Amended Complaint

fails to allege any necessary "transmission" to support a claim under 1030(a)(5)(A). Plaintiffs bringing a claim under Section 1030(a)(5)(A) must plead that the defendant knowingly transmitted a program, information, code, or command to a protected computer. The CFAA does not define transmission. However, courts have held that, for purposes of the CFAA, a transmission can occur over the internet or through a physical medium such as a compact disc. *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1061-62 (S.D. Ind. 2011). Examples of transmissions under the CFAA include: Code or programs containing viruses, including spyware *(Becker v. Toca*, 2008 WL 4443050, at *1 (E.D. La. Sept. 26, 2008)); phone calls and text messages (*Czech v. Wall St. on Demand, Inc.*, 674 F. Supp. 2d 1102, 1114 (D. Minn. 2009)); bulk emails (*Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 301 (6th Cir. 2011)); and programs that delete files from the plaintiff's computer (*Citrin*, 440 F.3d at 419–20).

The Amended Complaint does not include a single allegation in this regard let alone allegations sufficient to satisfy the pleading requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) in which the United States Supreme Court held, "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*.

### iii.   Failure to Plead any Trade Secret.

The <u>Fourth</u> Cause of Action under the Defend Trade Secrets Act also falls short because the Amended Complaint fails to sufficiently allege any trade secrets. Exhibit A ¶¶ 103-112. "A plaintiff claiming misappropriation of a trade secret must prove: '(1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement,

confidence, or duty, or as a result of discovery by improper means.'" *Integrated Cash Mgmt. v. Digital Transactions*, 920 F.2d 171, 173 (2d Cir. 1990).

Here, Plaintiff has not established that Defendants are in "possession of a trade secret". The pleading standard required by *Twombly* and *Iqbal*—that a plaintiff provide the grounds upon which its claim rests through factual allegations sufficient to raise a right to relief above the speculative level—forecloses DRE's trade secret claims here. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677-78. Plaintiff repeatedly refers to conclusory assertions that Defendant's, by having had access to Plaintiff's email repository of trade secrets, they must therefore have accessed "highly sensitive business trade secrets and employee information" per Exhibit A ¶¶ 2, 42, 44; "competitively sensitive Company information" per *id.* at ¶ 49; and "substantial confidential information, including competitively sensitive trade secrets that derive value from their secrecy" per *id.* at ¶ 105). Yet, Plaintiff does not take the next important step necessary to maintain a claim under the DTSA: there can be no breach under the DTSA without a breach of duty. Here there can be no breach of duty where Defendants, on behalf of Breaker, sought to perform Breaker's obligations under the Agreement, including terminating services when ordered to do so, then restoring services when it was requested and then turning over access to SingularDTV. *Id*. at ¶ 107.

Plaintiff's also intentionally try to obscure the purpose of the DTSA by using the term "trade secrets" interchangeably with the general category of confidential information. "Confidential information" is not equivalent to "trade secrets." For good reason, the law requires that before information or processes may be accorded *trade secret* status, it must be shown that such information is truly trade secret—a standard far greater than the standard for confidentiality of business information. Here, it is evident from the pleading that Plaintiff as

not come close to alleging sufficient facts that support trade secret status. See *In re Document Techs. Litig.*, No. 17-cv-2405, 2017 WL 2895945, at *5 (S.D.N.Y. July 6, 2017).

The Amended Complaint fails to provide any description of the alleged trade secrets Plaintiff maintained in its email accounts. *Elsevier Inc. v. Doctor Evidence*, LLC, 17-cv-5540 (KBF), at *9-10 (S.D.N.Y. Jan. 23, 2018). Trade secrets are a narrow category of confidential information; to survive a motion to dismiss, a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value. *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) ("Trade secrets are a subset of all commercially valuable information."); *Next Commc'ns, Inc. v. Viber Media, Inc.*, 2016 WL 1275659, at *3 (S.D.N.Y. Mar. 30, 2016) ("New York and Second Circuit law . . . requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed . . ..") (quoting *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05-cv-9292, 2008 WL 463884, at *10 (S.D.N.Y. Feb. 20, 2008)); *Blue Ocean Laboratories, Inc. v. Tempur Sealy Int'l, Inc.*, 2015 WL 9592523, at *6 (M.D.N.C. Dec. 31, 2015) (explaining that a complaint must identify trade secrets with "sufficient particularity"); *Procaps S.A.v. Patheon Inc.*, 2015 WL 4430955, at *2 (S.D. Fla. July 20, 2015) (noting that the category of "trade secret " is a subset of "confidential information").

