**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SINGULARDTV, GMBH,

                      Plaintiff,

    v.

ZACHARY LEBEAU and KIMBERLY
JACKSON,

                      Defendants.

Case No. 1:21-cv-10130

**ORAL ARGUMENT REQUESTED**

---

## <ins>SINGULARDTV GMBH'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT</ins>

May 6, 2022

KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220

Benjamin J. A. Sauter
Christopher S. Cogburn
Alexa R. Perlman

*Attorneys for Plaintiff*
*SingularDTV GmbH*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF RELEVANT ALLEGATIONS .................................................... 4

ARGUMENT ................................................................................................................. 9

I.  The Amended Complaint should not be dismissed on *forum non conveniens* grounds. ......................................................................................................................... 9

    A.  Even if the Forum-Selection Clause were applicable (and it is not), dismissal would be inappropriate because Defendants have not established that Switzerland is an adequate alternative forum for the litigation of SingularDTV's claims. ........................................ 10

    B.  SingularDTV's claims are not subject to the Forum-Selection Clause. ......................... 11

II.  SingularDTV has adequately pleaded its claims for trademark infringement and dilution. ................................................................................................................. 16

    A.  Infringement and dilution of unregistered trademarks are actionable under the Lanham Act. .................................................................................................................... 16

    B.  The USPTO's suspension of SingularDTV's application to register the Mark does not determine its entitlement to protection. .......................................................................... 18

    C.  SingularDTV's First and Second Causes of Action state claims based on Defendants' direct acts of infringement and dilution and Defendants' vicarious liability for actions taken by Breaker. ......................................................................................................... 20

III.  SingularDTV has adequately pleaded its CFAA and DTSA claims. ....................... 22

IV.  The Court cannot dismiss the Amended Complaint in favor of LeBeau's shareholder derivative suit against Lubin and Levy-Cohen because the claims in the Amended Complaint do not overlap with that action ................................................................. 24

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Arista Records LLC v. Lime Grp. LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011) ................................................................. 21

*Arma v. Buyseasons, Inc.*,
  591 F. Supp. 2d 637 (S.D.N.Y. 2008) ................................................................. 15

*Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*,
  571 U.S. 49 (2013) ................................................................................................ 10

*Barnet v. Drawbridge Special Opportunities Fund LP*,
  No. 14-cv-1376 (PKC), 2014 WL 12774690 (S.D.N.Y. 2014) ............................. 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 9

*Chanel, Inc. v. Veronique Idea Corp.*,
  795 F. Supp. 2d 262 ............................................................................................. 17

*Cold War Museum, Inc. v. Cold War Air Museum*,
  586 F.3d 1352 (Fed. Cir. 2009) ........................................................................... 17

*Colo. River Water Auth. Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ............................................................................................. 25

*Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*,
  423 F.3d 90 (2d Cir. 2005) ................................................................................... 16

*Dardashtian v. Gitman*,
  No. 17-cv-4327 (LLS), 2017 WL 6398718 (S.D.N.Y. Nov. 28, 2017) .................... 23

*Edrei v. Maguire*,
  892 F.3d 525 (2d Cir. 2018) ............................................................................ 9, 18

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*,
  228 F.3d 56 (2d Cir. 2000) ................................................................................... 16

*First City Nat'l Bank and Trust Co. v. Simmons,*
  878 F.2d 76 (2d Cir. 1989) ................................................................. 24

*Foman v. Davis,*
  371 U.S. 178 (1962) ............................................................................ 17

*Galion v. Jean Patou, Inc.,*
  495 F.2d 1265 (2d Cir. 1974) .............................................................. 14

*George Nelson Foundation v. Modernica, Inc.,*
  12 F. Supp. 3d 635 (S.D.N.Y. 2014) ................................................... 14

*Knowles-Carter v. Feyonce, Inc.,*
  347 F. Supp. 3d 217 (S.D.N.Y. 2018) ................................................. 20

*M/S Bremen v. Zapata Off-Shore Co.,*
  407 U.S. 1 (1972) .................................................................................. 9

*McClellan v. Carland,*
  217 U.S. 268 (1910) ............................................................................ 25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ................................................................................ 25

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp,*
  108 F.3d 17 (2d Cir. 1997) .................................................................. 25

*Norex Petroleum Ltd. v. Access Indus., Inc.,*
  416 F.3d 146 (2d Cir. 2005) .......................................................... 10, 11

*Phillips v. Audio Active Ltd.,*
  494 F.3d 378 (2d. Cir. 2007) ................................................ 12, 13, 14, 15

*Poller v. BioScrip, Inc.,*
  974 F. Supp. 2d 204 (S.D.N.Y. 2013) ............................................ 16, 23

*Quality Serv. Grp. V. LJMJR Corp.,*
  831 F. Supp. 2d 705 (S.D.N.Y. 2011) ................................................. 17

*Silverman v. Miranda,*
  116 F. Supp. 3d 289 (S.D.N.Y. 2015) ................................................. 17

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.,*
  118 F.3d 955 (2d Cir. 1997) ................................................................ 20

*Star Indus., Inc. v. Bacardi & Co. Ltd.*,
    412 F.3d 373 (2d Cir. 2005) ............................................................................... 17

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010) ................................................................................. 9

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) ............................................................................................ 17

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001) ............................................................................... 17

Statutes

15 U.S.C. § 1125 ........................................................................................................ 14, 16

18 U.S.C. § 1030(a)(5)(C) .............................................................................. 3, 16, 22, 23

18 U.S.C. § 1836(b)(1) ...................................................................................................... 16

Rules

Fed. R. Civ. P. 8(e) ............................................................................................................ 17

Fed. R. Civ. P. 12(b)(3) ..................................................................................................... 10

Regulations

37 C.F.R. § 2.83 ................................................................................................................. 19

## PRELIMINARY STATEMENT

Over the course of 2015 and 2016, Defendants Zachary LeBeau and Kimberly Jackson developed a plan for the business that would become SingularDTV GmbH ("SingularDTV" or the "Company") alongside two other founders, Arie Levy-Cohen and Joseph Lubin. After the Company was incorporated—with its ownership distributed between LeBeau, Levy-Cohen, and Lubin (collectively, the "Shareholders")—the Shareholders set to work developing SingularDTV's business. In addition to starting development on a number of blockchain-based services with applications in the entertainment industry, the Company began to use the SingularDTV word mark (the "Mark") to identify and distinguish its products and services in the marketplace, and took steps to register the Mark in jurisdictions around the world.

