**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SINGULARDTV, GMBH,

                               Plaintiff,

  v.

ZACHARY LEBEAU and KIMBERLY
JACKSON,

                            Defendants.

Case No: 1:21-cv-10130-VEC

---

## REPLY MEMORANDUM OF LAW  AND IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

---

May 20, 2022

**Neil L. Postrygacz**
Attorney for Zachary LeBeau
217 34th street
Brooklyn, New York 11232
Tel: (646) 642-7492

**Paul F. Condzal**
Attorney for Kimberly Jackson
1330 Avenue of the Americas, 23rd Floor
New York, New York 10019
Tel: (212) 688-3637

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES …………………………………………………....  iii

PRELIMINARY STATEMENT  … …………………………………………....  1

ARGUMENTS  …..…………………………………………………………....  2

    **I.**    THE SWISS FORUM SELECTION CLAUSE GOVERNS DISPUTES BETWEEN     2
        THE PARTIES. ……………………………………………………………....

    **II.**   PLAINTIFF HAS FAILED TO PLEAD A CAUSE OF ACTION UNDER THE     6
        LANHAM ACT.  …...…………………………………………………....

    **III.**  PLAINTIFF HAS NOT ESTABLISHED VICARIOUS LIABILITY. ……...……...     8

    **IV.**  PLAINTIFF'S CFAA AND DTSA CLAIMS ARE NOT SUFFICIENTLY PLED. …     9

CONCLUSION  …..………………………………………………………....  10

# TABLE OF AUTHORITIES

## CASES

*Bailey v. N.Y. Law Sch.*, 16 Civ. 4283 (S.D.N.Y. Mar. 1, 2017).

*BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*, 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019).

*Feldman v. Comp Trading, LLC*, 19-CV-4452 (RPK) (RLM), at *11 (E.D.N.Y. Mar. 11, 2021).

*Fido's Fences, Inc. v. Radio Sys. Corp.*, 999 F. Supp. 2d 442, 449 (E.D.N.Y. 2014).

*Fifth & Fifty-Fifth Residence Club Ass'n v. Vistana Signature Experiences, Inc.*, 2018 U.S. Dist. LEXIS 169590 (S.D.N.Y. Sept. 28, 2018).

*Hectronic GmbH v. Hectronic USA Corp.*, 20 Civ. 2964 (S.D.N.Y. Nov. 24, 2020).

*Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015).

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999).

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

*Nebgen v. Schentag,* 18 Civ. 8410 (S.D.N.Y. Mar. 31, 2020).

*O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).

*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007).

*Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S*, 907 F. Supp. 2d 401 (S.D.N.Y. 2012).

*Puruggganan v. AFC Franchising, LLC*, No. 3:20-cv-00360 (D. Conn. Feb. 24, 2021).

*Reis, Inc. v. Spring11 LLC*, 15 Civ. 2836 (PGG) (S.D.N.Y. Sep. 24, 2016).

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307, 308 (2d Cir. 1963).

*Sidney Frank Importing Co. v. Beam Inc.*, 998 F. Supp. 2d 193 (S.D.N.Y. 2014).

*SingularDTV GmbH v. John Doe*, 1:21-cv-06000-VEC (S.D.N.Y 2021)

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997).

*Trombetta v. Novocin*, 414 F. Supp. 3d 625, 630-31 (S.D.N.Y. 2019).

*Zachary Lebeau, both individually and in re. SingularDTV GmbH v. Joseph Lubin et al*, Index No. 655673/2021 (Sup. Ct. 2021).

