City of New York, State of New York, County of New York

I, Nathalie Tauchner, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation from German into English.

*signature*
Nathalie Tauchner

**WENIGER VIELI LETTERHEAD**

**Request for Arbitration**  December 21, 2021
**Singular DTV GmbH c/ Breaker LLC**

Dear Justice of the Peace

In the Matter

**SingularDTV GmbH**, Poststrasse 30, 6300 Zug (CHE-143.156.740)

**Plaintiff**

Represented by Attorney Michael Mraz, Wenger Vieli AG, Dufourstrasse 56, Postfach, 8034 Zürich

against

Breaker LLC, Poststrasse 30, 6300 Zug

**Defendant**

Presumably represented by Attorney Niklaus Glatthard and/or Attorney and Notary Dr. Melchior Glatthard, Advokatur & Notariat Glatthard, Limmatquai 80, 8001 Zürich

regarding

**CONTRACT DISSOLUTION**

I am submitting on behalf of the Plaintiff the following Request for Arbitration with the following claims

**LEGAL CLAIMS**

1. The defendant is to be compelled to pay the plaintiff an amount not below USD 2 Million.

2. The defendant is to be compelled to transfer to the plaintiff all rights to the following products, developments, respectively films, and all records (in physical or electronic form) relating to the following products, developments, respectively films:

   a.   digital platforms

- i. Tokit (Tokenize-IT)
- ii. DDP (Decentralized Distribution Portal)
- iii. B2B SaaS

b. self produced or co-produced films

- i. Trust Machine
- ii. La Fortaleza
- iii. Antarctica
- iv. The Happy worker
- v. Down with the King

c. licensed films

- i. Perfect
- ii. Prospect
- iii. Mutafukaz
- iv. Respeto
- v. From All Corners
- vi. Stray Dogs (3 films)
- vii. Us & Them
- viii. Gasoline Thieves
- ix. Coherence
- x. Bad banks
- xi. Primer
- xii. Rude Boy
- xiii. Blue Finch (Library)
- xiv. A-One (Library)
- xv. Gravitas (Library)

    xvi. Kino Lorber (Library)

    xvii. Speed of Life (Library)

  d. trademarks/brands

    I. Tokit

    ii. SingularDTV

    iii. Ethervision

The defendant is to be compelled to present the plaintiff with an accounting of all licensing fees the defendant earned for the licensed films listed in number 2 (c) above; as well as an accounting about the financial conditions of the individual licenses (namely, their amount and the calculation of the individual license fees), and about the individual licensees (including their contact information) and to release to plaintiff license fees earned between June 11, 2021 and the date of the decision in accordance with this accounting.

3. The defendant is to be compelled to pay compensatory damages to the plaintiff in an amount to be determined, but not under USD 2 million.

4. The defendant is to be compelled to pay compensatory damages to the plaintiff in an amount to be determined, but not under USD 200,000.

5. All costs and consequences of compensation are to be at the expense of the defendant.

REASONING

**I.** **FORMAL MATTERS**

1. The undersigned is duly authorized.

   **BO:** Power of Attorney of August 31, 2021

**Attachment 1**

2. The parties have an agreement regarding venue under article 58 of the Amended Services and Development Agreement of January 5, 2017 (see below). Under this agreement, any disputes arising out of or relating to this agreement fall exclusively under the jurisdiction of the regular courts of the city of Zug ("*The ordinary courts of the city of Zug, Switzerland, have exclusive jurisdiction for any disputes arising out of or relating to this Agreement.*"). The existing claim is based on the aforementioned agreement. The local jurisdiction of the called-upon arbitration authority is therefore established (Art. 5 IPRG).

3. Under Art, 197 ZPO, the ruling is to be preceded by an arbitration attempt in front of an arbitration authority. In this case, there is no exemption under Art. 198 ZPO. The Office

of the Justice of the Peace of the city of Zug is the local arbitration authority in civil matters, and as such is responsible locally and in terms of the subject matter (Art. 197 ZPO I.V.m. paragraph 38 of the Court Organization Act of the Kanton Zug).

## II. MATERIAL MATTERS

### A. THE PARTIES

4. The plaintiff is a GmbH with location in Zug (CHE-143.156.740). Its purpose is the development, marketing, distribution and licensing of software, in particular the creation of a production and distribution platform based on Blockchain and Ethereum, as well as the development, marketing, distribution and licensing of qualitatively superior film and television content.

5. Founders and shareholders as of today (with shares of 43, 14 and 43 percent) are Misters Joseph Michael Lubin ("Lubin"), Arie Yehuda Levy Cohen ("Cohen") and Zachary James LeBeau ("LeBeau").

    **BO:** HR-Excerpt (Internet) of SingularDTV GmbH

    **Attachment 2**

6. There are various disagreements between LeBeau and his co-shareholders Lubin and Cohen (respectively, the plaintiff).

7. The defendant is a LLC ("limited liability company") under US law. Shareholder and CEO of the defendant is Ms. Kim Jackson, the spouse of LeBeau. LeBeau is in control of the defendant legally, or at least factually.

8. The defendant was originally founded as "SingularDTV, LLC" with an eye towards a collaboration with the plaintiff. At one point (not of interest in this matter) it was restructured into the current "Breaker LLC". To avoid any confusion, we will use the current company exclusively here.

### B. AGREEMENT BETWEEN THE PARTIES

9. The parties executed an agreement on January 5, 2017 ("Amended Services and Development Agreement") (hereafter "Agreement") under which the defendant (referred to as "Supplier" in the Agreement) committed to undertake a number of services for the plaintiff, particularly in the area of the so-called "SDTV Platform", a decentralized platform to be developed by the plaintiff for the purpose of the management of film rights and the streaming of films.

