# KOBRE & KIM

800 Third Avenue
New York, New York 10022
www.kobrekim.com
Tel +1 212 488 1200

June 1, 2022

Hon. Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      RE:    *SingularDTV GmbH v. LeBeau, et al.*, No. 1:21-cv-10130 (VEC)

Dear Judge Caproni:

      We represent Plaintiff SingularDTV GmbH ("SingularDTV" or the "Company") in the above-captioned action and write to:

    (1) Update the Court on Defendant Zachary LeBeau's willful violation of the Court's Orders regarding delivery of the device used by Defendants to store and access the Company's digital assets (the "Cold Wallet") and for expedited discovery regarding the fate of that device;[1]

    (2) Respectfully request an order requiring Mr. LeBeau to produce additional documents responsive to the Company's requests, as previously ordered by the Court, and to deliver the "seed phrase" used by Mr. LeBeau to access the Cold Wallet as recently as January 2022 to the Escrow Agent. (Dkt. Nos. 75-1, 88);[2] and

    (3) Respectfully renew our request for fees incurred in preparing our April 26, 2022 letter and in taking other steps necessary to cause Defendants to comply with the Court's April 6 and May 2, 2022 Expedited Discovery Orders, including fees

---

[1] Mr. LeBeau violated the Court's January 25, 2022 Consent Order, (Dkt. No. 66), April 6, 2022 Order granting expedited discovery, (Dkt. No. 88), and May 2, 2022 Order granting expedited document discovery and a deposition of Mr. LeBeau. (Dkt. No. 96; together with the April 6, 2022 Order, the "Expedited Discovery Orders").

[2] In its May 2, 2022 Order, the Court denied SingularDTV's request for fees incurred in preparing its April 26, 2022 letter and in taking any other steps necessary to cause Defendants to comply with the Court's expedited discovery Order without prejudice, permitting SingularDTV to re-raise its request "should document production and Defendant LeBeau's deposition reveal that Defendants were, in fact, willingly failing to comply with the Court's prior order." (Dkt. No. 96 at 2).

Americas (New York, Chicago, Delaware, Miami, San Francisco, São Paulo, Washington DC)
APAC (Hong Kong, Seoul, Shanghai) · Caribbean (BVI, Cayman Islands) · EMEA (Cyprus, Dubai, London, Tel Aviv)

Kobre & Kim refers to Kobre & Kim llp, a New York Limited Liability Partnership.

incurred preparing the instant letter and conducting Mr. LeBeau's May 11, 2022 deposition (Dkt. No. 92).

We are compelled to make the above requests because of Mr. LeBeau's ongoing failure to comply with multiple Orders, demonstrating a flouting of this Court's authority at the Company's significant expense. We are hopeful that this relief sought, if so-ordered, will put an end to Mr. LeBeau's delay tactics and finally secure his compliance with his obligations.

### I. Mr. LeBeau has Consistently and Willfully Flouted the Court's Authority, Process and Orders.

#### a. Mr. LeBeau Failed to Deliver the Device Storing the Cold Wallet, Contrary to the Consent Order.

On January 25, 2022, the Court entered a Consent Order requiring Mr. LeBeau to "*deliver physical possession of the device storing the Cold Wallet, together with all charging devices and authorizations including log-in information and passwords, to an escrow arrangement as separately agreed upon by the Parties*."[3] (Dkt. No. 66). SingularDTV agreed to this Consent Order with the understanding that Mr. LeBeau had been using that device to access the Cold Wallet, and that by transferring the device and all authorizations to the Escrow Agent, Mr. LeBeau would therefore no longer have access to the Cold Wallet. The Company's understanding was based on, among other things, the parties' negotiations of the Consent Order and Mr. LeBeau's own sworn declaration, which stated on December 7, 2021 that **"[t]he original wallet which requires a key from Lubin and Cohen, remains in place, and I still have access to the fail-safe master key**." **Exhibit B**, Dkt. No. 37 at ¶ 43.

Mr. LeBeau failed to deliver the Cold Wallet device and all authorizations to the parties' Escrow Agent, in violation of the Consent Order. He delivered instead two pieces of paper, one purporting to contain a private key to the Cold Wallet address and the other purporting to contain a private key to a separate wallet address containing SNGLS tokens.[4] *See* **Exhibit A**, LeBeau Deposition Transcript ("LeBeau Depo. Tr."), at 81.

