# EXHIBIT B

PLAINTIFF'S
EXHIBIT
3
5-11-22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- x

SINGULARDTV, GMBH,

Case No. 1:21-cv-10130

Plaintiff,

-against-

ZACHARY LEBEAU and KIMBERLY JACKSON,

Defendants.

----------------------------------------- x

## DECLARATION OF ZACHARY LEBEAU IN OPPOSITION TO PLAINTIFF'S REQUEST FOR A TEMPORARY RESTRAINING ORDER

I, ZACHARY LEBEAU, pursuant to 28 U.S.C. § 1746 and Local Rule 6.1(d), state as follows:

1. I make this declaration in opposition to Plaintiff SingularDTV GmbH's ("Plaintiff," SingularDTV," or the "Company") Motion for a Temporary Restraining Order and Preliminary Judgment. The statements in this Declaration are true to the best of my knowledge.

2. I am a current shareholder, director, and officer of SingularDTV. I currently hold, and during all relevant time periods have held, forty-three percent (43%) of the issued and outstanding shares of SingularDTV.

3. This case is the culmination of a years-long effort by Joe Lubin and Arie Levy Cohen to seize control over the Company only so they can gain access to millions of dollars in cryptocurrency sitting in the Company's coffers.

4. At the present time, the Company is effectively defunct other than as a holder of cash and cash-equivalent cryptocurrency and has no on-going business operations or enterprise.

1

5. SingularDTV has paid Lubin's company, ConsenSys (defendants in the Derivative Action, defined below), more than US$10M to develop software, yet the software remains incomplete, and Lubin/Cohen have proffered no path for its commercialization. Further, the television and film assets created and owned by the Company are in virtual stasis until the corporate governance issues are resolved and capital is released.

6. On or around October 7, 2021, I filed an action, both individually and derivatively on behalf of SingularDTV GmbH against Joseph Lubin ("Lubin"), Arie Levy Cohen ("Cohen") and ConsenSys AG / ConsenSys Inc. (together "ConsenSys"), the "Derivative Action," for (a) damages and (b) to permanently enjoin, restrain, and prohibit Lubin and Cohen from holding any further meetings, passing any resolutions or taking any other actions for the purpose of disintermediating a founder and shareholder (me) or causing diminution in the value of the Company's shares.

7. The Derivative Action seeks to protect the Company's assets from further waste, mismanagement, and self-dealing by Lubin and Cohen.

8. A detailed recitation of the actions of Lubin and Cohen is set forth in the Derivative Action and incorporated herein. A true a correct copy of the Derivative Action is attached hereto as Exhibit D-1.

9. Neither Lubin nor Cohen has yet asserted an answer in Derivative Action (the parties stipulated to additional time at Lubin and Cohen's request), though both have retained counsel. Lubin and Cohen's (as well ConsenSys') response to the Derivative Action is due by December 15, 2021.

10. Neither has Lubin or Cohen provided any statements in the instant proceeding, relying instead on the Declaration of Mr. Patrick Allenspach ("Allenspach"). Allenspach was hired by Jackson as the Swiss Resident Director on or around the first half of 2020. He has little first-

hand knowledge regarding the facts alleged in the Derivative Action or the instant case; nor detailed history surrounding the ongoing disputes between Messrs. Cohen, Levy and myself.

11. I have also filed for dissolution of the Company pursuant to *Article 821 para. 3 of the Swiss Code of Obligations* in Switzerland. A copy of our September 24, 2021 filing (translated into English) was submitted as Exhibit 8 to the Declaration of Mr. Michael Mráz of November 26, 2021.

### Background

12. I founded the business which ultimately became SingularDTV with my wife, co-defendant Kim Jackson ("Jackson"), in or around October 2014 as Evotion Media LLC.

13. The enterprise that would become SingularDTV was first conceptualized by me and Jackson in 2014 as a blockchain-based platform for content creators to track and monetize their intellectual property rights; the platform would also be used to fund and create television and film assets related to blockchain and cryptocurrency.

