

**NEILESQ**

ATTORNEY AT LAW

A PROFESSIONAL CORPORATION

**Neil L. Postrygacz**

June 16, 2022

*Filed Via CM/ECF*
The Honorable Valerie E. Caproni
United States Judge
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, NY 10007

       Re: <u>SingularDTV GmbH v. LeBeau, et al</u>
          Civ. Action No. 1: 21-cv-10130

Dear Judge Caproni:

  I represent the Defendant Zachary LeBeau in the above referenced action and write to oppose Plaintiff's latest letter application dated June 1, 2022. (Dkt. #104) Plaintiff's application should be denied in its entirety. Contrary to the speculative and misleading representations by Kobre & Kim in its letter, Defendant Zachary LeBeau's document production and deposition testimony have demonstrated ***unequivocally*** that the Cold Wallet Device, the subject matter of this inquiry, was destroyed almost 5 years ago (October 2017) under the supervision of Milad Mostavi and Catalin Dragu, lead developers of Mr. Joseph Lubin's company ConsenSys.[1]  Mr. LeBeau does not retain possession of any physical wallet device and has no access to any SingularDTV GmbH cryptocurrency wallet through a key phrase or otherwise. The documents produced by Mr. LeBeau and his deposition testimony reiterate these facts over and over again.

  Mr. LeBeau has complied with the Orders of this Court, including by providing a sworn declaration outlining his exhaustive records search, and by sitting for an approximately five (5) hour deposition.  Plaintiff should not be permitted to continue to harass Mr. LeBeau through the expansion of the scope of its now fully resolved motion for expedited discovery. In its latest letter, Kobre & Kim attempts to shift the parameters of the Court's original order to seek further discovery on issues that are speculative, previously unarticulated, and unrelated to the controversies that gave rise to this Court's original order permitting expedited discovery in this case. The questions posed by the Court have been fully answered. With the cryptocurrency assets of SingularDTV GmbH safely in the hands of Kobre & Kim, this manufactured controversy should now be put to rest.

---

[1] Mr. Lubin is a shareholder of SingularDTV GmbH and upon information and belief is the primary person bringing this action against Mr. LeBeau

175 Varick Street, New York, NY 10014 | Tel +1-212-392-4945 | Fax +1-646-514-1997 | neil@neilesq.com
www.neilesq.com



### Mr. LeBeau Has Complied With the Court's April 6 Order

The Court's January 25, 2022 order (the "Consent Order") required Defendant to "deliver physical possession of the device storing the Cold Wallet, together with all charging devices and authorizations including log-in information and passwords, to" the escrow agent. [REF] In response to the Court's Consent Order, Mr. LeBeau delivered the only existing copy of the private key needed to access the SingularDTV GmbH Cold Wallet so that Kobre & Kim could have transferred out the cryptocurrency assets held there. In the Court's subsequent April 6, 2022 discovery order (Dkt. #88) (the "Original Discovery Order") the Court allowed limited discovery unrelated to the underlying causes of action in this case in order to explore allegations by Kobre & Kim, "… that Defendants still possess a physical device or devices associated with the Cold Wallet, and that Defendants' failure to deliver whatever physical hardware is in their possession violates the plain terms of the [Consent] order." Pl. Mem., Dkt. 76 at 1.  In response to the Original Discovery Order, Mr. LeBeau searched his entire e-mail account (relevant time period)  and produced pages of responsive documents, and sat for a deposition.

Counsel for Defendant has already acknowledged that the unintentional omission of the qualifying phrase "if any" was a mutual mistake of the parties that has led to hours of work by both sides. While this segue has not yielded any new information, it has resolved the issues raised by Kobre & Kim in its original motion for Expedited Discovery, and the questions raised by the Court in its Original Discovery Order.

The Court's Original Discovery Order posed three very specific scenarios:

i) Should expedited discovery reveal that Mr. LeBeau in fact withheld a physical device in violation of the Consent Order, Plaintiff is likely to succeed in pursuing claims for the relinquishment of that asset.

*RESPONSE*: *Mr. LeBeau's document production and deposition testimony demonstrates that Mr. LeBeau has not withheld any physical devices; the only physical wallet device was in fact destroyed years earlier.*

> Q. What about the Mac Mini computer and the USB keys, were they also destroyed?
> A. Yes.
>
> Q. After that trip, was it brought back to the United States?
> A. No.
> Q. Where was it left?
> A. It was destroyed in Bucharest.



