# KOBRE & KIM

800 Third Avenue
New York, New York 10022
www.kobrekim.com
Tel +1 212 488 1200

June 23, 2022

Hon. Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

   RE: *SingularDTV GmbH v. LeBeau, et al.*, No. 1:21-cv-10130 (VEC)

Dear Judge Caproni:

  We represent Plaintiff SingularDTV GmbH ("SingularDTV" or the "Company") in the above-captioned action and write in reply to our letter application dated June 1, 2022 (Dkt. 104) (the "Application") and Defendant Zachary LeBeau's response letter dated June 16, 2022 (Dkt. 107) (the "Response"). The Application respectfully requests the Court order Mr. LeBeau to comply with the Court's January 25, 2022 Consent Order (Dkt. 66) (the "Consent Order") and the Expedited Discovery Orders (collectively, the "Orders").[1]

  As an initial matter, the Application seeks to compel only documents and information that the Court's prior Orders have *already* required Defendants to produce—it does not ask the Court to order new discovery or expand it to new issues. Regrettably, as a direct result of Mr. LeBeau's own misstatements and hide-the-ball tactics, the same fundamental issue has been present in the Consent Order, the Expedited Discovery Orders, and the Application: whether Mr. LeBeau can still access and exercise unilateral control over the Company's Cold Wallet.[2] Although he may have partially complied with the Consent Order by transferring the Company's ETH to the Escrow Agent and delivering pieces of paper purporting to contain a private key to the Cold Wallet address (and another for Company SNGLS tokens), Mr. LeBeau has not yet fully complied. The

---

[1] As defined in the Application, the Expedited Discovery Orders comprise the April, 6, 2022 Order granting expedited discovery (Dkt. 88) and the May 2, 2022 Order granting expedited document discovery and a deposition of Mr. LeBeau (Dkt. 96). The Application respectfully requests an Order requiring Mr. LeBeau to (1) produce all nonprivileged documents related to cold storage and Tokit.IO, as already ordered by the Court, with a concomitant affirmation about how the search was performed; (2) deliver, in writing, the Cold Wallet's seed phrase to the Escrow Agent; and (3) pay the Company's costs and fees in taking steps necessary to cause Defendants to comply with the Court's Orders. (Dkt. 104 at 8-9.) Unless otherwise noted, all capitalized terms have the meanings ascribed to them in the Application.

[2] To be clear, even if the physical device was destroyed, Mr. LeBeau can still access the Cold Wallet through use of a memorized seed phrase and appropriate software. As discussed further below, this is how he has been accessing the Cold Wallet to make asset transfers since 2018.

**Americas** (New York, Chicago, Delaware, Miami, San Francisco, São Paulo, Washington DC)
**APAC** (Hong Kong, Seoul, Shanghai), **Caribbean** (BVI, Cayman Islands), **EMEA** (Cyprus, Dubai, London, Tel Aviv)

Kobre & Kim refers to Kobre & Kim llp, a New York Limited Liability Partnership.

June 23, 2022
Page 2

Defendants' document production, and Mr. LeBeau's testimony in his deposition, remain incomplete, inconsistent, and incredible on the key issue of his access to the Cold Wallet, meaning Mr. LeBeau has not discharged his obligations under the applicable Orders.

In particular, important questions remain about:

1. Mr. LeBeau's memorization of (and thus his permanent access to) the seed phrase (i.e., the "failsafe master key"), which he still has not disclosed to the Company;
2. Mr. LeBeau's ability to use the seed phrase to continue accessing the Cold Wallet now and/or in the future; and
3. How exactly Mr. LeBeau searched his emails to comply with the Expedited Discovery Orders, given that he failed to produce *any* documents regarding Tokit.IO, the platform he used to unilaterally transfer ETH from the Cold Wallet for years and as recently as January 2022.

Tellingly, the Response avoids providing straight answers to these outstanding questions and instead claims that Mr. LeBeau's violations are mooted by extraneous factors. The Response bases its mootness argument on two theories, neither of which is justified.

