USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/11/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
SINGULARDTV GmbH,                                              :
                                                               :
                        Plaintiff,                              :
            -against-                                     :
                                                               :    21-CV-10130 (VEC)
ZACHARY LEBEAU and KIMBERLY                                    :
JACKSON,                                                       :    OPINION AND ORDER
                                                               :
                        Defendants.                            :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Plaintiff SingularDTV GmbH ("SingularDTV"), a cryptocurrency software and television programming developer, brings this lawsuit against Defendants Zachary LeBeau ("LeBeau") and Kimberly Jackson ("Jackson") for trademark infringement and dilution under the Lanham Act, violation of the Computer Fraud and Abuse Act ("CFAA"), and violation of the Defend Trade Secrets Act ("DTSA"). *See generally* Amend. Compl., Dkt. 78. Defendants have moved to dismiss the Complaint in its entirety. *See* Not. of Mot., Dkt. 91-1. For the reasons that follow, their motion is GRANTED in full on the grounds of *forum non conveniens*.

## BACKGROUND

       SingularDTV is a Swiss company that develops, markets, distributes, and licenses cryptocurrency software and film and television content. Amend. Compl. ¶¶ 12–13.[1] Plaintiff has a pending application for registration of the word mark "SingularDTV" (the "Mark") with

---

[1] The Court treats the facts alleged in the Amended Complaint as true for purposes of this motion.

1

the United States Patent and Trademark Office and has registered the Mark internationally. *Id.* ¶¶ 1, 17–18.

LeBeau is one of SingularDTV's co-founders and previously was its CEO. *Id.* ¶¶ 10, 12. Jackson previously served as SingularDTV's COO and is LeBeau's wife. *Id.* Shortly after SingularDTV was created, LeBeau and Jackson formed a New York limited liability company, Breaker LLC ("Breaker"), to provide exclusive support for certain SingularDTV projects as set forth in a Service and Development Agreement (the "Agreement").[2] *Id.* ¶¶ 15–16. Jackson is Breaker's sole member and director, and LeBeau is Breaker's de facto CEO. *Id.* ¶ 15. LeBeau and Jackson "exercise total control over Breaker." *Id.*

Plaintiff and Breaker entered into the Agreement in January 2017. *Id.* ¶ 16. Pursuant to the Agreement, Breaker was required to perform certain services for SingularDTV and was prohibited from performing work for itself or others. *Id.* The Agreement contains a non-compete clause and assigns "any and all intellectual property rights developed by Breaker to SingularDTV." *Id.* SingularDTV allowed Breaker to use the Mark "in connection with the marketing of goods and services produced by Breaker pursuant to the Agreement." *Id.* ¶ 28.

The Agreement has both a forum-selection clause and a choice-of-law provision. Pursuant to paragraphs 57 and 58, the Agreement is "governed by and construed in accordance with the Swiss laws"; and "[t]he ordinary courts of the city of Zug, Switzerland, have exclusive jurisdiction for any disputes arising out of or in connection to" the Agreement. Agr., Dkt. 18-5, at 10, ¶¶ 57–58.

SingularDTV has been using the Mark to identify and distinguish its goods and services in global commerce since at least 2017, including as part of its efforts to develop and market a

---

[2] Breaker's formal corporate name is SingularDTV LLC. Amend. Compl., Dkt. 78, ¶ 15 n.2.

blockchain-based smart-contract system known as "Tokit," a block-chain-based content distribution platform known as "EtherVision," and a royalty-management platform known as the "B2B SaaS Platform." Amend. Compl. ¶¶ 20–26.

On May 27, 2021, LeBeau was terminated as SingularDTV's CEO amid disputes over his handling of business assets. *Id.* ¶ 31. The next day, SingularDTV terminated the Agreement and instructed Jackson to stop performing services, to stop incurring fees, and to return SingularDTV's intellectual property. *Id.* ¶ 33. After failing to comply, Jackson was terminated as COO on June 8, 2021. *Id.* ¶ 34. LeBeau was removed from SingularDTV's board after making an exit proposal that Plaintiff deemed to be "extortionate." *Id.* ¶¶ 36–37.[3]

Two weeks later, Defendants disabled SingularDTV's e-mail services,[4] preventing Plaintiff's access to financial accounts, legal communications, trade secrets, and other sensitive information. *Id.* ¶¶ 38–44. Breaker employees monitored and accessed certain SingularDTV emails, *id.* ¶¶ 45–46, and, without authorization, Defendants forwarded the contents of certain SingularDTV email accounts to Jackson, *id.* ¶ 47. SingularDTV recovered control over its e-mail services after Defendants misappropriated sensitive business information and permanently deleted certain accounts. *Id.* ¶¶ 49–50.