Nor does the Amended Complaint discuss the steps and procedures taken by Plaintiff to maintain the confidentiality of its alleged trade secrets. *Kraus U.S., Inc. v. Magarik,* 17-CV-6541 (ER), at *9-10 (S.D.N.Y. May 12, 2020). To qualify as a trade secret , the owner of the trade secret must have taken "reasonable measures" to keep it a secret, and the trade secret itself must acquire economic value from not being generally known or easily obtained by others who would gain economic value from the use or disclosure of it. *Id.* Though the

Second Circuit has not articulated a specificity requirement for pleading a trade secret, and it is "not necessary to disclose every detail of an alleged trade secret in a complaint[,]" district courts routinely require that the allegations must "specify the general contours of a trade secret" without merely restating the elements of one. *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 448 (S.D.N.Y. 2019) (citations omitted); *Lawrence v. NYC Med. Practice, P.C.*, No. 18-CV-8649, 2019 WL 4194576, at *4 (S.D.N.Y. Sept. 3, 2019) (citation omitted); *Medidata Solutions, Inc.*, 2018 WL 6173349, at *3.

The Amended Complaint therefore fails to allege any facts that would implicate personal liability on the Defendants in their individual capacities.

## POINT III

### PLAINTIFF SHOULD SEEK THIS RELIEF IN
### NEW YORK SUPREME COURT PRIOR PENDING
### ACTION BETWEEN THE PARTIES

The New York Supreme Court derivative action predates the Plaintiff's instant Complaint. The Court should abstain from any further adjudications in this matter until the Defendants' anticipated motion to dismiss the complaint is determined. The claims in the Derivative Action are substantially similar, if not potentially identical, to the defenses and counterclaims Defendants will assert in this matter.

As a general rule, federal courts have an "unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976). However, as here, when parallel state court proceedings exist, a federal district court may decline to exercise its jurisdiction over a particular matter. *Id.* at 818. The declination by a federal court to exercise its jurisdiction in light of parallel or duplicative state court proceedings is to be

in the interests of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. *Id.* at 817.

The existence of what will be nearly identical claims in two different suits results is a needless duplication of proceedings and wasting of judicial resources. Additionally, separate litigation of the construction of the parties' agreements increases the likelihood that the dispute will drag on and decreases the likelihood of settlement. Accordingly, the avoidance of piecemeal litigation factor weighs heavily in favor of abstention.

The Second Circuit noted in *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985) that "[m]aintaining virtually identical suits [arising out of the same set of facts] in two forums ... would waste judicial resources and invite duplicative effort .... [A]voidance of piecemeal litigation is best served by leaving these suits in the state court." *Id.* at 211.

The "First-Filed Doctrine" attempts to advance judicial economy by avoiding duplicative litigation and protecting a plaintiff's choice of forum. *First City Nat'l Bank and Trust Co. v.Simmons*, 878 F.2d 76, 80 (2d Cir. 1989). "'[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second.'" *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991), quoting *First City Nat'l Bank*, 878 F.2d at 79. The doctrine creates a strong presumption in favor of the forum of the first-filed suit. *Reliance Ins. Co. v. Six Star, Inc*., 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001).

In *Semmes Motors, Inc. v. Ford Motor Co*., 429 F.2d 1197, 1202 (2d Cir. 1970), the Second Circuit held that there is "no reason why the end result should be different when the party seeking to preserve the primacy of the first court moves the second court to stay its hand rather than asking

the first court to enjoin prosecution of the second case." The doctrine also applies where the plaintiff in each action is the same party. *Kellen Co. v. Calphalon Co*., 54 F. Supp. 2d 218, 223 (S.D.N.Y. 1999); *Cole v. Edwards*, 2004 WL 1874970, *3 (S.D.N.Y. Aug. 13, 2004); *Semmes Motors*, 429 F.2d 1197.

## <u>CONCLUSION</u>

It is respectfully submitted that Defendants' instant motion should be granted in its entirety.

Dated: New York, NY
      April 14, 2021

Respectfully submitted,

/s/ Neil L. Postrygacz
Neil L. Postrygacz (NP6923 )
Attorney for Zachary LeBeau
217 34th street
Brooklyn, New York 1123-6923
Tel: (646) 642-7492
neil@neilesq.com

/s/    Paul F. Condzal
Paul F. Condzal
Attorney for Kimberly Jackson
1330 Avenue of the Americas, 23rd Floor
New York, New York 10019
Tel: (212) 688-3637
paul@condzal-law.com