Several years later, the trust between LeBeau—then SingularDTV's CEO—and the other Shareholders collapsed in the wake of several disputes over LeBeau's use of Company finances. The relationship between LeBeau and his colleagues bottomed out in early 2021, when LeBeau unilaterally transferred over US $2 million worth of Company assets to a purported "hacker" posing as Levy-Cohen in a transaction marked by multiple flags of potential fraud. In response, the Company, through its Board of Directors (the "Board") terminated LeBeau as CEO. After Jackson—who is LeBeau's common-law wife and had been providing chief-operating-officer services to SingularDTV on an independent-contracting basis—refused to comply with several Company demands following LeBeau's termination, the Company fired her too.

In the aftermath of their ouster from SingularDTV, Defendants hijacked the Company's e-mail accounts and the contents of those accounts, refusing to return them and other assets to the Company unless it agreed to compensate them under an extortionate "exit proposal." Meanwhile, Defendants continued—indeed, continue today—to use the Mark to promote goods and services

1

offered by their separate company, Breaker LLC ("Breaker"), thereby infringing on SingularDTV's rights in the Mark. Now, faced with a lawsuit for infringing on and diluting SingularDTV's Mark, accessing SingularDTV's computer systems without authorization in violation of the Computer Fraud and Abuse Act (the "CFAA"), and misappropriating SingularDTV's trade secrets in violation of the Defend Trade Secrets Act (the "DTSA"), Defendants have moved to dismiss. (*See* Mem. of Law in Support of Defs.' Mot. to Dismiss Pl.'s Am. Compl. (the "Motion" (Dkt. No. 91), cited as "Mot.").)[1] They contend that SingularDTV's claims must be brought in Switzerland due to a forum-selection clause (the "Forum-Selection Clause") in a Service and Development Agreement (the "Agreement") between SingularDTV and Breaker, that the Mark is "unprotectable" because SingularDTV's application with the United States Patent and Trademark Office (the "USPTO") remains pending, that SingularDTV's CFAA and DTSA claims are insufficiently pleaded, and, failing all else, that the Court should dismiss the Amended Complaint in favor of a separate proceeding pending in New York Supreme Court. They are wrong on all fronts.

*First*, the Forum-Selection Clause supplies no grounds for dismissal. To begin with, Defendants have not even attempted to show that they are subject to jurisdiction in Switzerland and thus have failed to establish that the Swiss courts are an adequate alternative forum for the adjudication of SingularDTV's claims—a prerequisite for dismissal under the doctrine of *forum non conveniens*, which governs federal courts' application of forum-selection clauses calling for litigation in state or foreign tribunals. Further, the Forum-Selection Clause, by its terms,

---

[1] SingularDTV's citations to the Motion are keyed to the page numbers in the e-filing ribbon generated by the ECF system.

encompasses only "disputes arising out of or in connection to" the Agreement. None of SingularDTV's claims in this case qualifies.

*Second*, Defendants' trademark-registration arguments are wrong on the facts and the law. Defendants contend that trademarks, like the Mark, that are not yet registered with the USPTO are "unprotectable" under the Lanham Act and that the USPTO has made a "clear determination" that the Mark cannot be registered. Both are false. It is well established that the Lanham Act protects unregistered trademarks, and the elements of claims for infringement and dilution are the same whether a trademark is registered or not. Further, while the USPTO has suspended SingularDTV's application to register the Mark pending the outcome of a separate, potentially related application, it has not made any final determination on the protectability of the Mark. And because any such determination, even if final, would not bind the Court in interpreting and applying the relevant provisions of the Lanham Act, the status of SingularDTV's application to register the Mark is not a basis for dismissal in any event.

*Third*, SingularDTV's claims under the CFAA and DTSA (which, though included in substantially similar forms in the Company's original pleadings, Defendants incorrectly describe as new to the Amended Complaint (Mot. at 6)) are adequately pleaded. Defendants' unauthorized commandeering of Company e-mail accounts and their contents is a textbook violation of the CFAA (especially, 18 U.S.C. § 1030(a)(5)(C)), and the Amended Complaint identifies with sufficient specificity the contents of those accounts that are entitled to trade-secret protection and that, on information and belief, were misappropriated by Defendants.

*Finally*, in arguing for dismissal in favor of LeBeau's derivative suit in New York Supreme Court, Defendants invoke the *Colorado River* abstention doctrine. *Colorado River* itself makes clear that the doctrine only applies in "exceptional" circumstances. To justify a departure from the

general requirement that courts exercise the jurisdiction Congress has given them, a defendant must do more than merely identify a parallel state-court proceeding. Yet Defendants have not even taken that preliminary step, because LeBeau's derivative suit is not "parallel" to or "concurrent" with the Amended Complaint. Quite the opposite: it sets forth an entirely separate set of claims and issues against a group of four defendants, not one of whom is a party to this case.

For these reasons, and those set forth in further detail below, SingularDTV respectfully submits that the Court should deny the Motion in its entirety.

## STATEMENT OF RELEVANT ALLEGATIONS

I.    **SingularDTV's founders register the Mark and form the Company in Switzerland.**

SingularDTV is a private company organized under Swiss law and headquartered in Zug, Switzerland. (Am. Compl. ¶ 4.) In 2015 and 2016, LeBeau, Jackson, Levy-Cohen, and Lubin developed a plan for the business that would become SingularDTV. (*Id.* ¶ 10.) While preparing to launch their new business, the founders hired Swiss counsel to register the Mark with the Swiss Federal Institute of Intellectual Property (the "IPI," Switzerland's equivalent of the USPTO). (*Id.* ¶ 11.) Swiss counsel filed that application on July 1, 2016. (*Id.*)

Three months later, the Shareholders formed SingularDTV as a private *Gesellschaft mit beschränkter Haftung* (or "GmbH") in the Canton of Zug, Switzerland. (*Id.* ¶ 12.) In the Company's Articles of Association, the Shareholders described as its purpose the "development, marketing, distribution and licensing of software, in particular the creation of a blockchain and Ethereum-based production and distribution platform, as well as the development, marketing, distribution and licensing of high-quality film and TV content." (*Id.* ¶ 13.)