**STATUTES**

15 U.S.C. § 1115(a)

18 U.S.C. § 1030

18 U.S.C. § 1836

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(3)

Fed. R. Civ. P. 12(b)(6)

Defendants Zachary LeBeau ("LeBeau") and Kimberly Jackson ("Jackson" and, collectively, "Defendants") by their respective attorneys, Neil L. Postrygacz and Paul F. Condzal, respectfully submit this Memorandum of Law in reply to Plaintiff's opposition and in further support of their motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction; Fed. R. Civ. P. 12(b)(3) for improper venue; and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

This action was brought by Plaintiff purportedly to stop the use of the SINGULARDTV name and to seek the return of intellectual property. The Amended Complaint (the "Am. Compl.") alleges claims in connection with a certain Service and Development Agreement (the "Agreement") entered into between SingularDTV GMBH and the stateside SingularDTV LLC ("Breaker").[1] In pertinent part, Plaintiff alleges that Defendants have run afoul of various federal statutes by continuing to use Plaintiff's alleged intellectual property following termination of the Agreement and otherwise accessing alleged protected proprietary information received during the term of the Agreement. All of the disputes implicated in this case – whether Plaintiff was authorized to terminate the Agreement; whether Breaker, or any party acting on its behalf, has breached the Agreement by operating websites and social media; and whether Breaker or its founder retains any residual right to continue to manage the licenses and agreements it has entered into or can be forced into a default – each relate back to the contractual relationship between the Plaintiff and Breaker, a point Plaintiff acknowledges repeatedly throughout its pleadings.

The Court must not be persuaded by Plaintiff's attempt to contort this business divorce – a dispute over control of a non-operating business – into something it is not. This case is not about

---

[1] Citations to the Am. Compl. are keyed to the page numbers in the e-filing ribbon generated by the ECF system.

computer fraud or the theft of trade secrets, and it is certainly not a Lanham Act case. Should Plaintiff wish to assert claims for breaches of its proprietary rights, it may do so pursuant to the Agreement's forum selection clause: in Switzerland as the parties intended and where Plaintiff has already commenced an action to seek the very same remedies.

## ARGUMENT

## I.  THE SWISS FORUM SELECTION CLAUSE GOVERNS DISPUTES BETWEEN THE PARTIES.

The instant action arises from the alleged continuation of services under the Agreement by Breaker following its disputed termination by Plaintiff. (Dkt. No. 37-5 at 2). According to the Am. Compl., Breaker was created for the purpose of providing services exclusively for Plaintiff. "[Breaker] was established to provide exclusive support to certain SingularDTV projects." (Am. Compl., Dkt. No. 78, ¶ 16). That arrangement continued for approximately five years until the individuals – now asserting control over Plaintiff – unceremoniously terminated the Agreement.[2]

Each of the websites, e-mail accounts, social media accounts, and projects proffered by Plaintiff in the Am. Compl. in its allegations was produced and managed by Breaker in accordance with the Agreement. This is acknowledged by Plaintiffs in the Am. Compl. at ¶ 16, reading, "Breaker's work in support of the SingularDTV business was conducted under a Service and Development Agreement…." (*Id.*) The Services Agreement is the sole mechanism by which the LLC provides services (such as e-mail and websites) and develops Intellectual Property (a term defined in the Agreement); it also governs the handling of trade secrets and disputes related to those rights and the conveyance – or retention – of control over the proprietary rights it creates. (Dkt. No. 103, Ex. 1). Plaintiff's own Statement of Facts bears witness to this arrangement.[3]

---

[2] See *SingularDTV GmbH v. John Doe*, 1:21-cv-06000-VEC (S.D.N.Y 2021) (Op. Mtn. to Intervene, Dkt. No. 22); *Zachary Lebeau, both individually and in re. SingularDTV GmbH v. Joseph Lubin et al*, Index No. 655673/2021 (Sup. Ct. 2021).

[3] Dkt. No. 99, at ¶ 5 (Pl. Op. Mtn.) (citing Am. Compl.).