    **BO**: Amended Services and Development Agreement of January 5, 2017

    **Attachment 3**

10. The plaintiff terminated the Agreement in writing on May 28, 2021 to be effective June 11, 2021 in accordance with Number 39. The plaintiff directed the defendant to no longer engage in any work and to generate no further costs. The plaintiff further directed the defendant to present a final accounting of costs and expenses, and to return any rights and assets the defendant was holding for the plaintiff.

**BO**: Termination Letter of the Plaintiff of May 28, 2021

**Attachment 4**

11. To this day, the defendant has refused to furnish any accounting and the return of rights and assets.

## C. DEMANDS OF THE PLAINTIFF

### 1. Number 1: Repayment of Granted Advances

12. Under paragraph 23 of the Agreement, the defendant submitted an annual proposal for a budget of the annual costs of the defendant's services. After approving the budget, the plaintiff paid the respective sum in advance.

13. Currently, there is an outstanding amount (not yet exactly specified but no less than USD 2 million), stemming from the plaintiff's advance payments und the Agreement which, at the time of the termination, had not been "earned" through appropriate services.

14. As a result of the termination, the defendant owes the plaintiff the return payment of the aforementioned amount no less than USD 2 million.

### 2. Number 2: Transfer of Intellectual Property

15. Under paragraph 30 of the Agreement, the defendant transfers to the plaintiff any intellectual property rights to the work result the defendant renders under the Agreement.

16. In the written termination of May 28, 2021, the defendant was directed by plaintiff to transfer any rights and assets to the plaintiff. To this date, the defendant has not followed this directive.

17. The plaintiff demands from the defendant in particular any rights (including the submission of the necessary declarations and transfer of any existing records) for the following products, development or films for the development or production of which the plaintiff provided the defendant with the appropriate financing:
    a. digital platforms
        i. Tokit (Tokenize-IT)
        ii. DDP (Decentralized Distribution Portal)
        iii. B2B SaaS
    b. self produced or co-produced films
        i. Trust Machine
        ii. La Fortaleza
        iiii. Antarctica

    iv. The Happy worker

    v. Down with the King

 c. licensed films

    i. Perfect

    ii. Prospect

    iii. Mutafukaz

    iv. Respeto

    v. From All Corners

    vi. Stray Dogs (3 films)

    vii. Us & Them

    viii. Gasoline Thieves

    ix. Coherence

    x. Bad banks

    xi. Primer

    xii. Rude Boy

    xiii. Blue Finch (Library)

    xiv. A-One (Library)

    xv. Gravitas (Library)

    xvi. Kino Lorber (Library)

    xvii. Speed of Life (Library)

 d. trademarks/brands

    I. Tokit

    ii. SingularDTV

    iii. Ethervision

18. For the licensed films under c, the defendant also obtained, and continues to obtain, license fees. The defendant has not accounted to the plaintiff for these license fees or transferred these licenses fees to the plaintiff since June 11, 2021 (the date on which the termination of the Agreement became effective). Therefore, the plaintiff demands that the defendant (i) account for the earned license fees, (ii) disclose the financial conditions of the individual licenses (in particular, about the amount and the computation of the individual license fees), (iii) disclose the individual licensees (including their contact information), and (iv) release any earned license fees since June 11, 2021.

3. **Number 3: Compensation for Breach of Contract by the Defendant**

19. The defendant has repeatedly used assets, advanced by the plaintiff to the defendant for the budget proposed by the defendant under paragraph 23 of the Agreement, for purposes that were not in accordance with the Agreement and that did not serve the interests of the plaintiff. There is further suspicion that the defendant repeatedly used the assets advanced by the plaintiff under paragraph 23 of the Agreement for the budget proposed by the defendant to finance companies and projects under control of LeBeau (or connected to him) without disclosing this conflict of interest.

20. The exact amount of the damages the defendant thereby caused is currently the subject of forensic examinations. In any event, the amount is at least USD 2 million.

4. **Number 4: Compensation for Withholding E-Mail Access**

21. The defendant acted for plaintiff as a contracting partner of the external mail providers and therefore factually controlled the plaintiff's (and/or its employees) access to their mail boxes. After the termination of the Agreement on May 28, 2021, the defendant continued to deny the plaintiff access to its electronic communications. Thereby, the plaintiff incurred grave damages: The plaintiff lost its reputation as a reliable partner in the eyes of its business partners and communication partners. Moreover, the plaintiff must fear that it no longer has unfettered access to its business and internal correspondences. This damage continues and is irreparable.

22. At least the purely financial consequences are reparable: The plaintiff had to hire U.S. attorneys who had to undertake elaborate work to take a preventative measure in the appropriate court in New York in order to compel the defendant to reestablish the plaintiff's access to its e-mails. The costs for these proceedings alone (which are still pending) is no less than USD 200,000. The defendant was obligated under the termination of the Agreement to grant the plaintiff unfettered access to the mail boxes. With defendant's denial of access, the defendant violated the Agreement and caused the costs for the U.S. attorneys. The defendant is therefore liable for these costs.

5. **Supplemental Subject Matter**

23. Further supplements to the subject matter, as well as a specification of legal demands are specifically reserved.

D. **LEGAL MATTERS**

24. Legal executions remain reserved.

In the name of, and on behalf of, the plaintiff, I ask the Justice of the Peace, to summon the parties to the arbitration proceeding.

Best regards,
Michael Mraz