#### b. Defendants Willfully Violated the April 6 Expedited Discovery Order.

Following Mr. LeBeau's violation of the Consent Order, on April 6, 2022, the Court granted the Company's request for expedited discovery into the fate of the Cold Wallet device. (Dkt. No. 88). Specifically, the Court ordered both Defendants "immediately to produce all nonprivileged documents that are responsive to Plaintiff's [10] requests in Exhibit A to Plaintiff's motion." (*Id.*). In response to the Court's Order, on April 20, 2022, Mr. LeBeau served Responses

---

[3] The parties' agreement for Mr. LeBeau to deliver the Cold Wallet device was separate from the parties' agreement, also contained in the Consent Order, for Mr. LeBeau to transfer the Company's ETH to the Escrow Agent.

[4] As noted below, the "private key" to the Cold Wallet is not the same as the Cold Wallet's 12-word "seed phrase," which was used by Mr. LeBeau to access the Cold Wallet since at least 2018, including to transfer the ETH to the Escrow Agent on January 25, 2022.

June 1, 2022
Page 3

and Objections and produced only a ***single*** document to the Company; for her part, Ms. Jackson served Responses and Objection and did not produce ***any*** documents.

On April 26, 2022, the Company filed a letter documenting Mr. LeBeau's and Ms. Jackson's apparent violations of the Court's expedited discovery Order. (Dkt No. 92). On May 2, 2022, the Court again Ordered Mr. LeBeau and Ms. Jackson to "*produce all nonprivileged documents that are responsive to Plaintiff's request for expedited discovery, as already required by the Court's prior order, not later than May 5, 2022*," and ordered Mr. LeBeau to appear for an expedited deposition. (Dkt. No 96).

Confirming their flagrant violation of the April 6 Order, on May 5, 2022, Mr. LeBeau produced 210 pages of documents and Ms. Jackson produced 247 pages.

Mr. LeBeau was deposed on May 11, 2022. Among other things, he testified that he could not remember anything about how he conducted his initial search for documents in response to the Court's April 6 Order, and that nothing could refresh his recollection on this subject. LeBeau Depo. Tr. at 101:22-25. Mr. LeBeau could not shed any light on such basic questions as "What were the search terms you used the first time," "Would you be able to recreate the search that you ran to identify the single document," or "Do you know which document requests Exhibit 2 was produced in response to." *See, e.g.*, LeBeau Depo. Tr. at 98-101. Given Mr. LeBeau's inability to supply any good faith explanation for his failure to produce the required documents, there is good cause for this Court to find that his violation of the April 6 Order was willful and to award the Company all costs and fees incurred in compelling compliance. *See Shady Recs., Inc. v. Source Enterprises, Inc.*, 351 F. Supp. 2d 64, 73 (S.D.N.Y. 2004) (reasoning "even to the extent that [defendant's] contempt was not willful, its failure to take adequate care to comply, its refusal to take responsibility for that failure, and its reckless assertion of litigation positions . . . which required [plaintiff] to investigate vigorously the possibility that it was confronted with willful contempt . . . all justify an award of attorneys' fees in this case."); *see also Mingoia v. Crescent Wall Sys.*, No. 03-CV-7143 (THK), 2005 WL 991773, at *5 (S.D.N.Y. Apr. 26, 2005) (awarding fees because "Plaintiffs have demonstrated that Defendants have not made a good faith effort to comply with the Judgment, and Defendants have offered no reasonable excuse for their noncompliance. Moreover, Defendants have given no assurances that they will comply with the Judgment in the future."). Moreover, as discussed below, the Defendants' production of documents in response to the Court's May 2 Order was also grossly deficient and warrants additional relief.

### c. *Mr. LeBeau's Deposition Reveals Additional Violations of this Court's Orders.*

Mr. LeBeau's deposition testimony reveals that his willful violations of the above Orders went even farther than previously understood. In particular, (1) Mr. LeBeau testified that he deliberately memorized the "seed phrase" (i.e., the "failsafe master key") so that he could continue to access the Cold Wallet, yet has not turned over that seed phrase to the Company, meaning that he retains the ability to access the Company's Cold Wallet and transfer Company assets stored on that wallet in violation of the terms of the Consent Order; and (2) Mr. LeBeau's second production of documents in response to the Court's May 2 expedited discovery Order was grossly deficient in its own right.