14. SingularDTV GmbH (Switzerland) was formed by Jackson, Lubin, Cohen and I in or around October of 2016. I personally paid the incorporation fees for the GmbH's formation. Days later, we founded SingularDTV LLC in New York (the "LLC"). Lubin and I were given equal 43% stakes in the GmbH, with Cohen holding a minority interest; Jackson was granted all the equity in the New York LLC. The intention was that we all, as co-founders, would build the enterprise together and benefit equally from its success.

15. The purpose of the Company was to raise capital through an initial coin offering (ICO) in Switzerland. In the years following the ICO, the cryptocurrency raised by SingularDTV has appreciated dramatically.

16. Since the formation of the SingularDTV enterprise in 2016, I have served as SingularDTV's CEO. My principal job for the past 6 years has been to build the SingularDTV enterprise alongside Ms. Jackson.

17. My position was purportedly terminated by Lubin and Cohen at a meeting of the board of directors of SingularDTV held in May of this year. I have objected to that meeting on the grounds that it failed to adhere to Swiss corporate formalities (as well as for other reasons detailed in the Derivative Action), and there could have been no quorum without my attendance at such meeting. [Article 809 para. 4 of the Swiss Code of Obligations]

18. Jackson served as the Company's COO since its founding. She attended every board meeting of which she was given notice and handled human resources and operations for both the LLC and SingularDTV. Many of the Company's meetings were held at the New York entity's office. Jackson more than any other person in the Company has continuously advocated for financial accountability, a call that was continuously ignored by Lubin and mocked by Cohen.

19. Jackson and I invited Joe Lubin and Arie Cohen to join the Company early-on (2016) as subject matter experts, and we granted them shares in exchange for services that were promised but never rendered.

20. Instead of acting like founders, Lubin and Cohen wavered between neglect and misuse: they ignored the company completely at times, except when they found ways to benefit from its unexpected access to millions of dollars in cryptocurrency without oversight by investors or shareholders.

21. Had the cryptocurrency raised in the Company's 2016 ICO not appreciated dramatically in the subsequent years, Lubin and Cohen would have neglected the Company completely. But since there was money to spend, in the case of Cohen, he was able to use his position as CFO to purchase luxury items and use Company money to invest in personal projects

4

for his own benefit; in the case of Lubin, he was able to capitalize his software company, ConsenSys, with millions of dollars in un-earned development fees from SingularDTV. Invoices provided by ConsenSys to SingularDTV (copies of which are attached hereto as Exhibit D-2) demanded payment of millions of dollars for release of the software (Lubin first attempted to own and license the software to the Company and demanded payment of millions of dollars for the Company to retain ownership of the software) to the Company without itemizing deliverables or justifying costs.

22. While Jackson and I continued to operate SingularDTV for the purpose of fulfilling the Company's obligations to the token holders, Cohen and Lubin have each used their positions in the Company to unapologetically enrich themselves through their unrelated business interests.

23. Once that was taken away (for Cohen following his termination as CFO and for Lubin, once the eight-figure development invoice was paid to ConsenSys), neglect set in.

24. Notably, Cohen did not attend any Company meetings from October 2018 until May 27, 2021. Lubin has attended meetings but has not provided any CTO services for the Company since its inception, instead lining his pockets after holding the Company's developed software hostage. However, Lubin did not attend any Company meetings in 2020.

25. In fact, during one Company meeting, Lubin explains "currently I am mainly representing ConsenSys' interest." A true a correct copy of the relevant Company Board meetings is annexed hereto collectively as Exhibit D-3.

26. Cohen resigned as Director of the Company on February 12, 2019. As of this date, he has not been reelected to the board and has no authority to attend or vote on any of the resolutions at the meetings relied on by Plaintiff in its instant application.

### The Dual-Entity Model

27.     The Swiss / US affiliate entity model was established for the purpose of creating a legal separation between the Company's actual work (development and exploitation of software and entertainment assets) which was conducted through the US Entity and the heavily regulated Swiss-based ICO which was handled by the Swiss Entity. However, the effect created a governance imbalance at the Swiss Entity level which resulted in a founder, Ms. Jackson, being easily eliminated from the enterprise she created and ran.

28.     Until Spring of 2018, the Company ran two operations – finance and legal (Swiss law) in Switzerland with operations centered in New York. Cohen ran the Swiss office as CFO until April of 2018, when he was removed by the Company due to financial improprieties, including those alleged in the Derivative Action.