> Q. During that trip?
> A. During that trip.
> Q. What was the date that the Mac Mini was destroyed in Bucharest?
> A. I don't recall the exact date, but it was in the beginning of October of 2017.
>
> *(See infra at 25, 38, 41)*

ii) Should document production support Mr. LeBeau's assertion that no physical device exists, his deposition may be unnecessary.

*RESPONSE: Document production by Mr. LeBeau in fact supports his previous assertion that "no physical device exists," This is supported by Mr. LeBeau's deposition testimony. (See infra at 25, 38, 41)*

iii) Should discovery reveal that Mr. LeBeau is correct, and that no physical device exists, a far lesser harm will befall Mr. LeBeau in being proven right than would befall Plaintiff in suffering an ongoing, irreparable injury from Defendants' violation of the Consent Order.

*RESPONSE: Mr. LeBeau's deposition testimony and extensive document production demonstrates that there is no such physical device.*

The Court agreed that the document requests (the "Requests") in Exhibit A to Plaintiff's Motion for Expedited Discovery (Dkt. 75-1) were appropriately tailored to the immediate issue before the Court. Plaintiff's requests were as follows:

- identifying all devices on which the Cold Wallet was held from 2016 to the present;
- identifying the location of all such devices (or, in the event that any of those devices have been destroyed, explaining why);
- explaining when, how, and why the Cold Wallet was moved from one device to another;
- explaining how the sheets of paper comprising the "paper wallet" came to exist, identify the device they were printed from, and explain how and where the keys and seed phrases printed on them were stored over time;
- identifying all persons who have ever had access to the "paper wallet" or the information printed on it; and
- explaining why Defendants failed to disclose the purported nonexistence of the Cold Wallet hardware device until the day that they were due to turn that device over to the parties' escrow agent.



Mr. Sauter, during the February 25, 2022 hearing, summed up Plaintiff's expedited discovery motion and request with the following explanation:

> These factual issues are coming up about when [the Cold Wallet] was destroyed. That's exactly what we want to test in discovery, because there is a clear violation of the consent order. I don't think that's in dispute. The question is whether there is an excuse. To evaluate whether there is a valued excuse for not delivering that, we submit, there needs to be some discovery as to what happened to the device. Are there other devices who has had access to it. ***And that's what our motion is about***. (Emphasis added.)

Mr. LeBeau has provided all responsive documents in his possession and answered Mr. Sauter's questions concerning the destruction of the Cold Wallet device.[2] Plaintiff's questioning at Mr. LeBeau's deposition went well beyond the scope of the destruction of the Cold Wallet device, and Kobre & Kim's instant letter application ventures even further beyond the scope of its Expedited Discovery Motion and Original Discovery Order. It is undeniable that there is no further evidence to be discovered regarding the destruction of the Cold Wallet device.

**Counsel Should Not Be Permitted to Introduce New Issues under the Guise of the Now-Resolved Motion for Expedited Discovery**

In its letter of June 1, 2022, Kobre & Kim raises a host of new issues that are unrelated to the Original Discovery Order which focused on (a) non-Ethereum cryptocurrency assets that they asserted still remain in the SingularDTV GmbH Cold Wallet, and (b) Mr. LeBeau's residual access to that wallet. The first of these issues is squarely within the control of Kobre & Kim, which serves as the escrow agent over SingularDTV's cryptocurrency assets and the account which was turned over by Mr. LeBeau. The latter, which could have already been resolved by Kobre & Kim had they transferred any remaining assets to a new wallet, is nothing more than speculation into a hypothetical. Further Kobre & Kim has by now had ample opportunity to explore this hypothetical to its rational conclusion.

    **(a)**    **Remaining Cryptocurrency Assets**

---

[2] Mr. LeBeau testified at his deposition that employees of Joe Lubin's ConsenSys destroyed the original Cold Wallet device in 2017 (LeBeau Depo. Tr. at 37-38); that employees of Joe Lubin's ConsenSys destroyed the Mac Mini device on which the Cold Wallet was stored in 2017 (LeBeau Depo. Tr. at 37-38); and that he destroyed the USB hard drives and written seed phrase in 2020 (LeBeau Depo. Tr. at 24-27, 89).