First, the Response suggests that the software through which Mr. LeBeau accessed the Cold Wallet using the seed phrase is not functional or "obsolete" (Dkt. 107 at 4, 7), and thus the issue of ordering Mr. LeBeau to deliver the seed phrase is purportedly moot. But Mr. LeBeau accessed the Cold Wallet via the Tokit.IO software at least 113 times between 2018 and January 2022, including most recently on January 25, 2022.[3] The Response asserts that Mr. LeBeau no longer can access the Cold Wallet in this way—but consistent with the Expedited Discovery Orders, the Company is not required to simply take his word for it. The Company is entitled to test his assertions against the evidence, including documents and communications concerning Tokit.IO that Mr. LeBeau did not search for and utterly failed to produce. As discussed below, Mr. LeBeau's contradictory testimony regarding Tokit.IO and the scope of his search raises serious doubts about his mootness argument.

Second, the Response takes the bizarre position that Kobre & Kim should have transferred the over 130 crypto-assets remaining in the Cold Wallet[4] to a different wallet, but does not explain under what authority Kobre & Kim could do that. Mr. LeBeau points to no evidence that Kobre & Kim is obligated or has the right to make such transfers. Neither the Consent Order nor the parties' escrow agreement obligate or empower Kobre & Kim, as Escrow Agent, to perform such transactions. In part, this is because the Escrow Agent lacks the technical expertise to reconstitute and manage a wallet from a purported private key. This is why both the Consent Order and the associated escrow agreement contemplated Mr. LeBeau (i) sending the ETH directly to the Escrow Agent's Coinbase account and (ii) delivering the remaining crypto-assets on the Cold Wallet to the Escrow Agent by transferring physical possession of the device storing the Cold Wallet. (Dkt.

---

[3] *See* https://etherscan.io/address/0xc78310231aA53bD3D0FEA2F8c705C67730929D8f (public blockchain record of Cold Wallet transactions).

[4] There is also a practical impossibility for making such transfers, because consistent with the agreed upon escrow arrangements, Kobre & Kim holds the ETH transferred from the Cold Wallet in a Coinbase account, but nearly all of those over 130 crypto-assets are assets that Coinbase does not support.

66 at 2.) As discussed below, Mr. LeBeau failed to do that and has given highly inconsistent testimony in trying to explain his failure.

I. **The Response Fails to Reconcile Mr. LeBeau's Inconsistent Testimony About the Seed Phrase and Cannot Justify His Deficient Document Productions**

Mr. LeBeau's inconsistent, and thus unreliable, testimony is at the heart of the parties' continued discovery disputes. His sworn declaration dated December 7, 2021, said that *"[t]he original wallet which requires a key from Lubin and Cohen, remains in place, and I still have access to the fail-safe master key . . . ."* (Dkt. 37 at ¶ 43.) As summarized in the Application, SingularDTV relied on this statement when entering the Consent Order, which was designed to prevent Mr. LeBeau's access to the Cold Wallet going forward by requiring him to deliver the physical device holding it. (Dkt. 104 at 2, 4.) However, we now know that his declaration was false because there was no physical device in existence at the time of the Consent Order negotiations.[5] Moreover, in his May 11, 2022 deposition, Mr. LeBeau provided inconsistent testimony about his access to the Cold Wallet over time, eventually revealing that he had memorized the seed phrase and used it to access the Cold Wallet for years through the Tokit.IO software, a fact that he disclosed for the first time during his deposition. (LeBeau Depo. Tr. at 44:19-45:11 (Dkt. 104-1).) To date, Mr. LeBeau still has not delivered that seed phrase to the Escrow Agent (in violation of the Consent Order requiring turnover of "*authorizations including log-in information and passwords*") and has not produced any documents about Tokit.IO (in violation of the Expedited Discovery Orders). The Response on these issues only raises more doubts about the veracity and reliability of Mr. LeBeau's prior testimony.

*a. Mr. LeBeau's Sworn Testimony Directly Conflicts With The Response's Assertion That He Is Unsure If He Remembers the Seed Phrase*

Surprisingly, Mr. LeBeau asserts in his Response that he is "unsure" whether he still remembers the seed phrase. (Dkt. 107 at 7.) That assertion is directly contrary to his recent deposition testimony, in which Mr. LeBeau stated clearly that he still remembered the seed phrase:

> Q: The seed phrase that was generated and written down when the Icebox storage was created, do you still have access to that?
> A: No.
> Q: What happened to that?
> A: It was destroyed, **although I have memorized it, so I haven't forgotten it.**

(LeBeau Depo Tr. at 24:21 – 25:3 (emphasis added).)