Plaintiff contends that Defendants continued to use the Mark in connection with Breaker projects even though, following the Agreement's termination, they are not authorized to do so. *Id.* ¶ 52. Jackson maintains control over SingularDTV's internet domain and is using the domain to promote what Plaintiff characterizes as competing services. *Id.* ¶¶ 53–54.

---

[3] These corporate disputes have spawned litigation on both sides of the Atlantic. Lawsuits currently pending include *LeBeau v. Lubin et al.*, No. 655673/2021 (Sup. Ct. N.Y. Cnty. filed Feb. 11, 2022), and *SingularDTV GmbH v. Doe*, 21-CV-6000 (S.D.N.Y. filed July 13, 2021). The parties have also engaged in arbitration in Switzerland. *See* Dkt. 103-1.

[4] Breaker brokered SingularDTV's Microsoft e-mail services through DAG Tech. Amend. Compl. ¶ 40.

On November 29, 2021, SingularDTV filed this lawsuit against Defendants, alleging replevin, trespass to chattels, constructive trust, restitution, conversion, violation of the CFAA, and violation of the DTSA. *See generally* Compl., Dkt 1. Following this Court's issuance of a temporary restraining order, Dkts. 21, 25, and the parties' agreement to a consent order whereby Defendants agreed to relinquish certain assets and e-mail accounts, Dkt. 66, on March 4, 2022, SingularDTV filed an Amended Complaint, alleging trademark infringement and dilution under the Lanham Act, violation of the CFAA, and violation of the DTSA, *see generally* Amend. Compl. Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). *See* Not. of Mot. at 1. Because the Court finds that the Agreement's forum-selection clause applies, it does not consider Defendants' alternative motions under Rules 12(b)(1) and 12(b)(6).

## DISCUSSION

### I.  Legal Standard

Defendants moved to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) based on the Agreement's forum-selection clause. Defs. Mem. in Supp. of Mot., Dkt. 91, at 5, 12–15. Following other courts in this Circuit, the Court will treat their motion as a motion to dismiss for *forum non conveniens*.[5]

When a forum-selection clause points to a foreign forum, the appropriate way to enforce the clause is through the doctrine of *forum non conveniens*. *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 60

---

[5]  *See, e.g.*, *Ujvari v. 1stdibs.com, Inc.*, No. 16 Civ. 2216 (PGG), 2017 WL 4082309, at *6 (S.D.N.Y. Sept. 13, 2017) (construing defendants' motion to dismiss brought under Rule 12(b)(3) pursuant to the parties' forum-selection clause as proceeding under the doctrine of *forum non conveniens*); *Amto, LLC v. Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556, 563 n.8 (S.D.N.Y. 2016) (same); *Donnay USA Ltd. v. Donnay Int'l S.A.*, 15–CV–5969, 2016 WL 9640001, at *4 (E.D.N.Y. Sept. 1, 2016) (same).

(2013)). In deciding Defendants' motion to dismiss based on the forum-selection clause, the Court may rely on the pleadings and affidavits submitted in support of the motion but must resolve all factual questions in favor of the Plaintiff. *Id.* at 216–17.

"Determining whether to dismiss a claim based on a forum selection clause involves a four-part analysis." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). The first three factors to consider are: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is "mandatory or permissive;" and (3) whether the claims and parties are subject to the forum-selection clause. *Id.* "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Id.* The fourth step of the analysis looks at whether the party resisting enforcement has rebutted the presumption of enforceability. To do so, it must make "a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 383–84 (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)).