Each of the three Shareholders also served as an officer and managing director of SingularDTV's Board of Directors (the "Board"). (*Id.* ¶ 12.) Specifically, LeBeau served as the

Company's chief executive officer, Levy-Cohen as its chief financial officer, and Lubin as its chief technology officer. (*Id.*) Beginning in 2018, Jackson provided the Company with chief-operating-officer services as an independent contractor. (*Id.*)

## II. Jackson and LeBeau form Breaker to support SingularDTV's business, and Breaker uses the Mark in connection with work performed for SingularDTV.

In January 2017, LeBeau and Jackson formed Breaker (then named "SingularDTV LLC") in New York. (*Id.* ¶ 15.) LeBeau acts as Breaker's de facto CEO, and he and Jackson exercise total control over the Company. (*Id.*)

Though legally separate from SingularDTV and wholly owned by Jackson, Breaker was established to provide exclusive support to certain SingularDTV projects. (*Id.*) To facilitate Breaker's work for SingularDTV and further solidify the Company's brand across relevant markets, the Company permitted Breaker to use the Mark in connection with its work for SingularDTV, including by attaching the Mark to certain film and television content Breaker produced for SingularDTV. (*Id.* ¶ 28–30.) Breaker and SingularDTV likewise shared several web domains, including singulardtv.com (the "SingularDTV Domain"), allowing the two companies to present a single, cohesive brand to the marketplace. (*Id.* ¶ 30.) Jackson took responsibility for managing the companies' joint website. (*Id.*)

## III. SingularDTV registers the Mark internationally and further develops its business.

Meanwhile, SingularDTV began using the Mark in connection with its own projects. These included:

- Tokit, a blockchain-based application designed to enable entertainers to create and issue cryptographic tokens to manage rights, revenues, and royalties associated with their digital projects (*id.* ¶¶ 22–24);
- EtherVision, a decentralized video distribution platform (*id.* ¶ 25); and
- a business-to-business, software-as-a-service product for managing royalties and other creative rights through the blockchain (the "B2B SaaS Platform") (*id.* ¶ 27).

Through its use in connection with these unique commercial projects, the Mark has acquired a significance among consumers as an identifier of the Company's goods and services. The Mark is distinctive, valuable, and prestigious within the blockchain space. (*Id.* ¶ 27.)

**IV.   SingularDTV fires LeBeau and Jackson and terminates the Agreement with Breaker.**

After a series of disputes over LeBeau's mismanagement—and potential misappropriation—of Company funds, trust among SingularDTV's Shareholders hit bottom when, in early 2021, LeBeau unilaterally transferred over US $2 million worth of Company assets to a still-unidentified "hacker" posing as Levy-Cohen. (*Id.* at 31.) Alarmed by the gross negligence (or worse) that enabled this theft of Company property, SingularDTV's Board voted on May 27, 2021, to remove LeBeau as the Company's CEO and immediately withdraw his power to act on the Company's behalf, including his signatory authority. (*Id.*) At the same meeting, the Board voted to terminate SingularDTV's relationship with Breaker "as soon as possible," to cease "any spending on content"—the services Breaker was to provide under the Agreement—and to "completely exit any remaining obligation for the production of content, effective immediately." (*Id.* ¶ 32.)

The next day, SingularDTV sent Jackson and LeBeau a written notice terminating the Agreement and instructing Jackson "to perform no additional work," "incur no additional fees," and "full[y] deliver . . . any intellectual property or financial assets held by Breaker LLC on behalf of Singular[DTV]." (*Id.* ¶ 33.) When, after more than a week, Jackson had failed to surrender the Company's assets or acknowledge the Company's written notice in any other way, the Board terminated Jackson's contract as COO, too. (*Id.* ¶ 34.)

**V.    After their ouster, Defendants wrongfully withhold Company intellectual property and e-mail accounts.**

Apparently unwilling to accept that SingularDTV had fired them, LeBeau and Jackson continued to hold themselves out as representatives of the Company and unlawfully retained control over valuable Company assets. (*Id.* ¶ 35.) Defendants leveraged this obstinacy as LeBeau sought to extract a windfall from the Company in exchange for a buyout of his ownership interest. (*Id.* ¶ 36.) But these tactics ultimately failed: the Company rejected LeBeau's extortionate "exit proposal," and, at the next Shareholders' meeting, Lubin and Levy-Cohen voted to remove LeBeau from the SingularDTV Board. (*Id.* ¶¶ 36–37.)

Undeterred, Defendants ramped up their bad-faith disruption of SingularDTV's business. In early October, Defendants instructed DAG Tech, a third-party reseller that provided SingularDTV's employee e-mail accounts and services, to immediately cut off the Company's access to those accounts and services—presumably on the false pretense that Defendants were still authorized to represent the Company and act on its behalf. (*Id.* ¶¶ 38–41.) This maneuver pitched the Company into chaos, cutting its employees and representatives off from the e-mail accounts they used to communicate with one another and with clients, third-party vendors, government officials, and other important constituencies. (*Id.* ¶ 42.) At the same time, Defendants also took wrongful possession of the contents of SingularDTV's e-mail accounts, including highly sensitive financial information, personnel data, and other trade secrets. (*Id.*) Defendants themselves later confirmed that they were accessing the contents of these accounts without authorization. (*Id.* ¶ 45.) And since this Court ordered Defendants to restore most of those accounts to SingularDTV's control, the Company has unearthed certain details of Defendant's unauthorized intrusions. (*Id.* 46–47.) Among other things, the Company has learned that at least two different Breaker employees accessed and read the e-mails of Patrik Allenspach, SingularDTV's Resident Director,

and that the contents of at least two other Company e-mail accounts were forwarded en masse to kim@breaker.io, a separate e-mail account used by Jackson. (*Id.*)

## VI.   **Defendants continue to use the Mark, without authorization, in connection with Breaker's business.**

In addition to commandeering SingularDTV's e-mail accounts and their contents, Defendants have also continued to damage the Company by using the Mark to promote Breaker's now-entirely-separate business, as well as LeBeau and Jackson's other related businesses. (*Id.* ¶¶ 52–57.) The most egregious example of this conduct is in Defendants' use of the SingularDTV Domain—*over* which Jackson, by her own admission, retains control. (*Id.* ¶ 53.) The SingularDTV Domain directs web traffic to a shared landing page featuring two prominent links: one promoting entertainment content produced by "Breaker Studios, LLC", and another promoting digital-rights-management applications like the B2B SaaS Platform, which SingularDTV believes that Defendants intend to continue developing in competition with the Company. (*Id.* ¶ 54.)