Breaker was established to provide exclusive support to certain SingularDTV projects. (*Id*.) To facilitate Breaker's work for SingularDTV and further solidify the Company's brand across relevant markets, the Company permitted Breaker to use the Mark in connection with its work for SingularDTV, including by attaching the Mark to certain film and television content Breaker produced for SingularDTV. (*Id*. at ¶¶ 28–30). Indeed, Plaintiff provides no alternative explanation as to why Jackson would exercise control over Plaintiff's entire e-mail systems, or why Jackson controls Plaintiff's website domain names or its social media accounts. Nor does Plaintiff explain what purpose the Services Agreement serves if not to govern the relationship between the LLC as the licensee and Plaintiff as the purported licensor of its commercialization rights.

Disputes falling under the umbrella of the Agreement are subject to the mandatory forum selection clause. "In New York[ ] '[i]t is well settled that courts will enforce a choice of law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction.'" *Sidney Frank Importing Co. v. Beam Inc.*, 998 F. Supp. 2d 193, 208 n.7 (S.D.N.Y. 2014). "A mandatory forum selection clause is given a presumption of enforceability." *Nebgen v. Schentag*, 18 Civ. 8410 (ER), at *13 (S.D.N.Y. Mar. 31, 2020).

Federal law governs the enforceability of a forum selection clause, based on the following four-part analysis: (1) "whether the clause was communicated to the party resisting enforcement"; (2) whether the clause is "mandatory or permissive, i.e., ...whether the parties are required to bring any dispute to the designated forum or simply permitted to do to"; (3) "whether the claims and parties involved in the suit are subject to the forum selection clause"; and (4) if these three conditions are met, then the resisting party can rebut the presumption of enforceability by making a strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for fraud or overreaching. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *see also Fifth & Fifty-Fifth Residence Club Ass'n v. Vistana Signature Experiences, Inc.*, 2018 U.S. Dist.

LEXIS 169590, at *20 (S.D.N.Y. Sept. 28, 2018).

Applying these factors, **(1)** Plaintiff makes no allegations in the Am. Compl. that it was unaware of the forum selection clause and has, in fact, has relied upon the forum selection clause in a companion case brought in Switzerland in December of 2021 (*infra*), thereby satisfying the first element. **(2)** The forum selection clause in question is mandatory, providing that Switzerland is the "exclusive jurisdiction for any disputes" (Dkt. No. 37-5, § XV.58). **(3)** The claims in this case arise out the transfers of rights and uses of Intellectual Property following an alleged termination of the Services Agreement, namely the failure to turn over Work Product, the definition of which includes both trademarks and trade secrets (*Id.*, § 3), or to destroy Work Product upon the valid termination of such Agreement. (*Id.*)[4] **(4)** As for the fourth factor, there is nothing in the Am. Compl. to indicate that the selection of Switzerland as the forum for resolving disputes was induced by a fraud or could be considered overreaching.

It is indisputable that the forum selection clause is valid and binding, and must apply to the issues raised by Plaintiff. Plaintiff has already brought a case in Switzerland against Breaker (incorrectly referred to in that case as Breaker LLC) citing as its basis the very forum selection clause it now seeks to distance itself from (the "Swiss Arbitration") (Ex. 1, and translated, Ex.

---

[4] "[T]he applicability of a forum selection clause is governed by objective consideration of the language of the clause." *Armco Inc. v. N. Atl. Ins. Co.*, 68 F. Supp. 2d 330, 338 (S.D.N.Y. 1999). Courts have identified at least two categories of terms describing the scope of a forum selection clause: (1) a narrower category that includes terms such as "arise out of," "arise from," or "arising under," and (2) a broader category that includes terms such as "in connection with," "relating to," or "associated with." *Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S*, 907 F. Supp. 2d 401, 412 (S.D.N.Y. 2012) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007). See also *Nebgen v. Schentag*, 18 Civ. 8410 (ER) (S.D.N.Y. Mar. 31, 2020) ("Here, the forum selection clause in the Share Purchase Agreement includes both categories as it states that '[e]xclusive jurisdiction for all disputes arising out of or in connection with this Share Purchase Agreement' shall be subject to the ordinary courts of Switzerland (where TheraHoldings is registered).'") The forum selection clause in the instant matter is nearly identical to the clause in *Nebgen*. The court in *Nebgen* dismissed Plaintiff's complaint in its entirety rather than transferring the matter to Switzerland, the forum specified by the parties to that dispute. See Plaintiff Opp. Brief at 11 (Plaintiff acknowledges the broad language of the forum selection clause in the Services Agreement, arguing "By its terms, the Forum-Selection Clause only applies to 'disputes arising out of or in connection to' the Agreement[.]").