> 1. *Mr. LeBeau's Testimony Establishes that his Failure to Deliver the Seed Phrase to the Escrow Agent Violated the Consent Order.*

Mr. LeBeau's deposition testimony revealed that he made material misstatements and omissions in a sworn declaration regarding his access to the Cold Wallet device and seed phrase, which he *still* has not delivered to the Escrow Agent. By failing to deliver the seed phrase that he routinely used to access the Cold Wallet, Mr. LeBeau violated the terms of the Court's Consent Order requiring him to "deliver physical possession of the device storing the Cold Wallet, together with all charging devices *and authorizations including log-in information and passwords*" to the Escrow Agent. (Dkt. No. 66) (emphasis added).

On December 7, 2021, Mr. LeBeau submitted a Declaration in this case opposing SingularDTV's Request for a Temporary Restraining Order. Paragraph 43 of that Declaration stated that *"[t]he original wallet which requires a key from Lubin and Cohen, remains in place, and I still have access to the fail-safe master key.*" **Exhibit B**, Dkt. No. 37 at ¶ 43. The clear implication of this sworn statement was that the original Cold Wallet device remained intact, and that Mr. LeBeau still possessed the physical seed phrase that was written down by the parties at the time of the Cold Wallet's creation.

SingularDTV agreed to the Consent Order based on its understanding, supported by Mr. LeBeau's Declaration, that Mr. LeBeau would be relinquishing his access to the Cold Wallet by delivering the original device and associated authorizations and passwords to the Escrow Agent. Contrary to his sworn Declaration, however, Mr. LeBeau testified at his deposition that he destroyed the original Cold Wallet device in 2017 (LeBeau Depo. Tr. at 37-38),[5] and since that time has been accessing the Cold Wallet using the seed phrase *that he memorized before also destroying*. LeBeau Depo Tr. at 24-27.[6] Mr. LeBeau used the memorized seed phrase to transfer ETH from the Cold Wallet 113 times since 2018, including to the escrow agent on January 25, 2022, and still remembered the seed phrase on the day of his deposition. LeBeau Depo Tr. at 24-25. Thus, not only did Mr. LeBeau fail to deliver the Cold Wallet device as ordered, but he also failed to deliver the "failsafe master key" that he has been using to access the Cold Wallet for years. LeBeau Depo. Tr. at 71, 82.

When confronted about the discrepancy between paragraph 43 of his Declaration and his deposition testimony, Mr. LeBeau provided evasive and contradictory accounts. At first, he acknowledged that he would "[p]robably word things differently today." LeBeau Depo. Tr. at 48:13-14. However, when given the opportunity to clarify, he instead took the nonsensical position that paragraph 43 was correct because it was written "in present tense as if it was 2016":

---

[5] Mr. LeBeau testified that he destroyed the Mac Mini device in 2017 (LeBeau Depo. Tr. at 37-38) and destroyed the USB hard drives and written seed phrase in 2020 (LeBeau Depo. Tr. at 24-27, 89).

[6] This seed phrase was originally written down on a piece of paper at the time of the Cold Wallet's creation and was placed in a safety deposit box by Mr. LeBeau and Defendant Kimberly Jackson, along with the Mac Mini and one USB containing the wallet file. LeBeau Depo. Tr. at 12-13, 15.

June 1, 2022
Page 5

> A. I know what this is. This sentence is written in present tense from the past point of view. So this sentence is written in present tense as it if was 2016.
>
> Q. So your testimony sitting here today is, when you wrote paragraph 43, you were writing it as if, when you wrote this declaration, you were writing it in 2016? Is that your testimony today?
>
> A. Yes.

LeBeau Depo. Tr. at 51:12-52:10. After apparently realizing that this explanation did not make sense in light of the surrounding paragraphs in his declaration,[7] Mr. LeBeau then changed his testimony, claiming that he should have added the word "address" after the word "wallet" to make Paragraph 43 true as of December 2021. LeBeau Depo. Tr. at 55:8-15. With that formulation, the paragraph would have read, in relevant part, as follows:

> ***"[t]he original wallet [address] which requires a key from Lubin and Cohen, remains in place, and I still have access to the fail-safe master key*."** **Exhibit B**, Dkt. No. 37 at ¶ 43.