29.     Following Cohen's termination, all operations (with the exception of statutory back-office functions) were removed to New York. By way of example, the Company e-mail account was and continues to be hosted in New York through the LLC. Mr. Allenspach's primary function in Switzerland was to satisfy the requirement for a resident director and to help with the dissolution of the Swiss Entity.

30.     Cohen, in the Minutes of the 5th Board Meeting, held on December 12, 2018, at the New York Entity's office (40 Fulton Street, New York, New York), concedes that the reason for the separation between the LLC and the GmbH was to mitigate risk ("Simon…. Now, it is clear that this set up does not reflect all that is intended and what should be implemented…") See Exhibit D-3, Minutes of Board of Directors' Meeting.

31.     In that same meeting, and subsequent meetings, Jackson is continuously referred to as a "co-founder". Exhibit D-3.   In a post by Cohen on reddit.com from on or around August 23, 2016, Cohen names the founders of SingularDTV as, "Zach LeBeau: SingularDTV's CEO, Joe

6

Lubin of ConsenSys (CTO), Kim Jackson of Evotion Media (CCO) and Arie Levy-Cohen (CFO) -- executing the CODE to implement the most disruptive Decentralized Media Company and Rights Management Platform on the street today!" A true and correct copy of the reddit post is annexed hereto as Exhibit D-4.

32. In retrospect, this corporate structure gave Lubin the power to cut out Jackson, one of SingularDTV's founders, purportedly with the approval of Cohen and the stroke of a pen. And that is exactly what they did in a disputed meeting of the Board of Directors held on June 8, 2021. A true and complete copy of these minutes is annexed hereto as Exhibit D-7.

33. Once terminated the LLC would be obsolete since the Services Agreement also contained a unilateral exclusivity and non-compete provision prohibiting it from providing any services in the blockchain industry for a period of three (3) years following termination. a copy of the Amended Services Agreement is annexed hereto as Exhibit D-5.

34. By terminating the Services Agreement without cause SingularDTV is no longer even attempting to fulfill its promises to its token holders since the New York Entity solely created and exploited the entertainment and software assets for the Company.

### The Cold Wallet

35. In addition to serving as the CEO, I have responsibly kept the cryptocurrency wallet secure since the Company's ICO.

36. In September 2016, the Founders (Jackson, Lubin, Cohen, and I) met in the ConsenSys offices on Bogart Street in Bushwick, NY to establish the GmbH wallet and its permissions.

37. We created a new wallet address via the software program called "Icebox". Icebox was a cold wallet interface developed by then ConsenSys CTO Christian Lundkvist.

38. To secure the wallet, we were provided with a system generated 12-word-seed-phrase, a wallet file and a password. Jackson and I were given the wallet file on a hard drive, which acted as 1/2 of the key. Cohen and Lubin were given the password on a second hard drive to act as the other 1/2 of the key. The point was for at least 1 participant from each founders' group to meet and combine their keys in order to gain access to the wallet. The seed phrase served as a failsafe *"master key"* allowing anyone knowing the phrase to access the cold wallet without the other pieces of information.

39. The other 3 founders entrusted me with the seed phrase for safekeeping in case of emergency and/or if one of the groups was unable to provide their half of the access credentials.

40. On two separate occasions, I met with Arie to access the wallet, and had to use the "seed phrase", when Arie's access key failed.

41. I was trusted with the master key because SingularDTV was my original idea and the other founders all believed me to be trustworthy. None of the Founders ever questioned or challenged my retention of the master key.

42. Ultimately, once ConsenSys stopped maintaining the Icebox interface, the software keys degraded and became unusable. Following Cohen's resignation, I alone administered the wallet, again without objection or challenge. I suggested to Lubin that we re-establish multi-signature controls and preferences. Other than recommending a replacement key interface, Lubin did not seem interested in re-establishing multi-signature controls.

43. The original wallet which requires a key from Lubin and Cohen, remains in place, and I still have access to the fail-safe master key, in case either of those keys are lost, damaged or stolen. There hasn't been any diminution in the value of the wallet nor will there be as long as the status quo remains. Lubin and Cohen have a long history of leeching the Company at any opportunity and cannot be entrusted with the Company's assets. In fact, it is my belief that they

8

perpetrated the hack complained of in the "John Doe" Action, either personally or with confederates.