      According to Kobre & Kim, the SingularDTV GmbH cryptocurrency wallet held not only Ethereum, but also a host other cryptocurrency tokens. As articulated by Mr. Sauter at the February 25, 2022 hearing, "Now, we think that's important, A, because there are other assets on this device; B, there certainly was a device at a point in time which the company understood was still in existence until this escrow deposit happened and now has questions if it is true that it has been destroyed or no longer exists, what happened to it, where is it, who else has control of it, are there other devices. Hearing Transcript ¶ 12, 15-21. Despite having control over that account since January 2022, Kobre & Kim have been unwilling to perform what they claim to be the "administratively burdensome" task of transferring any digital tokens remaining in that wallet to a new wallet controlled by Kobre & Kim, as escrow agent, for safekeeping. *See* Hearing Transcript ¶ 12, 7-11 ("The reason the parties or the reason SingularDTV negotiated to have the device turned over, it would be administratively burdensome to transfer these 100, some of which are liquid tokens, to the agent, so the device was agreed to be transferred."). Instead, they have used the hypothetical possibility of continued access by Mr. LeBeau to conduct expedited discovery, a process that has imposed an unfair burden on Mr. LeBeau, and a drain on his financial resources.

      It is now confirmed that any physical device was destroyed years ago, and that the sole access to the SingularDTV GmbH wallet has been handed over to Kobre & Kim as ordered by the Court. Further, there is no dispute that all of the Ethereum previously held in the SingularDTV GmbH Cold Wallet has been transferred and is now in the possession of Kobre & Kim. Kobre & Kim, on information and belief, has transferred that Ethereum to a separate Coinbase account under its sole control. Kobre & Kim could have transferred the remaining tokens in the original SingularDTV wallet to a wallet in their control to allay their ongoing concerns but have elected not to do so. If Kobre & Kim had legitimate concerns that Mr. LeBeau continued to have access to any remaining (valueless) cryptocurrency tokens in the SingularDTV GmbH wallet, they could have transferred those tokens months ago. This concern, articulated by Mr. Sauter in the February 25, 2022 hearing as the basis of Kobre & Kim's motion for expedited discovery,[3] has been unquestionably resolved through this process. By its June 1, 2022 letter Kobre & Kim is simply exploiting an immaterial mutual mistake in the Consent Order to advance its campaign against Mr. LeBeau. That campaign should be concluded now that the questions posed in the Expedited Discovery Motion and the Court's Original Discovery Order have all been resolved in the negative: There is no other cold wallet device and the access code which once granted Mr. LeBeau access to the wallet is no longer functional. Further, Kobre & Kim can mitigate any risk of access by simply emptying that wallet of any remaining cryptocurrency tokens and

---

[3] "Now, we think that's important, A, because there are other assets on this device; B, there certainly was a device at a point in time which the company understood was still in existence until this escrow deposit happened and now has questions if it is true that it has been destroyed or no longer exists, what happened to it, where is it, who else has control of it, are there other devices." February 25, 2022 Hearing Trans. ¶ 12, 15-21.



disbursing the same to its 'escrow' wallet, to which Mr. LeBeau has no access whatsoever. Kobre & Kim's appears unwilling to transfer the remaining tokens despite being paid $20,000 per month to serve as the escrow agent for holding SingularDTV's cryptocurrency assets. To date, SingularDTV has paid Kobre & Kim $80,000 simply to hold cryptocurrency tokens in a cold wallet.[4]

      **(b)    Mr. LeBeau's Production Demonstrates That the Device Was Destroyed in 2017**

Mr. LeBeau produced 210 pages of documents responsive to Plaintiff's requests. These documents were relevant to the question of whether the Cold Wallet device had been destroyed[ and whether there were any other cold wallets]. Since the production of documents was complete and responsive, there is no good cause for this Court to find Mr. LeBeau in default of the April 6 Order, and an award of attorneys' fees is certainly not warranted.

On April 20, 2022, Mr. LeBeau served Responses and Objections to Plaintiff's initial demand along with its production of responsive documents. On April 26, 2022, Plaintiff filed a letter documenting Mr. LeBeau's alleged violations of the Court's expedited discovery Order (Dkt No. 92). In response, on May 2, 2022, the Court Ordered Mr. LeBeau "produce all nonprivileged documents that are responsive to Plaintiff's request for expedited discovery as already required by the Court's prior order….."The Court also ordered that Mr. LeBeau appear for a deposition.

On May 5, 2022, in compliance with the Court's May 2, 2022 Order, Mr. LeBeau produced over 50 additional documents. On that same day, we filed a declaration by Mr. LeBeau's ("LeBeau Declaration") detailing the exhaustive search conducted by Mr. LeBeau, including the various e-mail accounts and search terms combed for documents responsive to Plaintiff's request. At his deposition, Mr. LeBeau further testified that he actually reviewed every single e-mail in his inbox from 2016 to the present. LeBeau Depo. Tr. at 127. That was not a hyperbolic response – on further questioning, Mr. LeBeau represented that he in fact searched all of his e-mails during the requested period. Mr. LeBeau took this extra step to ensure that no relevant documents were overlooked. Mr. LeBeau's thoroughness and responsiveness should be complimented rather than used to insult and ridicule him and to seek yet further discovery on a topic that has already been thoroughly trodden.