He later unequivocally confirmed he remembered the seed phrase on the day of his deposition:

> Q: Do you still remember the 12-word seed phrase sitting here today?
> A: ***I do.***

---

[5] The implication baked into the Consent Order that a physical device storing the Cold Wallet still existed was no "mutual mistake" as suggested by the Response (Dkt. 107 at 2), but rather was based on, among other things, Mr. LeBeau's sworn declaration, as described above and at pages 2 and 4 of the Application.

(LeBeau Depo. Tr. at 29:13 – 29:15 (emphasis added).)

Mr. LeBeau explained in his deposition that he memorized the seed phrase "at the end of 2017" because "the wallet address access could be in danger and that the safest way to keep that safe was to memorize the seed phrase." (LeBeau Depo Tr. at 26:7-12; 31:5 – 33:15.) He added that he memorized it four words at a time by taking multiple trips to the bank, where the written version of the seed phrase was stored in a safe deposit box. (LeBeau Depo. Tr. at 11:24 – 13:15; 15:2 – 15:19; 27:3 – 28:21.)

Notably, 2017 was also when Mr. LeBeau says the physical device holding the Cold Wallet was destroyed. (LeBeau Depo Tr. at 37:16 – 38:17.) As noted above, public blockchain records show that there have been at least 113 transfers out of the Cold Wallet since 2018, with at least 25 transfers since 2020 (Dkt. 104-3),when LeBeau says the written seed phrase was destroyed (LeBeau Depo. Tr. at. 24:21 – 25:7). Mr. LeBeau further confirmed during his deposition that it was possible to use the memorized seed phrase to access the Cold Wallet in December 2021 (LeBeau Depo Tr. at 57:22 – 58:15) and that he actually used it to transfer the ETH to the Escrow Agent in January 2022:

> A: I went to Tokit.IO, input the seed and sent the Ether [ETH] to the wallet address that I was given.
> Q: What seed did you use?
> A: The 12-word seed.
> Q: The one that you memorized?
> A: Yes.

(LeBeau Depo Tr. at 86:5 – 86:11.)

Given this sworn testimony about remembering the seed phrase in two separate answers during his deposition and using the memorized seed phrase to access the Cold Wallet, making at least dozens of transfers, including as recently as 5 months ago, it was extraordinary, to say the least, to read in the Response that Mr. LeBeau purportedly now "*is unsure if he correctly remembers the 'seed phrase' and there is no means by which to test his ability to recall the seed phrase since any software platform through which it would be useful are obsolete.*" (Dkt. 107 at 7.) This statement in the Response is utterly inconsistent with Mr. LeBeau's sworn testimony and practice over the past few years and appears to be a transparent tactic to evade his obligations under the Consent Order and the Expedited Discovery Orders, thus continuing his pattern of withholding Company assets and information from the Company.

### b. Mr. LeBeau's Failure to Produce Documents Violates Court Orders

Mr. LeBeau's apparent willingness to "forget" inconvenient evidence is precisely why the Defendants must produce all nonprivileged documents relating to cold storage and Tokit.IO— Plaintiff needs them to test Mr. LeBeau's ever-changing testimony and assertions about his continued access to the Cold Wallet. If Mr. LeBeau truly cannot access the Cold Wallet anymore, then the Defendants should have no issue producing the requested documents required under the

Expedited Discovery Orders,[6] as well as the seed phrase itself. Among other things, these disclosures are necessary for the Plaintiff to test how Mr. LeBeau accessed the Cold Wallet through such software, if it can still be accessed in that way, and whether—even if currently not in operation—it can be revived, such as through SingularDTV LLC, the US entity that Mr. LeBeau continues to control. The Response states that SingularDTV GmbH or Singular DTV LLC developers were asked to maintain Tokit.IO for the January 2022 transfer of ETH to the escrow account, but there is no explanation of why Tokit.IO cannot be similarly revived or maintained for future transactions. (Dkt. 107 at 8.) In fact, Mr. LeBeau testified that "[i]t would require input from the developers to be accurate and precise" as to whether the Tokit.IO software can be revived to function again. (LeBeau Depo. Tr. at 67:7-15).

The Response asks the Court to simply rely on Mr. LeBeau's most recent explanations about his document searches and the fate of Tokit.IO, but does not resolve the inconsistencies between those explanations and his own prior testimony.