Although the Agreement provides that it is to be construed in accordance with Swiss law, Agr. at 10, ¶ 57, the parties have not briefed Swiss law; they have, therefore, impliedly consented to the application of general American contract law principles and federal precedent for purposes of interpreting the clause under steps two and three. *See Phillips*, 494 F.3d at 386 (assuming from the parties' briefing that they "do not rely on any distinctive features of English law and apply general contract law principles and federal precedent to discern the meaning and scope of [a] forum clause" in a contract specifying the application of English law) (citations omitted); *Arial Techs., LLC v. Aerophile S.A.*, No. 14 Civ. 4435 (LAP), 2015 WL 1501115, at *3 (S.D.N.Y. Mar. 31, 2015) ("[A] court need not apply foreign law to interpret a forum selection

clause unless the parties do so . . . .") (citation omitted).  The enforceability of the forum-selection clause at step four is determined by federal law, and the resisting party faces the "'heavy burden' of showing that 'it would be unfair, unjust, or unreasonable to hold that party to his bargain.'"  *Martinez*, 740 F.3d at 217–19 (quoting *M/S Bremen*, 407 U.S. at 18–19).

Plaintiff does not dispute that the Agreement's forum-selection clause was reasonably communicated and that it is mandatory.  At issue is whether Plaintiff's claims are "disputes arising out of or in connection to" the Agreement.  Pl. Mem. in Opp., Dkt. 99, at 11–16 (citing Agr. at 10, ¶ 58).  Plaintiff also asserts that Switzerland is an inadequate alternative forum for adjudication of its claims because Defendants have not acknowledged that they are subject to the jurisdiction of the Swiss courts nor shown that the Swiss courts could adjudicate these claims. *Id.* at 10–11.

## II. Non-Signatory Defendants May Invoke the Forum-Selection Clause and Have Consented to Jurisdiction in Switzerland

Although the parties did not address this issue in their briefing, the Court considers as a threshold matter whether Defendants may invoke the Agreement's forum-selection clause even though neither Defendant is a party to the Agreement between Plaintiff and Breaker.

A non-signatory to a contract "may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory" such that "the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause."  *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) (citation omitted).  Courts in this Circuit have allowed non-parties to enforce forum-selection clauses where the signatory's claims are, *inter alia*, "substantially identical" to any claims against the signatory defendant, *Universal Grading Serv. v. eBay, Inc.*, No. 08–CV–3557 (CPS), 2009 WL 2029796, at *17 (E.D.N.Y. June 10,

2009), the non-signatory's interests are "completely derivative of and directly related to, if not predicated upon[,] the signatory party's interests or conduct," *BMW of N. Am. LLC v. M/V Courage,* 254 F. Supp. 3d 591, 598 (S.D.N.Y. 2017) (internal quotation marks and citation omitted), and the non-signatory party "consent[s] to personal jurisdiction" in the forum specified in the clause, *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99 Civ. 10550(SHS), 2000 WL 1277597, at *5 (S.D.N.Y. Sept. 7, 2000); *see also Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012) (summary order) ("[A] forum selection clause in a contract encompasses claims made against a non-signatory where (1) those claims are "nearly identical to" the claims against the signatory, (2) "arise out of" the same transaction as those claims, and (3) the non-signatory consents to the foreign jurisdiction.") (citations omitted).

  The Court finds that both Defendants are sufficiently related to Breaker and its business activities with Plaintiff for the clause's invocation to be foreseeable, thus satisfying the Second Circuit's nexus test. *See Magi XXI, Inc.*, 714 F.3d at 723. Jackson is Breaker's sole member and director, LeBeau is Breaker's de facto CEO, and the Defendants "exercise total control over Breaker." Am. Compl. ¶¶ 15–16. *See Fasano v. Li*, 47 F.4th 91, 103 (2d Cir. 2022) (concluding that non-signatory defendant entities could invoke a forum-selection clause because, *inter alia*, they were "wholly owned and 60% owned" by the signatory defendant entity's "largest stockholder"); *Melwani v. Amazon.com, Inc.*, No. 20-cv-09739 (AJN), 2021 WL 4429604, at *4 (S.D.N.Y. Sept. 27, 2021) (concluding that a non-signatory plaintiff would be bound by a forum-selection clause because, *inter alia*, the "[p]laintiff [was] the Chief Executive Officer of [a signatory entity]" and "played an active role in the transactions at issue" between the signatories).