While the SingularDTV Domain infringes the Mark to benefit Defendants' separate business, it simultaneously dilutes the Mark by linking to non-private, non-secure web addresses. (*Id.* ¶ 56.) When visitors to singulardtv.com click on either of the links prominently featured on the landing page, any modern browser will warn them that the website they are about to visit may compromise the security of their passwords, credit card details, and other personal information. (*Id.*) This damages the Mark's value by wrongly suggesting to the market that SingularDTV is either incapable of or unconcerned with protecting the privacy of its users, diluting the Company's consumer goodwill and lessening public trust in its competence. (*Id.* ¶ 56.)

SingularDTV's Amended Complaint seeks to recover for the damage caused by Defendants' malicious actions. For the reasons discussed below, Defendants' Motion to Dismiss the Amended Complaint should be denied in its entirety.

## ARGUMENT

In ruling on a motion to dismiss, the Court must "accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff['s] favor." *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018). "A [c]omplaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," and while "labels," "conclusions," and "a formulaic recitation of the elements of the cause of action" are not enough to survive dismissal, at the pleading stage, a plaintiff need only include allegations sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

For the reasons discussed below, the Amended Complaint satisfies this standard for all claims. The Motion should be denied.

## I.      The Amended Complaint should not be dismissed on *forum non conveniens* grounds.

Defendants' first argument for dismissal is based on the Agreement's Forum-Selection Clause. That clause provides:

> 58. **Jurisdiction.** The ordinary courts of the city of Zug, Switzerland, have exclusive jurisdiction for any disputes arising out of or in connection to this Agreement.

> (Dkt. No. 18-5 at 12 (emphasis in original).)

Defendants argue that the Amended Complaint should be dismissed "for lack of subject matter jurisdiction" and "for improper venue" (Mot. at 5; *see also* Mot. at 7 ("[T]his action is not presented in the proper venue . . .")). Neither of those grounds applies, however, where dismissal is sought based on a forum-selection clause. First, as Defendants' own authority makes clear, a forum-selection clause does not "oust[] the District Court of jurisdiction." *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972) (cited in Mot. at 13, 15). Rather, to the extent that such a clause applies, it presents a discretionary question: "whether the court should . . . exercise[]

its jurisdiction to do more than . . . specifically enforc[e] the forum clause." *Id.* The Supreme Court

has made equally clear that dismissals for "improper venue" under Federal Rule of Civil Procedure

12(b)(3) are appropriate only where "a forum . . . does not satisfy federal venue laws." *See Atl.*

*Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). "Instead,

the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is

through the doctrine of *forum non conveniens*." *Id.* Since jurisdiction and venue are clearly proper

in this Court (*see* Am. Compl. ¶¶ 7–9) and Defendants have not sought to dismiss on *forum non*

*conveniens* grounds, this basis for dismissal should be denied at the outset.

Even if the Court were to construe the Defendants' motion as invoking the doctrine of

*forum non conveniens*, the Motion still should be denied for at least two reasons. First, even if the

Forum-Selection Clause did apply, dismissal based on *forum non conveniens* is improper where,

as here, Defendants have not even attempted to show that they are subject to jurisdiction in

Switzerland and thus have failed to establish that Switzerland is an adequate alternative forum for

the adjudication of SingularDTV's claims. And second, the Forum-Selection Clause in the

Agreement does not apply in any event to the claims in the Amended Complaint; not one of those

claims asks the Court to enforce the Agreement or interpret or apply its terms.

### A. *Even if the Forum-Selection Clause were applicable (and it is not), dismissal would be inappropriate because Defendants have not established that Switzerland is an adequate alternative forum for the litigation of SingularDTV's claims.*

"To secure dismissal of an action on grounds of *forum non conveniens*, a movant must

demonstrate the availability of an adequate alternative forum." *Norex Petroleum Ltd. v. Access*

*Indus., Inc.*, 416 F.3d 146, 157 (2d Cir. 2005). "If the movant fails to carry this burden, the *forum*

*non conveniens* motion must be denied . . ." *Id.* To demonstrate that the forum in favor of which it

seeks dismissal is "adequate," a defendant must show both that it is "amenable to service of process"

in the alternative forum, and that the forum "permits litigation of the subject matter of the dispute." *Id.*

Defendants have not carried their burden on either prong. Neither of the Defendants has asserted that they are subject to jurisdiction in Switzerland, let alone submitted to Swiss jurisdiction as a condition of the *forum non conveniens* dismissal they request. *Cf. id.* ("[D]efendants satisfied the first prong of this test by representing that they would all submit to the jurisdiction of Russian courts in any comparable action filed against them by the plaintiff."); *see also Barnet v. Drawbridge Special Opportunities Fund LP*, No. 14-cv-1376 (PKC), 2014 WL 12774690, at *9 (S.D.N.Y. 2014) (holding that "lack of an adequate alternative forum foreclose[d] defendants' motion" because plaintiffs "would not be able to obtain personal jurisdiction over the defendants in Australia"). Nor have Defendants demonstrated that Swiss courts would be amenable to adjudicating SingularDTV's claims—a dubious proposition, given that those claims arise under federal statute and are predicated on infringing conduct undertaken primarily or entirely in the United States. *See Norex Petroleum*, 416 F.3d at 159–60 (vacating *forum non conveniens* dismissal where "defendants failed to demonstrate that Russia affords [plaintiff] a presently available forum to litigate the disputed issues underlying its" complaint). Defendants' argument for dismissal based on the Forum-Selection Clause can thus be dismissed on this basis alone.

### B. SingularDTV's claims are not subject to the Forum-Selection Clause.

By its terms, the Forum-Selection Clause only applies to "disputes arising out of or in connection to" the Agreement. (Dkt. No. 18-5 at 12.) Conspicuously absent from the Motion is any coherent theory—indeed, any explanation at all—as to how SingularDTV's claims fall within this language. Rather, Defendants simply collect an assortment of allegations in the Amended Complaint that mention the Agreement (Mot. at 13–14), and then assert that the claims in the

Amended Complaint must therefore "arise out [of] obligations or restrictions born from the Agreement" (*id.* at 14).