1[a]). In the Swiss Arbitration, this same Plaintiff demands "Contract Dissolution" alleging breaches of the Agreement and demanding, *inter alia,* turnover of Intellectual Property including the SingularDTV trademark as well as "an accounting of license fees the defendant earned…." *Id.* (*See also* Am. Compl. ¶ 22) ("(d) requiring Defendants to transfer the SingularDTV domain to [Plaintiff]; € requiring Defendants to account for profits….").

Plaintiff disingenuously argues that "[n]ot one of SingularDTV's claims seeks to enforce any 'obligation' or 'restriction' set forth in the [Services] Agreement…" However, that assertion is rebutted by its own case in Switzerland which seeks to dissolve the contract and take possession of the SingularDTV trademark. (Ex. 1[a], at p.2). Plaintiff's argument is also belied by the frequently-referenced correspondence dated May 28, 2021 from Mr. Lubin to Ms. Jackson, long before Plaintiff concocted this trademark infringement theory to circumvent the Agreement's jurisdictional provisions. (Am. Compl. ¶ 33; Pl. Op. Mtn. at p.11). In that e-mail, Mr. Lubin writes, "[T]hrough Paragraph 39 of the Development Agreement, Singular terminates the Development Agreement effective June 11, 2021 …. You are instructed to perform no additional work from receipt of this notice…." (Dkt. No. 37-5). That paragraph ends with another instruction to Breaker to return "any intellectual property or financial assets held by Breaker on behalf of Singular." (*Id.*)

Plaintiff would have the Court believe that the demand to stop work is independent from the purported termination of the Agreement when in fact the termination pursuant to Paragraph 39, and the instruction to perform no additional work, are directly connected. Plaintiff discusses this communication in its Am. Compl. and Opposition, yet omits the final demand and the subject line of the cover email sent by counsel to Mr. Lubin, which reads, "Notice of Termination of Amended Services and Development Agreement". (*Id.*) It is indisputable that Jackson's right to handle Plaintiff's intellectual property arises from the Agreement, and any disputes relating to the use of the SINGULARDTV name, access to Plaintiff's e-mail accounts, and the alleged misappropriation

of trade secrets must be resolved according to the Swiss forum selection clause.

Plaintiff's opposition also impermissibly advances arguments that are not based upon allegations contained in the Am. Compl. *See Bailey v. N.Y. Law Sch.*, 16 Civ. 4283 (S.D.N.Y. Mar. 1, 2017) ("Because [new] claims were not asserted in the Amended Complaint, the Court may not consider them in deciding Defendants' motion to dismiss."); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").[5] In its Opposition, Plaintiff asserts an entirely new argument - that the Agreement does not provide Jackson with the contractual basis to use the SINGULARDTV name. (Pl. Op. Mtn. at 12) ("… permission was not granted via the Agreement"). This new theory is inconsistent with the Am. Compl., which alleges in relevant part that that the alleged breaches arose from the election by Mr. Lubin and Mr. Cohen, as Directors of Plaintiff, to terminate their relationship with Breaker. (Am. Compl. ¶¶ 32, 33) ("… Company's Directors voted to terminate SingularDTV's relationship with Breaker ... to completely exit any remaining obligation for the production of content, effective immediately.") The proposition that Breaker's conduct falls outside of the Agreement, introduced *de novo* in Plaintiff's Opposition, must be disregarded as an attempt to further amend the already Amended Complaint.