This explanation is similarly nonsensical, as it would make paragraph 43 false in other ways if written as of December 2021. For example, the original wallet "address" did not require a key from Lubin and Cohen in December 2021, and they did not have access to the "address" at that time—only LeBeau had access via his memorized seed phrase.[8] LeBeau Depo. Tr. at 55:16-56:10.

Further, Mr. LeBeau not only misleadingly failed to disclose in paragraph 43 of his Declaration that the Cold Wallet device and written seed phrase had been destroyed, Mr. LeBeau also materially omitted the fact that he maintained access to the Cold Wallet solely through his memorization of the seed phrase which he *still* has not provided to the Escrow Agent. Indeed, Mr. LeBeau's testimony was at best inconsistent regarding whether the seed phrase he memorized could still be used to access the Cold Wallet. For example, initially, Mr. LeBeau testified that the seed phrase could not be used to access the Cold Wallet because the original Icebox software was no longer functional:

> Q. And am I correct that you could use that [seed phrase] to reconstitute the cold wallet if you wanted to?
>
> A. No.
>
> Q. Why not?

---

[7] For example, the immediately preceding paragraph of Mr. LeBeau's declaration states "[u]ltimately, once ConsenSys stopped maintaining the Icebox software, the software degraded and became unusable. Following Cohen's resignation, I alone administered the wallet, again without objection or challenge." **Exhibit B**, Dkt. No. 37 at ¶ 42. These statements refer to events occurring post-2016 and are therefore written as of the date Mr. LeBeau filed his declaration, December 7, 2021, and not as of 2016 as Mr. LeBeau claimed.

[8] Similarly, referring to the original wallet "address" as remaining "in place" would not have made sense, as wallet addresses are intangible and cryptographic and therefore cannot be "displaced" or changed over time.

June 1, 2022
Page 6

> A. Because the Icebox software is no longer functional.
>
> Q. When did the Icebox software become no longer functional?
>
> A. It had functioning problems from the very beginning. In 2016 it wasn't functioning properly. In 2017 as well. By 2019, it was a completely obsolete piece of software that no longer had any developers developing on it and was completely nonfunctional in the entire cryptoverse.

LeBeau Depo. Tr. at 29:16-30:7.

On further questioning, however, Mr. LeBeau revealed that he could also use the seed phrase to access the Cold Wallet through software called Tokit.IO:

> Q. So if one knew the seed phrase, one could access the wallet either through Icebox or through Tokit.IO software?
>
> A. Correct.

LeBeau Depo. Tr. at 44:19-45:11.

After acknowledging that the seed phrase could be used to access the Cold Wallet on Tokit.IO, Mr. LeBeau proceeded to provide inconsistent testimony about the functionality of that platform. Mr. LeBeau initially testified that Tokit.IO became "inoperative" in 2020. LeBeau Depo. Tr. at 58. He later admitted, however, that Tokit.IO remained operative until at least January 2022, when he used Tokit.IO (and the memorized seed phrase) to send 12,000 ETH to the Escrow Agent. LeBeau Depo. Tr. at 61. When confronted with this discrepancy, Mr. LeBeau asserted that Tokit.IO was kept functional after it began a state of "rot" in 2020 solely to pay the Escrow Agent in January 2022. This explanation cannot be true. For one, it is impossible that Mr. LeBeau knew in 2020 that he would need to transfer ETH from the Cold Wallet to an escrow agent in January 2022 to resolve a motion filed in a lawsuit that began in November 2021. Moreover, Mr. LeBeau transferred ETH from the Cold Wallet *at least 25 times* between 2020, when Tokit.IO supposedly began its state of "rot," and January 2022, when the ETH was transferred to the Escrow Agent. *See* **Exhibit C**. These transfers demonstrate unequivocally that Tokit.IO was not "rotten" and could be used by LeBeau to transfer assets from the Cold Wallet.