### Conclusion

44. Plaintiff's application is rife with misstatements and omissions. For example, in an attempt to minimize Jackson's involvement and authority within the Company, Plaintiff claims that she was merely an independent contractor engaged by the Company in late 2018. This is simply not true. Jackson is repeatedly listed in the Company's meeting minutes as a "co-founder." Likewise, Cohen, in one online post, lists the names of the Company's founders, including Jackson. See Exhibit D-3.

45. More egregious is Plaintiff's effort to defame me by referring to me as a charged felon and the assertion that I withheld information regarding the dropped charges. Not only am I NOT a convicted felon, but both Lubin and Cohen were well aware of the circumstances well in advance of the ICO.

46. In fact, Lubin referred to the charges in Iowa in the online forum bitcointalk.com. On September 16, 2016, when asked about the *Iowa situation*[1], Lubin wrote:

> "This is not news. It is history. Zach's [LeBeau] project was swept up in a broad cleansing of a fraud-filled situation. Zach was quickly cleared and not deemed a "person of interest" as proceedings unfolded. I have zero concern about Zach's artistic and fiduciary integrity. Very cool, however, for the Internet to do excellent due diligence in this respect. Looking forward to creating blockchain-

---

[1] I wrote and directed my first feature film *The Scientist* in 2008, with production taking place in Iowa. Unknown to me, the Executive Producer, Wendy Weiner Runge, and one of the Producer's, Matthias Saunders, falsified information about the film in film production incentive disclosures to the State of Iowa. I was wrongly charged, but charges were dismissed *with prejudice.*

9

> based bounty systems for driving various kinds of DD."
> https://bitcointalk.org/index.php?topic=1562292.280

47. The Company is currently not operating and is in the process of dissolution in Switzerland. As per the minutes of the meeting held by Cohen and Lubin on May 27, 2021, a true and correct copy of which is annexed hereto as Exhibit D-6, they both resolved as follows:

> "[T]hat the Board shall form a Dissolution Committee. The purpose of the Dissolution Committee, which ZJL is invited to be a part of should he so choose, is to conclude a proposal for an orderly wind-down of the Company as soon as is practicable. The Dissolution Committee shall be co-chaired by Joseph Lubin and Patrik Allenspach, and any such members as appointed by the Board in the ordinary course. The Dissolution Committee will, among other actions standard for such committees:
>
> - Continue working with forensic authorities regarding the Compliance Incident in an attempt to recover the lost assets;
> - Continue working with Patrik Allenspach to finalize all remaining tax obligations of the Company;
> - Appoint a third party to complete an accounting of all debts, if any, owed by shareholders, directors, and/or employees, to the Company;
> - Make a proposal for the Shareholders regarding how the remaining Company assets may be allocated to limit liability, promote the interests of SNGLS token holders, and potentially, continue on some aspects of the business; and
> - The Dissolution Committee is expressly authorized to engage third party professional services in Switzerland as required to conclude this analysis."

48. There is no imminent harm or irreparable loss that would justify the issuance of a Preliminary Injunction against me or Jackson. Tellingly, it is Lubin and Cohen who have interfered with the Company's day to day operation, including, without Court order, freezing approximately $10,000,000 in a Signature Bank account this past summer

making those funds unavailable for Company operations, which were ongoing at the time.

49. From the Company's inception, Lubin and Cohen have put their own interests before those of any established legal structures and the Company's own stakeholders in clear breach of their fiduciary obligations under US and Swiss law.

50. For Lubin to insinuate that I am the wrongdoer in this saga is yet another well-funded effort to get the world to look the other way while he plunders creative thinkers, engineers and software developers of their companies, dreams, and ideas.

51. The decentralizing capacity of blockchain is real; Lubin, however is a fraud.

52. I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

WHEREFORE, I respectfully request that the instant application be denied in its entirety.

_____
Zachary LeBeau

Sworn to before me this 7th day of December, 2021

_____
Notary Public

> AMY ELAINE SANTANA
> Notary Public - State of New York
> NO. 01SA6417067
> Qualified in Westchester County
> My Commission Expires May 3, 2025