      **(c)    Mr. LeBeau Cannot Access the Cold Wallet**

First and foremost, expedited discovery in this matter was ordered to explore the "Cold Wallet device." Plaintiff's segue into seed phrases, archaic wallet access platforms and theoretical access to the wallet now under Kobre & Kim's control goes beyond the scope of

---

[4] Kobre & Kim will receive another $20,000 payment in June 2022.



discovery authorized by the Court. None of these topics were addressed by Plaintiff in its demand for expedited discovery, nor did the Court's order discuss any of these topics. From the efforts of Kobre & Kim, it is abundantly clear that Mr. LeBeau has no access whatsoever to the SingularDTV GmbH Cold Wallet, the Ethereum that was once stored in that Cold Wallet has been transferred to the escrow agent (Kobre & Kim), and any tokens that remain in the Cold Wallet are not only valueless but could be transferred expeditiously out of the Cold Wallet by Kobre & Kim with little effort, and certainly less cost than its expedited discovery. The only way to access the Cold Wallet (now empty of Ethereum) would be with the private key, which Mr. LeBeau no longer possesses. That was handed to Kobre & Kim on January 2022. There is nothing in the record to indicate that Mr. LeBeau has memorized the private key or that, if memorized, he would be able to access the Cold Wallet. In fact, Mr. LeBeau's testimony points to the opposite conclusion.

Mr. LeBeau testified that he memorized the "seed phrase" back in 2017 for the purpose of safeguarding SingularDTV's Ethereum during a time of intense and reoccurring hacking attempts against the company. Mr. LeBeau also testified that he cannot use the "seed phrase" to access the "Cold Wallet" due to the fact that the "seed phrase" is obsolete and no software interface exists in which the "seed phrase" can be used to access the Cold Wallet, as both the "Icebox" interface and the "Tokit.io" interface are now obsolete. No other software interfaces will recognize that "seed phrase" Therefore, the "seed phrase" is inoperative and obsolete. As Mr. LeBeau testified:

> The seed phrase is very specific to the derivation path. To my knowledge, the only two software systems that ever used that specific derivation path was Icebox and Tokit. LeBeau Depo. Tr. at 54.

Further, Mr. LeBeau is unsure if he correctly remembers the "seed phrase'' and there is no means by which to test his ability to recall the seed phrase since any software platform through which it would be useful are obsolete.

As per Mr. LeBeau's testimony, Icebox had operational issues that hindered the founders ability to conduct transactions from as early as 2016. These issues persisted and by 2019 the software was defunct and inoperative:

> Q: When did the Icebox software become no longer functional?
>
> A: It had functioning problems from the very beginning. In 2016 it wasn't functioning properly. In 2017 as well. By 2019, it was



> a completely obsolete piece of software that no longer had any developers developing on it and was completely nonfunctional in the entire cryptoverse.") LeBeau Depo. Tr. at 29, 30.

Mr. LeBeau further testified that Tokit began to fail and become inoperative in 2020 when employees of ConsenSys ceased their maintenance of Tokit.  In-house Company (LLC or GmbH) developers were then asked to maintain Tokit when it became inoperative for the sole purpose of the company being able to access the Cold Wallet's ETH:

> A.   Certain functions just wouldn't work. For example, the wallet interface stopped working.  It required developers to maintain it. This became an issue all throughout 2020 and in 2021 to a point where the only reason it was kept functioning was to send the Ether from the wallet address to the escrow agent. LeBeau Depo. Tr. at 59.

On June 15, 2022, at 11:04 a.m., I attempted to access the wallet function on Tokit by visiting the "Tokit.io" website. While I was able to access the website, I had no access to the "Wallet" function. When I clicked on the "wallet" button, no page came up. Instead, there was just a spinning wheel. I also clicked on the  "log-in", "create", and "gallery", buttons and again no pages came up. Instead, there was the same perpetual spinning wheel. When I clicked one of the buttons I was taken to a blank page.

For the above reasons, the Court should deny Plaintiff's instant application, in its entirety. Thank you in advance for your attention in this matter.


Respectfully submitted,


/nlp/
Neil L. Postrygacz, Esq.

*Attorneys for Defendant LeBeau*