Mr. LeBeau's explanations are inconsistent with his testimony about how he conducted his document search generally. Mr. LeBeau's declaration dated May 5, 2022 states that he used the disclosed search terms to conduct the Court-ordered search. (Dkt. 98 at 1.) That declaration does not say anything about reviewing every e-mail in his inbox as an "extra step" of the search process. To the contrary, Mr. LeBeau testified that he used search terms because "*I'm not aware of how else I would conduct a search*." (LeBeau Depo. Tr. at 103:8-9.) Only after he was pressed further about his deficient searches did Mr. LeBeau claim for the first time that he reviewed every single e-mail in his inbox from 2016 to present. The Response asks the Court to interpret this irreconcilable testimony as meaning that Mr. LeBeau conducted his search using search terms *and* reviewed every e-mail since 2016 as an "extra step" (Dkt. 107 at 6.) This is not credible given Mr. LeBeau's initial unqualified statement in both his declaration and his deposition testimony that he used search terms, with no reference to reviewing every e-mail. If Mr. LeBeau really had undertaken such a time-consuming step, it would seem to have been a natural point to include, if not emphasize, when discussing his document collection and review process. Nor would such an "extra step" make sense in this context, because if one were going to review every e-mail, then one would have no reason to waste time applying search terms in the first instance only to review every e-mail later.

Mr. LeBeau's explanations are inconsistent with his testimony about Tokit.IO. Similarly, the Response asks the Court and us to take Mr. LeBeau's word that Tokit.IO is inoperative, but as summarized in the Application, Mr. LeBeau provided inconsistent testimony about the date of its purported inoperability. He first said *2020*, but when confronted with the fact that he used Tokit.IO to transfer ETH from the Cold Wallet to the Escrow Agent in *2022*, he altered his answer to say that Tokit.IO was kept functional during that period for the sole purpose of conducting that transfer (Dkt. 104 at 6; LeBeau Depo. Tr. at 67:2-10.) The Application raises significant doubt about the

---

[6] Documents regarding "Tokit" and "Tokit.IO" are directly responsive to the Company's Request No. 8, which seeks "[a]ll documents concerning methods through which funds on the Cold Wallet have been transferred at any point in time, including, without limitation, Your transfer of ETH to an escrow agent on January 25, 2022 . . . ." (Dkt. 75-1; Dkt. 104 at 7). The Response misleadingly excludes this request from its summary of document requests (Dkt. 107 at 3), focusing instead on the issue of the fate of the physical Cold Wallet device. The Court ordered production of nonprivileged documents in response to Request No. 8, and the Response fails to offer any justification for Mr. LeBeau's failure to comply.

June 23, 2022
Page 6

reliability of this assertion (Dkt. 104 at 6), and the Response does not, presumably because it cannot, address those doubts. Moreover, the Response's penultimate paragraph featuring counsel's unsworn assertion that he himself (*i.e.,* counsel) was recently unable to access the "Wallet" function on Tokit.IO provides no comfort to the Plaintiff that the software is currently inoperable and, even if so, that it cannot be revived in the future at some level of functionality, similar to its apparent recent state in January 2022, when Mr. LeBeau transferred ETH to the Escrow Agent with purported assistance from SingularDTV LLC's maintenance of Tokit.IO (Dkt. 107 at 8). As Defendants have not justified why they have failed to produce any documents about Tokit.IO (and "cold storage") in violation of the Expedited Discovery Orders, the fate of Tokit.IO's availability remains a necessary issue to resolve as part of understanding Mr. LeBeau's continued access to the Cold Wallet.

## II. Mr. LeBeau Must Compensate the Company for Relevant Fees

Irrespective of whether the Court decides to grant the Application's requests for the seed phrase and documents related to cold storage and Tokit.IO—which for the reasons above we respectfully submit it should—Mr. LeBeau's actions summarized in the Application and this letter show how he violated every iteration of this Court's Orders by responding with non-compliance (or partial compliance) and inconsistent answers. This underscores why the Company needed to submit multiple letters, including the Application and this reply letter, and take Mr. LeBeau's deposition, to secure piecemeal compliance with the Court's Orders. Mr. LeBeau has been given multiple opportunities to comply with unequivocal Orders and has fallen short each time, directly resulting in significant expense to the Company. We therefore respectfully reiterate our request that Defendants pay the Company's costs and fees as set out in the Application.

\* \* \*

We appreciate the Court's attention to this matter and are available to discuss these issues further at the Court's convenience.

Respectfully submitted,

*/s/ Calvin K. Koo*
Calvin K. Koo
Josef M. Klazen
Benjamin J. A. Sauter
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022

*Attorneys for SingularDTV GmbH*