7

Moreover, Defendants are accused of jeopardizing Plaintiff's confidential information through Breaker's access to its e-mail services and of improperly using Plaintiff's Mark in connection with Breaker's business. Am. Compl. ¶¶ 47–52. Defendants' interests and alleged conduct are, therefore, intertwined with Breaker's. *See Firefly Equities, LLC v. Ultimate Combustion Co.*, 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010) (concluding that an individual defendant was sufficiently related to a signatory entity for a forum-selection clause to apply because he signed the agreement in his representative capacity, was the entity's president, held approximately 17% of its outstanding shares, and was involved in the transactions enabled by the agreement and disputed in the litigation).

Finally, Defendants have informed the Court that they consent to jurisdiction in Switzerland. *See* Jackson Decl., Dkt. 132; LeBeau Decl., Dkt. 133. They are therefore entitled to invoke the forum-selection clause.

### III. Plaintiff's Claims Arise out of or in Connection to the Agreement

The Second Circuit focuses on the precise language of a forum-selection clause when determining its applicability to a plaintiff's claims. *See Phillips*, 494 F.3d at 390 (highlighting the "language-specific nature of this inquiry"). Courts generally distinguish between narrower forum-selection clauses encompassing claims that "arise out of" a contract and broader forum-selection clauses encompassing claims that may "arise in connection with" the contract. *See id.* at 389 ("We do not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract.") (citations omitted); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (noting that the phrase "any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad

clause") (internal quotations and citation omitted); *Prod. Res. Grp., LLC v. Martin Prof'l, A/S*, 907 F. Supp. 2d 401, 412 (S.D.N.Y. 2012) (discussing the "broader category" of forum-selection phrases).

The forum-selection clause in the Agreement reads: "The ordinary courts of the city of Zug, Switzerland, have exclusive jurisdiction for any disputes arising out of or in connection to this Agreement." Agr. at 10, ¶ 58. Because the clause applies to both disputes "arising out of" the Agreement and those arising "in connection to" the Agreement, it is of the broader variety, as both parties acknowledge. *See* Defs. Reply, Dkt. 103, at 4 n.4; Pl. Mem. in Opp. at 14. The clause's breadth is, therefore, "not necessarily tied to the concept of a causal connection" with the Agreement; instead, it applies to claims "connected by reason of an established or discoverable relation" to the contract. *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) (quoting Webster's Third New Int'l Dictionary 1916 (1986)) (noting that the phrase "related to" is typically equated with "in connection with"); *see also Roby,* 996 F.2d 1353, 1361 (2d Cir. 1993) (concluding that broader forum-selection clauses applicable to claims "in connection with" contractual relationships were "not restricted to pure breaches of the contracts containing the clauses"); *Redhawk Holdings Corp. v. Craig Invs., LLC*, No. 15 Civ. 9127 (CM), 2016 WL 3636247, at *6 (S.D.N.Y. 2016) ("[A] broad forum selection clause encompasses tort claims that grow out of and depend on the existence of a contractual relationship between the parties.") (citations omitted).

Together with the language from the forum-selection clause, courts must also "examine the substance of [a plaintiff's] claims, shorn of their labels." *Phillips*, 494 F.3d at 388 (citing *Roby*, 996 F.2d at 1361). Statutory claims are not automatically excluded from a contract's forum-selection clause. *See id.* at 389 ("Because we cannot presume that the parties intended to

9

exclude all statutory claims, or even all copyright claims, from the forum selection clause, we examine the substance of [plaintiffs'] claims as they relate to the precise language of the clause.") (citing *New Moon Shipping Co., Ltd. v. MAN B&W Diesel AG*, 121 F.3d 24, 33 (2d Cir. 1997); *John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1075 (3d Cir. 2007)). To that end, a forum-selection clause may encompass claims that emerge from the contractual relationship, including tort claims. *See Direct Mail Prod. Servs. Ltd.*, 2000 WL 1277597, at *6 (noting that "the circuit courts have held that a contractually-based forum selection clause will also encompass tort claims") (internal citations omitted); *Anselmo v. Univision Station Grp.*, No. 92 Civ. 1471(RLC), 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993) ("A forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship.") (quoting *Bense v. Interstate Battery Sys., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982)) (citations omitted).