Defendants are mistaken. Not one of SingularDTV's claims seeks to enforce any "obligation" or "restriction" set forth in the Agreement, nor does the Amended Complaint require the Court to interpret or apply the terms of that Agreement for any other purpose. The Agreement is mentioned in the Amended Complaint only because it supplies a more complete explanation of the relationship between SingularDTV and Breaker, a company owned by Defendants and for the benefit of which Defendants are infringing the Mark. As the Amended Complaint makes clear, SingularDTV previously permitted Breaker to use the Mark to market goods and services it produced in support of SingularDTV's business. (*See* Am. Compl. ¶¶ 28, 30.) But that permission was not granted via the Agreement; nothing in the Agreement purports to authorize Breaker (much less Defendants) to use the Mark. Likewise, SingularDTV withdrew its permission for Defendants' use of the Mark at the same time that it terminated the Agreement, as it instructed Defendants and Breaker to "perform no additional work" for SingularDTV, leaving Breaker without any basis to continue using SingularDTV's Mark. (*Id.* ¶ 33.) Again, however, this withdrawal of permission did not hinge on the Agreement.

To be sure, Breaker's use of the Mark has been infringing since the termination of the Agreement. But as this Circuit's precedents make clear, that does not mean that SingularDTV's trademark claims "aris[e] out of or in connection to" the Agreement. In *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d. Cir. 2007), the Second Circuit addressed the application of a similar forum-selection clause to intellectual property claims. The plaintiff in *Phillips*—a recording artist who, through a contract, granted the defendants the right to produce, release, and distribute certain musical content created by the plaintiff and for which the plaintiff held the copyright—brought

two categories of claims against the defendants. *Id.* at 383. The first category comprised a single claim for breach of contract, based on allegations that the defendants failed to pay the plaintiff agreed-upon royalties for the distribution of his music. *Id.* In the second category, however, the plaintiff brought claims for copyright infringement, unjust enrichment, and unfair competition, alleging that the defendants had also released additional music without his authorization. *Id.*

The forum-selection clause in *Phillips* required that "any legal proceedings that may arise out of" the parties' contract "be brought in England." *Id.* at 382. Applying this provision, the district court dismissed not only the breach-of-contract claim, but also the claims seeking to vindicate intellectual property rights that the plaintiff alleged were not conferred to the defendants under the contract. *Id.* at 383. The district court reasoned that these latter claims, while not seeking to enforce the contract, were nonetheless "primarily contractual because the defendants had acquired possession of the music legitimately under the contract." *Id.*

The Second Circuit affirmed the dismissal of the plaintiff's breach-of-contract claim, holding that it fell "squarely under the forum selection clause" because "the contract establishe[d] [the plaintiff's] right to receive, and [the defendants'] duty to pay," the royalties at issue in that claim. *Id.* at 387. But the *Phillips* court reversed the dismissal of the intellectual-property claims. Although the court accepted the premise that statutory claims, including those involving intellectual property, could "arise out of" a contract under certain circumstances (for example, where a plaintiff was granted those rights in the first instance through a contractual conveyance), it held that the plaintiff's claims in *Phillips* did not. *Id.* at 390–92. This was so, the Court reasoned, because the plaintiff did "not rely on the recording contract to establish his ownership of the relevant copyrights, but on his authorship of the work, a status afforded him as the composer who

13

translates an idea into a fixed, tangible musical expression entitled to copyright protection." *Id.* at 390.

The same analysis applies to SingularDTV's trademark claims, which do not "originate from" or "rely on" the Agreement. *See id.* SingularDTV's founders first sought to register the Mark (in Switzerland) in July 2016—six months before the Agreement was executed—and SingularDTV began using it in commerce shortly thereafter, in ways entirely separate from Breaker's work under the Agreement. (Am. Compl. ¶¶ 14, 16, 20–27.) Like the plaintiff in *Phillips*, SingularDTV is "not rely[ing] on the [Agreement] to establish [its] ownership of" the Mark (494 F.3d at 390), but on its unique and continuing use of the Mark in commerce, which entitles the Mark to protection as a designation of SingularDTV's goods and services. *See* 15 U.S.C. § 1125; *George Nelson Foundation v. Modernica, Inc.*, 12 F. Supp. 3d 635, 644–45 (S.D.N.Y. 2014) ("The user who first appropriates the mark obtains [an] enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially." (quoting *La Société Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir. 1974))).

Further, although the language in the Forum-Selection Clause is broader than that analyzed by the *Phillips* court (*see* 494 F.3d at 389–90 (acknowledging "language-specific nature of this inquiry" and interpreting "arise out of" more narrowly than "relate to," "associated with," and "arise in connection with")), the inapplicability of the Forum-Selection Clause to SingularDTV's intellectual-property claims is even clearer than in *Phillips*. Unlike the defendants in *Phillips*, who had colorable ***defenses*** based on their contract with the plaintiff, LeBeau and Jackson do not—and cannot—contend that the Agreement itself grants them a license for the allegedly infringing use of the Mark or otherwise furnishes them a defense to the substance of SingularDTV's trademark

claims. *See id.* at 392 (acknowledging possible "nexus between the proceedings and the contract . . . when the defendants raise their defenses"). SingularDTV permitted Defendants to use the Mark because it believed doing so would facilitate Breaker's work under the Agreement, but that permission was neither granted nor withdrawn by operation of the Agreement itself. Thus, even if the Forum-Selection Clause were interpreted so broadly as to encompass "all disputes the resolution of which arguably depend on the construction of" the Agreement (*id.* at 389 (citations omitted)), it still would not cover SingularDTV's claims to vindicate its preexisting, independent rights in the Mark. More simply put, those claims do not "arise out of or in connection to" the Agreement because the Court need not interpret or apply a single word of the Agreement to fully adjudicate them. *See Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 645 (S.D.N.Y. 2008) ("Plaintiffs' rights in the marks at issue do not arise from the Distribution Agreement and therefore the Forum Selection Clause does not apply.")