Based on the above elements recently applied by the Southern District Court in *Nebgen*, the forum designated in the Services Agreement for the resolution of disputes should be binding on the parties, and the instant complaint should be dismissed in its entirety.

## II.   PLAINTIFF HAS FAILED TO PLEAD A CAUSE OF ACTION UNDER THE LANHAM ACT.

It is uncontestable that Plaintiff cannot demonstrate a *prima facie* trademark infringement case. "To establish trademark infringement, a plaintiff is required to present a certificate of

---

[5] See also *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015).

registration with the PTO to show that the "mark is registered and valid (i.e., protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) (citing 15 U.S.C. § 1115[a]). More relevantly, if the alleged mark is <u>unregistered</u>, the burden falls on the Plaintiff here to demonstrate that it can otherwise be protected. *BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*, 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019) ("If the allegedly infringed mark is unregistered, the burden is on plaintiff to prove that its mark is valid.").

The SINGULARDTV name has still not been afforded protection as a federally registered trademark. (Dkt. No. 91-7). Application No. 86891248 for the registration of SINGULARDTV remains suspended because it is likely to be confused with earlier registered and applied for trademarks. (*Id.*) The Response to Office Action Letter dated July 28, 2017 from Mr. Michael Eisnach, Examining Attorney for the USPTO, makes very clear that the mark will not be registered because, amongst other objections, "the Class 42 services in the cited registrations are broader than and would include applicant's more narrow Class 42 services…. [and] [a]lthough the marks are not identical, they do make overall similar commercial impression…." (Dkt. No. 91-7). *See Trombetta v. Novocin*, 414 F. Supp. 3d 625, 630-31 (S.D.N.Y. 2019) ("To determine … a putative mark, courts will first classify the mark as generic, descriptive, suggestive, arbitrary, or fanciful.").

Here, the SINGULARDTV name is not distinctive and thus is not able to be registered. Nor has Plaintiff established that the name is protectable as a trademark under common law because it was not distinctive when filed and has not acquired secondary meaning through use.[6]

---

[6] For a mark to acquire "distinctiveness" or "secondary meaning," an applicant must provide "proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made." *Trademark Manual of Examining Procedures*, 15 U.S.C. § 1052(f). Secondary meaning comes into play where a mark "is not inherently distinctive." *Id.*

III.   **PLAINTIFF HAS NOT PLED VICARIOUS LIABILITY.**

Conclusory allegations are insufficient to hold a corporate officer liable for trademark infringement by an entity defendant. *Hectronic GmbH v. Hectronic USA Corp.*, 20 Civ. 2964 (LLS), at *15 (S.D.N.Y. Nov. 24, 2020). As a threshold matter, the Am. Compl. is deficient with respect to the individual liability of LeBeau, whose role in the company as "Breaker's de facto CEO" is pled merely "on information and belief" among other allegations. (Am. Compl. ¶¶ 15, 19, 36, 41, 49-54, 71, 97, 107). Jackson, according to the Am. Compl., is Breaker's sole member and director (ignoring for purposes of this motion that as SingularDTV LLC has no directors). Nor does the complaint offer allegations detailing how such absolute control is manifested in the business or whether control has been delegated to employees. *See Hectronic*, 20 Civ. 2964 at *15.

Further, Vicarious, or secondary, liability requires that the defendant have "an obvious and direct financial interest in the exploitation of copyrighted materials." *Shapiro, Bernstein & Co. v. H.L. Green Co*., 316 F.2d 304, 307, 308 (2d Cir. 1963). Plaintiff has not established that Defendants received a "direct financial benefit" or a "direct financial interest" from the alleged infringement. *Shapiro*, 316 F.2d 304; *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997). It is not enough for Plaintiff to merely allege that LeBeau and Jackson, individually, have "realized economic value… including increased profits and consumer goodwill…." These conclusory allegations fail to establish concrete harm; specifically, how Jackson and LeBeau will profit from the continuation of the websites and social media accounts created by Breaker on behalf of SingularDTV GmbH.[7] Plaintiff offers only that the Defendants'