Ultimately, Mr. LeBeau was unable to provide any coherent explanation for why the Tokit.IO platform could not still be used to transfer assets from the Cold Wallet today. LeBeau Depo. Tr. at 64-65, 67.

Given that Mr. LeBeau memorized the Cold Wallet's seed phrase and has used it to unilaterally transfer assets from the Cold Wallet using Tokit.IO as recently as January 2022, and that Mr. LeBeau was unable to provide a coherent explanation why Tokit.IO could not be used today for the same purpose, SingularDTV has serious concerns about his ability to continue to do

June 1, 2022
Page 7

so in violation of the Consent Order. Accordingly, Mr. LeBeau should be required to turn over the seed phrase to the Escrow Agent.[9]

### 2. *Mr. LeBeau's Testimony Exposes Further Failure to Conduct a Reasonable Search Pursuant to Court's Expedited Discovery Orders.*

In addition to Mr. LeBeau's testimony establishing that he may still have access to the Company's Cold Wallet through Tokit.IO, his testimony also established that he did not conduct a reasonable search for documents responsive to the Company's document requests as required by the Court's Expedited Discovery Orders. In particular, despite using the Tokit.IO software to access the Cold Wallet for nearly four years—including to transfer the Company's ETH to the Escrow Agent in January 2022—Mr. LeBeau admitted that he did not even search for the terms "Tokit" or "Tokit.IO". LeBeau Depo. Tr. at 122, 126.[10]

Documents regarding Tokit.IO are directly responsive to the Company's Request No. 8, which seeks "[a]ll documents concerning methods through which funds on the Cold Wallet have been transferred at any point in time, including, without limitation, Your transfer of ETH to an escrow agent on January 25, 2022, pursuant to an escrow agreement between You and SingularDTV GmbH." Dkt. No. 75-1. Yet, it appears that neither Mr. LeBeau nor Ms. Jackson produced a single document mentioning Tokit.IO. It simply is not credible that no such responsive documents exist when Tokit.IO was the method by which Mr. LeBeau accessed the funds on the Cold wallet for four years, and the private key that Mr. LeBeau delivered to the Escrow Agent on a piece of paper "was exported from Tokit.IO." LeBeau Depo. Tr. at 82. Indeed, Mr. LeBeau testified repeatedly that he communicated with Tokit.IO developers regarding the transfer of ETH from the Cold Wallet to the Escrow Agent in January 2022. LeBeau Depo. Tr. at 59-62, 64-65, 67. Consistent with Mr. LeBeau's evasive testimony about his ability to access the Cold Wallet through Tokit.IO, it appears as though he crafted searches to avoid producing documents on this topic.

In addition, Mr. LeBeau's declaration detailing his search did not include the search term "cold storage," even though that term appears in large font at the top of the very first and only document Mr. LeBeau initially produced. See **Exhibit D**, May 5, 2022 Declaration of Zachary LeBeau. Mr. LeBeau claimed that he thought he did in fact search "cold storage," but that those

---

[9] While Mr. LeBeau has the seed phrase memorized and his delivery of the phrase will not undo that memory, his failure to deliver the seed phrase preserves his asymmetrical access to the Cold Wallet in violation of the Consent Order.

[10] When asked why Mr. LeBeau did not search for or produce documents regarding Tokit.IO, his counsel and Kimberly Jackson's counsel, Mr. Condzal, who also attended the deposition, shut down Mr. LeBeau's testimony, asserting that the parameters of his search were protected by attorney-client privilege. LeBeau Depo. Tr. at 109-122, 125-130. Mr. Condzal is counsel of record for Ms. Jackson and does not appear to represent Mr. LeBeau. However, Mr. Condzal not only appeared at Mr. LeBeau's deposition (which we do not contend was improper), he also disrupted the deposition multiple times with egregious speaking objections, requests for breaks immediately after exhibits were introduced but before questions were asked, and assertions of attorney-client privilege over Mr. LeBeau's alleged communications with counsel. *See e.g.*, LeBeau Depo. Tr. at 25, 44, 72-81, 109-110, 115-117. At one point, Mr. Condzal even referenced Ms. Jackson's affidavit, which was not at issue in Mr. LeBeau's deposition (LeBeau Depo. Tr. at 116).

terms were for some reason not included in his declaration. LeBeau Depo. Tr. at 106-107. Accordingly, there is no record that those terms were ever searched.