### A. Trademark Infringement and Dilution Under the Lanham Act

Plaintiff's causes of action for trademark infringement and dilution under the Lanham Act comfortably fall within the forum-selection clause's scope. Defendants argue that Plaintiff's trademark claims are encompassed by the forum-selection clause because they "arise out of Breaker's services (or the wrongful termination of the services) performed for Plaintiff under the Agreement." Defs. Mem. in Supp. of Mot. at 13–14. Plaintiff counters that even though "Breaker's use of the Mark has been infringing since the termination of the Agreement," trademark claims are not encompassed by the clause because they do not involve enforcement of any obligations under the Agreement. (The Agreement does not grant Breaker or Defendants permission to use the Mark.) Pl. Mem. in Opp. at 12.

10

Although Defendants' brief on this point just lists references to the Agreement in the Amended Complaint rather than explaining the connection between the Agreement and Plaintiff's trademark claims, the Court agrees that Plaintiff's trademark claims "arise out of or are in connection to" the Agreement. Plaintiff's argument, while more cogent than Defendants', relies on inapplicable case law. *See* Pl. Mem. in Opp. at 12–15 (discussing *Phillips* at length and citing *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637 (S.D.N.Y. 2008)). *Phillips* addressed a narrower forum-selection clause that encompassed claims "arising out of" the agreement, not those "that may only 'relate to,' be 'associated with,' or 'arise in connection with'" the agreement. *See Phillips*, 494 F.3d at 389–90. In *Phillips*, the Second Circuit expressly "discount[ed] the precedential weight of cases that deal with dissimilarly worded clauses." *Id.* at 390 (citing *Wyeth*, 119 F.3d at 1075); *see also BVM S.p.A. in Liquidazione v. BVM USA Moda, Inc.*, 20 Civ. 6931 (JPC), 2021 WL 3077441, at *4 (S.D.N.Y. July 20, 2021) (noting that *Phillips* "does not control" when there is a "broad forum selection clause[]"). Because *Arma* also involved a forum-selection clause that applied to claims or controversies "arising under" the contract, Plaintiff's reliance on that case is also misplaced.[6] *See* 591 F. Supp. 2d at 645.

Courts interpreting broad forum-selection clauses, by contrast, have held that they encompass disputes that are more loosely connected to the contractual relationship. *See Rosehoff Ltd. v. Cataclean Ams. LLC*, No. 12–CV–1143A, 2013 WL 2389725, at *8 (W.D.N.Y. May 30, 2013) (concluding that a forum-selection clause covering the "broader category of terms including phrases like 'in connection with'" encompassed patent and trademark claims because

---

[6] Plaintiff attempts to discount the crucial distinction between broader and narrower forum-selection clauses by contending that Defendants, unlike those in *Phillips*, do not invoke the Agreement to assert colorable defenses. Pl. Mem. in Opp., Dkt. 99, at 14. But that does not change the fact that the forum-selection clause in the Agreement applies more broadly to disputes "in connection to" the Agreement. Defendants' use of the Agreement to assert defenses is therefore not a necessary condition to the clause's application.

11

plaintiffs "allowed defendants to use the [p]atent and [t]rademark . . . *dispute*[d] whether defendants [could] keep using the [p]atent and [t]rademark, and . . . the dispute had something to do with—that is, ha[d] a connection with—the current state of the parties' rights" under the contract, even if it was terminated) (emphasis in original); *Mercury W. A.H., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03 Civ. 5262 (JFK), 2004 WL 421793, at *7 (S.D.N.Y. Mar. 5, 2004) (concluding that a broader forum-selection clause covering claims arising "directly or indirectly" from the agreement encompassed a trademark conversion claim because the tort "relate[d] directly to the subject of the [agreement]" and plaintiff "tie[d] its claim regarding the conversion of [its] trademark to the termination of the [agreement]"); *Direct Mail Prod. Servs. Ltd.*, 2000 WL 1277597, at *6 (concluding that a forum-selection clause that "f[ell] somewhere between" the two extremes identified by the Second Circuit applied to federal and English copyright infringement claims because their analysis would "inevitably require reference to rights and duties defined in the [a]greement, since the [a]greement was essentially a license that governed [defendant's] use of [plaintiff's] databases") (citations omitted).