The same is true of SingularDTV's claims under the CFAA and DTSA. Defendants contend that these claims "clearly arise from services performed under the Agreement and actions taken upon termination of the Agreement." (Mot. at 23.) Here, too, Defendants attempt to ascribe a legal relevance to the Agreement that is belied by the allegations in the Amended Complaint. It is true, of course, that Defendants were able to commandeer the Company's e-mail accounts and their contents because of Breaker's relationship with DAG Tech, which provided SingularDTV's e-mail services. (*See* Am. Compl. ¶ 40.) But the mere fact that Breaker brokered the relationship between DAG Tech and SingularDTV does not change the nature of SingularDTV's statutory claims against the Defendants based on unwarranted intrusions into its e-mail accounts. Like the infringement claims discussed above, the CFAA and DTSA claims against Defendants do not "originate from" or "rely on" the Agreement. *See Phillips*, 494 F.3d at 390. The Company's CFAA

claim arises because it "suffer[ed] damage or loss by reason of a violation of" that statute's prohibition against "intentionally access[ing] a protected computer"—here, an e-mail system— "without authorization." 18 U.S.C. §§ 1030(a)(5)(c), 1030(g); *see also Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 233 (S.D.N.Y. 2013) (identifying employee's accessing company e-mail system "after the employee is terminated or resigns" as example of "unauthorized access of a computer . . . within the meaning of the CFAA"). Its DTSA claim, meanwhile, inheres in its "owner[ship] of . . . trade secret[s] that" Defendants "misappropriated." 18 U.S.C. § 1836(b)(1). Nothing in the Agreement purports to grant Defendants' (or Breaker, for that matter) the right to expropriate the Company's e-mail accounts and trade secrets. Neither claim "aris[es] out of or in connection to" the Agreement; thus, neither claim is barred by the Forum-Selection Clause.

## II. SingularDTV has adequately pleaded its claims for trademark infringement and dilution.

### A. Infringement and dilution of unregistered trademarks are actionable under the Lanham Act.

Defendants first contend that SingularDTV's trademark is categorically "unprotectable." (Mot. at 7.) "Plaintiff's Lanham [A]ct claims cannot succeed," they argue, "because SingularDTV in fact has no federal trademark registration." (*Id.*)

This runs counter to black-letter trademark law. As the Second Circuit has repeatedly held, Section 43(a) of the Lanham Act "protects unregistered trademarks from infringement."[2] *EMI*

---

[2] Although SingularDTV mistakenly cited the Lanham Act provision applicable to federal trademarks twice in its Amended Complaint (Am. Compl. at 15, ¶ 72), its pleadings make clear that its First and Second Causes of Action seek recovery for Defendants' infringement and dilution, respectively, of the unregistered SingularDTV Mark. Nowhere in the Amended Complaint does SingularDTV suggest that the Mark is registered in the United States, nor does it claim entitlement to any recovery or other benefit available exclusively to holders of registered trademarks. Accordingly, the Court should construe both of SingularDTV's trademark claims as brought under 15 U.S.C. § 1125. *See, e.g.*, *Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 104 (2d Cir. 2005) ("[T]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim, because factual allegations alone are what matters." (citations,

*Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000); *accord, e.g.*, *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001); *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 381 (2d Cir. 2005). Indeed, "the general principles qualifying a mark for registration . . . are for the most part applicable in determining whether an unregistered mark is entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). And the elements of an infringement claim are the same whether the mark at issue is registered or not: to prevail, the plaintiff "must demonstrate (1) that it has a valid mark that is entitled to protection under the [Lanham] Act and (2) that defendants' actions are likely to cause confusion as to the origin of the mark." *Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 266 (alteration and quotation marks omitted) (describing "[t]he difference between §§ 1114(1) and 1125(a)" as "not significant for the purposes of" summary-judgment motion turning on likelihood-of-confusion element).

In the context of an infringement suit, the only difference between registered and unregistered marks lies in the parties' respective evidentiary burdens. A plaintiff seeking to protect an unregistered trademark (like SingularDTV's) must affirmatively prove that its trademark is valid and entitled to protection, whereas "a 'presumption of validity' . . . attaches to the issuance of a trademark registration" and must be rebutted by the defendant. *Quality Serv. Grp. V. LJMJR Corp.*, 831 F. Supp. 2d 705, 712 (S.D.N.Y. 2011). "This rebuttable presumption merely shifts the burden of persuasion to the . . . alleged infringer" on the issue of validity. *Id.* (citing *Cold War Museum, Inc. v. Cold War Air Museum*, 586 F.3d 1352, 1357 (Fed. Cir. 2009)).

---

alterations, and quotation marks omitted)); *Silverman v. Miranda*, 116 F. Supp. 3d 289, 304 (S.D.N.Y. 2015) (declining to dismiss complaint based on incorrect statutory citation); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("It is . . . entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of . . . mere technicalities."); Fed. R. Civ. P. 8(e) (instructing that "[p]leadings must be construed so as to do justice").

The incidence of the burden of proof is irrelevant for purposes of Defendants' Motion. At this juncture, SingularDTV need not prove anything. Rather, on a motion to dismiss, the Court must "accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff['s] favor." *Edrei*, 892 F.3d at 532. Thus, that the Mark is unregistered does not immunize Defendants against claims for infringing it, much less provide a basis to dismiss those claims before SingularDTV has had an opportunity to develop an evidentiary record in support of them.

### B. The USPTO's suspension of SingularDTV's application to register the Mark does not determine its entitlement to protection.

Defendants next contend that SingularDTV cannot prove the Mark's validity because "[t]he USPTO has already issued a determination . . . that categorically refutes the characterization of the SingularDTV name as distinctive." (Mot. at 18.) Not only does this argument go well beyond the pleadings, it also badly misconstrues both the factual substance and the legal significance of the USPTO's "determination."

As SingularDTV noted in the Amended Complaint, its application to register the Mark in the United States is pending. (Am. Compl. ¶ 18.) And as the Motion states, that pending application is currently "suspended." (Mot. at 7.) But Defendants' assertion that the application was suspended because "[t]he USPTO has already determined that the [Mark] cannot be registered" (*id.* at 8) is simply false. Indeed, the Suspension Notice itself says otherwise: SingularDTV's application was suspended not because the USPTO concluded that the Mark "cannot be registered," but because agency regulations require the suspension of applications that "*may* be refused registration" based on the outcome of an earlier-field application that is also pending. (*See* Decl. of Benjamin J. A. Sauter ("Sauter Decl.," filed concurrently) Ex. 1 at 1 (emphasis added).) For this reason, the suspension on which Defendants rely is, by its terms, not permanent or indefinite, but lasts only "until the earlier-filed [application] is either registered or abandoned." *Id.*; *see also* 37 C.F.R.

§ 2.83 (requiring that "conflicting application[s]" be suspended until earlier-filed application "is registered or abandoned"). Defendants' attempt to conflate this ministerial suspension of the application with a final determination on the merits is disingenuous, and the Court should reject it.