---

[7] See *Purugganan v. AFC Franchising, LLC,* No. 3:20-cv-00360 (KAD) (D. Conn. Feb. 24, 2021) (granting motion to dismiss due to lack of standing under Article III even though plaintiff was able to establish "concrete harm in the form of lost profits comprised of 2.5% of gross sales), citing *Fido's Fences, Inc. v. Radio Sys. Corp.*, 999 F. Supp. 2d 442, 449 (E.D.N.Y. 2014) (concluding that "economic harm to [the plaintiff's] business—i.e., lost sales and profits—is sufficiently 'concrete and particularized,' as well as 'actual or imminent,' to constitute injury in fact under Article III" where plaintiff alleged that defendants' exclusionary practices harmed its existing business).

financial gain must be "self-evident" and cites only to its own Amended Complaint which, likewise fails to offer any link, even attenuated, between its claim of infringement and any direct financial interests. Plaintiff's conclusory allegations that the individual Defendants have profited, and its own particularly non-concrete recitation of generalized losses, are insufficient for a finding of vicarious infringement.

Insofar as Plaintiff has not established possession of an actual trademark in the United States the first and second causes of action fail on the most critical element – actual infringement. For the foregoing reasons, Counts I and II of Am. Compl. must be dismissed in their entirety.

## IV.  PLAINTIFF'S CFAA AND DTSA CLAIMS ARE NOT SUFFICIENTLY PLED.

Plaintiff's third Cause of Action under the Computer Fraud and Abuse Act (18 U.S.C. § 1030) likewise fails because Plaintiff does not adequately plead specific damages. The purpose of the CFAA is to give a private right of action to a party that has suffered damage and loss from an unauthorized access of a protected computer. "…[T]he CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id*. § 1030(e)(11). And "damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." *Id*. § 1030(e)(8)." *Feldman v. Comp Trading, LLC*, 19-CV-4452 (RPK) (RLM), at *11 (E.D.N.Y. Mar. 11, 2021).

Plaintiff concludes only that it has suffered damages totaling more than $5,000. That may satisfy the statutory loss threshold set forth in the CFAA (see Am. Compl. ¶ 100); however, Plaintiff's failure to indicate what damage and/or losses were incurred as a result of the alleged unauthorized access, or what costs were expended by Plaintiff to investigate and/or repair such damage is fatal to its CFAA claim. Plaintiff states generally that it is "entitled to recover damages

in the amount of all revenue lost, costs incurred, restoration and investigation costs, and other consequential damages….” (Am. Compl. ¶ 102). without specifying what sort of investigation it conducted, the nature of the damage caused by the alleged unauthorized access, or what costs it incurred in conducting its investigation or repairing damage to Plaintiff’s computer systems. *See Reis, Inc. v. Spring11 LLC*, 15 Civ. 2836 (PGG) (S.D.N.Y. Sep. 24, 2016) (dismissing CFAA claim for failure by plaintiff to plead that they conducted an investigation or took remedial measures to address damage to its computer systems).

Similarly, Count IV alleging violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 must be dismissed for failing to identity with any degree of specificity the nature of the information Plaintiff sought to protect. Further, the Services Agreement addresses the handing of Plaintiff’s trade secrets; thus any claims should be brought in the forum elected by the parties thereto.

## **CONCLUSION**

It is respectfully submitted that Defendants’ instant motion should be granted in its entirety.

Dated:   New York, New York
         May 20, 2022

Respectfully submitted,

/s/ Neil L. Postrygacz
Neil L. Postrygacz
Attorney for Zachary LeBeau
217 34th street
Brooklyn, New York 1123-6923
Tel: (646) 642-7492
neil@neilesq.com

/s/ Paul F. Condzal

Paul F. Condzal
Attorney for Kimberly Jackson
1330 Avenue of the Americas, 23rd Floor
New York, New York 10019
Tel: (212) 688-3637
paul@condzal-law.com