What is more, Mr. LeBeau appears to have lied on the record regarding how he conducted his second search and reviewed e-mails responsive to the Company's requests. When Mr. LeBeau was asked why he decided to conduct his search using search terms as stated and described in his May 5, 2022 Declaration (*see* **Exhibit D**), he responded that "I'm not aware of how else I would conduct a search." LeBeau Depo. Tr. at 103. He also testified that he ran different searches to try to identify documents for each of the Company's 10 requests. LeBeau Depo. Tr. at 119. But later, when pressed about the deficiencies of his searches, he pivoted and claimed that he actually reviewed every single e-mail in his inbox from 2016 to the present. LeBeau Depo. Tr. at 127. Mr. LeBeau's claim that he reviewed every single one of his emails from 2016 to the present is (a) completely inconsistent with his Declaration and deposition testimony describing his use of detailed search terms; and (b) not credible given his testimony that the entire process lasted only two or three days. LeBeau Depo. Tr. at 104, 127-130.

When asked about this inconsistency and why he would submit a declaration saying he "personally conducted the following due and diligent searches" using search terms, if in fact he actually reviewed every single email in his inbox, Mr. LeBeau's counsel instructed him not to answer. LeBeau Depo. Tr. at 129. It is simply not believable that Mr. LeBeau searched every e-mail in his Gmail account over the last seven years in just two- or three-days' time, and that if he did, only 56 documents (none of which mention Tokit.IO or the two pieces of paper he delivered to the Escrow Agent) were found to be responsive.

## II.     Mr. LeBeau Must Comply with the Expedited Discovery Orders and Compensate the Company for Relevant Fees.

Given that Mr. LeBeau's testimony is plagued by numerous inconsistencies, half-truths, and admitted misstatements regarding both his continued access to the Cold Wallet and the searches he conducted in response to the Company's document requests, in contravention of the Court's Orders, we reserved the right on the record to further depose Mr. LeBeau and seek additional documents shedding light on Mr. LeBeau's access to the Company's Cold Wallet. LeBeau Depo. Tr. at 134-135. Mr. LeBeau's counsel refused on the record to produce any additional documents. LeBeau Depo. Tr. at 134-135.

On May 26, 2022, we e-mailed Mr. Postrygacz to confirm Mr. LeBeau's position that he will not produce any additional documents responsive to the Company's 10 requests, including documents regarding Tokit.IO, and asked to schedule a meet and confer regarding the same. On May 31, 2022, we followed up on this request. As of the date herein, we have not received a response.

Accordingly, we regrettably must return to this Court to respectfully request its further intervention in ordering Mr. LeBeau to comply with the Expedited Discovery Orders. Specifically, we respectfully request an Order requiring Mr. LeBeau to:

June 1, 2022
Page 9

> (1) produce all nonprivileged documents related to cold storage and Tokit.IO, as already Ordered by the Court, with a concomitant affirmation about how the search was performed; and
>
> (2) deliver, in writing, the Cold Wallet's seed phrase to the Escrow Agent.

In addition, Mr. LeBeau's repeated noncompliance and/or semi-compliance with the Court's Orders has caused the Company to incur significant additional legal expenses, including multiple letters and taking Mr. LeBeau's deposition. As set out above, the revelations coming out of that deposition as to Mr. LeBeau's noncompliance underscores the need for the Company to have taken all those steps to secure compliance. Virtually none of those steps would have been necessary if Mr. LeBeau complied from the outset. Therefore, SingularDTV respectfully submits that it is also appropriate for the Court to order:

> (3) Defendants to pay SingularDTV's costs and fees in preparing its April 26, 2022 letter, and in taking other steps necessary to cause Defendants to comply with the Court's Orders, including the preparation of this instant letter and taking Mr. LeBeau's deposition on May 11, 2022.

\*   \*   \*

We appreciate the Court's attention to this matter and are available to discuss these issues further at the Court's convenience.

Respectfully submitted,

 */s/ Benjamin* J. A. Sauter_____
Benjamin J. A. Sauter
Christopher S. Cogburn
Alexa R. Perlman
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022

*Attorneys for SingularDTV GmbH*