Courts have also noted that forum-selection clauses are more likely to encompass trademark claims where "the plaintiff's entire business relation with defendant stemmed from the [contract], and the alleged conduct was made possible only or principally because of the [contract]." *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 949 (S.D.N.Y. 1994); *see also Young Women's Christian Ass'n of U.S., Nat. Bd. v. HMC Ent., Inc.*, No. 91 Civ. 7943 (KMW), 1992 WL 279361, at *4 (S.D.N.Y. Sept. 25, 1992) (concluding that the forum-selection clause in an expired contract applied to plaintiff's trademark claim because, *inter alia*, "[p]laintiff's entire business relation with defendant with respect to the [dispute] stemmed from the contract between the two parties").

In this case, the parties' business relationship was anchored in the Agreement. *See, e.g.*, Amend. Compl. ¶¶ 16, 32 (alleging that "Breaker's work in support of the SingularDTV business was conducted under [the Agreement]" and that when SingularDTV's board voted to terminate its relationship with Breaker, Breaker was ordered to cease "the services [it] was to provide under the Agreement"). SingularDTV acknowledges that it authorized Breaker to use the Mark so it could perform its contractual obligations, *id.* ¶ 28, and the Agreement specifies that any intellectual property born from Breaker's services belongs to SingularDTV, *id.* ¶¶ 16, 54; *see also* Agr. at 5, ¶ 30. In addition, Defendants' continued use of the Mark for Breaker projects has been infringing since the Agreement was terminated. Am. Compl. ¶¶ 52, 54; *see also* Pl. Mem. in Opp. at 12; Agr. at 5, ¶ 30.[7]

In sum, the "gist" of Plaintiff's claims is that Defendants improperly continued to use its intellectual property to further Breaker's interests after Breaker's permission to do so under the Agreement lapsed; that is a sufficient connection for the Agreement's broad forum-selection clause to apply. *Bense*, 683 F.2d at 720 (concluding that a broad forum-selection clause encompassed plaintiff's antitrust action).

---

[7] Defendants assert in their reply brief that Plaintiff brought a breach of contract claim before a Swiss arbitration body pursuant to the Agreement based on the same operative facts. *See* Defs. Reply, Dkt. 103, at 4–5. While the existence of this Swiss action would further support the conclusion that Plaintiff's claims arise "in connection to" the Agreement, *see Terra Intern., Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) (concluding that a forum-selection clause applied to tort claims where the plaintiff "could have asserted a parallel claim for breach of contract in the same complaint"); *Lambert v. Kysar*, 983 F.2d 1110, 1121–22 (1st Cir. 1993) ("[C]ontract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.") (citation omitted); *Direct Mail Prod. Servs. Ltd.*, 2000 WL 1277597, at *7 (concluding that enforcing an English forum-selection clause "would be neither unjust nor unreasonable" in part because the plaintiff was "an English corporation that . . . already brought suit" in England), Defendants failed to submit an affidavit to authenticate the Swiss complaint they attached as an exhibit, *see* Defs. Reply, Ex. 1. Moreover, Defendants only raised this point in their reply brief; generally, "a court should not 'consider arguments that are raised for the first time in a reply brief.'" *Mateo v. Bristow*, No. 12 Civ. 5052 (RJS), 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n. 5 (2d Cir. 2006) (citation omitted)). The Court, therefore, reaches its conclusion without considering Plaintiff's purported parallel action that is pending in Switzerland.

### B. Violations of the CFAA and DTFA

Plaintiff's claims under the CFAA and DTFA are also encompassed by the forum-selection clause for similar reasons. Defendants argue that Plaintiff's claim that Breaker has improperly used SingularDTV's e-mail accounts stems from Breaker's relationship with a third-party e-mail provider, DAG Tech, which Breaker established to provide services under the Agreement. Defs. Mem. in Supp. of Mot. at 23. Plaintiff maintains that even though Breaker brokered this relationship, statutory claims based on unwarranted intrusions into its e-mail accounts do not "originate from" or "rely on" the Agreement. Pl. Mem. in Opp. at 15 (quoting *Phillips*, 494 F.3d at 390). Plaintiff further argues that the Agreement does not grant Defendants the "right to expropriate the [c]ompany's e-mail accounts and trade secrets." *Id.* at 16.