Worse still is Defendants' characterization of a letter issued by the USPTO in July 2017, seven months before the suspension of SingularDTV's application. (*See* Dkt. No. 91-7.) The Motion refers to this letter, written by an examining attorney at the USPTO, as a "clear determination that the SingularDTV name is not at all distinctive and likely infringes similar marks." (Mot. at 21.) The letter itself makes clear that it is not a final determination, as the Motion incorrectly suggests. Rather, the title of the letter broadcasts, in all-capital letters, that it is a "***provisional*** refusal of protection." (Dkt. No. 91-7 at 1 (emphasis added).) And on the very next page, the letter specifically invites a response "present[ing] arguments in support of registration by addressing the issue[s]" raised in the provisional refusal. (*Id.* at 2.)

Though Defendants neglect to mention it in their Motion, SingularDTV filed a response to the USPTO's letter in January 2018, explaining in a 31-page submission why the issues identified by the examining attorney were not obstacles to registration. (*See* Sauter Decl. Ex. 2.) The Suspension Notice states that the examining attorney accepted some of these explanations while "continu[ing] and maintain[ing]" his reservations on other issues, but the USPTO has yet to answer SingularDTV's response in any other way. (Sauter Decl. Ex. 1 at 2.) And, as USPTO internal guidance makes clear, a suspension notice "should repeat any outstanding issues" but does not, in doing so, render those issues "final." *See* TMEP § 1208.02(c) (July 2021 ed.). In short, the status of SingularDTV's application to register the Mark is exactly as it is portrayed in the USPTO docket summary filed by Defendants: "LIVE" and "Under Examination." (Dkt. No. 91-6 at 1 (emphasis in original).)

Despite these distortions of the factual record, Defendants' argument that the suspension is dispositive suffers from another, more fundamental flaw. Even if the suspension (or the provisional refusal) were the USPTO's final word on the registrability of the Mark—which they are not—Defendants cite no authority for the proposition that a final determination from that agency would strip the Court of all authority to independently apply the relevant language of the Lanham Act and reach a different conclusion. As another court in this District observed in denying a motion for summary judgment, even a final refusal to register based on likelihood of confusion with other marks, though "entitled to substantial weight in assessing likelihood of confusion for purposes of trademark infringement," is "'not conclusive.'" *Knowles-Carter v. Feyonce, Inc.*, 347 F. Supp. 3d 217, 225, n.3 (S.D.N.Y. 2018). Thus, even if the USPTO had done what Defendants falsely assert it did—that is, "determined that the [Mark] cannot be registered" (Mot. at 8)—that action would still not support dismissal of SingularDTV's claims seeking recovery for Defendants' infringement and dilution of the Mark.

### C. SingularDTV's First and Second Causes of Action state claims based on Defendants' direct acts of infringement and dilution and Defendants' vicarious liability for actions taken by Breaker.

In a final bid to defeat SingularDTV's trademark claims at the pleading stage, Defendants argue that those claims, despite their framing, are really "claim[s] for vicarious infringement." (Mot. at 21.) So construed, Defendants contend that those claims do not adequately plead the additional elements required for vicarious liability: the defendant's "right and ability to control the infringing conduct" and receipt of "a direct financial benefit" stemming from that conduct. (*Id.* (citing *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997).)

As an initial matter, nothing in the Amended Complaint supports Defendants' attempt to rewrite SingularDTV's First and Second Causes of Action as seeking recovery based exclusively on a vicarious-liability theory. To the contrary, those claims are rooted in allegations describing

Defendants' own infringing and diluting uses of the Mark. (*See, e.g.*, Am. Compl. ¶¶ 52 ("Defendants have . . . continued to use the Mark in connection with Breaker projects."), 55–56 (referring to "Defendants' infringing use of the Mark"), 64, 86 ("Defendants are using the SingularDTV Mark in commerce to advertise, promote, offer for sale, and sell the goods and services offered by Breaker").) These allegations detailing Defendants' affirmative acts are sufficient to state claims directly against LeBeau and Jackson. A claim for vicarious infringement of intellectual property, by contrast, relies on a defendant's omissions—specifically, its failure "to exercise a right to stop or limit" an instance of direct infringement from which it "profits." *See Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 434 (S.D.N.Y. 2011).

The Amended Complaint does, however, allege that Defendants may also be held "vicariously liable for any acts of trademark infringement undertaken by Breaker." (Am. Compl. ¶ 75; *see also id.* ¶ 91 (alleging vicarious liability for trademark dilution).) Though SingularDTV doubts that there are any such acts for which Jackson or LeBeau are not directly responsible—Breaker, after all, is a small private company of which Jackson is the sole owner and LeBeau is the de facto CEO (*id.* ¶ 15)—it is entitled to recover from Defendants if the evidence demonstrates that the acts of infringement and dilution detailed in the Amended Complaint were undertaken by individuals acting on Breaker's behalf. Contrary to Defendants' assertions, the Company's factual allegations provide ample support for both elements required for vicarious liability. As Breaker's sole owner, Jackson's direct financial interest in Breaker's unauthorized exploitation of the Mark is self-evident. (*See id.*) And on the issue of control, not only does SingularDTV assert that "LeBeau and Jackson exercise total control over Breaker," it specifically alleges—in relation to the most glaring instance of infringement laid out in the Complaint—that "Jackson confirmed, in discussions preceding the filing of [the] Amended Complaint, ***that she currently has control over***

*the SingularDTV Domain*." (*Id.* ¶¶ 15, 53 (emphasis added); *contra* Mot. at 22 ("The Amended Complaint contains no such allegations of control over the websites and social media platforms that allegedly infringe the [Mark.]").) Thus, like Defendants' other attacks on SingularDTV's trademark claims, this argument for dismissal of those claims fails.

## III.   SingularDTV has adequately pleaded its CFAA and DTSA claims.

In addition to arguing that SingularDTV's CFAA and DTSA claims are barred by the Forum-Selection Clause, Defendants separately urge the Court to dismiss those claims as "otherwise fatally infirm." (Mot. at 23.) First, as to the CFAA claim, Defendants complain that the Amended Complaint "fails to specify which subsection of the CFAA has been breached," then proceed to argue that because one of that statute's subsections requires an allegation "that the defendant knowingly transmitted a program, information, code, or command to a protected computer" and the Amended Complaint has no such allegation, the Court must dismiss the CFAA claim. (Mot. at 24–25.)