Once again, Plaintiff's arguments fail because they are premised on *Phillips*, which does not control here. Courts have consistently held that claims regarding a defendant's mistreatment of information or data acquired through the parties' contractual relationship are covered by broad forum-selection clauses. *See IAC/InterACtiveCorp. v. Roston*, 44 F.4th 635, 642 (7th Cir. 2022) (concluding that "arising out of or related to this Agreement" in a forum-selection clause encompassed alleged violations of the CFAA and DTSA because the claims were based on the defendant's "allegedly wrongful retention" of data and the agreement "explicitly discusse[d] defendant's obligations about confidential information"); *New London Assocs., LLC v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 405–06 (S.D.N.Y. 2019) (concluding that a forum-selection clause covering claims that "arise out of or relate to" the contract encompassed defendant's alleged "collusion with [a third party] to steal information and data from [plaintiff's] server" because the phrase "is a broad clause" and encompasses unforeseeable events).

As Plaintiff acknowledges, Defendants "were able to commandeer [SingularDTV's] e-mail accounts and their contents because of Breaker's relationship with DAG Tech." Pl. Mem. in Opp. at 15. That relationship, in turn, was created because of Breaker's obligations under the Agreement. Moreover, the Agreement required Breaker "to hold [SingularDTV's] Confidential Information[8] strictly confidential" for a specified period, prohibited Breaker from "mak[ing] [SingularDTV's] Confidential Information available in any form to any third party or [from] us[ing] [SingularDTV's] Confidential Information for any purpose other than the implementation of this Agreement," and required Breaker to "take any and all reasonable steps to ensure that Confidential Information is not disclosed or distributed by its employees or agents in violation of the terms of th[e] Agreement." Agr. at 9, ¶ 51. Plaintiff's allegations that Defendants impaired access to its e-mail systems and misappropriated trade secrets contained therein are therefore sufficiently connected to the Agreement for the forum-selection clause to apply.

### IV.     Plaintiff Has Not Rebutted the Presumption of Enforceability

Because the Court has found that the forum-selection clause is presumptively enforceable, Plaintiff bears the "heavy burden" of showing that "it would be unfair, unjust, or unreasonable" to enforce the clause. *Martinez*, 740 F.3d at 219 (quoting *M/S Bremen*, 407 U.S. at 18–19).

The Second Circuit has established four factors for district courts to consider when determining whether a "resisting party" has met that heavy burden. *Id.* at 227–28. A presumptively valid forum-selection clause will not be enforced if:

> (1)[i]ts incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so

---

[8] "Confidential Information" is defined, in relevant part, as "all material and information related to [SingularDTV] that has or will come into [Breaker's] possession or knowledge of [Breaker] in connection with its performance" under the Agreement. Agr., Dkt. 18-5, at 2, ¶ 2.

> difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Id.* at 228 (citing *Phillips*, 474 F.3d at 392) (quotation marks omitted).

In this case, Plaintiff argues that Defendants have not established that Switzerland is an adequate alternative forum. Pl. Mem. in Opp. at 10–11. But Plaintiff assumes the wrong standard. Although a movant seeking dismissal on *forum non conveniens* grounds ordinarily bears the burden of demonstrating the availability of an adequate alternative forum, when the motion is based on a forum-selection clause, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that [litigating in] the forum for which the parties bargained is unwarranted," and the plaintiff's choice of forum "merits no weight." *Atlantic Marine Const. Co., Inc.*, 571 U.S. at 63 ; *see also Fasano*, 2022 WL 3692850, at *8  ("The *forum non conveniens* calculus changes . . . when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum.") (internal quotations and citation omitted). Contrary to Plaintiff's briefing, Defendants do not bear the burden of demonstrating that Swiss courts would be amenable to adjudicating SingularDTV's claims. Pl. Mem. in Opp. at 11. As the Second Circuit has made clear, "[i]t defies reason to suggest that a plaintiff may circumvent [a] forum selection . . . clause[] merely by stating claims under laws not recognized by the forum selected in the agreement." *Roby*, 996 F.2d at 1360.

Because Plaintiff has made no attempt to rebut the presumption of enforceability, the forum-selection clause should be enforced.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is granted on the grounds of *forum non conveniens*. The Clerk of Court is respectfully directed to close the open motion at Docket 91 and to close the case.

**SO ORDERED.**

Date: October 11, 2022
      New York, New York

                                          **VALERIE CAPRONI**
                                          **United States District Judge**