This willful misreading of the Amended Complaint is not a basis for dismissal. It is true that the Complaint does not directly cite any subsection of the CFAA, but Defendants present no authority requiring such a citation, and SingularDTV is aware of none. More importantly, the thrust of the Company's claims is clear from its allegations, which state a claim for relief under 18 U.S.C. § 1030(a)(5)(C). In conjunction with subsection (g) (which creates the CFAA's private right of action for violations of other portions of the statute), subsection (a)(5)(C) authorizes recovery from any person who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss." (*See* Am. Compl. ¶¶ 97 ("Defendants have obtained data from SingularDTV's e-mail systems despite having no authorization and/or exceeding their authorization to access those e-mail systems); 98 ("The servers on which SingularDTV's business e-mail systems are hosted are a 'protected computer' . . ."); 99 ("Defendants' interference with

SingularDTV's business e-mail systems caused damage . . .".).) And the factual allegations in support of this claim are plenty detailed. The Amended Complaint explains at length how, following their ouster from the Company, Defendants maliciously hijacked SingularDTV's e-mail accounts, cutting off the Company's access to those accounts and wrongfully accessing their contents. (Am. Compl. ¶¶ 38–51.) These allegations make out a textbook claim for violation of 18 U.S.C § 1030(a)(5)(C). *See Poller*, 974 F. Supp. 2d at 233 (noting that examples of "unauthorized access of a computer . . . within the meaning of the CFAA" include employee's accessing company e-mail system "after the employee is terminated or resigns"). Defendants' argument that SingularDTV failed to state a claim under an entirely separate subsection of the CFAA is irrelevant.

As for the DTSA claim, Defendants contend that Plaintiffs "fail[] to sufficiently allege any trade secrets." (Mot. at 25.) To state a claim under the DTSA, the "claimant must provide [the defendants] with the general contours of the alleged trade secrets." *Dardashtian v. Gitman*, No. 17-cv-4327 (LLS), 2017 WL 6398718, at *5 (S.D.N.Y. Nov. 28, 2017) (citation and quotation marks omitted). The Amended Complaint does this, explaining that the contents of the e-mail systems commandeered by Defendants included "financial accounts, privileged legal communications, years of highly sensitive business and personal information, tax and employee social security information, and extensive communications with clients and other third-party service providers." (Am. Compl. ¶ 42; *see Dardashtian*, 2017 WL 6398718, at *5 (holding "sufficient[ly] specific[]" plaintiff's description of trade secrets as including "customer lists and addresses, vendor lists and addresses, computer software programs; computer pass codes and other protectable intellectual property and proprietary information").) Like its CFAA claim, SingularDTV's DTSA claim is adequately supported by the allegations in the Amended Complaint. The Motion should be denied as to both of those claims.

IV. **The Court cannot dismiss the Amended Complaint in favor of LeBeau's shareholder derivative suit against Lubin and Levy-Cohen because the claims in the Amended Complaint do not overlap with that action.**

Defendants' final argument for dismissal is also meritless. They assert that the Court should dismiss the Amended Complaint under the *Colorado River* abstention doctrine, in deference to a separate lawsuit LeBeau filed last summer in New York Supreme Court. (Mot. at 28–29.) Because that proceeding "predates the instant Complaint," Defendants contend that "[t]he Court should abstain from any further adjudications in this matter" because "[t]he claims in the Derivative Action are substantially similar, if not potentially identical, to the defenses and counterclaims Defendants will assert in this matter." (*Id.* at 28.) Abstention is warranted, Defendants argue, because this case is "parallel" to LeBeau's earlier-filed complaint and, if not dismissed, will produce "duplicative litigation" and infringe on LeBeau's "choice of forum." (*Id.* at 29.)

Notably absent from the Defendants' Motion is any description of the purported "nearly identical claims" that, on Defendants' telling, justify treating the Amended Complaint and LeBeau's state-court action as "two competing lawsuits." (*Id.* (citing *First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989).) Far from being "virtually identical" to this case, LeBeau's state-court action is a derivative suit against SingularDTV's two other Shareholders, Lubin and Levy-Cohen, along with two companies founded by Lubin. (*See generally* Dkt. No. 91-9.) The allegations in LeBeau's derivative suit involve issues of corporate governance, including alleged breaches of fiduciary duty by Lubin and Levy-Cohen (which, notably, are already subject to adjudication in Switzerland). These disputes are irrelevant to the Amended Complaint, through which the Company itself—not Lubin or Levy-Cohen—seeks to recover for statutory violations by LeBeau and Jackson. Moreover, Defendants' insistence that the Company "seek this relief" in LeBeau's derivative action is at odds with the Company's purely formalistic role in that proceeding: it is named only as a "nominal defendant," has not been served with process,

and, accordingly, has not appeared through counsel. These incongruities between the parties and issues in the two cases doom Defendants' argument for abstention. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997) ("Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.").

In addition, the Motion does not even attempt to explain what interest would be served by abstention, except that some judicial resources might be conserved because Defendants will attempt to bring "defenses and counterclaims . . . in this matter" that "are substantially similar, if not potentially identical" to LeBeau's derivative claims against Lubin and Levy-Cohen. (Mot. at 28.) *Colorado River* abstention requires far more. As the Supreme Court explained when setting forth that doctrine, the general rule "as between state and federal courts . . . is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *See Colo. River Water Auth. Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Accordingly, departures from this general rule are justified only under "exceptional" circumstances. *Id.* at 818; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (instructing that "balance" of factors to be weighed under *Colorado River* must be "heavily weighted in favor of the exercise of jurisdiction"). It is not enough to demonstrate the mere existence of a parallel state-court case, and Defendants have not even gone that far. Their argument for dismissal on abstention grounds should therefore be rejected.

## CONCLUSION

For these reasons, SingularDTV respectfully submits that the Court should deny the Motion in its entirety.

25

Dated: New York, New York
      May 6, 2022

                          Respectfully submitted,

                          /s/ Benjamin J. A. Sauter
                          Benjamin J. A. Sauter
                          Christopher S. Cogburn
                          Alexa R. Perlman
                          KOBRE & KIM LLP
                          800 Third Avenue
                          New York, NY 10022
                          Telephone: (212) 488-1200
                          Facsimile: (212) 488-1220

                          *Attorneys for Plaintiff SingularDTV GmbH*